EXHIBIT A

**ORIGINAL**

407.423.9900
Fax 407.841.2779
Toll Free 855-MYDEPOS

MILESTONE I REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

CASE NO.:  8:24-CV-01793-TPB-AAS

MONDAMIN WILKINS

Plaintiff,

V.

PROGRESSIVE SELECT INSURANCE

COMPANY

Defendant,

DEPONENT:  CAMILLE CRAWFORD

DATE:      MAY 28, 2025

REPORTER:  BRIDGET KANSY, CER

401 EAST JACKSON STREET,
SUITE 2370
TAMPA, FL 33602

315 EAST ROBINSON STREET,
SUITE 510
ORLANDO, FLORIDA 32801
CORPORATE

380885 Crawford Camille 05-28-2025        Page 2

APPEARANCES

ON BEHALF OF THE PLAINTIFF, MONDAMIN WILKINS:
Lee Delton Gunn IV, Esquire
Gunn Law Group, P.A.
401 East Jackson Street
Suite 3600
Tampa, Florida 33602
Telephone No.: (813) 228-7070
E-mail: lgunn@gunnlawgroup.com
(Appeared via videoconference)

ON BEHALF OF THE DEFENDANT, PROGRESSIVE SELECT INSURANCE COMPANY:
David Angley, Esquire
Paul Blaise Antoniou, Esquire
Young, Bill, Boles, Palmer, Duke & Thompson, P.A.
401 East Jackson Street
Suite 2950
Tampa, Florida 33602
Telephone No.: (813) 603-3006
E-mail: dangley@flalawyer.net
        pantoniou@flalawyer.net
(Appeared via videoconference)

Also Present: Rae Einspahr, Videographer

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025    Page 3

INDEX

                                                Page

PROCEEDINGS                                        5

DIRECT EXAMINATION BY MR. ANGLEY                   6

CROSS EXAMINATION BY MR. GUNN                     70

REDIRECT EXAMINATION BY MR. ANGLEY              141

RE-CROSS EXAMINATION BY MR. GUNN                148


                          EXHIBITS

Exhibit                                         Page

    1      Claim Notes for 19-2350589            16

    2      Notice of Change in Claims            21

           Representative

    3      Civil Remedy Notice                   26

    4      Fax to Claim Representative from      31

           Tragos, Sartes & Tragos, PLLC

    5      Claim Information Letter Dated        45

           December 17, 2019

    7      Claim Information Letter Dated        59

           January 13, 2020

    8      Photograph of Windshield             81

    9      Photograph of Front of Car           82



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

STIPULATION

The VIDEO deposition of CAMILLE CRAWFORD was taken at MILESTONE REPORTING COMPANY, 315 EAST ROBINSON STREET, SUITE 510, ORLANDO, FLORIDA 32801, via videoconference in which all participants attended remotely, on WEDNESDAY, the 28th day of MAY 2025 at 10:03 a.m. (ET); said deposition was taken under the Federal Rules of Civil Procedure.

It is agreed that BRIDGET KANSY, being a Notary Public and Court Reporter for the State of FLORIDA, may swear the witness and that the reading and signing of the completed transcript by the witness is not waived.



MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     **www.MILESTONEREPORTING.com**     **Toll Free 855-MYDEPOS**

PROCEEDINGS

THE VIDEOGRAPHER:  My name is Rae Einspahr. I'm the online video technician.  And Bridget Kansy is your court reporter, representing Milestone Reporting Company, located at 315 East Robinson Street, Suite 510, Orlando, Florida 32801.  Today is the 28th day of May 2025.  Current time is 10:04 a.m., Eastern time.  We are convened by video conference to take the deposition of Camille Crawford in the matter of Mondamin Wilkins versus Progressive Select Insurance Company, pending in the United States District Court Middle District of Florida Tampa Division, case number 8 24-CV-01793-TPB-AAS.

Will everyone, but the witness, please state your appearance, how you're attending, and your location, starting with Plaintiff's counsel?

MR. GUNN:  Sure.  Good morning.  Lee Gunn here for Mr. Wilkins.

MR. ANGLEY:  David Angley for Defendant Progressive, attending via Zoom in Tampa, Florida.

THE VIDEOGRAPHER:  Blaise, do you want to state your --

MR. ANGLEY:  Oh, also Blaise Antoniou on behalf of Progressive, attending via Zoom with Tampa,



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Florida.

THE VIDEOGRAPHER:  Perfect.  Thank you.  And Camille, will you please state your full name for the record and hold your ID to the camera?

MS. CRAWFORD:  Camille Crawford.

THE VIDEOGRAPHER:  Go back just a little bit for me.  Go up.  All right.  Do all parties agree the witness is, in fact, Camille Crawford?

MR. GUNN:  Plaintiff agrees.

MR. ANGLEY:  Defendant agrees.

THE VIDEOGRAPHER:  Thank you.  Camille, you can go ahead and put that down.  And will you please raise your right hand for the court reporter to swear you in?

THE REPORTER:  Do you solemnly swear or affirm the testimony you're about to give will be the truth, the whole truth, and nothing but the truth?

THE WITNESS:  Yes.

THE REPORTER:  Thank you.  Counsel, you may begin.

DIRECT EXAMINATION

BY MR. ANGLEY:

Q.   Good morning, Ms. Crawford.

A.   Good morning.

Q.   Can you please state and spell your full name

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

for the record?

A.    Yes.    Camille Crawford.    And it's C-A-M-I-L-L-E, last name Crawford, C-R-A-W-F-O-R-D.

Q.    Thank you for that.    We're going to be taking your deposition here today.    We're doing this via Zoom. So at times, there are some technology issues that we experience.    So if anything happens, like you lose your connection, you lose the audio, you lose your video, just -- you can put something in the chat, you can raise your hand, signal in some fashion or form, and we can work through those issues.

We have a court reporter here with us today that's going to be taking down everything that's said. So it's important for you to allow the question to be asked.    Myself and Attorney Gunn will then allow you to provide your answer before any follow-up question's asked.    Sometimes there's a tendency, especially over Zoom to kind of talk over each other.    So we want to try to avoid that.

If you don't hear my question, don't understand the question or need me to repeat my questions, please let me know.    I'm happy to do so.    If you need a break at any point, we can do -- we can take a break whenever you need.    We're going to be looking at some exhibits today through the share screen function.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

So again, sometimes there's some issues with being able to see the document.  If you need me to zoom out, zoom in, scroll up, or down, or side to side, please let me know.  I'm happy to do that.  And all that sound okay to you, fair?

A.   Yes.

Q.   Okay.  And it's also important when you answer questions, you do it in a clear tone and you don't avoid the shake of the head, or uh-huh, or yes.  You got to say yes, no, verbalize your responses.

A.   Okay.

Q.   Ms. Crawford, have you ever been deposed before?

A.   No.

Q.   And can you tell me your date of birth?

A.   11-15-1987.

Q.   And can you tell me about your education background?  Do you -- did you attend college?

A.   Yes.  I have a Bachelor's of Science in Business Administration with a concentration in management.  And I have a MBA with a concentration in finance.

Q.   Okay.  For the bachelor's degree, where did you obtain that?

A.   Central State University in Wilberforce, Ohio.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025      Page 9

Q.   Okay.  And the year; do you recall?

A.   It was May of 2010.

Q.   Okay.  And what about the master's degree? Where did you obtain it and when?

A.   I obtained it from Wright State University. Graduation would've been May of 2013.

Q.   Okay.  And any other degrees or education?

A.   No.

Q.   Okay.  Do you have any certifications or licenses?

A.   Oh, I have my adjuster's license, yes.

Q.   Okay.  And when did you obtain your adjuster license?

A.   Somewhere around, like, July of 2018.

Q.   Okay.  And do you know what type of license you have?

A.   The Florida All Adjusters license.

Q.   Are you licensed in any other states, other than Florida?

A.   No.

Q.   And can you tell me where you currently work?

A.   Progressive.

Q.   And what is your current role at Progressive?

A.   The superintendent.

Q.   And when did you start at Progressive?



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**      www.**MILESTONEREPORTING**.com      **Toll Free 855-MYDEPOS**

380885 Crawford Camille 05-28-2025    Page 10

A.    I started July of 2012 -- or 2018.  I'm sorry.

Q.    Okay.  So you've been there since July 2018, correct?

A.    Yes.

Q.    And was that your first job in the insurance industry?

A.    No, it was not in the insurance industry, but, like, as a -- like, an adjuster, yes.

Q.    Okay.

A.    I worked at another insurance company before --

Q.    Well, let's --

A.    -- in customer service.

Q.    Oh, I'm sorry.  I didn't mean to interrupt you.

A.    No, you're fine.

Q.    Let's stay focused on Progressive for the moment.  When you started at -- you started in July be -- of 2018.  Can you kind of walk me through the roles you've had at Progressive and the time period in which you held or had those rules?

A.    Yes.  I have been a property damage adjuster.  And then after that, I became an injury adjuster specific to attorney represented claims.  And then after that, I became a superintendent over injury claims that



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    www.**MILESTONEREPORTING**.com    Toll Free **855-MYDEPOS**

380885 Crawford Camille 05-28-2025                          Page 11

were attorney-represented.  And most recently, I'm handling attorney -- I'm a superintendent handling attorney-represented and non-represented claims at this time.

Q.   Okay.  So you mentioned you started in July of '18.  Did you -- and at that time, did you become a property damage adjuster?

A.   Yes.

Q.   And was that after your initial, kind of, onboarding and training at Progressive?

A.   Yes.

Q.   Okay.  For how long were you, to the extent you recall, a property damage adjuster?

A.   A little over a year.

Q.   Okay.  And then at -- in 20 -- in approximately July or around there of 2019, you became an injury adjuster; is that correct?

A.   In -- it would've been actually November because I took a short period on leave, so it would've been November of 2019.

Q.   Okay.  And you said when you were an injury adjuster, you worked in attorney-represented claims; is that correct?

A.   Correct.

Q.   Can you, kind of, explain that to me?

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025    Page 12

A.   So just working with claims that were -- that were attorney -- like, claimants that had an attorney to basically negotiate their injury claims with us.

Q.   Okay.  And were these specific -- were these -- did you handle both bodily injury and uninsured motorist claims?

A.   Yes.

Q.   And how long did you hold that role as an injury adjuster in the attorney-represented bodily department?

A.   Probably a little over a year.

Q.   Okay.  And then you became a superintendent?

A.   Yes.

Q.   And that would've been approximately November of 2020?

A.   Yes.

Q.   And what is a superintendent?

A.   Just a supervisor.  Same as a supervisor.  And we just manage our team, handle the injury claims.

Q.   Okay.  So as a supervisor, you would've supervised a group of adjusters that handled attorney-represented-type claims?

A.   Yes.

Q.   And then how long did you hold that role for in the --

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025                    Page 13

A.   Up until recently, last year in November.  I then became a superintendent still handling attorney-represented and non-attorney-represented claims.  So November of 2024.

Q.   Okay.  And at Progressive, did you receive training for each one of the job positions that you held?

A.   Yes.

Q.   Okay.  And do you continue to receive training at Progressive in relation to your employment there?

A.   Yes.

Q.   And then prior to your employment at Progressive in July 2018, can you, kind of, walk me through the jobs you held prior to joining Progressive?

A.   Prior to joining Progressive, I was at ADP as a client tax specialist.  I handled, like, eval claims for -- or eval taxes for various companies at a state level. You want me to go before that, too?

Q.   Sure.  Basically walk me through graduating college with your master's through joining Progressive in July of 2018.

A.   Okay.  So when I first graduated and moved to Florida, I worked at the Department of Economic Opportunity in the unemployment office.  And after that, where did I work?  I worked at Aon Hewitt as a benefit



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

specialist.  And I -- after that, where did I work?
After that, I worked at the Capital Markets Company as a
human capital analyst.  And then, after that, where did
I work?  Forgot the name of the company.  Oh, Sedgwick.
I worked at Sedgwick.  I forgot about that job.  Yeah. I
worked at Sedgwick as, like, a customer service
representative.  And then after that, I did a brief,
like, contract HR job before I came, and then I worked
at ADP.

Q.    Okay.  And then from ADP to Progressives?

A.    Correct.

Q.    And then in December of 2019, you were an
injury adjuster at Progressive, correct?

A.    Yes.

Q.    And can you, kind of, tell me generally what
your job responsibilities were at that time?

A.    My job responsibilities were to handle
attorney-represented claims for either bodily injury or
UM, and basically review demands that we receive, and
pay out the injury claim based off of the information
that we -- that I will receive from the attorney.

Q.    And did you feel you were adequately trained
for that role?

A.    Yes.

Q.    And at some point, did you become involved in



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    **www.MILESTONEREPORTING.com**    **Toll Free 855-MYDEPOS**

380885 Crawford Camille 05-28-2025                    Page 15

an uninsured underinsured motors claim that was brought by Mondamin Wilkins against Progressive, arising out of a July 26, 2019 motor vehicle accident?

A.   Yes.

Q.   And in 2019, 2020 time frame, when you handled an injury claim at Progressive, did you keep notes of the activities that you performed on part particular claim?

A.   Yes, in the claim notes.

Q.   So those entries would be referred to as claim notes?

A.   Yes.

Q.   And where did you keep the claim notes?

A.   In our --

Q.   Were they electronic or a hard file?  A hard copy?

A.   Well, we did have hard files, but also that wasn't, like, my notes.  Like, the hard file was more of, like, if I received a demand or, like, letter of representation, any documents that I received.  But as far as, like, any notes that I would make, that would be electronically.

Q.   Okay.  And did you use these notes to document the activities you performed on a file?

A.   Yes.



MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025                    Page 16

Q.   And did you enter these notes at or near the time that the event occurred?

A.   Yes.

Q.   And when you entered a note, did you have knowledge of the event you were documenting?

A.   Yes.

Q.   And did you create notes for Mr. Wilkins' injury claim?

A.   Yes.

Q.   All right.  Ms. Crawford, I'm going to use the share function here to show you what I'll mark as Exhibit 1.  It's Bates stamp PRG 1 through 255.  Does this appear to be a copy of the claim notes related to Mr. Wilkins's UM claim?

(Exhibit 1 was marked for identification.)

A.   Yes.

BY MR. ANGLEY:

Q.   Okay.  And as I mentioned at the beginning, we're going to be looking at some of these documents through this share screen function.  So if you need me to zoom in or zoom out at any point, please let me know.  If you have any trouble viewing the entries, just give me a heads-up.

A.   Okay.

Q.   And before get into the specific claim notes,

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Ms. Crawford, do you have any independent recollection of this claim?

A.    What -- what do you mean by that?

Q.    Sure.  Outside of looking at these notes and any file materials we may look at today, do you have any independent memory of Mr. Wilkins' claim and your involvement in his claim?

A.    Vaguely, because it was just so long ago.

Q.    Sure.  What, if anything, do you recall?

A.    I just remember it was a UM claim that I adjusted back in 2019.

Q.    Okay.  So I'm going to direct you here to a claim note on December 4, 2019 at 4:32.  Do you see it?

A.    Yes.

Q.    And is this your first entry in the claim notes?

A.    I believe so, yes.

Q.    Okay.  Did you have any involvement in this claim prior to December 4, 2019?

A.    No.

Q.    Okay.  And the date of loss for this particular claim was when?

A.    It says the date of loss was July 26, 2019.

Q.    Okay.  And it indicates Bulk File, in the first line.  Bulk File Review.  Do you see that?

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A.   Yes.

Q.   Can you tell me what a bulk file review is?

A.   It's just a file review that we do if we get a claim assigned to us that somebody has already worked. So this was a claim that was already worked, and it was transferred to me to take care of.  So I just went and made sure I review liability coverage, make sure we had all of the claimant's data updated, make sure we did our UM coverage review, send our disclosure, reserves to our set properly.  Sent a change of adjuster letter to introduce myself to the attorney, let them know that I'm now taking over the file.  And we just reviewed to see if any demands or offers were out.  So I notated that and put a to-do note, which I was going to follow up on the offer.

Q.   Okay.  And so at this point, December 4, 2019, the claim was transferred to you; is that accurate?

A.   Yes.

Q.   And when you would've entered this claim note, would you have -- given that this claim was transferred to you, would you have done anything to familiarize yourself with what happened prior to your involvement?

A.   Yeah, just review the claim notes and see what the prior injury adjuster had done.  That's, kind of, like, what I did in this bulk file review.



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          Toll Free **855-MYDEPOS**

380885 Crawford Camille 05-28-2025    Page 19

Q.   Okay.  And then the first thing you note is liability?

A.   Yes.

Q.   And what was the liability determination in this case or claim?

A.   We determined that the other driver was at fault, and they had -- so liability was on the other driver, not our insured.

Q.   And to your understanding, based on your 12-4 -- 4-19 entry, had there been a prior demand received by Progressive?

A.   Yes.  And we --

Q.   And --

A.   Oh, go ahead.

Q.   No, please continue, ma'am.

A.   Yes.  And then we -- the prior adjuster had it -- extended the offer on that demand --

Q.   Okay.

A.   -- for -- yes.

Q.   And you indicated you put a to-do in.  What was the to-do that you listed?

A.   The follow-up on the last offer that was extended.

Q.   Okay.  And it indicates reserves were set at $10,000; is that correct?

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025                    Page 20

A.   Yes.

Q.   What is your understanding of reserves?

A.   My understanding of reserves is, like, worst case scenario, what we could pay.  So we just set it higher than what the value of the claim is, just so we make sure we have enough room to move.  So --

Q.   Okay.

A.   -- that for reserves.

Q.   And you indicated a change of adjuster letter. What's a change of adjuster letter?

A.   It was just sending out the -- my information, the new adjuster's contact information so they can know exactly who to contact going forward.

Q.   And when you say, "who to contact," who are you referring to, specifically?

A.   Myself.

Q.   Now, who is the letter directed to?

A.   The attorney.  The letter is directed to the attorney office so they can know that I'm the new adjuster and to send all correspondence to me.

Q.   Okay.  So that would be Mr. Wilkins attorney?

A.   Yes.

Q.   At this time, was it your understanding that Mr. Wilkins had an insurance policy with Progressive?

A.   Yes.

 MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

Q. And that policy provided -- if I say UM, you know I'm referring to uninsured motorist covered -- uninsured motorist?

A. Yes.

Q. Okay if I use that parlance? What was -- did Mr. Wilkins provide UM coverage?

A. Did he have UM coverage? Yes, he had UM coverage.

Q. And what was the -- what were his policy limits?

A. Off of -- I don't recall, but I might have noted it in here. I don't know off the top of my head.

Q. Okay. And at this time, December 2019, were you located in a physical office, or were you remote working?

A. Yes. I was located in a physical office in Maitland, Florida. I -- I'll share it with you. Let me -- can you see it okay?

Q. Oh. And show you what I'll mark as Exhibit 2.

(Exhibit 2 was marked for identification.)

A. Yes.

BY MR. ANGLEY:

Q. And is this a copy of the change of adjuster letter that you sent to Mr. Wilkins attorney?

A. Yes.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

Q.   And what was the -- what was Mr. Wilkins

attorney's -- the firm name and his particular

attorney's name?

A.   The Tragos, Sartes & Tragos PLC.  And the

attorney looks like Peter A. Sartes.

Q.   Okay.  Did you provide your contact

information?

A.   Yes.

Q.   Telephone and fax number?

A.   Yes.

Q.   Turning back to your -- the claim notes, Ms.

Crawford, you next have an entry on December 4, 2019 at

4:33 p.m.  Do you see it?

A.   Yes.

Q.   And what did you indicate in this claim there?

A.   I just coded liability -- my liability

determination.

Q.   And then beneath that at 4:39 p.m. on the same

page as the claim notes, PRG 42, you have an entry at

4:39 p.m.  Do you see that entry?

A.   Yes.

Q.   And what did you indicate in this entry?

A.   I made a call to the attorney's office.  I

spoke with Linda.  She advised she had faxed over

additional documentation on 11-18.  And she stated that

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025                    Page 23

client -- both -- or her client will be receiving additional injections, and she would send over the additional records once she received them.

Q.   Do you recall what Linda's role was at the attorney's firm?

A.   I do not.

Q.   And had you received the facts of additional documentation that was dated November 18th at this point?

A.   No.

Q.   Okay.  Was it ever sent to you following this call?

A.   I do not recall.

Q.   Okay.  And then following your call with Linda, what did you do -- notate next at 4:47 p.m.?

A.   My to-do was to follow up with the attorney regarding additional records.

Q.   And there's an entry here on PRG 44 on December 9, 2019 at 11:33 a.m. by Cindy Rodriguez.  Do you see that?

A.   Yes.

Q.   Do you know who Ms. Rodriguez was or what her role was at Progressive at this time?

A.   It looks like she was just, like, a claims processor, like, our admin team.  She just up -- like,

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025   Page 24

they just upload mail. So that's what I'm assuming. I don't know her, personally.

Q. Okay. And what did Ms. Rodriguez indicate in this entry?

A. That we received an ECRN.

Q. Okay. And she indicates diary to A124714. What is that indicating?

A. That is a diary to my TPX, or my ID.

Q. Okay. Does -- so it -- what is a TPX? Is that an employee ID?

A. Yes.

Q. Okay. So is she -- is Ms. Rodriguez in this entry advising you that a Civil Remedy Notice had been received on this particular claim?

A. Yes.

Q. And then directly beneath that, you have an entry on December 9, 2019 at 3:19 p.m. Do you see that?

A. Yes.

Q. What did you indicate in this entry?

A. I made an outbound call to the claimant carrier, so basically tour and confirmed that they had paid out their bodily injury limits of $10,000.

Q. Do you recall the -- who the claimant carrier was?

A. No.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900   www.MILESTONEREPORTING.com   Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025    Page 25

Q.   But do you -- and then they -- why were you contacting the claimant carrier to confirm whether the bodily injury policy limits had been paid?

A.   Well, one to confirm their limits and to make sure I didn't pay in front of them for my uninsured motorist claim.

Q.   Can you explain that to me?

A.   I just wanted to see, like, how -- how much limits that they had.  So like, if they had a substantial amount, because we had received that Civil Remedy Notice, just to make sure the claim wasn't valued within their bodily injury limits, and to confirm that they had already paid out so that I didn't basically tender in front of them or pay anything in front of them -- not tender, just pay anything in front of them.

Q.   And then directly beneath that entry, there's an entry by Chrissy (phonetic) Rodriguez on December 9, 2019 at 5:17 p.m.  Do you see that entry?

A.   Yes.

Q.   Who was Ms. Rodriguez?

A.   She was my superintendent at the time.

Q.   Okay.  So superintendent would be her supervisor, right?

A.   Uh-huh.

Q.   Okay.  And what does she indicate in her entry



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

on December 9th of 2019?

A.   She's just acknowledging the CRN was previously logged and we were on diary to review it.

Q.   Okay.  It indicates that ACK.  Would that be acknowledge?

A.   Yes.

Q.   Acknowledge CRN previously logged for NI. What does NI stand for?

A.   Name insured.

Q.   And then ID would be?

A.   Insured driver.

Q.   So was Mr. Wilkins the named insured?

A.   Yes, I believe so.

Q.   Let me show you what I'll mark as Exhibit 3. This is a copy of a Civil Remedy Notice.  Bates stamp PRG 680 through 685.  Is this a copy of the CRN that Progressive received on behalf of Mr. Wilkins?

(Exhibit 3 was marked for identification.)

A.   Yes.

BY MR. ANGLEY:

Q.   Would you have -- in connection with your claims handling, did you review the CRN at that point or would you have reviewed it later when you were getting ready to respond?

A.   No, I would've reviewed and looked at it --

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

380885 Crawford Camille 05-28-2025

Q.   Okay.

A.   -- at that point.

Q.   And what is your understanding of what a civil remedy notice is?

A.   A civil remedy notice is for first-party coverage.  It is the last attempt to try to settle the claim prior to suit being filed.  And they filed that to basically say that the insurance company hasn't been handling the claim in good faith.

Q.   Okay.  And so you would've reviewed the entirety of the Civil Remedy Notice at or around this point in time?

A.   Yes.

Q.   To your understanding, at the time Mr. Wilkins submitted this Civil Remedy Notice to Progressive, had any of his treating physicians rendered an opinion that he had sustained a permanent injury within a reasonable degree of medical probability caused by the July 26, 2019 motor vehicle accident?

A.   No.

MR. GUNN:  Sorry, Madam Court Reporter, I inadvertently was on mute.  I intend to object to the form of that question as lacking proper foundation and speculative into the response.  Thank you.



MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

380885 Crawford Camille 05-28-2025                    Page 28

And Ms. Crawford, that didn't throw you.  I might -- and when it's David's turn, he might have objections to form.  Unless somebody tells you not to answer a question, gives you that instruction, go ahead and after the objection, give your -- a response.  And then that's just making the record in case we want to have the Court review the testimony before it's played to a jury.  Thank you.

THE WITNESS:  Okay.

BY MR. ANGLEY:

Q.   And thank you for the response, Ms. Crawford.  So back to the -- on the Civil Remedy Notice, is there a -- like, a deadline or a time frame in which Progressive has to respond to this Remedy Notice?

A.   Yes, we have 60 days.

Q.   Okay.  And in looking at the Civil Remedy Notice -- let me get you back to the top here.  What was the date of the filing?

A.   11-27-2019, it was accepted.

Q.   Okay.  So that would've put -- that would put the deadline in the January 2020 time period thereabouts?

A.   Yes.

Q.   Okay.  Back to Claim Notes on PRG 44, Ms. Rodriguez has an entry at the bottom on December 10,

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025    Page 29

2019 at 7:25 a.m.  Do you see that entry?

A.    Yes.

Q.    Do you know what a mail review is?

A.    I'm just reviewing the incoming mail that we receive, like, in office.

Q.    And based on Ms. Rodriguez's claim note, had -- did Progressive receive additional records for Mr. Wilkins?

A.    Yes.

Q.    Okay.  And just for context, Ms. Crawford, there's Mr. Wilkins and his wife, Lisa Wilkins.  She also made a UM claim?

A.    Yes.

Q.    She was the -- she was referred to through the notes as ID; correct?

A.    Yes.

Q.    So all the questions here today are going to be focused on Mr. Wilkins' claim, not Ms. Wilkins, because you also adjusted Ms. Wilkins' claim; is that correct?

A.    Yes.

Q.    Okay.  So based on this entry, additional records were received for Mr. Wilkins.  Did Mr. Rodriguez direct you to review and respond?

A.    Yes.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q.   And based on her instruction, did you review the additional records that Progressive received?

A.   Yes, I did.

Q.   And is that what's detailed here on PRG 46 on December 16th of 2019 at 1:26 p.m.?

A.   Yes.

Q.   Okay.  And does this entry reflect your evaluation of those particular records?

A.   Yes.

Q.   At this point in time, was there -- let me pause there one sec.

A.   Okay.

Q.   Actually, before I do, based on this entry, what treatment records were you specifically reviewing?

A.   Trinity Spine Center.

Q.   And those -- the dates of service you reviewed?

A.   October 24, 2019 through December 2nd of 2019.

Q.   And at this point, was there a pending demand for the policy -- well, let me show you the record first, so hold on.

MR. ANGLEY:  We'll mark this as Exhibit 4. It's Bates stamped PRG 3015 through 3021.

(Exhibit 4 was marked for identification.)

BY MR. ANGLEY:

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025                    Page 31

Q.   Is this a copy of the records Ms. Rodriguez
requested you review?

A.   Yes.

Q.   And these are the records that you reviewed in
connection with your December 16, 2019 entry we were
just looking at?

A.   Yes.

Q.   In this correspondence, does Mr. Wilkins'
attorney make a demand for the policy limits?

A.   No.

Q.   And enclosed with this correspondence is a
date of service, December 2, 2019, from Trinity Spine
Center; is that correct?

A.   Yes.

Q.   And I'll just scroll down.  Were any
additional dates of service enclosed with this
correspondence?

A.   No.  Not any of, like, the records.  Just that
date.

Q.   And I'll look here.  There's a section on PRG
3019.  It says, "Current plans."  Can you see it okay?

A.   Yes.

Q.   Based on these records, had Mr. Wilkins
undergone injections?

A.   Yes.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q.   Okay.  And those injections were on October 28, 2019 and December 2, 2019?

A.   Yes.

Q.   Had you received the October 28, 2019 date of service record?

A.   No.

Q.   And based on these submitted records and the records that had been previously submitted to Progressive -- well, let me -- first, based on this record, did Dr. Saldeen render any opinion that Mr. Wilkins sustained a permanent injury caused by the July 26, 2019 accident within a reasonable degree of medical probability?

MR. GUNN:  Form.

THE WITNESS:  No.

BY MR. ANGLEY:

Q.   Can you repeat your answer, ma'am?

A.   No.

Q.   Okay.  Based on this submitted record, were there any future medical procedures that were scheduled?

A.   No.

Q.   Based on this submitted record, was there any reference to any surgical surgery, such as a ACDF procedure?

A.   No.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q.   Under Follow Up, what does that indicate?

A.   Well, it does -- it says, "Follow up, consider left cervical RFA."

Q.   Okay.  And so is that -- to you, does that indicate it was being planned for, or scheduled, or something that Mr. Wilkins was going to consider and make a later determination about?

A.   Just consider and make a later determination about.

Q.   Okay.  And at this time, was it clear whether or not Mr. Wilkins would, in fact, undergo that procedure?

A.   No.

Q.   And prior to this -- your review of these medical records, had Progressive received any record in which one of Mr. Wilkins' medical doctors or treating physicians gave him an opinion that he suffered a permanent injury within a reasonable degree of medical probability caused by the July 26, 2019 accident?

MR. GUNN:  Form.

THE WITNESS:  No.

BY MR. ANGLEY:

Q.   Okay.  Let me take you back to your claim note, ma'am, on December 16, 2019 at 1:26 p.m.  At the time of your evaluation, to your understanding, had all



MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    **www.MILESTONEREPORTING.com**    **Toll Free 855-MYDEPOS**

380885 Crawford Camille 05-28-2025

-- did Mr. Wilkins had -- have remaining PIP benefits?

A. Yes.

Q. Okay. What are PIP benefits?

A. Personal injury protection benefits that covers you if you are involved in an accident, covers your medical bills.

Q. And how much in PIP benefits did Mr. Wilkins have?

A. $10,000.

Q. Okay. And to your understanding, had payments or adjustments been made as to all of Mr. Wilkins' treatment, specifically the December 2, 2019 treatment he had undergone with Trinity Spine?

A. To the -- you're asking for the bills? No.

Q. Did Mr. Wilkins have MedPay benefits under his Progressive policy?

A. Yes.

Q. And what amount?

A. $500.

Q. Okay. And to your understanding, did Mr. Wilkins have a prior medical history?

A. Yes. From what I recall.

Q. Was it your understanding that Mr. Wilkins had been -- was paralyzed from the waist down due to a prior stroke?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A.    Yes.

Q.    And based on this entry, had Mr. Wilkins undergone prior -- two prior lumbar surgeries?

A.    Yes.

Q.    And this is your -- this record -- this note here we're looking at is your evaluation of Mr. Wilkins' treatment at Trinity Spine, correct?

A.    Yes.

Q.    And Mr. Wilkins had undergone diagnostic studies of his neck?

A.    Yes.

Q.    And did those diagnostic studies show evidence of degeneration or degenerative conditions?

A.    Yes.

Q.    And did you note the injections that -- in your evaluation, did you give consideration and notate the specific injections that Mr. Wilkins had undergone?

A.    Yes.

Q.    Okay.  And then I want to focus on this section of your entry where you say "Accepting."  What did you mean by accepting?

A.    Accepting the injury.  Like, the aggravation and the cervical sprain strain.

Q.    Okay.  Can you kind of -- so you accepted an injury for Mr. Wilkins' cervical SS, that would be



**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

380885 Crawford Camille 05-28-2025                    Page 36

sprain/strain?

A.   Yes.

Q.   "With aggravation to DDD"; what is DDD?

A.   Degenerative disc disease.

Q.   So that -- the full read of that sentence would be, "Cervical sprain strain, with aggravation to degenerative disc disease?"

A.   Yes.

Q.   Okay.  And you have there "3K to 5K."  What did that mean?

A.   $3,000 to $5,000.

Q.   And what did that number indicate?

A.   The -- the value that I was giving for that injury.

Q.   Okay.  And what was that number based on?

A.   Just based on my knowledge from being an adjuster, my training.

Q.   Okay.  And then did you provide -- did you consider and provide a value or apportionment for the cervical injections Mr. Wilkins had undergone?

A.   Yes.

Q.   And what amount was that?

A.   $8,000 to $10,000.

Q.   And I'll zoom in a little bit so you can see it a little clear.  And then did you also give

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     www.**MILESTONEREPORTING**.com     Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025    Page 37

consideration to -- can you read this sentence for me so I make sure we're on the same --

A.    Yeah, it's, "Lumbar sprain strain with two prior laminectomies, $3,000 to $5,000."

Q.    Okay.  And then for the $8,000 to 10,000 for the cervical injections, where did you derive that number from?  How did you come to apportion that amount?

A.    I just looked at the facts of the claim, and then based on my knowledge and training, I came up with that value.

Q.    And what about the $3,000 to 5,000 for the lumbar?

A.    The same and just because I knew he had had prior lumbar injury with surgery.  So I took that into consideration and gave value for that based off my knowledge and training.

Q.    Okay.  And then do you see the next section that starts, "Although no lumbar?"

A.    Yes.

Q.    What are you indicating in this section of your entry?

A.    They didn't have a lumbar MRI completed.  So I didn't have the actual diagnostic testing for it, but I was just still considering it, considering the two prior surgeries.


MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    **www.MILESTONEREPORTING.com**    **Toll Free 855-MYDEPOS**

380885 Crawford Camille 05-28-2025    Page 38

Q.   Okay.  And you indicate, "Eggshell claimant." What did you mean by that?

A.   One, because he was wheelchair-bound, and then two, he had had prior lumbar injury that he needed to have invasive treatment, too.

Q.   Okay.  And so how would that kind of affect your evaluation of the claim?

A.   I would consider that and like I did for the lumbar, even though there was, like, no diagnostic testing, so it doesn't look like they were really focused on that area, still give value for it because we potentially could have caused the aggravation to the prior injury.

Q.   Okay.  And then beneath that section, you were -- you have a -- where it starts, "There is additional $6,948 and specials from the injections received on December 2nd of 2019."  Do you see that?

A.   Yes.

Q.   Can you tell me what specials are?

A.   Billing, the bills.

Q.   So was that reflecting that due to the December 2, 2019 date of service, there was an additional $6,948 in medical bills?

A.   Yes.

Q.   And then what did you indicate in the



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

remaining portion of your entry?

A.   I had stated that they had not been processed by PIP yet, and there are still PIP benefits remaining. So at this time, I'm only considering the copay, MedPay, and PIP deductible.

Q.   And why state that?  What was the basis for this -- kind of what were you indicating by making that entry?

A.   Just letting myself know that there are bills that still need to be considered and processed through PIP.  So giving myself a note to let myself know that when they do get consider -- or processed that my -- the out-of-pockets for the client could potentially go up.

Q.   Okay.  And what are out-of-pockets?

A.   Out-of-pockets is the remaining balance that the claimant would have to pay in out-of-pockets for their bills.

Q.   Okay.  And did you reach a evaluation range based on your review and evaluation of the medical records?

A.   Yes.

Q.   And what was that range?

A.   $8,144 to $13,144.

Q.   Okay.  And what was this number based on?

A.   My entire evaluation.



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**       **www.MILESTONEREPORTING.com**       **Toll Free 855-MYDEPOS**

380885 Crawford Camille 05-28-2025                    Page 40

Q.   And that evaluation, did that include consideration for Mr. Wilkins' out-of-pocket medical expenses?

A.   Yes.

Q.   Did you give any consideration for pain and suffering?

A.   No.

Q.   And why not?

A.   Because it hadn't reached the tort threshold at that point, so I didn't have to consider that.

Q.   And you mentioned tort threshold.  To your understanding as under the terms of the policy, would Mr. Wilkins need to breach the tort threshold in order to be entitled to receive non-economic damages, such as pain and suffering?

A.   Yes.

Q.   Okay.  And to your -- at this point in time, based on your evaluation, had Mr. Wilkins breached the tort threshold?

A.   No.

Q.   So at this point in time, would Progressive be required to give consideration or evaluation for damages for pain and suffering?

A.   No.

Q.   Did you -- in this evaluation range, did you

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025    Page 41

give any -- what amount of this range or particular consideration was given for future medical expenses?

A. None.

Q. And can you explain that to me?

A. Well, it -- we didn't have like a permanent injury, so I didn't feel the need to give anything for future. Also -- yeah. So that's why.

Q. Okay. And at this point in time, were you aware of future treatment that was planned for Mr. Wilkins?

A. That's exactly what I was going to say. No. And -- and also didn't have any information on any future treatment.

Q. Okay. So after your entry there at 1:26 p.m., you have an entry on PRG 47 at 1:43 p.m. Can you tell me what this entry is indicating?

A. I was sending an author request to be off by a supervisor. So I just said, "See eval," which is the one above that, and it was -- yeah. So that's what that meant.

Q. Okay. And the amount you requested authorization for was?

A. $13,144.

Q. And can you explain how this process works when you request authorization for -- from a supervisor?



MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025                    Page 42

A. They review your evaluation and author it, if they agree with it.

Q. Okay. And beneath that, there's an entry by Lexi Gorman on December 16, 2019 at 1:44 p.m. Do you see that entry?

A. Yes.

Q. And can you tell me who Lexi Gorman was at that point in time?

A. She was also a supervisor in the Maitland office.

Q. Okay. Is there a reason you were -- your -- Ms. Gorman stepped in, instead of Ms. Rodriguez at this point in time?

A. I believe Ms. Rodriguez was out of the office. So Lexi was authoring her author request.

Q. Okay. Did you meet with Ms. Gorman in person?

A. Yes.

Q. Okay. And what -- how would that process kind of play out when you would've met with Ms. Gorman?

A. Just -- we just sat and review the claim together for accuracy, and then she just reviewed my evaluation and authored it.

Q. Okay. Did -- so Ms. Gorman agreed with your evaluation?

A. Yes.



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q.   And did she -- based on that, did she increase the reserves?

A.   She did.

Q.   Okay.  And what amount did she increase it to?

A.   To $15,000.

Q.   Okay.  And you evaluated the claim between $8,144 and $13,144; correct?

A.   Yes.

Q.   So the fact that the reserves were increased to $15,000, does that mean the claim was at that point in time, evaluated at 15,000?

A.   No.

Q.   Okay.  You have an entry.  It starts here at the bottom of PRG 47 and goes to the top of the Page 48 on December 17, 2019 at 3:05 p.m.  Can you tell me what you did next?

A.   I made an outbound call to the attorney's office.  I offered $8,200.  The attorney stated clients would not accept anything under policy limits.  And then I faxed and mailed my response.  And then there's a fax confirmation in there.

Q.   Is -- it indicates you spoke to an attorney. Do you recall the name of the attorney?

A.   No.

Q.   Okay.  At this point in time, had Progressive



MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025

valued the claim at the policy limits?

A.   No.

Q.   At this point in time, do you believe that your offer of $8,200 was fair and reasonable based on the information you had at the time?

A.   Yes.

Q.   And did that offer give consideration for Mr. Wilkins' out-of-pocket medical expenses?

A.   Yes.

Q.   And I'll share with you what I'll mark as Exhibit 5.  It's been Bates stamped PRG 1085.  Is this a copy of the letter you sent by mail and fax to Mr. Wilkins' attorney?

(Exhibit 5 was marked for identification.)

A.   Yes.

BY MR. ANGLEY:

Q.   And in this letter, you extended the offer of $8,200 for resolution of Mr. Wilkins' UM claim?

A.   Yes.

Q.   At this time, were you attempting to come to a fair resolution of Mr. Wilkins' uninsured motors claim?

A.   Yes.

Q.   Okay.  Turning back to your claim notes, there's an entry here on December 19, 2019 at 4:20 p.m. by Courtney Sutton.  Do you know who Ms.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.**MILESTONEREPORTING**.com          Toll Free 855-MYDEPOS

Sutton was or is?

A.   Yes.  She was a new supervisor, I believe at that time.

Q.   And what does she indicate in this entry?

A.   She reviewed response to TLD out.

Q.   And was that in reference to the $8,200 offer that you extended on December 17th of 2019?

A.   Yes.  For the additional med that I reviewed and sent the offer out, too.

Q.   So turning to PRG 50, there's entry on January 6, 2020 at 10:18 a.m.  Do you see it?

A.   Yes.

Q.   And did you make this entry?

A.   Yes.

Q.   And what were you indicating -- oh, excuse me. Before we get to that entry, I skipped one.  I apologize.  PRG 49, at December 24, 2019 at 11:57 a.m. Did you make this entry?

A.   Yes.

Q.   And did you speak with Mr. Wilkins' attorney?

A.   Yes.

Q.   And was that -- did you call the attorney, or did the attorney call you?

A.   No, I made an outbound call to the attorney's office.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025

Q.   And why were you calling the attorney's office at this point in time?

A.   To follow up on my offer.

Q.   And what did you discuss with Mister -- do you recall who you spoke with?

A.   No.

Q.   And based on your entry, who did you -- what did you discuss with Mr. Wilkins' attorney?

A.   That there were additional documents sent over after our last conversation, and that they both received three rounds of injections and have been scheduled for a surgery consult.

Q.   At the time you made this entry, had you received any additional records from Mr. Wilkins?

A.   No.

Q.   And we can turn to -- now, we'll turn to your January 6, 2020 entry on PRG 50 at 10:18 a.m.  This is -- what were you indicating in this entry?

A.   I'm going to review.  It's my to-do note to review additional treatment, and update my eval, and submit an offer based off of the new information.

Q.   So at this point, were you attempting your efforts to investigate Mr. Wilkins' claim?

A.   Yes.

Q.   And as you received additional information,



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

would you evaluate that record and update your

evaluation and your -- any corresponding settlement

offer?

    A.   Yes.

    Q.   There's an entry here, PRG 50, on January 6,

2020 at 2:29 p.m. by Ms. Rodriguez.  What is she

indicating in this entry?

    A.   She received an attorney letter dated December

31st on behalf of the name insured, and 12-5 for the

insured driver.  It was faxed 12-19, additional medical

records, and she direct me to review and respond.

    Q.   Okay.  So based on Ms. Rodriguez's entry,

Progressive had received additional treatment records

for Mr. Wilkins?

    A.   Yes.

    Q.   And that was by a letter dated

December 31, 2019?

    A.   Yes.

    Q.   And she asked you to review and respond to

those records?

    A.   Yes.

        MR. ANGLEY:  We've been going for about an

    hour.  I think it's a good stopping point for maybe

    a five, ten-minute break?

        THE WITNESS:  Okay.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

MR. GUNN:  That sounds great.  See you guys at 11:10?

THE VIDEOGRAPHER:  All right.  One moment.  Let me get us off the record.  The current time is 11:00 a.m.  We are off record.

(A recess was taken.)

THE VIDEOGRAPHER:  We are back on record for the deposition of Camille Crawford, being conducted by video conference.  Today is May 28, 2025.  Current time is 11:11 a.m.  You may proceed.

MR. ANGLEY:  Thank you.

BY MR. ANGLEY:

Q.  All right, Ms. Crawford.  We're back from a brief break, and before the break, we were discussing a claim note.  I'll pull back up for reference that -- from Ms. Rodriguez on January 6, 2020 that indicated additional records were received for Mr. Wilkins via letter dated 12-31.  Is this a copy of the records you would've reviewed in connection with Ms. Rodriguez's claim, though?

A.  Yes.

Q.  All right.  And would you have reviewed these records?

A.  Yes.

Q.  And enclosed with these records was a date of

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

service from Trinity Spine Center dated December 12, 2019?

A.   Yes.

Q.   Okay.  And I'll scroll down.  Were any additional dates of service enclosed with this correspondence?

A.   No.

Q.   And on PRG 3395, under Current Plans, did it indicate in this record whether -- had -- based on this record, had Mr. Wilkins undergone any additional injections or medical procedures since the December 2, 2019 date of service?

A.   Since the what -- which date?

Q.   So following the December 2, 2019 --

A.   No.

Q.   -- had Wilkins undergone any additional injections or procedures?

A.   No.

Q.   Based on this record, were there any additional injections or procedures scheduled?

A.   No.

Q.   And under Follow Up, did it indicate or -- and number 4, it indicates that Mr. Wilkins would potentially be considering a procedure, but was that procedure scheduled?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025    Page 50

A.    No.

Q.    Did Mr. Wilkins state he would be undergoing that procedure based on this medical record?

A.    No.  It says he would think about it.

Q.    Okay.  Based on this, was it unclear whether or not Mr. Wilkins would undergo additional treatment in connection with this client?

MR. GUNN:  Form.

THE WITNESS:  No.  No, it was not clear.

BY MR. ANGLEY:

Q.    Okay.  And this record -- did any treating physician for Mr. Wilkins render a -- render or offer an opinion that he had suffered a permanent injury within a reasonable degree of medical probability caused by the July 26, 2019 accident?

MR. GUNN:  Form.

THE WITNESS:  No.

BY MR. ANGLEY:

Q.    Were -- was there any recommendation or discussion in this record of surgery?

A.    No, they just recommended the RFA, but that was -- that was it.

Q.    And then Mr. Wilkins was going to -- he was thinking about that, but it was not scheduled or planned, correct?  Oh, well, strike that.  I think you

**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    **www.MILESTONEREPORTING.com**    **Toll Free 855-MYDEPOS**

already answered that question, anyways.  Okay.  Back to your claim note -- the claim notes, Ms. Crawford. There's an entry here on BRG 51 on January 13, 2020 at 8:46 a.m.  Did you make this entry?

A.  Yes.

Q.  And does this entry reflect your review and evaluation of the Trinity Spine record with the date of service of December 18, 2019?

A.  Yes.

Q.  Okay.  And did you take into consideration the treatment records Progressive had received from Mr. Wilkins?

A.  Yes.

Q.  And did you take into consideration the billing records Progressive had received from Mr. Wilkins to-date?

A.  Yes.

Q.  And based on this evaluation, did you maintain your -- the prior injuries that you accepted per your December 16, 2019 evaluation?

A.  Yes.

Q.  And in connection with this claim, the tort fees had $10,000 in bodily injury coverage, which was tendered to Mr. Wilkins.  How does that impact or affect the processing and adjustment of a uninsured motors

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025                    Page 52

claim?

A.   We offset it from whatever was paid out in bodily injury.

Q.   And when you say, "offset it," what do you mean by that?

A.   Like, we -- the -- it was -- like, we -- we included what the total value of the claim.  So if the claim is worth $20,000 and tort has $10,000, we would subtract the $10,000 from the $20,000 annual offer within the $10,000.

Q.   And based on your evaluation, did you update your evaluation of Mr. Wilkins' specials -- medical specials?

A.   I did.

Q.   Okay.  And did you determine -- based on your evaluation, did you come to a determination as to Mr. Wilkins' out-of-pocket expenses?

A.   Yes.

Q.   And OOP, that is short for out-of-pocket. What does OOP stand for?  I may ask you that.

A.   Out-of-pockets.

Q.   And what number or amount did you determine were Mr. Wilkins' out-of-pockets at -- as of January 13th of 2020?

A.   $2,278.



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

Q.   Okay.  And above that, you have some formulas. Does that reflect your calculation of the out-of-pockets?

A.   Yes.

Q.   Okay.  Can you explain to me, in the line that starts with PIP, how you -- this first formula here?

A.   The total amount PIP pay times the 0.25, which would give you the copay, which is $1,716.13, if you round it.  And then I subtracted the MedPay amount because we do not subrogate ourselves for MedPay.  And I added the deductible to get a total of $2,216.13.

Q.   So the amount of PIP was times 0.25.  Where does the 0.25 number come from?

A.   The 0.25 is the percentage basically that PIP doesn't pay for the copay.  So that would be, like, their copay amount.

Q.   Okay.  And then beneath that, there's another line start -- that starts with, "Bills not processed through PIP."

A.   Yes.

Q.   Can you explain that formula to me that follows?

A.   Oh, the -- that's the $6,948.  It still hadn't been processed through PIP, but I wanted to consider it, so I time -- multiplied it by 40 percent for a

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025    Page 54

reasonable and customary amount, and then I timesed that to get -- by 20 percent to get the copay, which would've been $555.84.

Q.   So the -- you mentioned the 0.4 being reasonable and customary.  What did you mean by that, and how did you derive 0.4 as being the appropriate multiplier for that calculation?

A.   Just based off of the Florida fee schedule with that type of bill, it's usually around 40 percent, so, like, that's what I used to get that amount.

Q.   And was that based on your experience, knowledge, and training as an adjuster at Progressive?

MR. GUNN:  Form.

THE WITNESS:  Yes.

BY MR. ANGLEY:

Q.   What was that based on?

A.   Yes.  That was based on my experience, training, and knowledge as an adjuster.

Q.   Okay.  And then you timesed that number by 0.2. You mentioned that was -- where does that 0.2 number derive from?

A.   That's the amount we use to get the copay when we don't -- when PIP hadn't processed the payment for the bill.

Q.   And then did -- then you took the two numbers

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

you derived through your formula and added them

together; is that correct?

A.   Correct.

Q.   And what -- that would -- that gave you the

total out-of-pockets of $2,278?  Is that correct, ma'am?

A.   Yes.

Q.   Okay.  And in your evaluation, did you provide

any apportionment or value as to non-economic damages,

such as pain and suffering?

A.   No.

Q.   And why is that?

A.   Because it wasn't necessary at the time.

Q.   And why --

A.   We didn't have -- we didn't -- there was no

permanency from a medical doctor, and it had not reached

the tort threshold.

Q.   Okay.  And did you determine any evaluation

range?

A.   Yes.

Q.   And what was that evaluation range?

A.   $7,278 and -- and also $12,278 was my range.

Q.   Okay.  And there's an entry here by Ms.

Rodriguez on the same date, January 13, 2020 at 9:14

a.m., starting on the bottom of PRG 51.  Did Ms. Wilkins

agree with your evaluation?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

A.   Yes.

Q.   Okay.  And based on that, you have an entry on PRG 52 on January 13, 2020 at 10:39 a.m.  Do you see it?

A.   Yes.

Q.   And what did you do next based on this entry?

A.   I made a call out to the attorney's office, and I advised I had reviewed the additional records.  I asked where they are with the name insured's last offer.  The attorney stated that they're not coming off policy limits.  Attorney also stated if Progressive offered policy limits, they would have to speak with their client to see if they were even willing to accept policy limits at this time.

Then I requested the attorney to send that they are not willing to negotiate in writing.  Attorney stated that they already sent that in writing, and then I advised I had not received it.  And then -- I only received additional records.  And then I wanted -- I also requested again that they are not willing to come off policy limits, if they could send that in -- in writing for both clients, and then the attorney agreed to send it in writing.

Q.   And did they send any correspondence like that in writing to you following this conversation?

A.   No.



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

380885 Crawford Camille 05-28-2025    Page 57

Q.   Okay.  And the abbreviation NOG, who is --
what is that referring to?

A.   That's the named -- or that's -- named insured
owner guest.  Passenger, basically.

Q.   Okay.  And that was -- does that refer to Mr.
Wilkins?

A.   Yes.

Q.   And based on your -- do you recall what
attorney you spoke to at --

A.   No.

Q.   And based on your entry with -- or based on
this entry in your discussion with Mr. Wilkins'
attorney, what was your understanding as to whether or
not Mr. Wilkins would settle for the uninsured motorist
policy limits?

A.   It didn't appear that they were willing to
negotiate or settle for even the policy limits at this
time.

Q.   And at this time, were you attempting to come
to a fair resolution of Mr. Wilkins' claim?

A.   Yes.

Q.   Were you attempting to engage in negotiations
with Mr. Wilkins' attorney to do so?

A.   I was.

Q.   And did you also send a letter to Mr. Wilkins'

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

attorneys, documenting the offer Progressive was making?

A.    Yes.

Q.    Okay.

MR. ANGLEY:  Mark this as Exhibit 7, Bates stamp PRG 1082.

(Exhibit 7 was marked for identification.)

BY MR. ANGLEY:

Q.    It's a January 13, 2020 letter.  Is this a copy of the letter you sent to Mr. Wilkins' attorneys?

A.    Yes.

Q.    And what amount did you extend as an offer?

A.    $8,200.

Q.    Okay.  And did -- was that offer accepted?

A.    No.

Q.    In response, did you receive any counterdemand or demand for policy limits?

A.    No.

Q.    Okay.  Turning back to your claim notes at Exhibit 1, there's an entry on PRG 53 on January 20, 2020 at 4:46 p.m.  Do you see the entry?

A.    Yes.

Q.    And does this entry reflect your evaluation or thoughts related to Mr. Wilkins' Civil Remedy Notice?

A.    Yes.

Q.    Okay.  And can you tell me -- it looks like

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025

this section -- there's a section for Lisa Wilkins, which we don't need to focus on.  So above that, this section of the note pertains to Mr. Wilkins?

A.    Yes.

Q.    And what information -- can you kind of walk me through your consideration of Mr. Wilkins' CRN and the information you were looking at and considering?

A.    Considered tort tender.  My listed RUM coverage was $50,000 non-stacked.  There were multilevel findings in the cervical spine with aggravation to degenerative disc disease.  The claimant had received multiple injections to-date.

At that time, PIP had paid $7,969.27, and claimant had a total out-of-pockets of $2,278.  I would -- stated that the claim evaluation was in line, meaning that it was accurate.  I have made multiple attempts to negotiate the claim with the attorney, but they have refused to come off limits.

I indicated that it was a moderate impact where the CV, which is, like, the claimant vehicle, which we kind of use interchangeably, claimant, but we use that when it's, like, not our insured -- they failed to yield right of way, and our insured vehicle T-boned the claimant vehicle.  This was out of Pasco County.

And then I requested to respond to the CRN

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

that the claim is still negotiable, so it's just a value dispute, and then that's my response there for Mr. Wilkins.

Q.   Okay.  So based on your evaluation, did Mr. Wilkins still have remaining PIP benefits?

A.   Yes.

Q.   And Mr. Wilkins' out-of-pockets, you calculated at approximately $2,278?

A.   Yes.

Q.   And since your January 13, 2020, note, had you received any additional treatment records from Mr. Wilkins?

A.   (Audio cuts out.)

Q.   I'm sorry, I couldn't hear you.

A.   No.

Q.   And Ms. Crawford, can you force a claimant, such as Mr. Wilkins, to negotiate?

MR. GUNN:  Form.

THE WITNESS:  (Audio cuts out.)

BY MR. ANGLEY:

Q.   Oh.  I'm sorry.  I couldn't hear you.  Oh.  I think your volume cut out, Ms. Crawford.  Can you try to say something?

A.   No.  I couldn't.

Q.   Okay.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025    Page 61

A.   Can -- can you hear me?

Q.   Yeah, I can hear you now.

A.   Okay.

Q.   Let me just ask that question, just because your volume was cutting out, it looks like.  Can you force a claimant, such as Mr. Wilkins, to negotiate?

A.   No.

Q.   And during your claims handling, were you attempting to resolve mister -- come to a fair resolution --

A.   Yes.

Q.   -- on Mr. Wilkins' claim?

A.   Yes, I was.

Q.   And you proposed a civil remedy response?

A.   Yes.

Q.   And what did you mean when you said -- when you proposed in your response, "There is a dispute regarding the value of the claim"?

A.   The attorney did not agree with Progressive -- like, my -- my evaluation, but based off of the records -- based off the information I received, the claim was not valued at $50,000 at that time.

Q.   Okay.  And at this point in time, when you were responding to the Civil Remedy Notice, had you received any documentation from Mr. Wilkins, or his



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

380885 Crawford Camille 05-28-2025

attorneys, or otherwise that showed Mr. Wilkins had --
one of his treating providers had rendered an opinion
that he had suffered a permanent injury within a
reasonable degree of medical probability caused by the
subject accident?

MR. GUNN:  Form.

THE WITNESS:  No.

BY MR. ANGLEY:

Q.   And at this point in time, did you have any
information as to whether Mr. Wilkins was scheduled or
intended to undergo any additional medical procedures?

A.   (Audio cuts out.)

Q.   Oh.  Your volume cut out again, Ms. Crawford.

A.   No.  I had not.

Q.   And did your prior offer of 8,200 take into
account and provide for Mr. Wilkins' out-of-pocket
expenses?

A.   Yes.  The $2,278 was for his out-of-pockets.

Q.   And you gave consideration for the general
treatment he had undergone?

A.   Yes.

Q.   And based on your understanding, Mr. Wilkins
would not be entitled to damages, such as pain and
suffering, as he did not breach the tort threshold?

A.   Yes.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q.    And did Miss -- there's a note here, January 20th -- PRG 54, on January 20th at 4:53 p.m.  Did Ms. Rodriguez agree with your proposal and -- for the CRN response?

A.    Yes, she did.

Q.    And did she agree with your evaluation?

A.    Yes, she did.

Q.    And did she agree to allow the CRN to expire?

A.    Yes, she did.

Q.    And did she direct you to continue to attempt to resolve Mr. Wilkins' UM claim?

A.    Yes.

Q.    There's an entry here by Mark O'Brien on January 21, 2020 at 9:23 a.m.  Do you know who Mr. O'Brien was?

A.    Yes.  He was our manager.

Q.    Okay.  And what did Mr. O'Brien indicate?

A.    He also agreed with the CRN response, so he opted --

Q.    Okay.  And then beneath that, did you -- based on this January 21, 2020 entry on PRG 55 at 12:26 p.m., did you submit a CRN response?

A.    Yes, to the CRN database, and then I also faxed a copy to the attorney.

Q.    Okay.  One second.  And is this a copy of the

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025

response to the CRN?

A.   Yes.  Yes.

Q.   And does that mirror the proposal that you had in your claim notes?

A.   Yes.

Q.   And this response was also sent directly to Mr. Wilkins' attorney?

A.   Yes.  Via fax.

Q.   And at this time, was Progressive continuing to seek an amicable resolution of Mr. Wilkins' UM claim?

A.   Yes.

Q.   Going back to your claim notes, and it would be -- on PRG 55, there's an entry on January 27, 2020 at 4:32 p.m.  Do you see it?

A.   Yes.

Q.   Did you call Mr. Wilkins' attorney that day?

A.   I did.

Q.   Did you speak with Mr. Wilkins' attorney?

A.   I did.

Q.   Do you recall the name of the attorney you spoke with?

A.   No.

Q.   And what did you discuss with Mr. Wilkins' attorney that date?

A.   I was calling him to follow up on the (coughs)

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    **www.MILESTONEREPORTING.com**    Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025        Page 65

-- sorry, to follow up on the last offer, and then the attorney stated that the clients are not willing to negotiate the claim and that they would file suit next week.

Q.   And then PRG 57, there's a claim note on February 11, 2020, at 11:10 a.m.  Did you follow back up with Mr. Wilkins' attorney that date?

A.   Yes, I did.

Q.   And did you speak with Mr. Wilkins' attorney?

A.   Yes.

Q.   Do you recall the name of the attorney you spoke to?

A.   No.

Q.   What did you discuss with Mr. Wilkins' attorney?

A.   That I was following up on the offer, they were not willing to negotiate, and that they filed a complaint that day, but they didn't have the case number.  And I searched Pasco County website, and I was not able to find it on that day.

Q.   Based on your entry, what was your understanding of whether Mr. Wilkins was willing to settle for the UM policy limits of $50,000?

A.   We're not willing to settle.

Q.   And then there's an entry by Ms. Rodriguez on



MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025                    Page 66

February 18, 2020 on PRG 58. Was she able to locate the case number and the complaint?

A. Yes.

Q. And then she indicated, "Searched lit" -- L-I-T -- "DB. No complaint found." What was she indicating there?

A. So usually, when we're served, there's a database we can go look to -- to see if we had -- like, service had been perfected, and it just -- it hadn't been at that time.

Q. And then you have an entry here on PRG 59 on February 21, 2020 at 9:45 a.m. Based on this entry, had Progressive been served?

A. No.

Q. And that same day, did you also contact Mr. Wilkins' attorney?

A. Yes.

Q. And what did you discuss with Mr. Wilkins' attorney?

A. Actually spoke with the assistant, who then spoke with the attorney, and the assistant told me that they are not willing to accept policy limits at this time. That's what the attorney advised.

Q. Okay. And did you continue to follow up with the attorney even after this point?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A.   Yes.

Q.   Okay.  And why were you continuing to follow up with Mr. Wilkins' attorney?

A.   Attempt to try to settle the claim.

Q.   And you called them again on March 2, 2020 at 3:15 p.m.?

A.   Yes.

Q.   And who did you speak to that day?

A.   Spoke -- spoke with the case manager, and then they spoke with the attorney.  They stated that they had nothing else to add to the prior conversation.

Q.   And at this point in time, had you received any additional treatment records from Mr. Wilkins?

A.   No.

Q.   Any additional billing records from Mr. Wilkins?

A.   No.

Q.   If you had, would you have evaluated and considered those records?

A.   Yes.

Q.   To your understanding, at this point, had Progressive been served with the lawsuit?

A.   No.

Q.   On -- there's three entries here: March 11, 2020 12:04 p.m., March 20, 2020 at 1:07 p.m., March 30,

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

2020 at 11:45 a.m.  This is all on PRG 60.  Did you continue to follow up with Mr. Wilkins' attorney's office on those dates?

A.   Yes.

Q.   And did you leave messages for Mr. Wilkins' attorney on those dates?

A.   Yes.

Q.   And on PRG 60, three -- on March 30, 2020 at 2:14 p.m., did you speak with Mr. Wilkins' attorney?

A.   Yes.

Q.   What did you discuss?

A.   That we were served on February 27th of 2020, and a copy was faxed to us.  I advised that I -- I haven't received the notice, and then I requested for the notice to be e-mailed to our Florida attorney e-mail.

Q.   And beneath that, there's a note -- claim note by Nicole Perez on March 31, 2020.  Did she indicate that a complaint had been received?

A.   Yes.

Q.   And based on that, you have an entry -- well, you have an entry on March 31, 2020 at 10:55 a.m., correct?

A.   Yes.

Q.   And was this entry based on the fact that the

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

complaint had been received?

A.  Yes.

Q.  And it indicates -- can you kind of walk me through this entry?  What are we -- what are you indicating in this particular entry at 10:55 a.m. on March 31, 2020?

A.  Just the reason for the transfer, because suit was filed.  Reason for impasse.  Basically, the summons was issued on 2-18 of 2020 for Mr. Wilkins versus Progressive, so I put the suits down, the case number, what county it was, the date of service, and that's it.

Q.  So would it be -- are -- so based on this entry, are you transferring the file at this point in time?

A.  Yes.

Q.  And the reason being?

A.  Because suit was served.

Q.  And after this point, was the file transferred to a different adjuster?

A.  Yes.

Q.  Did you have any further involvement in the handling of Mr. Wilkins' UM claim after this point?

A.  No, not after the 31st.

Q.  Okay.  Any knowledge of what occurred in the claim following the transfer to the subsequent adjuster?

 MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

A.    No.

Q.    During the time of your involvement in the claim, did Mr. Wilkins breach the tort threshold?

MR. GUNN:  Form.

THE WITNESS:  No.

BY MR. ANGLEY:

Q.    Were you at all times attempting to come to a fair and reasonable evaluation of the claim?

A.    Yes.

Q.    Did you give fair consideration to the information you were provided?

A.    I did.

Q.    Okay.  Do you believe that you acted in good faith in the handling of Mr. Wilkins' UM claim?

A.    Yes.

MR. ANGLEY:  All right.  Ms. Crawford, I don't have any further questions for you.  At this point in time, I'll turn it over to Mr. Gunn.

THE WITNESS:  Okay.

MR. GUNN:  Thank you, Counsel.

CROSS-EXAMINATION

BY MR. GUNN:

Q.    Ms. Crawford, I want to set the parameters of your involvement.  So as I heard your testimony, you came onto this claim as the primary adjuster on December

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025

4, 2019, correct?

A.   Yes.

Q.   And when the matter went into suit in March of 2020, the case was transferred to a different adjuster, correct?

A.   Yes.

Q.   What's your understanding as to why once the litigation was commenced, the file was transferred to someone else?

MR. ANGLEY:  Form.

THE WITNESS:  Can you repeat your question?

BY MR. GUNN:

Q.   What is your understanding as to why when the suit was filed against Progressive, this claim was assigned to a different adjuster?

A.   Because I was not a litigation adjuster, so it was reassigned to a litigation adjuster.

Q.   When you came onto this file in December of 2019, there was a recently filed Civil Remedy Notice pending during its 60 days' cure period, correct?

A.   Yes.

Q.   So there had already been from the time of this crash in July until the service of a CRN for Progressive as a company to evaluate the uninsured motorist benefit that may be due to Mr. Wilkins, as you

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**      **www.MILESTONEREPORTING.com**      Toll Free 855-MYDEPOS

understood it, correct?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Yes.

BY MR. GUNN:

Q.  Now, you had just become, according to what I heard, a -- you called it injury adjuster in November of 2019.  Did I catch that correctly?

A.  Yes.

Q.  And does that mean you were handling both bodily injury liability automobile claims and uninsured/underinsured UM claims?

A.  Yes.

Q.  So this is the first time in your entire career that you'd ever undertaken to adjust the benefits due under a UM policy was in November of 2019.  Am I correct about that?

A.  No.

Q.  Okay.  When had you, previous to November of 2019, been adjusting bodily injury UM claims?

A.  Can you repeat the question?  Are -- because I didn't -- are you asking me if that's my first UM claim that I ever had received or if when I started in November of 2024, had I been adjusting both UM and bodily injury claims?

Q.  My question, ma'am, had nothing to do -- and

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025    Page 73

I'm sure you just misspoke about 2024. My question is: Did I hear correctly that the first time in your career that you ever had injury adjusting responsibility began in November of 2019?

A. Yes.

Q. And this file is given to you early in December of 2019, this file being Wilkins' UM, right?

A. Yes.

Q. So you had recently completed whatever your background training and experience would be in the handling of bodily injury liability and UM claims, right?

A. Yes.

Q. Tell me what you were trained in order to allow yourself to evaluate the UM benefit value of cervical epidural steroid injections.

MR. ANGLEY: Object to the form.

THE WITNESS: What -- can you rephrase your question?

BY MR. GUNN:

Q. No. But I'll repeat it, okay?

A. Okay.

Q. Tell me everything you were trained that allowed you to evaluate epidural steroid cervical injections for UM benefits as due.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

MR. ANGLEY:  Object to the form.

THE WITNESS:  We just had different -- multiple different trainings on how to evaluate claims based on the specifics of each claim.

BY MR. GUNN:

Q.   Well, I appreciate that, but tell me something substantive about that training, please.

MR. ANGLEY:  Object to the form.

THE WITNESS:  I'm not sure how to answer your question.

BY MR. GUNN:

Q.   Okay.  What is training at Progressive?  Just generally, what does it mean to say, I received training at Progressive?

A.   You just go through training.  You learn about injury.  You learn about how to -- you just learn about the injury claim process, basically.

Q.   Did somebody at Progressive, when training you, give you numbers you should assign to cervical epidural steroid injections in a patient who's involved in a motor vehicle collision?

A.   Because each claim has different value, it could be the same type of injury, but we look at, like, the holistic of that specific claim, so there's no certain values that we have.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

Q.   But Mr. Angley asked you, did you evaluate the three-time cervical epidural steroid injection?  And you said, I did.  And you put, I believe, three to $5,000 in your evaluation, and you said, that's based on my training at Progressive.  I want to understand what you were trained at Progressive that connects the dot to these three cervical injections should get 3- to $5,000 for UM purposes.  Can you do that?

MR. ANGLEY:  Object to the form.

THE WITNESS:  I was trying -- I was trying to review each claim on its own and then come up with a value for that claim.

MR. ANGLEY:  And Ms. Crawford, if you could just please pause --

BY MR. GUNN:

Q.   What database, what methodology, what sources of data did you use to do that?

MR. ANGLEY:  And Ms. Crawford, just make sure to pause in between Mr. Gunn's questions so I can insert any objection or instruction.  I'm sorry to interrupt, Lee.  Just want to kind of make sure we're avoiding talking over one another.

BY MR. GUNN:

Q.   Ms. Crawford, what data methodology did you use in the Wilkins UM adjustment to reach and derive the

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

values you used in each of your injury claim evaluations you reviewed with counsel?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Just the Progressive training. There's -- there's a -- there's different training, so there's nothing specific.  We are trained to look at, again, each claim based on its own merit and come up with an evaluation based on that.

BY MR. GUNN:

Q.   What training did you get at Progressive that you used to reach a value for three cervical ESIs of three to $5,000?

MR. ANGLEY:  Object to the form.  Also misstates the claim.

MR. GUNN:  All right.  Well, I'll withdraw if it misstates the claim, David.  I didn't mean to do that.

BY MR. GUNN:

Q.   What -- just -- I'll make it as broad as I can. What training at Progressive did you use to derive any of the numbers you put in your claim injury evaluation for any component of the injuries you assessed?

MR. ANGLEY:  Object to the form.

THE WITNESS:  The training.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025    Page 77

BY MR. GUNN:

Q.   Ma'am, what is the training?  What is the data? What is the methodology?  What are -- I mean, you were trained to do what?  Come up with numbers that had no basis at all in what a jury might award as the legal liability for that injury?  Is that your testimony?  I can't imagine it is.

MR. ANGLEY:  Object to the form and the counsel testifying and misstating the witness's testimony.  Argumentative.

You can answer.

THE WITNESS:  No.  No.

BY MR. GUNN:

Q.   So what makes a cervical ESI undergone by Mr. Wilkins worth a given dollar value?  Is it jury verdict information?  Is it databases that you used at Progressive?  Is it scales or guidelines that Progressive published and gave to you and said, here, for this kind of injury, we want you to use this much money?  Tell us, please.

MR. ANGLEY:  Form.

THE WITNESS:  Based on my experience and my knowledge and training that I received at Progressive.

BY MR. GUNN:



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    **www.MILESTONEREPORTING.com**    **Toll Free 855-MYDEPOS**

Q.   I understand that's the answer you're giving, but I -- I'll withdraw.  Look.  You've been -- you're not a doctor, correct?

A.   That's correct.

Q.   You had no medical training before November of 2019, right?

MR. ANGLEY:  Form.

THE WITNESS:  Yes.

BY MR. GUNN:

Q.   That's correct, then, yes?

A.   Yes.

Q.   You've never searched a database and researched what typical jury verdict awards are for a given kind of case; is that correct?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Can you repeat the question?

BY MR. GUNN:

Q.   Have you ever searched for jury verdicts in order to better understand the probable legal liability of somebody who hurt somebody else?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Yes.  I have reviewed different venues and the risk in different venues.

BY MR. GUNN:

Q.   Did you run a jury verdict search for Mr.



MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        www.**MILESTONEREPORTING**.com        **Toll Free 855-MYDEPOS**

380885 Crawford Camille 05-28-2025    Page 79

Wilkins' injuries?

A. I did consider that it was in Pasco County.

Q. I -- okay. Did you run a jury verdict research report and put in that report Mr. Wilkins -- his age, the venue, and his injury claims?

A. No.

Q. If you had done such a thing, you'd have notated it to the file, right?

MR. ANGLEY: Form.

BY MR. GUNN:

Q. I'm going to break it down. I asked a question before. I want to break it down. Did Progressive publish to you any guidelines that described the dollar amounts that you should use for given types of injuries?

A. No.

Q. Did Progressive specifically train you that, here is a range of dollar value you are to use for aggravation of degenerative disc disease?

A. No.

Q. And you -- and I don't mean to beat this to death. I really don't. I've asked it several times. But am I correct that you cannot describe data or methodology particular to Mr. Wilkins' injuries that Progressive trained you in prior to December of 2019; is

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

that true?

MR. ANGLEY:  Object to the form.

THE WITNESS:  No.

BY MR. GUNN:

Q.  Then what did they train you in specific to degenerative disc disease, cervical ESI, herniated discs, impairment or impingement on the central core? What training did you get about those particular injuries?

A.  The training that I got about those particular injuries is, like, what they mean.  And then also that you have to look at, again, each claim on itself to come up with a range.  So there's no particular range for that.  It's just each claim you look at it -- its totality of the claim, and you provide a value on it.

Q.  What -- in Mr. Wilkins' case, and we'll look at some notes maybe in a minute, but he had already experienced an injury and had a spinal cord stroke and was in a wheelchair, right?

A.  Yes.

Q.  That's a particular fact and circumstance you should have considered when evaluating his UM benefit claim, right?

A.  Yes.

Q.  And you should consider whether the mechanism

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

of injury is consistent with the complaints.  Is that what you were trained?

A.   Yes.

Q.   And I'm going to display for us -- and I want to make sure I -- I'm pulling up the right one.  So if I'm wrong, you correct me.  But I'm going to share, as the next numbered exhibit, a photograph.  Can you see that?

(Exhibit 8 was marked for identification.)

A.   Yes.

BY MR. ANGLEY:

Q.   Do you recognize that to be the seat in which Mr. Wilkins was situated in this Hyundai vehicle at the time of this T-bone crash?

A.   I don't recall exactly what the vehicle looks like, so - but if this is from the claim, then I agree.

Q.   All right.  And this is -- and just so you know, I'm not trying to be tricky about any of this. I'm really not.  That's why I said, if I get it wrong, you tell me.  I'm just going to scroll a minute.  I'm going to get to a photograph.  For the record, I showed you two of 3701 as produced by Progressive as the claimed -- merged file claim notes and paper notes.  And I want to show you the front end, if I can get to it. And I'll mark that as my next exhibit.  Do you recall that he was

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          Toll Free 855-MYDEPOS

in the Hyundai, "he" being Mr. Wilkins?

A.   No, I don't -- I don't recall the vehicle.

Q.   Uh-huh.  And that it was totaled out by Progressive about 22, $23,000?

A.   Do not recall that.

Q.   Don't recall that?

A.   No.

Q.   Okay.  I'm showing you now 56 of 3701, marked as the next numbered exhibit.

MR. GUNN:  What are we up to, folks?  Are we --

THE REPORTER:  This would be Exhibit 9, if we continued.

MR. GUNN:  Okay.  So I marked already two of 3701 as nine.  I got to remember so I can get that to you.  And 56 of 3701 is now ten, ma'am; is that right?

THE REPORTER:  This would be nine.  The last one was eight.

MR. GUNN:  Thank you.  Okay.  Eight is two, and 56 is nine.  Thanks for your help.

(Exhibit 9 was marked for identification.)

BY MR. GUNN:

Q.   Okay.  Do you -- does that refresh your recollection, ma'am, that that's the front-end of the vehicle that Mr. Wilkins occupied during this T-bone

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

380885 Crawford Camille 05-28-2025    Page 83

collision?

MR. ANGLEY:  Object to the form.

THE WITNESS:  I still don't recall what the vehicle looked like.  It was too long ago.

BY MR. GUNN:

Q.  I understand.  I understand.  So let -- let's just say that the facts are established, it's called a hypothetical, that Mr. Wilkins is a passenger in this Hyundai, and this Hyundai is T-boned, and the spiderweb windshield and the airbag residue is where he was situated.

If I show you that, do you agree that would be a fact you'd want to consider in acting fairly and honestly in the evaluation of the UM benefits due?

A.  Yes.

Q.  You may have cut out, ma'am.  I think your answer was yes.  Could you repeat it for our record, please?

A.  Yes.

Q.  There's a mic issue here, Ms. Crawford.  One more time?

A.  Yes.

Q.  Thank you.  Now, UM, you were trained, is a little bit different than BIL, isn't it?

A.  Yes.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025    Page 84

Q.   What difference were you trained in the adjustment of a UM claim versus a bodily injury liability claim?

A.   The only difference is just, like, the coverage.  UM is for first-party coverage, and BI is for third-party coverage.  And it depends on who is responsible for the accident, if we pay out.

Q.   So UM, in this case, pays the legal liability of the underinsured or uninsured motorist at fault for the crash, right?

A.   Yes.

Q.   So in this case, early on, it had been established that Mr. Wilkins was in no way at fault, and 100 percent of the fault was to blame on the other vehicle that ran a stop sign, the so-called tortfeasor, right?

A.   Yes.

Q.   And that means, when Progressive is evaluating the claim as you were trained, under such facts you're just looking at what's the probable jury verdict value of the injuries caused to my insured here, Mr. Wilkins, fair?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Can you repeat your question?

BY MR. GUNN:

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025                    Page 85

Q.   Once that determination of 100 percent liability, meaning the other guy is at fault 100 percent to blame, ran a stop sign, no issue about who to blame for this crash, your attention then shifts to, well, how badly hurt is my customer, right?

A.   Yes.

Q.   And you want to evaluate that wholistically. Let's look at the whole picture of legal liability, not just what I know today, but what likely is going to be incurred in the future.  Do we agree with that?

MR. ANGLEY:  Form.

THE WITNESS:  No.

BY MR. GUNN:

Q.   Okay.  So let me ask you this" Did Progressive have a policy in the Claims department where if it didn't know the full measure of how bad hurt Mr. Wilkins was, but he knew he got hurt, he knew he had some out-of-pocket money he was due after a set-off, that Progressive would send him a part payment check under UM?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Can you repeat your question?

BY MR. GUNN:

Q.   Let me withdraw, and I -- I'll ask this one: You had worked auto liability PD before, Property

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025                      Page 86

Damage, right?

A.   Yes.

Q.   Had you adjusted collision, meaning a first-party coverage at Progressive, where you covered the car, and that car got damaged so you needed to pay to have it fixed?  Did you handle those kind of claims?

A.   Yes.

Q.   Were there times when the auto body shop would submit an estimate, and the customer would say, here's my estimate, and you'd write a check to cover the scope of those repairs?

A.   Yes.

Q.   And were there times when the body shop would open up the car and go -- or the truck, or whatever it was and say, hey, now that I've got this opened up I find some more problems, some more repairs necessary. You reinspect it, and then you write a supplemental estimate, a supplemental check goes out, right?

MR. ANGLEY:  Form.

THE WITNESS:  Yes.

BY MR. GUNN:

Q.   And collision is a first-party coverage, right?

A.   Yes.

Q.   UM is a first-party coverage, right?

 MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

A.   Yes.

Q.   And sometimes you know you owe some money in a first-party covered case, but you don't know just how much more you might, if any, owe, agree?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Can you repeat?

BY MR. GUNN:

Q.   Sure.  You know, in a first-party case, I know I've got some damage here.  Could be more, so I'm just going to pay for what I already know and open the claim up, if there's more, right?

MR. ANGLEY:  Form.

THE WITNESS:  It depends.  So it's not a, like, yes or no.  Because you don't always owe for first-party coverage.  They -- there's different scenarios.

BY MR. GUNN:

Q.   Sure.  It might be that the body shop's repair gets done on the first scope, don't need a supplemental. Well, you nailed it all in the right -- the first estimate.  I don't need to submit for a supplemental. Or there are times when the damage is worse than what the shop first saw and you have to write a supplemental estimate, agreed?

MR. ANGLEY:  Object to the form.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025                    Page 88

THE WITNESS:  Yes, sometimes.  But also they don't even have to go through their own coverage.  They could go through tort.  So it -- again, it just depends.

BY MR. GUNN:

Q.    But not under the collision coverage.  Under the collision coverage, if that's what you're adjusting at Progressive, you write the first check.  And if there's more damage you say, give me a call, I'll send somebody back out to look at the vehicle, and we'll see if we can agree on a supplemental estimate.  That's how you were trained at Progressive when collision was at play of first-party coverage, true?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Yes, if the insured wanted to go through their own policy for -- to repair their vehicles.

BY MR. GUNN:

Q.    Or there's no accident at all, you're just covering it because of the flood, right?  There's no tortfeasor, there's no third-party claim, there's no liability claim against somebody else.  It's just, hey, my car got flooded.  That happens in Florida.  That probably happened on your watch, didn't it?

MR. ANGLEY:  Object to the form.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025                 Page 89

THE WITNESS:  No.  I didn't handle -- that -- that would be like a CAT claim.  I don't handle those, or I never handled those.

BY MR. GUNN:

Q.   All right.  Well, I don't want to get too far down this trail with you, ma'am.  Did Progressive's UM coverage in the policy, as you were trained, require the claimant to provide Progressive with a release as a condition to any claim payment Progressive made?

Any policy language, anything you can show the jury that these are the words in our policy I was trained mean, if you want me to pay UM, you have to sign a release?

MR. ANGLEY:  Form.

THE WITNESS:  Can you rephrase the question?

BY MR. GUNN:

Q.   Is there any language in the UM coverage part of a Progressive auto liability policy you were trained means you got to get a release from the claimant or we don't make a UM benefit claim payment?  Any language?

MR. ANGLEY:  Form.

THE WITNESS:  I'm not sure how to answer that question.

BY MR. GUNN:

Q.   Is that your answer, ma'am?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025    Page 90

A.   Yes.

Q.   All right.  The truth of the matter is you can't, sitting here today, point to one word in a Progressive policy that says, our obligation to pay uninsured motorist coverage benefits is conditional upon you giving us a full and final release to resolve the UM claim, agreed?

MR. ANGLEY:  Object to the form of the question.

THE WITNESS:  No, I don't agree.

BY MR. GUNN:

Q.   Why don't you agree?

A.   Because I don't know what you're asking.

Q.   Fair enough.  Let me --

MR. ANGLEY:  Ms. Crawford --

BY MR. GUNN:

Q.   Do you know what a release is?

MR. ANGLEY:  -- if you don't understand the question being asked, just make sure to let Mr. Gunn know so he can try to rework it for you.  Because there may be a disconnect that you're giving a no-answer and he's thinking you're understanding, but you're not really understanding what he's asking.  Just it may help with this process.

BY MR. GUNN:

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

Q.   Yeah.  I -- because Mr. Angley started this deposition I didn't give my usual speech, okay?  So I'm going to interject it now so that there's no further -- you know, at least we'll try to avoid it.  Number one, listen carefully.  Number two, pause before you answer.  You can think about it, somebody else can interpose an objection.  Number three, don't guess or speculate.  Number four, Mr. Angley just said it, if you don't understand one of our questions, you got to tell us.  Because you start giving answers, we're going to think you understood the question well enough to give us a truthful answer, all right?

And again, this should be a comfortable process.  If ever you need a break, you tell us, I need a break.  We've been going at this now a couple of hours.  Been almost an hour since our last break.  I'm happy to take a break now or at any point you, or frankly any of the other attendees say, hey, I could use a pause.  Do you understand each and every one of these things I just said?

A.   Yes.

Q.   Never tell me anything Mr. Angley or other lawyers working on the file have told you. Progressive's lawyers can communicate with you in what's called privilege.  I'm never intending to invade that privilege

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025    Page 92

by any question I might ask of you.  If you think we're getting into things you talked about with the company's lawyers, you tell me there's a problem. I'll let you ask David, and you can come back and either answer it, or he can say, hey, listen, she's going to have to disclose privilege.  Do you understand how the privilege process works now?

A.    Yes.

Q.    All right.  Do you know what a release is?

A.    Yes.

Q.    Do you know that full and final settlement means the end of the claim?

A.    Yes.

Q.    Can you identify, as you sit here today, anything in Progressive's UM policy that conditions the company's duty to pay upon a UM claimant, giving the company a release?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Can we take a pause?

BY MR. GUNN:

Q.    I'd rather not do it in the middle of a question.  Please answer that question, and we'll take a break.

MR. ANGLEY:  And Ms. Crawford, are you understanding what he's asking?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

THE WITNESS:  No.

BY MR. GUNN:

Q.   I'll finish this one quick line of questioning, and we'll take our break, okay?  Do you know that the Progressive Insurance policy is a written contract?

A.   Yes.

Q.   Do you understand it has terms and conditions to coverage?

A.   Yes.

Q.   Were you trained on the coverage parts you would adjust?

A.   Yes.

Q.   Did Progressive, in training, identify any language with the policy to you that conditioned UM payment upon a claimant's giving the company a release of claims?

MR. ANGLEY:  Form.

THE WITNESS:  Can I take a break, please?

MR. GUNN:  Please ask your witness to respond to the open question, and then, you know, when we finish this topic, we'll take the break.

MR. ANGLEY:  Ms. Crawford, you have to --
before we can take a break, there's a pending question you need to address.  But you can also, to

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

the extent you don't recall or don't know, those

are --

MR. GUNN:  Let's not coach her up on what her

answers could be, David, please.

MR. ANGLEY:  I'm not coaching.  She's just

confused by your question you've asked --

MR. GUNN:  Well, you say that.

THE WITNESS:  I don't --

MR. GUNN:  I can't imagine she is.  Please

don't intervene and talk like -- and give speaking

instruction.

MR. ANGLEY:  Ms. Crawford, you can answer the

question, and then we can take a break.

THE WITNESS:  I don't recall.

MR. GUNN:  Thank you.  All right.  We're on

break

MR. ANGLEY:  Back in ten?

THE VIDEOGRAPHER:  All right.  Let me go us off

record.  Current time is 12:08 p.m.  We're off

record.

(A recess was taken.)

THE VIDEOGRAPHER:  We are back on the record

for the deposition of Camille Crawford being

conducted by video conference.  Today is May 28,

2025.  Current time is 12:19 p.m.  You may proceed.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    **www.MILESTONEREPORTING.com**    **Toll Free 855-MYDEPOS**

BY MR. GUNN:

Q.   All right, Ms. Crawford.  We were talking about whether a release was a condition of the UM claim payment, as you understood it.  So I'm leaving that now, and we're going to go to your $8,200 offer.  Remember that testimony?

A.   Yes.

Q.   Okay.  What did you understand would happen if the claimants accepted here -- Mr. Wilkins, through his lawyer accepted your $8,200 offer to fully and finally resolve the claim?

A.   I understood that we would've settled the claim, if the offer was accepted.

Q.   All right.  You would've issued or requested issuance of an $8,200 check.  You would've mailed the check and the Progressive UM release over to Mr. Sartes with a request that the claimant sign and return the release as a condition to payment, right?

MR. ANGLEY:  Form.

THE WITNESS:  Yes.  Oh, sorry.

BY MR. GUNN:

Q.   And the answer was yes to that, right?

A.   Yes.

Q.   All right.  And if that happened, the release would've protected Progressive from any further claim to



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

UM benefits, correct?

MR. ANGLEY:  Form.

THE WITNESS:  If he signed the release, yes.

BY MR. GUNN:

Q.  Okay.  Now, did you give any consideration to issuing a partial payment of UM benefits without a condition of full release?

A.  Can you rephrase your question?

Q.  Did you give any consideration to issuing a partial payment of UM benefits without a condition of release?

A.  No.

Q.  Were you ever trained by Progressive that, that would be an option to do so?

A.  Don't recall.

Q.  When you were trained to come in and start doing injury claims, did you go over the UM coverage with somebody at Progressive training you on how it works?

A.  Yes.

Q.  Do you understand that the UM policy has conditions to include, upon our request, you have to attend an examination under oath?

A.  Can you rephrase the question?

Q.  Is a condition to UM coverage that the

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025                    Page 97

claimant appear for an examination under oath upon the company's request?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Yes, we can request it.  But it's -- yeah, if that's what you're asking.

BY MR. GUNN:

Q.   I am asking that.  Can you request that, here Mr. Wilkins appear in front of a court reporter, take an oath, and answer questions about his UM claim?

A.   Yes, we can request that.

Q.   And if the UM claimant unreasonably refuses to appear for such an examination, does Progressive, as you know it, have the option to claim no coverage?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Can you repeat the question?

BY MR. GUNN:

Q.   Do you understand that if a UM claimant unreasonably refuses to appear for an examination under oath, Progressive has the option to seek to avoid coverage?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Yes.

BY MR. GUNN:

Q.   Do you understand that the policy terms include the right of Progressive to make a reasonable

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025

request as to time, place, and manner for a physician examination of a UM claimant?

MR. ANGLEY:  Form.

THE WITNESS:  I don't recall.

BY MR. GUNN:

Q.   Did you in your bulk review notice that the claimant had not returned a signed medical authorization?

A.   Don't recall.

Q.   Did you ever ask Mr. Sartes to provide a signed medical authorization for release of medical records?

A.   No.

Q.   Do you understand the difference between reactive claim adjustment and proactive claim adjustment process?

MR. ANGLEY:  Form.

THE WITNESS:  Yes.

BY MR. GUNN:

Q.   What is the difference, as you understand it?

A.   Proactive is proactively seeking records to resolve the claim.  Reactive is awaiting for the records to basically, like, be received to process the claim.

Q.   Did Progressive train you that when handling UM claims you should attempt to be proactive in your

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025

adjustment of the UM benefit as may be due?

A.  Yes.

Q.  In this case, did you seek to contact any medical provider to obtain any information to assist you in your evaluation of the UM benefit?

A.  No.

Q.  Did Progressive train you that one thing you could do to obtain facts that may assist you in understanding a UM claim is to write a medical provider and ask the provider questions about their care?

MR. ANGLEY:  Form.

THE WITNESS:  Don't recall.

BY MR. GUNN:

Q.  You had access on your screen to both your adjustment notes, as well as those of others to include the PIP adjuster, right?

A.  Yes.

Q.  And you saw that the Trinity, for example, medical care that you reviewed the records of had submitted to personal injury protection for reimbursement, right?

A.  Yes.

Q.  Now, if I'm a medical provider, you as an adjuster would expect that I'm only going to submit to personally injury protection payment those medical bills

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

reasonably and necessarily incurred by the patient as a result of this automobile crash, right?

MR. ANGLEY:  Object to the form.

THE WITNESS:  No.

BY MR. GUNN:

Q.   Sorry?

A.   No.

Q.   You wouldn't expect that's what the provider is doing when they send their bills in for PIP reimbursement, is that your testimony?

A.   Maybe I misunderstood your question.  May you ask it again?

Q.   I can.  What does PIP cover?

A.   PIP covers your bills for if you are injured in an accident.

Q.   So if there's a covered accident, like the one we're talking about, and your provider submits bills to be paid under your PIP, do we agree the provider is representing to Progressive the care I'm rendering was reasonable, necessary, and related to the crash for which PIP is providing coverage; do we agree?

MR. ANGLEY:  Object to the form.

THE WITNESS:  No, not always.

BY MR. GUNN:

Q.   You don't agree that's the representation a

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

provider is making to Progressive when it asks for PIP payment?

MR. ANGLEY:  Form.  Asked and answered.

THE WITNESS:  No.

BY MR. GUNN:

Q.   Can you explain why not?

A.   Because some -- it -- every claim is different. So sometimes it's not even related to the accident or the bills aren't reasonable.  Like, they can -- providers can bill whatever they want.  So that's what I mean by when I say no.

Q.   Okay.  And I understand your distinction.  The provider, if it submits knowingly false, unrelated, or inflated bills, is committing insurance fraud, right?

MR. ANGLEY:  Object to the form.

THE WITNESS:  I don't know how to answer that.

BY MR. GUNN:

Q.   Well, you know providing false information to an insurance company is a third-degree felony, right?

A.   Not sure.  But what I meant by that was, like, different providers can bill for different -- like, differently.  So one provider for an MRI can bill -- or even for, like -- like, conservative care, any type of, like, conservative treatment, they can bill $10,000. And then the next provider can bill, for the same type of

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025    Page 102

treatment, 5,000.  So when you asked that question, that's why I'm saying no.

Q.  Right.  So I -- and I understand that Progressive, in fact, did in this claim, can dispute whether what the provider is representing to be a reasonable amount for a service is, indeed, reasonable, correct?

A.  Can you repeat your question?

Q.  Okay.  Just because a doctor says it's $1,000 to do an MRI doesn't mean Progressive says, yeah, that's good, it's reasonable, we'll pay it, right?

A.  Correct.

Q.  But the provider can't knowingly say, I am providing a bunch of care that has nothing to do with the auto crash, but hey, here's some PIP coverage.  I'm going to go ahead and bill to the PIP without committing fraud.  Do you understand that?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Yes.

BY MR. GUNN:

Q.  You sure?  You looked up to the sky and you kind of hesitated.  So I'm -- I don't -- this isn't about trying to get you to say something you don't know to be the truth, okay?  It -- let me ask it this way. It's fraud on Progressive as an insurance company if a



MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

doctor knowingly submits false bills for reimbursement, agree?

A. Yes.

Q. All right. Now, from what I saw in your testimony, all this care and treatment at Trinity and starting back shortly after the accident with some chiropractic treatment, all of that was being submitted by the providers as reasonable, and necessary, and related to the crash at issue subject to, of course, Progressive saying, no, we disagree. Is that a fair characterization of what you saw in the file?

A. Yes.

Q. Okay. Now, when you were trying to evaluate this UM claim, were you trying to understand the nature and extent of the bodily injuries sustained by Mr. Wilkins in this crash?

A. Yes.

Q. And do you agree that, according to the medical records that were sent to you and were available to you, that Mr. Wilkins had multiple cervical herniations, meaning his neck had a bunch of intrusions, protrusions, herniations, whatever we want to call them, he -- his cord -- central cord was displaced, and he had radicular, meaning radiating pain down his arms? Do you agree with that?

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025                                Page 104

A.   Yes, I agree that he had multi-finding -- level findings in his cervical spine.

Q.   Okay.  And you understood that when the -- and this is how it's been explained to me.  I don't know how you were trained, okay?  The cervical spine, like the rest of the spine, it has some hard bone, and it has some soft discs in it, right?

A.   Yes.

Q.   One is a vertebral body, the bone.  And then the other, the disc, is kind of like the shock absorber that lets those bones move around without grinding on one another.  Is that how you were trained at Progressive?

MR. ANGLEY:  Form.

THE WITNESS:  Yes.

BY MR. GUNN:

Q.   And if some people call it like a jelly-filled donut, did Progressive use that example during your training?

A.   I don't recall.

Q.   Did Progressive train you that a disc in the spine, including a cervical disc, has a hard fibrous shell and then it has a more gelatinous material inside that hard shell?

MR. ANGLEY:  Form.



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

THE WITNESS:  I don't recall.

BY MR. GUNN:

Q.  Did Progressive train you that sometimes, due to trauma, that fibrous shell can be broken up, disrupted, can cause herniation, meaning the soft gelatinous shock absorbing material starts to get outside the hard shell?

MR. ANGLEY:  Form.

THE WITNESS:  I don't recall.

BY MR. GUNN:

Q.  Did Progressive train you that if that disruption of the normal disc structure occurs, that it's not going to get just reabsorbed, and those changes of herniation, more likely than not, are a permanent change to the normal anatomy of someone's spine?

MR. ANGLEY:  Object to the form.

THE WITNESS:  I don't recall.

BY MR. GUNN:

Q.  Did Progressive train you that when these genotonous [sic] materials get out and start touching on nerve roots and actually start putting pressure on the central cord that, that can cause a patient to have radiating pain down their arms?

MR. ANGLEY:  Object to the form.

THE WITNESS:  I don't recall.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025                          Page 106

BY MR. GUNN:

Q.   Did Progressive train you that when a nerve root is impinged, when there's pressure put on a nerve root, that the nerve sends signals to whatever nerve root function, that is arms, could be anything that -- the nurse going out to, and it can cause pain and numbness?

MR. ANGLEY:  Form.

THE WITNESS:  I don't recall.

BY MR. GUNN:

Q.   Did Progressive train you that when a disc protrudes into the central cord that that can cause significant pain and discomfort and even loss of bodily function in a human being with that cord compression?

A.   I don't recall.

MR. ANGLEY:  Form objection to last question.

BY MR. GUNN:

Q.   Did Progressive train you that the purpose of trying conservative, as opposed to surgery first, in the form of epidural steroid injection is to reduce the inflammation to the soft tissue surrounding a herniated or protruding disc, so as to see if that provides relief to the patient of their pain or numbness?

MR. ANGLEY:  Form.  Objection.

THE WITNESS:  Yes.



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025                                    Page 107

BY MR. GUNN:

Q.   And did Mr. Wilkins demonstrate temporary relief to his ESI?

A.   I don't recall.

Q.   If the records reflect that he had a positive response to the ESI, it would help corroborate, it would help demonstrate a relationship between these changes in his cervical spine after this car crash and his complaints of radiating pain and numbness, agreed?

MR. ANGLEY:  Object to the form of the question.

THE WITNESS:  Yes.  If he -- if he had said that it got -- gotten better, then yes.

BY MR. GUNN:

Q.   And do you know whether medicine looks for that kind of response as part of the process toward whether the candidacy for surgery makes sense?  We don't want to go in there and try to fix something that isn't causing the problem.  That's why conservative therapy with ESI is first done by most surgeons.  Did Progressive train you that?

MR. ANGLEY:  Form.

THE WITNESS:  Can you repeat the question?

BY MR. GUNN:

Q.   Did Progressive train you that oftentimes

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025    Page 108

either neurosurgeons or orthopedic surgeons want to go through a course of ESI therapies before they do surgery to be sure that if they do go in and do surgery, it's more likely to fix the problem?  Did you get that training at Progressive?

MR. ANGLEY:  Form objection.

THE WITNESS:  I don't know how to answer that.

BY MR. GUNN:

Q.  Well, it -- it's -- did Progressive train you that that's how medicine typically works in the treatment of discs?

MR. ANGLEY:  Form objection.

THE WITNESS:  I've been trained to review, like, they go through conservative care.  Can you all still hear me?

BY MR. GUNN:

Q.  Yes.

A.  Okay.  Because I got a message that says, "Zoom quit unexpectedly."  So that's why I asked that. I don't know what that was about.  Progressive has trained that the process is usually people go through conservative care and then increase to a more invasive treatment.  If that's your question.

Q.  Yes, ma'am, it is.  So the mere fact that there was no current surgery scheduled in Mr. Wilkins

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380885 Crawford Camille 03-28-2025    Page 109

while he's undergoing ESI could not be viewed by you reasonably to mean he's not going to end up needing surgery, agreed?

MR. ANGLEY:  Form.

THE WITNESS:  Can you rephrase your question?

BY MR. GUNN:

Q.   The mere fact that he's going through conservative treatment does not preclude the fact that he will later be a surgical candidate, agreed?

MR. ANGLEY:  Form.

THE WITNESS:  No.

BY MR. GUNN:

Q.   Okay.  And then what's a radio frequency ablation?  Tell me that procedure.  What's done to a patient?

MR. ANGLEY:  Form.

THE WITNESS:  Like, the procedure, what they do?

BY MR. GUNN:

Q.   Yes, ma'am.

A.   And it's a more invasive treatment.  They -- I don't know the specifics of it, like -- or I don't know how to, like, explain the specifics of it --

Q.   Do your best.

A.   -- without, like, looking it up.  I don't want

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025    Page 110

to be wrong.

Q.   I understand.  So did you look it up when you were evaluating the radio frequency ablation issue as to Mr. Wilkins?

A.   I did.  I would familiarize myself with the type of treatment it is, so yes.

Q.   Okay.  And did you make any note of that effort to look up what a RFA involves?

A.   No, because that's just for my own knowledge.

Q.   Do you recall whether you got specific training by Progressive about the RFA process?

A.   Yes, I did.

Q.   I think you used the term, it is minimally invasive, right?

MR. ANGLEY:  Form.

THE WITNESS:  Are you asking me if it's -- a RFA is minimally invasive?

BY MR. GUNN:

Q.   Is RFA something that involves putting something into a human being?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Something like what?  Like, what are you referring to?

BY MR. GUNN:

Q.   Well, obviously epidural steroid injection by

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025    Page 111

its term is a fairly sizable needle goes in toward the area that the physician wants to reduce the inflammation at, fair?

A.   Yes.

Q.   In fact, your own notes reflect that the physician was using fluoroscopy, right?

A.   I don't recall.  I would have to look in my note.

Q.   What's fluoroscopy?

A.   What is fluoroscopy?  Off the top of my head, I don't know.

Q.   Okay.  Do you understand that radio frequency ablation uses radio waves to create a current that heats a small area of nerve tissue?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Yes.

BY MR. GUNN:

Q.   So if your research revealed that RFA meant that a physician would go in there and use heat to destroy a nerve, you would have considered that as you formed your opinions about the fair value to pay Mr. Wilkins on his UM benefit, right?

A.   Yes.

Q.   And you realize this man had been fairly continuously treating prior to your coming on the claim,

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

right?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Yes.  I'm aware that he was treating prior to the claim being assigned to me.

BY MR. GUNN:

Q.  And he was actively treating during your watch, wasn't he?

A.  Yes.  He received some treatment during the time that I had the claim.

Q.  And you told Mr. Angley, despite those facts, "I included no future medical in my evaluation of the fair value of the claim."  Did I recall that correctly?

A.  Yes.

Q.  All right.  Did you consult with any medical resources available to you at Progressive with regard to the injuries described by Trinity and other medical records?

A.  Can you rephrase your question?

Q.  Does Progressive have medical resources available to you, other than Googling on a computer?

A.  To learn about injury claims?  Yes.

Q.  Okay.  Describe what those were when you were handling Mr. Wilkins UM claim?

MR. ANGLEY:  Object to the form.

THE WITNESS:  It's different -- it's different

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

things.  We have definitions about, like different injuries and treatment people can receive for those, so stuff like that.

BY MR. GUNN:

Q.  Okay.  And is that on a computer basis?

A.  I don't recall.

Q.  Is it unique to Progressive?  Sometimes that's called proprietary information.

A.  I don't recall.

Q.  So if you wanted to have a medical expert review medical records, could you send them out and have that done?

A.  No, that's not what I did -- and at my level of adjuster.

Q.  Who would make that decision for Mr. Wilkins' claim, that I would like to get better medical understanding of his injury.  So let's use a physician, or nurse, or somebody to review?

A.  To hire a medical doctor to review the records? Is that what you're asking?

Q.  No, I -- I'm not necessarily.  So Ms. Crawford, tell me each and every avenue you knew of at Progressive where you as the line, the frontline adjuster, whatever your title, to get more medical information, if you wanted it regarding a given injury

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

claimant?

MR. ANGLEY:  Form.

THE WITNESS:  Well, if I needed more additional information to understand the records or make sure that I'm doing my -- reviewing it correctly, I would just refer to my leader.

BY MR. GUNN:

Q.   All right.  Did you -- if you referred to your leader and thought you needed to get better medical understanding, it would be notated in your notes, right?

A.   I would be if I reviewed it with the leader.

Q.   Thank you.  Is a herniated disc caused by a car crash that results in radicular complaints, to your understanding, an injury that meets the tort threshold?

MR. ANGLEY:  Form.

THE WITNESS:  It depends on if we're able to determine it was caused by the car -- the car accident.

BY MR. GUNN:

Q.   Okay.  And if you listen to my question, I included causation.  Is a herniated disc that causes symptoms, such as radicular complaints, where that is caused by the subject car crash, a permanent injury to a reasonable degree of medical probability, if you ask a doctor for that opinion?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025    Page 115

MR. ANGLEY:  Object to the form.

THE WITNESS:  I still don't understand your question.

BY MR. GUNN:

Q.   All right.  You were asked several questions about, you know, whether the medical records demonstrated whether Mr. Wilkins met what you, I think, defined as the tort threshold for non-economic loss, right?  Are we on the same page now, Ms. Crawford?

A.   Yes.

Q.   Whether someone meets that threshold can include a significant bodily injury that is permanent, right?

MR. ANGLEY:  Form.

BY MR. GUNN:

Q.   Okay.  Is a herniated disc, protruding on the central cord, that is caused by a car crash, in your experience and based on your training, likely to be viewed as a permanent injury to a reasonable degree of medical probability, if a physician is asked?

MR. ANGLEY:  Form.

THE WITNESS:  It's possible, yes.

BY MR. GUNN:

Q.   Do you -- as you sit here today, is it fair to say that the medical records that you looked at back

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025                                                Page 116

then, as showed you by Mr. Angley, were silent about whether any injury Mr. Wilkins sustained in the car crash was or was not a permanent injury to a reasonable degree of medical probability?

MR. ANGLEY: Form.

THE WITNESS: To me, as I sit here today, with my knowledge today, did the records reflect a permanent injury? Is that what you're asking?

BY MR. GUNN:

Q. What I'm asking you is: Is it fair to say that all the medical records you looked at back in 2019 and 2020 are silent? They don't say one way or the other whether the treating doctors hold the opinion that Mr. Wilkins sustained a permanent injury in the car crash at issue? Do you agree with me?

MR. ANGLEY: Form.

THE WITNESS: I agree that they don't say that the claimant experienced a permanent injury.

BY MR. GUNN:

Q. Okay. I understand. Are you supposed to look at the records objectively?

A. Yes.

Q. Are you supposed to look for ways not to pay Mr. Wilkins UM benefits?

MR. ANGLEY: Form.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025                                    Page 117

THE WITNESS:  No.

BY MR. GUNN:

Q.   You're supposed to look for ways to justify the benefit due to Mr. Wilkins as part of your prompt, fair claim adjustment, right?

A.   Yes.

Q.   So you shouldn't read medical records to always be the absence of evidence.  You should be reading medical records and say they don't tell me one way or the other; is that fair?

A.   No.

MR. ANGLEY:  Object to form.

BY MR. GUNN:

Q.   All right.  But did you ever think to pick up the phone and ask one of these doctors, hey, I see you've got a bunch of herniated discs.  You're providing these ESIs.  You're talking about ablating, burning a nerve.  Do you think Mr. Wilkins, my insured, sustained a permanent injury in this car crash?  Did that cross your mind, Ms. Crawford?

MR. ANGLEY:  Form.

THE WITNESS:  No, because I had -- was provided with the records, and they didn't say it inside of those records.

BY MR. GUNN:

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025    Page 118

Q.   But you needed the answer, didn't you, to fully and fairly evaluate the claim and determine whether a jury verdict was likely to include pain and suffering? You needed the answer of, are the treating doctor saying he meets the tort threshold?  Those are facts reasonably necessary for your adjustment to loss is what I heard you say, right?

MR. ANGLEY:  Object to form.  Object to the form.

THE WITNESS:  (Audio cuts out.)

BY MR. GUNN:

Q.   Hello?  I -- you've got your hand up.  I can't hear you, ma'am.

A.   I said, no.

Q.   You don't need to know that or you didn't think to call them and ask?

A.   I didn't think it was -- I didn't think it was necessary considering I received the records and they did not advise that inside the records after they reviewed your -- the client -- or the claimant.

Q.   And as I understand it, you don't feel you could use your reason to claim judgment and know that multiple disc herniations undergoing this kind of treatment after a car crash are probably going to meet the tort threshold?  Is that your testimony?

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025    Page 119

MR. ANGLEY:  Object to the form.

THE WITNESS:  No.

BY MR. GUNN:

Q.  Do you, as a licensed adjuster, trained by Progressive, have the understanding in late 2019, early 2020, that if a person sustains herniations in a car crash that result in radicular complaints, likely that's a permanent injury?

MR. ANGLEY:  Form.

THE WITNESS:  No.

BY MR. GUNN:

Q.  Okay.  How much -- let's -- I want to take you down -- what's your methodology -- if you had decided to evaluate Mr. Wilkins' general damages, what was the methodology that Progressive trained you to use in late 2019, early 2020?

A.  Review the facts of the claim and make a determination for your evaluation that way.

Q.  Okay.  And how -- what guide, if anything, was supposed to be used by you in determining what a jury would likely award for past and future pain and suffering, mental anguish, anxiety, inconvenience, loss of enjoyment of life?  What tool were you supposed to use to come up with a fair number?

MR. ANGLEY:  Form.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025    Page 120

THE WITNESS:  In order for our numbers to be fair, we don't have a tool because, again, every claim is evaluated based on its facts.

BY MR. GUNN:

Q.   Okay.  Well, what does a jury range include for these facts, if a jury decides the non-economic, the general damages?

A.   Can you repeat your question, please?

Q.   What was your understanding back the time of this claim as to what a reasonable jury range of value was going to be?  If this case, the legal liability of the 100 percent at-fault tort fees was determined by the finder of fact judge or jury, what was the amount of money in your mind that would be reasonably predictable as using reason to claim judgment to result from those issues being tried to a jury on the facts, as you knew them?

MR. ANGLEY:  Object to the form.

THE WITNESS:  I'm not sure.

BY MR. GUNN:

Q.   Do you know what the verdict was in this case?

A.   No, because I was off the claim after.

Q.   Okay.  And in your mind, if a doctor had said that hey, this is a man with a permanent injury, can we agree that the reasonably predicted legal liability of

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

the at-fault driver who caused this T-bone collision clearly exceeded the UM benefit, even after set-offs for PIP and bodily injury?  Will you agree with that?

MR. ANGLEY:  Object to the form.

THE WITNESS:  No, it would depend on what the injury was, but I -- I don't still know.

BY MR. GUNN:

Q.  What was Mr. Wilkins' life expectancy?

A.  I don't recall.

Q.  Do you use life expectancy at all when determining general damages, as you were trained by Progressive?

A.  Sometimes.

Q.  How do you use them when you sometimes do?

MR. ANGLEY:  Form.

THE WITNESS:  Usually just looking at the age of the claimant or just their medical history to determine, you know, how much longer they have, their life expectancy.

BY MR. GUNN:

Q.  But how does that factor into how much money you think a claim is worth?

MR. ANGLEY:  Object to the form.

THE WITNESS:  I consider it because I consider what type of claim that it is.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

BY MR. GUNN:

Q.   But how does that impact, ma'am, how much money the claim is worth?

MR. ANGLEY:  Object to the form.

THE WITNESS:  There is no certain dollar amount, but I may -- may put more value on the claim due to that fact.

BY MR. GUNN:

Q.   And why might you put more value on the claim due to that fact?

A.   It just depends on the facts of the claim.

Q.   Because the reality is that by the time you were on this claim, the gross bills were over $30,000 for medical care and treatment submitted by providers as related to the crash, right?

MR. ANGLEY:  Form.

BY MR. GUNN:

Q.   Gross bills, over 30, right?

A.   That sounds about right.

Q.   And this claim involved a loss that was at that point less than six months old, right?

A.   I don't recall.

Q.   Well, it's a July accident.  You're getting these bills that reflect treatment up and through January, February, about six months, sound right?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025    Page 123

A.  Yes.

Q.  Okay.  And this man's going to live with these conditions of herniations and ongoing care and treatment at least somewhere into the future, right?

MR. ANGLEY:  Form.

BY MR. GUNN:

Q.  Can't stop treating, wasn't at MMI, right?

A.  I don't recall if he was at MMI.

Q.  Your predecessor -- well, you -- let me withdraw that.  You stopped on claim when he was still considering things like an RFA procedure, right?  That was -- and he was following up in one month as the last treatment note you had, right?

A.  Last treatment note is that, yeah, he was following up in one month.  But in that it didn't -- like, he wasn't -- that wasn't, like, for the RFA.

Q.  All right.  The records will say what the records say, ma'am, but --

A.  Okay.

Q.  -- the $1,000 that had been offered to Mr. Wilkins before you came on claim, right?

A.  Yes.

Q.  And that $1,000 was, again, in full and final settlement of the claim, right?

MR. ANGLEY:  Form.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    www.**MILESTONEREPORTING**.com    Toll Free **855-MYDEPOS**

380885 Crawford Camille 05-28-2025    Page 124

THE WITNESS:  I don't recall if that's the response that that adjuster sent out.

BY MR. GUNN:

Q.  Well, did you send a $1,000 check to Mr. Wilkins because that had been offered without condition of release?

A.  No, I did not offer $1,000.

Q.  You didn't send $1,000 to Mr. Wilkins because you were going to leave the claim open, but let's at least get you a partial payment to -- I don't know, cover your PIP deductible, for example.  You didn't do that, did you?

MR. ANGLEY:  Form.

THE WITNESS:  No.

BY MR. GUNN:

Q.  And you weren't trained by Progressive that you should do that, were you?

MR. ANGLEY:  Object to the form.

THE WITNESS:  I don't recall.

BY MR. GUNN:

Q.  Well, certainly if Progressive trained you that we should send a UM benefit to cover a PIP deductible, you'd have done what Progressive trained you to do, right, ma'am?

MR. ANGLEY:  Object to the form.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025   Page 125

THE WITNESS:  I don't recall.

BY MR. GUNN:

Q.  All right.  And then the only offer you made before the case went into litigation was $8,200; is that right?

A.  Yes.  That appears correct based on the records that I reviewed today.

Q.  And the handling of the civil remedy notice, there were several people involved.  Did you ultimately need the approval of the senior management before you could issue a response to the CRN?

A.  Yes, I needed a manager's approval to respond to the CRN.

Q.  And did that manager express any concern, criticism, reservations about the fact that your offer to this UM claimant, a man in his 50s, involved in a significant T-bone collision with an airbag and spidered window, with multiple disc herniations seen on imaging, undergoing epidural steroid injections, ongoing care and treatment, consideration of ablating, killing a nerve with heat, being offered $8,200 to fully and finally resolve and close a $50,000 UM claim.  That manager had no concern, no reservation, no criticism, constructive or otherwise, of your claim handling.  Is that your testimony?

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380885 Crawford Camille 03-28-2025          Page 126

MR. ANGLEY:  Form objection.

THE WITNESS:  The manager did look at it and agreed that my value was in line, and the claim was still negotiable.

BY MR. GUNN:

Q.  When you were factoring all this in, how did the fact that this man already in a wheelchair, might be more severely affected by neck injury and radicular complaints to his upper extremities than people otherwise healthy?

A.  Can you rephrase your question?

Q.  How did the fact this man was previously paralyzed by spinal stroke, in a wheelchair, impact your evaluation of his UM benefit you should pay on behalf of Progressive, in the context of now he's got neck injury with radicular complaint, making his activities even more difficult?  How did that enter into your evaluation, if at all?

A.  A lot of value for the prior aggravation to the prior injury.

Q.  What about the new injury being more difficult for a man to adapt to because he's already in a wheelchair?  Did -- how, if at all, did you look at the whole human, the whole total circumstances of this claim, and consider the fact, I have a man who's already



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          Toll Free **855-MYDEPOS**

380885 Crawford Camille 05-28-2025    Page 127

in a wheelchair from prior events.  Now, he's in this car crash, and he's got all these neck complaints, and he's got radicular complaints, and his activities of daily living are now rendered even more difficult.  How did that enter, if at all, into your evaluation of fair claim payment due?

MR. ANGLEY:  Form.

THE WITNESS:  Considered his injuries and treatment, and put a value on it.

BY MR. GUNN:

Q.  Yes, you did do that.  I'm asking you what difference did it make in the context of this claimant's already in a wheelchair, if it made any difference at all to the evaluation you provided?

A.  I'm not sure how, like how to answer your question.  I really don't know what you're asking.

Q.  Where do you live now, ma'am?

A.  Orlando, Florida.

Q.  Okay.  Just for the -- how many miles is that from Tampa?

A.  I don't know off the top of my head.  I think it's like a two-hour drive, but I don't know, like, the mileage.

Q.  Fair enough.  Do you remember describing Mr. Wilkins as an eggshell plaintiff?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025    Page 128

A.   Yes.

Q.   What did you mean by that?

A.   I was taking into consideration that he was wheelchair-bound with a prior lumbar injury and prior lumbar surgery.

Q.   So I want to briefly go through -- I think this may be, Ms. Crawford, your initial evaluation of December 16, 2019, previously marked within Exhibit 1, beginning at Page 46.  Is this your first injury evaluation that was a detailed record?

A.   Yes.

Q.   Under Injuries, do you have any record -- whether within the medical records that were provided to you or else wise, do you have any record that Mr. Wilkins had previously been diagnosed to have these disc herniations that are under your -- I guess the best way to describe it is that long paragraph at the bottom of Page 46, right under Trinity Spine Center, 5X?

A.   Are you asking do I know if he had these injuries prior to the accident?

Q.   Yeah.  Did any information come to your attention that this man already had these cervical disc changes, specific to the herniations.  Obviously the degenerative disc disease in any human is long-standing, but I'm talking about these herniations that are



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        www.**MILESTONEREPORTING**.com        Toll Free **855-MYDEPOS**

described in the neck pain and left shoulder pain radiculopathy. Did you have any information that any of this was preexisting, other than the degenerative disc -- or some people call it arthritis?

A. I do not believe so, but I don't recall.

Q. It'd be pretty important when you're trying to determine the injuries caused by a crash to know if these are new complaints, right?

A. Yes.

Q. Okay. In your evaluation, did you just accept that these are new complaints?

A. No.

Q. Did -- was your answer no, I didn't accept these as new complaints.

A. Are you -- so I'm saying if -- if you're saying that I accept that these findings were new, I'm saying, no, I didn't -- I didn't know if they were new or not. I did not.

Q. What reasonable basis did you have, Ms. Crawford, for thinking these are not new complaints?

A. Oh, I did not know if they were new or not.

MR. ANGLEY: Object to the form.

BY MR. GUNN:

Q. And when evaluating the -- these injury findings of cervical herniation -- let me just read them

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025    Page 130

to the record, okay?  "Injuries.  Broad-based disc herniation at C2-3 with mild stenosis.  Broad-based disc herniation at C3-4 with mild stenosis, and mild bilateral neural foraminal stenosis, arterial cirrhosis at C4-5.  Broad-based disc herniation at C4-5 with central left lateral stenosis and severe left sided neural phenomenal stenosis and right sided neural for -- foraminal, sorry, stenosis, neck pain, left shoulder pain radiculopathy."

        Okay.  Those injury findings that are in your notes, did you consider all of those as causally related or significantly exacerbated, aggravated by the car crash?

        MR. ANGLEY:  Object to the form.

        THE WITNESS:  The were a lot of that is just from the diagnostic testing and/or complaints that were noted within the records.  And so that's what I was considering.

        BY MR. GUNN:

     Q.  Did you consider all of these injuries, as you put into your notes, to be causally related to the car crash?

        MR. ANGLEY:  Form.

        THE WITNESS:  What do you mean by that?

        BY MR. GUNN:

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025                    Page 131

Q.    Did the car crash caused the injuries --

      MR. ANGLEY:  Form.

         BY MR. GUNN:

Q.    -- that you put in your notes?  And I just read to you?

      MR. ANGLEY:  Object to the form.

      THE WITNESS:  At that time, I didn't know if they were caused by the accident or if they were prior to the accident.

         BY MR. GUNN:

Q.    Did you have any facts upon which to base a reasoned claim decision that these injuries in your notes were other than as caused or significantly contributed to by the car crash?

      MR. ANGLEY:  Form.

      THE WITNESS:  No.

         BY MR. GUNN:

Q.    So in order to accomplish a fair claim adjustment, do we agree all of these injuries should have been considered by you when determining the UM benefit due?

      MR. ANGLEY:  Object to the form.

      THE WITNESS:  Can you rephrase your question?

         BY MR. GUNN:

Q.    Okay.  You are a professional claim adjuster,

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

right?

A. Yes. I have my adjuster's license.

Q. You're subject to the adjuster code of ethics, right?

A. Yes. That would be correct.

Q. You have to handle claims only when competent to do so, right?

A. Correct.

Q. You have to approach claims with an objective open mind toward paying a benefit, right?

A. Yes.

Q. You're never to put Progressive's interest, such as trying to save money ahead of the interest of the claimant who's just wanting to be paid fairly what's due under the policy, agreed?

MR. ANGLEY: Object to the form.

THE WITNESS: Yes.

BY MR. GUNN:

Q. And when we look at what I've highlighted on the screen, because it's what I just read into the record. Do you agree that all of these injury complaints that you notated in your claim note should have been part of your claim adjustment consideration of how much of a UM benefit to pay Mr. Wilkins, agreed?

MR. ANGLEY: Form.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025                         Page 133

THE WITNESS:  I agree that I'll review the records and consider the injuries listed.

BY MR. GUNN:

Q.   Okay.  You did consider these injuries causally related to the car crash because you had no other facts that supported anything, other than these are new complaints per the provider records.  And these are the findings as read by radiologists, fair?

MR. ANGLEY:  Form.

THE WITNESS:  No.

BY MR. GUNN:

Q.   Sorry.

A.   No.

Q.   That's not fair?

A.   I don't agree with you.

Q.   What don't you agree with?

A.   With your statement.

Q.   What about it don't you agree with?

A.   There -- I don't know if these injuries were new or not.  The -- the claimant had prior, so they could have been from that or they could have not. That's what I'm saying, I do not agree with you saying that these were new injuries.

Q.   Did the medical records call these new complaints when he presented after the crash?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

MR. ANGLEY:  Form.

THE WITNESS:  Are you asking me, did the claimant say that these complaints were new?

BY MR. GUNN:

Q.  Did he tell his doctors, this is how I got hurt in the crash.  These are new.  Did you have a history of neck complaint, Mr. Wilkins?  No.  Was that in the medical records?

MR. ANGLEY:  Form.

THE WITNESS:  I don't recall.

BY MR. GUNN:

Q.  Don't recall.  Okay.  So let's assume that when you were back in '19 and '20, looking at the medical records, the records reflect no prior neck injury. These complaints of neck pain and left shoulder pain are new onset.  Are you telling me that if that's the records say that you should have, without equivocation, evaluated these injuries for purposes of determining a UM claim benefit due?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Can you answer your question again?

BY MR. GUNN:

Q.  No, ma'am.  I'll just withdraw it.

A.  Okay.  Thank you.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025    Page 135

Q.   Yes, ma'am.  Do you understand that in evaluating a claim, you not only evaluate the injuries that are unique to the car crash, but also any activation of underlying injury or disease that is occasioned by the crash?  Do you understand what that means?

A.   No.

Q.   I think it's pretty close to how a jury gets instructed.  That's why I'm using the that language. But do you understand my question?

A.   No.  Can you repeat it?

Q.   Yes, ma'am.  What does Florida law make someone legally liable for activation of an underlying disease or injury preexisting condition?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Florida law make someone that is responsible for the accident responsible for a preexisting injury.  Is that what you're asking?

BY MR. GUNN:

Q.   No, ma'am.

A.   Oh, okay.  I guess I still don't understand.

Q.   Ma'am, do you understand, based on your background, training, and experience at Progressive, that tort fees are as legally liable for aggravation of preexisting conditions?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025                                    Page 136

A.    Sure.

Q.    Do you understand that if an underlying condition is aggravated, and a jury cannot apportion that amount of injury caused by the accident from that amount that may have otherwise existed, that a jury is instructed to award damages for the entire condition?

MR. ANGLEY:  Object to the form.

THE WITNESS:  I'm not sure.

BY MR. GUNN:

Q.    So even if some of these findings on imaging are preexisting, but they're not causing Mr. Wilkins any problems, until the car crash, did you understand that that meant you had to consider the activation of any symptomatology any complaints that the accident brought about when you evaluated the UM benefit?

A.    Yes.  Like the aggravation.

Q.    So let me go through a little bit more.  You got all this, you know, received injections, you're talking about the epidural steroid injections here? That was yes.

A.    Yes.

Q.    All right.  And then what is -- and I'm not trying to quiz you.  What's this big, long word here, Dexamethasone, D-E-X-A-M-E-T-H-A-S-O-N-E.  What's that?

MR. ANGLEY:  Form.



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025    Page 137

THE WITNESS: Sure. It's the part of the injection. So I just -- it looks like because I was new I wrote the CPT code because I didn't know exactly what it meant. So just to make sure that I had everything in there, I would put it in the claim. So when my leader looked at it, they knew what was going on.

BY MR. GUNN:

Q. Perfectly acceptable. I understand. Sat joint cervical with image guidance, third and more levels. Are these all the CPT codes, again so you're sure to capture it?

A. Yes.

Q. Yes?

A. Yes.

Q. Okay. So, like, 64491 is the code that would be used typically for billing that procedure, sometimes referred to as a CPT code?

A. Yes. That appears what I was listing out, correct.

Q. Got it. Okay. And did you understand why image guidance was being used?

MR. ANGLEY: Form.

THE WITNESS: From my understanding, so they can know that they're putting in the correct level.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025    Page 138

BY MR. GUNN:

Q.   Okay.  Have you ever read the consent to an ESI?

A.   I don't recall.  I'm pretty sure I have, but I can't specify the time or when.

Q.   All right.  And you understood that Mr. Wilkins was willing to undergo these kinds of injections because the pain was sufficient enough, he'd take the risk of putting a needle near his spinal cord, right?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Yes.

BY MR. GUNN:

Q.   On Page 47 of Exhibit 1, I've highlighted the file intervention by your supervisor, I think subbing in Lexi Gorman.  And it talks about, in part, "CRN alleges that she" -- is this talking now about Lisa Wilkins?

A.   That's what it appears like it's talking about. Yes, Lisa.

Q.   Okay.  I just want to make sure that that is not talking about Mr. Wilkins, that part?

A.   No.

MR. ANGLEY:  Mr. Gunn --

BY MR. GUNN:

Q.   And if you look above -- if we look above, we see this is the one that relates to Mr. Wilkins?

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025                    Page 139

A.   Yes.

Q.   Okay.  And there's -- this is, again, a supervising agreeing with your evaluation as outlined. I think Mr. Angley talked about that with you, right?

A.   Yes.

MR. ANGLEY:  Mr. Gunn, are you doing -- at a good point for a break?

MR. GUNN:  Yeah, David, and I probably should not be so first-name informal, but why don't we go off record?

THE VIDEOGRAPHER:  All right.  Let me -- one --

MR. GUNN:  And then we can come back in a few. Off record, please.

THE VIDEOGRAPHER:  All right.  Current time is 1:18 p.m.  We are off record.

(A recess was taken.)

MR. GUNN:  We are back on the record for the deposition of Camille Crawford being conducted by video conference.  Today is May 28, 2025, and the current time is 1:27 p.m.  You may proceed.

MR. GUNN:  Thank you.

BY MR. GUNN:

Q.   Ms. Crawford.  I want to just get into one last area, and that -- that's your structure at Progressive. Is there any tracking that you're made

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025    Page 140

aware of the average paid claim with amount data at the company?

MR. ANGLEY:  Object to the form.

THE WITNESS:  (Audio cuts out) -- sure.

BY MR. GUNN:

Q.   Okay.  Do you -- has any supervisor ever, as part of your human resources reviews, ever talked with you about the average paid claim with amount on your files?

MR. ANGLEY:  Form.

THE WITNESS:  No.

BY MR. GUNN:

Q.   Okay.  Do you even know an average paid claim with amount is?

A.   Yes.  It sounded like -- like the average amount that is paid on claims.

Q.   And to your knowledge -- and I'm sorry, if this is redundant, but to your knowledge, is anybody tracking your claim payment history at Progressive?

MR. ANGLEY:  Form.

THE WITNESS:  Not sure.

BY MR. GUNN:

Q.   How do you understand your raises or bonuses are determined by Progressive?

MR. ANGLEY:  Form.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025                    Page 141

THE WITNESS:  It's determined based on my performance.

BY MR. GUNN:

Q.  And is your performance evaluated from the standpoint of what you pay on a claim or don't pay on a claim?

MR. ANGLEY:  Form.

BY MR. GUNN:

Q.  I'll withdraw.  That's a little bit ambiguous. So does the -- does Progressive ever disclose to you in your performance review how much you are or are not above or below the average adjuster payouts for claims?

A.  No.

MR. GUNN:  All right.  Thanks.  I appreciate your time.  And I'll let David ask whatever he thinks he needs to.  But I'm done asking questions, but again, with my thanks.

MR. ANGLEY:  Thank you, Attorney Gunn.

RECROSS-EXAMINATION

BY MR. ANGLEY:

Q.  Ms. Crawford, a few just follow-up questions. In your handling of Mr. Wilkins' UM claim, did you work in connection with your supervisors for related to the evaluations you performed?

A.  Yes.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025                    Page 142

Q.   And you discussed those evaluations with your supervisors?

A.   Yes.

Q.   And your supervisors reviewed those evaluations?

A.   Yes.

Q.   And they authorized the evaluation ranges you proposed based on your review of the information Progressive hat at the time?

A.   Yes.

Q.   Okay.  And that process was -- that's how the process works at Progressive.  You kind of work in a collaborative fashion with -- in connection with your supervisor?

A.   Yes.

Q.   Okay.  And the valuation ranges you -- that are documented in your claim notes that we looked at earlier, that was based on the information that Progressive had at the time?

A.   Yes.

Q.   And were your offers -- and the offers you extended were connected to that evaluation?

A.   Yes, that's correct.

Q.   And I'll show you just for what was previously marked as Exhibit 5.  And this was your December 17th --

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

oh, I'm sorry.  Took it off.  This was your December 17, 2019 letter where you offered $8,200, right?

A.   Yes.

Q.   And you were asked a number of questions about releases.  Was this offer of $8,200 conditioned on any specific form of release?

A.   No, it was just a offer submitted to engage in negotiations with the attorney.

Q.   And if the attorney here, Mr. Sartes, had agreed to resolve the case for a specific amount, and there was some type of discussion about releases, would you have worked with the attorney to come to an agreement as to the specific terms and language of any release?

MR. GUNN:  Form.

THE WITNESS:  Yes.

BY MR. ANGLEY:

Q.   Okay.  So here you weren't conditioning settlement on a specific form of release or terms of a release, correct?

A.   That is correct.

Q.   And Ms. Crawford, you're not a Progressive corporate representative, right?

MR. GUNN:  I'm sorry.  I missed that, David.  I'm sorry, what?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

MR. ANGLEY:  I asked if she -- well, I'll re-ask.

BY MR. ANGLEY:

Q.  Ms. Crawford, you're not here today, testifying as Progressive's corporate representative, correct?

MR. GUNN:  Form.

THE WITNESS:  No.  No, I'm not.

BY MR. ANGLEY:

Q.  Okay.  And in connection with your claim handling, when you first got the file on December 4, 2019, you called Mr. Wilkins' attorney's office, correct?

A.  Yes.

Q.  And based on the claim notes we've looked at, you made numerous calls to Mr. Wilkins' attorney's office, right?

A.  Yes.

Q.  And when you obtained additional information related to Mr. Wilkins' treatment, did you timely evaluate that information?

A.  Yes.

Q.  And did you follow up on the offers that you made based on your evaluation of Mr. Wilkins' claim?

A.  Yes.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q. Do you believe that you were proactive in your adjustment of Mr. Wilkins' claim?

MR. GUNN: Form.

THE WITNESS: Yes.

BY MR. ANGLEY:

Q. Okay. You were asked a number of questions about your claim note on December 16, 2019 and the diagnostic findings that you listed there. I'll show you that particular claim note. All right. Do you remember seeing this claim note and discussing it?

A. Yes.

Q. And this was based on the Trinity Spine Center records to your evaluation?

A. Yes.

Q. And during -- based on the record submitted, as it pertained to this particular evaluation, no medical doctor provided a permanency opinion for Mr. Wilkins, correct?

MR. GUNN: Form.

THE WITNESS: Yes, that's correct.

BY MR. ANGLEY:

Q. And this line here where you're discussing the diagnostic studies that I've highlighted, starting with disc herniation and ending with radiculopathy, if we look at the facts, which was marked as Exhibit 4, did

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

you copy and paste that section of your note directly from the December 2, 2019 date of service?

A.   Yes.  I summarized that right there.  That record.

Q.   In the actual record, did Dr. Saldeen state that these herniations were caused by the July 26, 2019 accident?

MR. GUNN:  Form.

THE WITNESS:  No, he did not.

BY MR. ANGLEY:

Q.   Okay.  Did you ever receive any opinion from any of Mr. Wilkins' treating physicians that stated that disc herniations were caused by the July 26, 2019 motor vehicle accident?

MR. GUNN:  Form.

THE WITNESS:  No, I did not.

BY MR. ANGLEY:

Q.   Okay.  Based on the fact, to your understanding, did Mr. Wilkins, during your handling of the claim, breach the tort threshold?

MR. GUNN:  Form.

THE WITNESS:  No, he did not.

BY MR. ANGLEY:

Q.   And in connection with your handling the claim, if there's no breach of the tort threshold, does

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

that entitle Mr. Wilkins to non-economic damages?

A. It does not.

Q. During your adjustment of the claim, did you ever receive any medical records that showed the RFA procedure was scheduled?

A. No, I did not.

Q. During your involvement in the claim, did you ever receive any records that showed Mr. Wilkins had agreed to undergo the RFA procedure?

A. No, I did not.

Q. During your involvement in the claim, the only injections that you were aware of was the -- was it the October 28, 2019 and December 2, 2019?

A. Yes, that's correct.

Q. During your involvement in the claim, did Mr. Wilkins undergo any additional -- any other procedures outside of those?

A. Not that I'm aware of.

Q. If Mr. Wilkins had -- if Mr. Wilkins' treating physicians had an opinion that he had suffered permanency, as it caused by the July 26, 2019 accident, based on your experience and as an adjuster, would you have expected them to detail that in the actual treating records?

MR. GUNN: Form.



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

380885 Crawford Camille 05-28-2025    Page 148

THE WITNESS:  Yes.  Yes, I would.

BY MR. ANGLEY:

Q.    Okay.  As an adjuster, you rely on the information that you receive and obtain in connection with your handling of the claim, correct?

MR. GUNN:  Form.

THE WITNESS:  Yes, that's correct.

BY MR. ANGLEY:

Q.    And you were asked a number of hypotheticals by Attorney Gunn during his examination.  Was your evaluation and handling of this claim based on the specific information that you had at your disposal at the time?

A.    Yes, that's correct.

Q.    Do you believe you gave fair consideration in the -- in your evaluation in subsequent offers for Mr. Wilkins' UM claim?

MR. GUNN:  Form.

THE WITNESS:  Yes, I do.

MR. ANGLEY:  I don't have anything further.

RECROSS-EXAMINATION

BY MR. GUNN:

Q.    Ms. Crawford, tell me one proactive investigative step that you took to go out and find facts relevant to this UM claim.  Something you did, not

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380885 Crawford Camille 05-28-2025                    Page 149

sitting at your desk waiting for Mr. Sartes to send you records. Tell me one thing you did to go out and investigate the injury claim and obtain facts not given to you by Mr. Sartes.

A.   I also reviewed the records that would've been received from PIP, since we had access to them, to make sure I wasn't missing anything.

Q.   Okay. So you looked at the PIP claim that was sitting in your claim file notes, and you looked at the records the plaintiff's lawyer sent you -- the claimant's lawyer sent you. I'm talking about these are things you did. I went out and I did this, Mr. Gunn, to find out how badly hurt this gentleman was.

A.   Well, me considering incoming bills that had not been sent by the attorney would've been me, like, proactively seeking to see if there was any additional information that I could have been missing to incorporate into my evaluation.

Q.   You mean reading the PIP bills?

A.   Reading any bill -- bills that providers would have submitted to be reviewed by PIP, correct.

Q.   Okay. So that -- again, that's -- these are bills the provider sent to the company that were put in the file and you read them. These are records that Mr. Sartes sent to the company. Our clerical staff put them



**MILESTONE | REPORTING COMPANY**
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

in the file, alerted me they exist, and I read them. What did you do proactively to go out and find facts that weren't sitting in Progressive's files?

MR. ANGLEY:  Object to the form.

THE WITNESS:  So that's what I'm saying.  So if it's submitted to PIP, that is not being submitted to me from, again, the attorney's office.  So I'm proactively trying to look at the file to make sure that we didn't receive anything that may have not been submitted by the claimant's attorney.  So that's me proactively trying to review the file in its entirety, and make sure my evaluation was in line in order to get the claim settled.

BY MR. GUNN:

Q.   So when your attorney asked you, were you proactive in the adjustment of this loss, what you just told me is basis for saying yes.

A.   Yes.

MR. GUNN:  Okay.  That's all I have.  Thank you.

MR. ANGLEY:  Nothing further.  Miss --

THE REPORTER:  Will there be any order of the transcript at this time?

MR. ANGLEY:  I'll order.  Don't need the video at this point.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

THE REPORTER:  Okay.  And electronic regular turnaround okay, Mr. Angley?

MR. ANGLEY:  That's fine.

THE REPORTER:  All right.  And then, Mr. Gunn, would you like to order a copy?

MR. GUNN:  Copy.  Original right out to Mr. Angley is fine.  And I assume she'll read.

MR. ANGLEY:  She will read.

MR. GUNN:  Thank you, everybody.  Have a great day.  No video copy or whatever's going on with video. I'll defer for now.  Thank you so much.  You guys have a great afternoon.

THE VIDEOGRAPHER:  All right.

MR. GUNN:  Thank you, Ms. Crawford.

THE VIDEOGRAPHER:  We are off -- all right.  We are off the record.  Current time is 1:41 p.m.

(Deposition concluded at 1:41 p.m. ET)

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

CERTIFICATE OF OATH

STATE OF FLORIDA

COUNTY OF ORANGE


     I, the undersigned, certify that the witness in the

foregoing transcript personally appeared before me and

was duly sworn.


Identification:  Produced Identification



_____

Bridget Kansy

Court Reporter, Notary Public

State of Florida

Commission Expires:  06/18/2027

Commission Number: HH 412087

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

C E R T I F I C A T E

STATE OF FLORIDA)

COUNTY OF ORANGE)


     I, Bridget Kansy, Court Reporter and Notary Public

for the State of Florida at Large, do hereby certify

that I was authorized to and did report the foregoing

proceeding, and that said transcript is a true record of

the said proceeding.


     I FURTHER CERTIFY that I am not of counsel for,

related to, or employed by any of the parties or

attorneys involved herein, nor am I financially

interested in said action.


Submitted on: June 9, 2025.




_____

Bridget Kansy

Court Reporter, Notary Public


MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

ERRATA

PAGE        LINE                              CHANGE        REASON

I have read the entire transcript of my deposition taken in the captioned matter or the same has been read to me.I request that the following changes be entered upon the record for the reasons indicated. I have signed my name to the Errata Sheet and authorize you to attach the changes to the original transcript.

_____        _____

Date                               NAME

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

**MILESTONE ▎ REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

**407.423.9900**
**Fax 407.841.2779**
**Toll Free 855-MYDEPOS**

**June 09, 2025**

**David Angley, Esquire**
Young, Bill, Boles, Palmer, Duke & Thompson, P.A.
401 E. Jackson St., Suite 2950
Tampa, FL 33602

RE:     Deposition of **Camille Crawford** taken on **5/28/2025**
        Mondamin Wilkins v. Progressive Select Insurance Company

Dear Mr. **Angley**,

## IMPORTANT NOTICE FOR DEPOSITION TRANSCRIPT READ AND SIGN

It is suggested that the review of this transcript be completed within 30 days of your receipt of this letter,

as considered reasonable under Federal Rules*.

 x      **Attorney - Copy of Transcript Enclosed:**  Signature of the Deponent is required.  Please have the deponent make any corrections/changes necessary on the Errata Sheet ONLY, sign name on the form where indicated.  Please return ONLY the original signed Errata Sheet to our offices within 30 days from the date of this memorandum.  If you have any questions, please call our offices.

___     **Attorney - No Copy Ordered:**  Since you did not request a copy of the transcript, it will be necessary for the Deponent to call our offices to arrange for an appointment to read and sign the transcript of the Deposition within 30 days of this memorandum.

___     **Deponent:**   At the time of your deposition, you did not waive your right to read and sign the transcript of your testimony, therefore, attached please find a copy of the transcript and Errata Sheet.  Please read the transcript, make any corrections necessary on the Errata Sheet ONLY, sign the bottom of the Errata Sheet, and return it within 30 days from the date of this memorandum.  Please call our offices if you have any questions.

___     **Deponent:**   At the time of your deposition, you did not waive your right to read and sign the transcript of your testimony, therefore, it is necessary for you to come to our offices to read and sign same.  Please call Milestone Reporting Company to arrange for an appointment at your earliest convenience.

___     **The errata sheet(s) and Notary Certificates(s) have not been received by our office in the allotted time period. The original transcript has been filed with the appropriate court or counsel.**

Thank you for your attention to this matter.

No. 380885                          Reporter: Bridget Kansy

cc: Lee Gunn, IV, Esquire


Waiver:
I, Camille Crawford**,** hereby waive the reading and signing of my deposition transcript.

_____                    _____

Deponent Signature                                                 Date


*Federal Civil Procedure Rule 30 (e) / Florida Civil Procedure Role 1.310 (e)

400 North Ashley Drive, Suite 2600          315 East Robinson Street, Suite 510          4651 Salisbury Road, 4th Floor
**TAMPA, FL 33602**                           **ORLANDO, FL 32801**                        **JACKSONVILLE, FL 32256**
                                                  **CORPORATE**
                                      **WWW.MILESTONEREPORTINGCOMPANY.COM**