ORIGINAL

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

Case No.: 8:24-cv-01793-TPB-AAS

MONDAMIN WILKINS

Plaintiff,

v.

PROGRESSIVE SELECT

INSURANCE COMPANY,

Defendant.

DEPONENT:   JANICE HAILMAN

DATE:       MAY 23, 2025

REPORTER:   LILIANNA CAVANAUGH

407.423.9900
Fax 407.841.2779
Toll Free 855-MYDEPOS

MILESTONE I REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

401 EAST JACKSON STREET,
SUITE 2370
TAMPA, FL 33602

315 EAST ROBINSON STREET,
SUITE 510
ORLANDO, FLORIDA 32801
CORPORATE

APPEARANCES


ON BEHALF OF THE PLAINTIFF, MONDAMIN WILKINS:

Lee D. Gunn IV, Esquire

L. Delton Gunn V, Esquire

Gunn Law Group, P.A.

401 East Jackson Street

Suite 3600

Tampa, Florida 33602

Telephone No.: (813) 228-7070

E-mail: lgunn@gunnlawgroup.com

dgunn@gunnlawgroup.com

(Appeared via videoconference)


ON BEHALF OF THE DEFENDANT, PROGRESSIVE SELECT

INSURANCE COMPANY:

David Angley, Esquire

Young, Bill, Boles, Palmer, Duke &

Thompson, P.A.

Truist Place

401 East Jackson Street

Suite 2950

Tampa, Florida 33602

Telephone No.: (813) 603-3006

E-mail: dangley@flalawyer.net

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**   **www.MILESTONEREPORTING.com**   **Toll Free 855-MYDEPOS**

380085 Hailman Janice 05-25-2023                                    Page 3

                              INDEX
                                                        Page
PROCEEDINGS                                               5
DIRECT EXAMINATION BY MR. ANGLEY                          6
CROSS-EXAMINATION BY MR. GUNN                            85
REDIRECT EXAMINATION BY MR. ANGLEY                      166
RECROSS-EXAMINATION BY MR. GUNN                         175


                            EXHIBITS
Exhibit                                                  Page
   1 - Claim Note for 19-2350589                         14
   2 - Progressive Letter (March 31, 2020)               27
   3 - Acknowledgment of Receipt Letter from
        Wicker Smith O'Hara Mccoy & Ford P.A.
       (April 6, 2020)                                   33
   4 - E-mail from Tragos, Sartes, PLLC (May
       1, 2020)                                          46
   5 - Progressive Letter to Tragos, Sartes &
       Tragos, PLLC (June 13, 2020)                      62
   6 - E-mail from Tragos, Sartes, PLLC with
       RFA and Medical Bill Attached (July 8,
       2020)                                             64
   7 - Offer of Final Settlement of $25,000
       (July 10, 2020)                                   70
   8 - E-mail Between Erin Diaz & Janice
       Hailman (December 9, 2020)                        76
   9 - Offer of $50,000 in Exchange for
       Release and Dismissal (December 24,
       2020)                                             78
  10 - E-mail Between Janice Hailman, Jacob
       Miller, and Erin Diaz (January 15,
       2021)                                             80
  11 - E-mail in Reponses in December 31,
       2020, Communication (January 15,
       2021)                                             82
  12 - Letter from Tragos, Sartes & Tragos,
       PLLC (January 29, 2021)                           83



**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

STIPULATION

The VIDEO deposition of JANICE HAILMAN was taken at
MILESTONE REPORTING COMPANY, 401 EAST JACKSON STREET,
SUITE 2370, TAMPA, FLORIDA 33602 via videoconference in
which some parties appeared remotely on FRIDAY the 23RD
day of MAY 2025 at 10:04 a.m. (ET); said deposition was
taken pursuant to the FEDERAL Rules of Civil Procedure.
It is agreed that LILIANNA CAVANAUGH, being a Notary
Public and Court Reporter for the State of FLORIDA, may
swear the witness and that the reading and signing of
the completed transcript by the witness is not waived.



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

PROCEEDINGS

THE VIDEOGRAPHER:  We are now on the video record.  The time is now 10:04 a.m.  My name is Isabella Verba and Lily Cavanaugh is our court reporter.  Today is the 23rd day of May 2025.  We are at Milestone Reporting Company located at 401 East Jackson Street, Suite 2370, Tampa, Florida 33602 to take the deposition of Janice Hailman in the matter of Mondamin Wilkins v. Progressive Select Insurance Company, pending in the United States District Court Middle District of Florida Tampa Division, case number 8:24-cv-01793-TPB-AAS.

Will counsel please introduce themselves for the record starting with Plaintiff?

MR. GUNN:  My name's Lee Gunn.  I'm here with Delton Gunn for the plaintiff Wilkins.

MR. ANGLEY:  David Angley on behalf of Defendant Progressive.

THE VIDEOGRAPHER:  Thank you.

And Ms. Hailman, will you please raise your right hand to be sworn by the court reporter?

THE REPORTER:  Do you solemnly swear or affirm that the testimony you're about to give will be the truth, the whole truth, and nothing but the truth?

THE WITNESS:  Yes.



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          **Toll Free 855-MYDEPOS**

THE REPORTER:  Counsel, you may proceed.

DIRECT EXAMINATION

BY MR. ANGLEY:

Q.   Good morning, Ms. Hailman.

A.   Good morning.

Q.   Can you please state and spell your full name for the record?

A.   Yes, it's Janice Hailman.  It's J-A-N-I-C-E. Hailman is H-A-I-L-M-A-N.

Q.   Okay.  So with today's deposition, I just want to go over a few ground rules for how it proceeds.  We have a court reporter here with us today.  She's taking down everything that's said.  So it's important for you to allow myself and Opposing Counsel to ask questions before you start to answer.  We'll allow you to finish your answer before you are asked any follow-up questions.  And that's just to make sure the court reporter can take down everything that's said, okay?

A.   Okay.

Q.   If at any point during today's deposition you don't understand a question, don't hear it, need it to be repeated, please let me know.  I'm happy to do that. And I'm sure Opposing Counsel will give you the same courtesy.  If you need a break at any point, please let me know.  Happy to provide a break.

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

We're going to be looking at a number of documents today.  So if you need me to orient you to any of the documents, you have a binder right there in front of you that should have them all.

Ms.  Hailman, have you ever been deposed before?

A.    Yes.

Q.    How many times?

A.    Once.

Q.    And was that in context -- what was the context of the deposition?

A.    It was a bad faith claim against Progressive.

Q.    Do you recall the name of that case?

A.    I do not.

Q.    And were you deposed in connection with your employment at Progressive?

A.    Yes.

Q.    You were a claims -- what was your role in that bad faith claim?

A.    I was one of the claims handling adjusters.

Q.    Do you recall the name of that case?

A.    I do not.

Q.    Any other depositions?

A.    No.

Q.    Can you please tell me your date of birth?

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

380985 Hallman Janice 05-25-2025   Page 8

A.   May 9, 1974.

Q.   And your -- can you please tell me what your -- about your education background?

A.   So graduated high school and then went a couple years to Hillsborough Community College for a degree in criminal justice.  However, I did not finish that degree.

Q.   Okay.  Any other education?

A.   No.

Q.   Do you have any certifications or licenses?

A.   Yes.

Q.   Which ones do you have?

A.   Through Progressive, I have the 220 -- 220 license.

Q.   Can you tell me what a 220 license is?

A.   General adjusting, adjuster handling.

Q.   And when did you obtain it?

A.   The date is unknown.

Q.   Okay.  And if you don't recall, that's fine.

A.   Okay.

Q.   You can just tell me you don't recall.

A.   Yeah.

Q.   Do you have any other -- any other licenses?

A.   No.

Q.   And can you tell me where you currently work?



**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

A.   Progressive.

Q.   Okay.  And what is your current job at Progressive?

A.   A large loss litigation claims adjuster.

Q.   And how long have you been doing that?

A.   And I can add in the complex department as well.  In the complex department, I've been there for a year.

Q.   So since 2024, approximately?

A.   Yes.

Q.   I had to think of what year it was for a second.  When did you start at Progressive?

A.   Four -- or 21 years ago.  So 2004.

Q.   Okay.  So can you kind of walk me through the roles you've held at Progressive since you started and the time frame in which you've held those roles?

A.   Sure.  I don't know the exact years, but I can give you general timely -- timeframes.  So I started in customer service, was there each usually about one to two years.  Customer service.  I went to the processing department.  Same thing, about one to two years processing.  I went to what's called CCU, claims central unit, handling single vehicle claims.  So claims adjuster.

From there -- also about a year or two.  From



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

380803 Hartman Janice 05-23-2025 Page 10

there, I went to our Med Pay department handling injury claims. Same thing. Approximately one to two years. From there, I went to PIP department, the personal injury protection department. Same thing. Approximately one to two years. I'm sorry. I don't have the exact dates.

And then I became a ladder, which is -- a ladder program, which is like a training for the new hires within that department. After that I went to -- I handled -- in claims I handled attorney repped bodily injury claims, so litigation claims, was there about two years. Moved over to our national specialty Claims Department handling the same large -- large loss litigation claims, approximately one or two years.

And then from there, I went to a specialized large loss litigation team handling Canada and Florida claims specifically. Same thing, about a year. And then I moved over to where I'm at now.

Q. Okay, I appreciate that. And was Progressive your first job in the insurance industry?

A. For auto, yes. Before that I worked for Aetna with healthcare, handling health insurance claims.

Q. Okay. And approximately how long were you doing that?

A. If I recall correctly, I want to say about

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

five years.

Q.   Any other insurance-related jobs?

A.   No.

Q.   And you mentioned a national specialty claims department.  Can you tell me what that is?

A.   So that handles specialized claims.  We handle like high-profile claims where parties are involved in domestic violence, employee claims, those kind of specialized claims, motor liability.

Q.   You mentioned the large loss unit?

A.   Yeah.

Q.   Can you tell me what that is?

A.   So large loss is just basically like higher level claims.  The reserves might be higher -- higher injury level.

Q.   And at Progressive, did you receive training for each one of the job positions that you held?

A.   Yes.

Q.   And can you generally tell me what kind of training you would've received?

A.   I don't know specifics, just whatever, basic online kind of trainings they provided and then just like mentoring with other employee coworkers.

Q.   And do you continue to receive training at Progressive?



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

380889 Hallman Janice 05-23-2025

A.   Yes.

Q.   And when did you become a Florida-licensed adjuster; do you recall?

A.   I don't recall exact time frame.

Q.   And can you tell me in the March 2020 time frame, what was your job position at Progressive?

A.   That would've been within the attorney reps large loss litigation department.

Q.   And can you tell me what that department is? What does that mean, attorney repped bodily injury department?

A.   So that means when a claimant has obtained an attorney to assist with their motor vehicle accident.

Q.   And do you -- were -- what was your specific role at Progressive?  Were you a -- an adjuster?  A supervisor?

A.   Adjuster.

Q.   Were you -- and was there a specific unit you were assigned to within the overall attorney rep bodily injury department?

A.   A certain unit?

Q.   Yeah.  Was it a certain unit within the department that you were in or is it just a general -- you're just generally a part of the RB (phonetic) department?



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

A.   I believe we had a couple teams, so I was on one specific team from that department.

Q.   So in March of 2020, how long had you been working on injury claims at Progressive?

A.   I don't recall the exact time frame.

Q.   At some point, did you become involved in an uninsured, underinsured motors claim that was brought by Mondamin Wilkins against Progressive that arose out of a July 26, 2019 motor vehicle accident?

A.   Yes.

Q.   And in 2020, March of 2020, and after when you handled the claim at Progressive, did you keep notes of the activities you performed on the particular claim?

A.   Yes.

Q.   And what did you call these notes?

A.   My claim notes.

Q.   And were they kept electronically?

A.   Yes.

Q.   Did you use these notes to document the activities you performed on the file?

A.   Yes.

Q.   And were these notes entered at or near the time that the event occurred?

A.   Yes.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q.   And when it -- when you entered a note, did you have knowledge of the events you were documenting?

A.   Yes.

Q.   And did you create notes from Mr. Wilkins' claim?

A.   Yes.

MR. ANGLEY:  Ms. Hailman, I have a binder right to your left.  If you could open that up for me and turn to tab 1.  We'll mark this as Exhibit 1.

(Exhibit 1 was marked for identification.)

BY MR. ANGLEY:

Q.   It's a portion -- it's a Bates stamp PRG 1 through 1110.  And it's a portion of the claim notes for Mr. Wilkins' claim.  Does this appear to be a copy of the claim notes from Mr. Wilkins' uninsured motorist claim?

A.   Yes.

Q.   And before we get into the particular notes, Ms. Hailman, do you have any independent recollection of this claim?

A.   No.

Q.   And if you could turn to Page 61 of the claim notes, DRG 61.  So Ms. Hailman we're going to be looking at a number of claim notes today.  What I'll do is I'll tell you the page, I'll give you the date and time of

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

380889 Hallman Janice 05-23-2023 Page 15

the entry, to help direct your attention to the

particular claim note I would like to discuss with you.

A. Okay.

Q. So there's a claim note on Page 61 of the

notes dated March 31, 2020 at 1:02 p.m.

A. Yes.

Q. By Jessica Nelson. Can you tell me who

Jessica Nelson is?

A. I do not know who she is.

Q. Her note at 1:02 p.m. indicates exposure

assigned to JXH 0197. Do you see that entry?

A. Yes.

Q. Can you tell me what JXH 0197 stands for?

A. That's my -- it's called a TPX code. So it

just is -- every employee is assigned that particular

code, which represents that employee.

Q. So based on this entry by Ms. Nelson, was this

claim assigned to you on March 31, 2020?

A. Yes.

Q. Okay. And directly beneath that, there's an

entry in the claim notes on March 31, 2020 at 4:13 p.m.

Do you see that entry?

A. Yes.

Q. Would this be your first entry in the claim

notes?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

A.    Yes.

Q.    Okay.  And can you tell me, what is your understanding of why the claim was transferred to you on March 31, 2020?

A.    It was assigned to me because a lawsuit was filed.

Q.    Okay.  And in your role at Progressive at that time, at that time, were you handling attorney rep bodily injury claims that involved litigation?

A.    Yes.

Q.    And when the claim is transferred to you, and you don't have it from the start, and things have kind of happened prior to your involvement, do you have a process by which you familiarize yourself with the file?

A.    Yes.

Q.    And what is that process?

A.    I'll review the proceeding claim notes and any documents that have been received to date.

Q.    And would you have utilized that process in connection with Mr. Wilkins' claim?

A.    Yes.

Q.    And your note here on 4:13 p.m. was it your understanding that Mr. Wilkins had sued Progressive at this point in time?

A.    Yes.



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

380889 Hallman Janice 05-23-2023

Q.   And as of March 31, 2020, were you located in a physical office?

A.   No.

Q.   Okay.  So you were remote at that point?

A.   Correct.

Q.   And was that due to COVID-19?

A.   That's correct.

Q.   So at that point, were you fully remote?

A.   I believe so.

Q.   As were many, many people during that time frame.

A.   Right.

Q.   So in connection with your review of the prior notes, if you could turn to Page -- PRG 59, Page 59 of the claim notes.  There's two entries I want to direct your attention to.  The first is on February 21, 2020 at 10:02 a.m. by Camille Crawford.  Do you see that entry?

A.   Yes.

Q.   And what was your understanding of Ms. Crawford's role in this claim?

A.   I believe she was the prior adjuster, handling adjuster.

Q.   Okay.  And at the 10:02 a.m. note, would you have reviewed this note in connection with the claim being assigned to you?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380885 Hallman Janice 05-23-2023

A.   Yes.

Q.   And what is Ms. Crawford -- so you would've had knowledge of what this claim note stated at that -- the time that the claim was transferred to you?

A.   Yes.

Q.   What does Ms. Crawford indicate in this claim note?

A.   It indicates that she made an outbound call to the attorney to follow up on offers.  Assistant spoke with attorney, and he stated they're not accepting policy limits at this time.

Q.   And then beneath that there's an entry on March 2, 2020 at 3:15 p.m. by Ms. Crawford.  Do you see that entry?

A.   Yes.

Q.   And would you have reviewed this entry in connection with the claim being assigned to you?

A.   Yes.

Q.   And what was your understanding of what this entry reflected?

A.   The adjuster made an outbound call to the attorney to follow up on offer again.  Case manager spoke with the attorney and he -- and stated that he has nothing else to add to the prior conversation.

Q.   Based on these entries, what would've been



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

your understanding of whether Mr. Wilkins was willing to settle for the policy limits at the time you received the file on March 31st of 2021?

A.   To my understanding, that the attorney was not willing to discuss negotiations or settlement at all.

Q.   For the policy limits?

A.   Yes.

Q.   And if you turn back to your first claim note on Page 61 at 4:13 p.m.

And correct to say Mr. Wilkins had an automobile liability policy with Progressive?

A.   Yes.

Q.   And what -- and he had uninsured motors coverage through that policy?

A.   Yes.

Q.   And what was his applicable policy limits?

A.   50,000 per person.  100,000 per accident, non-stacked.

Q.   What do you -- what does non-stacked mean?

A.   So non-stacked means that you cannot stack that particular amount of coverage against any other vehicles in the household for 100 --

Q.   So in this entry you say, what are you kind of detailing?  Can you explain to me what you're detailing in this entry at 4:13 p.m.?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A.   So this is my initial intake entry.  So I'm just going, acknowledging that it's been assigned to me, just reviewing the basic outline of the coverages, the facts of loss, the injuries, claim being claimed by the claimant.

Q.   And was this -- the -- was the purpose of this entry to help you kind of orient yourself in the fall as to what the current status or posture was?

A.   Correct.

Q.   Okay.  When you have a section titled coverage, what was the -- your understanding of the tortfeasor's coverage?

A.   It was my understanding that the tortfeasor was with Amica, and they had carried bodily injury coverage of 10,000 per person, not to exceed 20,000 per accident.

Q.   And the section beneath that -- that starts with, injured party Mondamin Wilkins, passenger.  Do you see that section?

A.   Yes.

Q.   And what are you detailing in this section of the claim note?

A.   Just a -- a breakdown of the specifics of that particular party.

Q.   And what was your general understanding of Mr.



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

Wilkins' course of treatment today?

A.   He was taken to the emergency room by ambulance.  He received chiropractic treatments and MRI, and injections.

Q.   At the point you in took the file, was Mr. Wilkins scheduled or recommended for any surgeries?

A.   Not that I was aware of, no.

Q.   And what was your -- and you have a section on Page 62 of the claim notes where it says priors; do you see that?

A.   Yes.

Q.   What was your understanding of Mr. Wilkins' prior injuries?

A.   That he was paralyzed from the waist down due to previous stroke.  His wife is his caretaker.  They may have to hire a caretaker.

Q.   And did Mr. Wilkins have health insurance?

A.   He was eligible for Medicare.

Q.   Okay.  And had -- to your understanding, had the tortfeasor's carrier, Amica, tendered the applicable bodily injury policy limits at that point?

A.   Yes.

Q.   And that was the $10,000?

A.   Correct.

Q.   And that to your understanding at this point,



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          **Toll Free 855-MYDEPOS**

was there an -- a CRN that had expired?

A.   Yes.

Q.   And what was your understanding of the current posture of -- or the prior posture of settlement negotiations for this claim?

A.   So the last demand made was 50,000 by the plaintiff's counsel.  And the -- Progressive's last offer was $8,200.

Q.   And then on Page 62 of the notes directly beneath that, still at 4:13 p.m. what did you indicate in the next note that you entered?

A.   This was a breakdown of the facts of loss.

Q.   Okay.

A.   And liability.

Q.   And was -- what was the liability decision?

A.   It was a -- 100 percent adverse to the claimant, and that the claimant carrier accepted 100 percent.

Q.   Okay.  And Ms. Hailman, through your experience and training and handling claims in Florida, are you familiar with the tort threshold?

A.   Yes.

Q.   And what is your understanding?

A.   In order to obtain pain and suffering, they'd have to meet the threshold, which is a permanent injury,

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

death -- and/or death.  Significant scarring or

disfigurement and or permanent or significant injury to

-- bodily injury.  Sorry.

Q.    No problem.

A.    I forget how it's worded.  I'm sorry.

Q.    It's okay.  You don't have to quote the

statute.

A.    Yeah.

Q.    But your general understanding of -- so you

had a general understanding of what the tort threshold

was in Florida?

A.    Yes.

Q.    Okay.  And to your understanding at the time

Mr. Wilkins' claim was transferred to you for handling

on March 31, 2020, had Mr. Wilkins breached the tort

threshold?

A.    No.

Q.    To your understanding, had any medical doctor

opined that Mr. Wilkins had a permanent injury -- a

permanent injury within a reasonable degree of medical

probability stemming from the July 26, 2019 motor

vehicle accident?

A.    No.

Q.    And is that something you would've taken into

consideration in your handling and adjustment of Mr.



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

Wilkins' claim?

A. Yes.

Q. So at -- on Page 62 of the notes, at 4:14 p.m., what did you do next?

A. I reviewed the damages that both vehicles sustained.

Q. And why were you doing that?

A. To look to see what type of impact occurred.

Q. And if you could go to Page 64 of the claim notes. It's Bates-stamped PRG 64. There's an entry on March 31, 2020 at 4:20 p.m. towards the top of the page. Do you see it?

A. Yes.

Q. What did you do -- what did you indicate in this entry?

A. So I called out to the claimant carrier Amica. I originally received voicemails, so I left a message to call back.

Q. And at 4:25 p.m. the next note down. Did you speak with Allison at Amica?

A. Yes.

Q. And what did you discuss?

A. I discussed that Gail is an additional insured on their policy. The claimant owner and the claimant driver are both brother -- are brother and sister. They

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

were both listed on their policy. There were no other insurance available, to their knowledge, for either party, that the purpose of use was personal use. They didn't know the exact details at that time and that they tendered their $10,000 on both parties.

Q. And why were you reaching out to the claimant carrier On March 31, 2020?

A. So I was reaching out to confirm if there was any other possible tort coverage that might be available to protect -- to protect the insureds.

Q. And to your understanding, were -- was there any additional coverage available?

A. No.

Q. So your next note was on March 31, 2020 at 4:31 p.m. Do you see that entry?

A. Yes.

Q. Did you call Mr. Wilkins' attorney's office?

A. Yes.

Q. And is that what it is indicated there, OBC to PA?

A. Correct.

Q. Would that be outbound call to Plaintiff's attorney?

A. Yes.

Q. And to your understanding, who was Plaintiff's

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     **www.MILESTONEREPORTING.com**     **Toll Free 855-MYDEPOS**

counsel for Mr. -- who was Mr. Wilkins' counsel?

A.   I don't recall the exact counsel's name at this time.

Q.   And did you speak with anybody at Mr. Wilkins' attorney's office?

A.   Yes.

Q.   And who did you speak to?

A.   I spoke with Linda.

Q.   Do you recall Ms. -- do you recall Linda's role at the firm?

A.   I do not recall.

Q.   And what did you discuss with Linda?

A.   She had confirmed that Progressive was served on February 27, 2020 through the agent on record.  I explained I was unable to view the case online, and I had requested access through the online portal.  She indicated she will e-mail a copy of the complaint to in -- in service to our e-mail that we had for Florida attorneys.

Q.   Okay.

A.   And I also requested an extension to file the answer through April 8, 2020, and she agreed to that.

Q.   And did you document that extension in writing?

A.   Yes.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

380889 Hailman Janice 05-23-2025    Page 27

Q.   And is that where it's indicated, mailed in fax confirmation?

A.   Yes.

MR. ANGLEY:  You go to tab 2 of your binders, Ms. Hailman, I'll mark this as Exhibit 2.  It's Bates- stamped PRG 1080.  It's a March 31, 2020 letter.

(Exhibit 2 was marked for identification.)

BY MR. ANGLEY:

Q.   Did you -- is this a copy of the letter that was being referenced in the claim that we were just looking at?

A.   Yes.

Q.   Okay.  And who is it directed to?

A.   Dear Counselor.

Q.   At the top?

A.   Oh.  So the firm is Tragos, Sartes & Tragos, directed to Peter Sartes.

Q.   And was that Mr. Wilkins' attorneys?

A.   Yes, I believe so.  Yes.

Q.   And in this letter, did you memorialize the agreement for an extension through April 8th for Progressive to answer Mr. Wilkins' complaint?

A.   Yes.

Q.   And if you could go back to Exhibit 1 on Page

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

64, there's an entry directly beneath the last one we were just discussing by Jason Gray on March 31, 2020 at 4:31 p.m.  Do you see it?

A.   Yes.

Q.   Can you tell me who Jason Gray is?

A.   He -- at the time, he was another supervisor in that same department.

Q.   And at this point in time, who was your supervisor?

A.   Jacob Miller.

Q.   Do you know why Mr. Gray was making an entry in this file?

A.   I do not recall specifically.

Q.   And what did Mr. Gray indicate in his entry?

A.   He -- it appears that he reviewed -- appears that service didn't -- did not take place via the CT corporate and unclear how Progressive was actually served as Plaintiff counsel alleged.  There's no affidavit of service filed, no default yet entered either, and direction to me to, let's refer to counsel and discuss if we want to file an M2 squash (phonetic) or proceed with the LS, I guess, litigation.

Q.   So was Mr. Gray providing --

A.   Or lawsuit.  Sorry.

Q.   LS would be lawsuit?



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

380889 Hallman Janice 05-23-2023                    Page 27

A.    Lawsuit.  Yeah.

Q.    Was Mr. Gray providing instructions to you?

A.    Yes.

Q.    At that point in time?  And directly beneath that, there's an entry by you on March 31, 2020 at 4:32 p.m.

A.    Yes.

Q.    It's an initial lawsuit outline, correct?

A.    Yes.

Q.    What's an initial lawsuit outline?

A.    So it's my initial review of the lawsuit that was filed.

Q.    Okay.  What's the purpose of the initial lawsuit outline?

A.    Just to obtain a better understanding of this lawsuit that was filed, just regarding the named parties, case number, when it was filed, when an answer is due, so I could obtain, you know, defense attorney.

Q.    Okay.  So at this point, when was -- when had Mr. Wilkins initiated the lawsuit against Progressive?

A.    It looks like it -- the date filed was February 11, 2020.

Q.    And you had obtained an extension of time through April 8, 2020 for Progressive's answer?

 MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        www.**MILESTONEREPORTING**.com        **Toll Free 855-MYDEPOS**

A.   Yes.

Q.   And what was the venue of the lawsuit?  If you look on the next page?

A.   Venue was Pasco County, Florida.

Q.   Okay.  And then the next entry beneath that on April 1, 2020 at 11:40 p.m. you have a to-do list; do you see that?

A.   Yes.

Q.   Oh, excuse me.  Before we get to that, at the bottom of Page 65 with the claim notes, there's an entry on April 3, 2020 at -- I have the wrong page.  That would help.  My apologies.

Go to Page 66 for me.  You have an entry on April 3, 2020 at 9:11 a.m.  At the top of the page.

A.   Okay.

Q.   Did you retain defense counsel?

A.   Yes.

Q.   And who did you retain?

A.   Wicker Smith.  Counsel was Erin Diaz.

Q.   Yes.  And it looks like you indicated canceled referral to Tampa HC.  What did -- what did that indicate?

A.   So it looks like I was originally going to refer it over to our Tampa house counsel for defense, but forwarded it over to outside counsel instead.



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

Q.   And outside counsel would be Wicker Smith?

A.   Yes.

Q.   And the assigned attorney was Erin Diaz?

A.   Yes.

Q.   And was that a male or a female?  Do you know?

A.   Female.

Q.   And beneath that entry on -- still on April 6, 2020, at 5:03 p.m. it indicate that title of the entry is, to-do; do you see that?

A.   Yes.

Q.   What are to-dos?

A.   Just a running outline of things that I need to be continuing to monitor and follow up and complete.

Q.   Okay.  And what did you list as your to-dos for this particular claim?

A.   Follow up for the hard case file and evaluate.

Q.   And what's a hard case file?  That would be H -- the HCF abbreviation in the claim note?

A.   Yes.

Q.   And what's a hard case file?

A.   So at that time, there -- there -- any documents that might've came in via like mail or faxes to us, were kept in a -- a hard case file that we held. So not necessarily being electronically filed.

Q.   So a hard case file would be a physical hard



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**       **www.MILESTONEREPORTING.com**       **Toll Free 855-MYDEPOS**

380889 Hartman Janice 05-23-2025     Page 32

file or a physical file that held the documents related
to the particular claim?

A.   Correct.

Q.   And was that being transmitted to you?

A.   Yes.

Q.   And then you indicate evaluate; what did you
mean by evaluate?

A.   Review all the -- the claim in its entirety,
including any documentation that we received.

Q.   And then above that, you indicate, "Impediment
nature/extent of injury"; do you see that?

A.   Yes.

Q.   And what's an -- what did you mean by -- or
what were you indicating and -- as it pertains to the
impediment nature/extent of injury?

A.   So one of the -- the impediment to the claim
was the extent of injury that the claimant was claiming.
Relatedness to the accident, causation of the findings,
those are things that we've continued to investigate and
review.

Q.   So is the purpose in noting that -- so what
was the overall purpose in noting what the impediment
was?

A.   Could you repeat that?

Q.   Sure.  It's a bad question; I'll move to --



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

I'll strike my own question.

Beneath that, at -- one second.  If you could turn to tab 3 for me of the notebook.

MR. ANGLEY:  We'll mark this as Exhibit 3. It's Bates stamp PRG 2331.

(Exhibit 3 was marked for identification.)

BY MR. ANGLEY:

Q.  And it's -- Ms. Hailman, can you identify what I marked as Exhibit 3?

A.  Yes.  This is an acknowledgement letter from the defense counsel with Wicker Smith acknowledging that they've accepted to handle the case.

Q.  And was there any -- other than Ms. Diaz, was there any other attorney at Wicker Smith that was involved or assisting on this particular claim?

A.  Yes.

Q.  And who was that?

A.  It was Attorney Ashing; they call him Ash, Ghezelbash?  I'm not sure if that's the correct pronunciation.

Q.  Sure.  I think it's spelled G-H-E-Z-E-L-B-A-S-H, for the purposes of the record.  If you could go to Page 67 of the note for me.  There is an entry on April 8, 2020, at 10:06 p.m., third from the top; do you see it?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380889 Hartman Janice 05-23-2023

A.   Yes.

Q.   And it says -- it's an entry by Leanne West.

A.   Yes.

Q.   Do you know who Ms. West was?

A.   Yes.

Q.   And what was her role at Progressive?

A.   She's one of the administrators in the office.

Q.   And what is the -- what was her job role, or what is an administrator?

A.   Well, she had multiple roles, but I know with her association with the adjusters, she would assist with any mailing, faxing, getting us hard case files.

Q.   Okay.

A.   Yeah.

Q.   Based on this entry, had Ms. West received the hard file and directed it to you?

A.   Yes.

Q.   Beneath that, there's an entry on April 10, 2020, at 9:54 a.m., by Jacob Miller; and that would've been your supervisor, correct?

A.   Yes.

Q.   And what did he indicate in this entry?

A.   It says he reviewed.  He noted that there was two plaintiffs with multiple round of injections, and he was setting reserves at 50,000 for each party based on



MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**   **www.MILESTONEREPORTING.com**   **Toll Free 855-MYDEPOS**

that.

Q.   And what is your understanding of what a reserve is?

A.   Reserves is like a savings account, so it's money put away for potential value of a claim.

Q.   And by reserving 50,000 for Mr. Wilkins' claim, does that mean Progressive had evaluated the claim at policy limits at this point in time?

A.   No.

Q.   And if you go beneath that entry, there's one on April 14, 2020, at 8:02 a.m.; you see that entry?

A.   Yes.

Q.   And did you make this entry?

A.   Yes.

Q.   And what did you indicate in this entry?

A.   That I -- I was bringing the hard case file home to evaluate.

Q.   Okay.  And why were you doing that?

A.   So I can review the claim notes in totality, to review the -- the hard documents that were in the file as well.

Q.   Okay.  And that same day, later on, at 3:00 p.m., what did you do next?

A.   I made out -- a call-out to the plaintiff's counsel to discuss the case.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

Q.   And who did you speak to?

A.   Attorney Peter.

Q.   Okay.  And as it -- so Mr. Wilkins was making a UM claim; there was also a claim being made by his wife, Lisa Wilkins, correct?

A.   Yes.

Q.   Okay.  So we want to -- we're going to focus today on Mr. Wilkins.  So during your discussion with attorney Peter, what did you discuss as it pertained to Mr. Wilkins?

A.   He said -- indicated that Mr. Wilkins had 40,000 of bills; I advised that tort tendered as well. He indicated they received additional injections, but he was not sure which party, whether it be Mr. or Mrs. Wilkins, and which one was actually considering surgery. He indicated that they were at the policy limits; he feels it may be even over the limits at the time.  And if we were to even offer the limits, they are not even sure if they would accept.

Q.   And based on your conversation with Mr. Wilkins, what was your understanding of whether Mr. Wilkins was willing to settle for the policy limits at this point in time?

A.   It is my understanding that he was not willing to settle for the limits.



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     **www.MILESTONEREPORTING.com**     **Toll Free 855-MYDEPOS**

Q.   If you could turn to Page 69 of the claim notes.  There is an entry starting at the bottom of the page, on April 14, 2020, at 5:01 p.m.?

A.   Yes.

Q.   And did you make this entry?

A.   Yes.

Q.   And what is -- what did -- what does this entry reflect?  Did -- or let me ask you: Did you conduct an -- a review or evaluation of Mr. Wilkins' treatment and billing information known to date?

A.   Yes.

Q.   And is that what's reflected in this entry?

A.   Yes.

Q.   And did this entry stem from your review of the information Progressive had received to date related to Mr. Wilkins' treatment and billing information?

A.   That is correct.

Q.   And can you kind of walk me through, what did you first indicate in the first section of the -- of this entry?

A.   I have reflected that the review was for Mondamin Wilkins.  He was a 51-year-old male; he was a front seat passenger.  I noted the venue; it was Pasco County.  I indicated a brief note on the facts of loss, the vehicle damages, and liability.  And then the end of

 MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

this page documents Mr. Wilkins' priors -- prior injuries.

Q.   And what did you note as it pertained to Mr. Wilkins' prior injuries?

A.   That he was confined to a wheelchair after a spinal stroke.  Six years ago, a -- he had a spinal cord injury with lower extremity weakness, chronic aortic dissection, hypertension.  Keep going?

Q.   Sure.

A.   Okay.  He had a surgical history in 1993 on his lumbar level 3-4; in 2007, surgery on his L5-S1 level, aorta surgery in 1974.

Q.   And as it pertained to this particular July 26, 2019 accident, did you also review the diagnostic studies Mr. Wilkins had underwent to date?

A.   Yes.

Q.   And did those diagnostics studies show evidence of degeneration in Mr. Wilkins' cervical spine?

A.   Yes.

MR. GUNN:  Form.

BY MR. ANGLEY:

Q.   And did you also summarize the treatment that Mr. Wilkins had undergone to date?

A.   Yes.

Q.   And that included Mr. Wilkins going to the ER

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900    www.**MILESTONEREPORTING**.com    Toll Free 855-MYDEPOS

380889 Hallman Janice 05-23-2023   Page 39

on July 26, 2019?

A.   Yes.

Q.   And then did Mr. Wilkins also undergo a course of conservative chiropractic or chiropractic treatment?

A.   Yes.

Q.   And at that time, how many visits?

A.   38.

Q.   And what was the time period?

A.   August 1, 2019 through March 6th of 2020.

Q.   And had Mr. Wilkins also treated at Spine & Orthopedic with Dr. Hayes?

A.   Yes.

Q.   And what time period, of the information that you have, as it pertained to his treatment at that facility?

A.   September 11th; it would've been 2019 through February 12, 2020.

Q.   And approximately how many visits?

A.   Nine visits.

Q.   And had Mr. Wilkins undergone injections?

A.   Yes.

Q.   And that was in his cervical spine, correct?

A.   Yes.

Q.   And did he report -- did you document that he reported relief from those injections?

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          **Toll Free 855-MYDEPOS**

A. Yes.

Q. And at that point, was Mr. Wilkins scheduled for surgery?

A. Not that I'm aware of, no.

Q. Okay. At this point, to your knowledge, was Mr. Wilkins scheduled for any further injections or other medical procedures?

A. Not to my knowledge.

Q. And did you also -- and then, the next section, it starts with, "51-year-old male involved in heavy T- bone loss"; do you see that?

A. Yes.

Q. What do you kind of -- what is this section of your note reflecting?

A. This is like an -- an analysis of the above injury and treatment.

Q. And why did you note -- you noted, "PLT has degeneration of cervical and lumbar"; is that correct?

A. Yes.

Q. What did you -- what were -- what did you mean by that, and why were you indicating that?

A. Because these prior diagnostic scans that he had noted -- the report noted that he had multilevel degeneration and -- of -- of the cervical spine and lumbar.

 MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     **www.MILESTONEREPORTING.com**     **Toll Free 855-MYDEPOS**

380089 Hartman Janice 05-23-2025   Page 41

Q.   And then did you also perform an evaluation of the medical bills?

A.   Yes.

Q.   Or document your review of those?

A.   Yes.

Q.   And based on that, what were the total medical bills that Progressive was aware of at this point in time?

A.   $27,812.08.

Q.   And the balance?

A.   $15,398.83.

Q.   And in the next section, it's titled, "Specials"; do you see that?

A.   Yes.

Q.   What are specials?

A.   Specials are available collateral sources, such as PIP coverage, Med-Pay coverage, health insurance.

Q.   Okay.  And what did you list under that section?

A.   I listed that his CRN expired, that he had PIP coverage with a $1,000 deductible, which had exhausted. He has Med-Pay with a $500 limit, which exhausted as well.  And the tort was available of $10,000, which they tendered as well.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**
407.423.9900   www.**MILESTONEREPORTING**.com   Toll Free 855-MYDEPOS

Q. And at this point in time, did you determine an evaluation range for Mr. Wilkins?

A. I did not, no.

Q. Okay. And a -- is there a reason why?

A. So at this point, it was just a -- a general review of all the available information that I had to date.

Q. And was this to help you in your continued adjustment and investigation of Mr. Wilkins' claim?

A. Yes.

Q. The next note down, on Page 71, on April 14, 2020, at 5:10 p.m.; did you make this entry? We're at the top --

A. Oh, sorry.

Q. -- yep.

A. Yes, I did.

Q. And did you make a call to Mr. Wilkins' attorney's office?

A. Yes.

Q. And if I call them the Tragos Law Firm, will you know who I'm referring to?

A. Yes.

Q. Yep. Who did you speak to?

A. I spoke with Peter.

Q. Okay. And what did you discuss with Peter?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

A.   Well, I called to request additional records or billing for any additional treatments that they would've -- his clients had received per our prior conversation.

Q.   Okay.

A.   He confirmed that he has updated records and was ended.

Q.   Okay.  Following that call -- following that call on -- you made another note on April 28, 2020, at 1:54 p.m.; do you see that entry?

A.   Yes.

Q.   And did you call Mr. Wilkins' attorney's office again?

A.   Yes.

Q.   And what was the purpose of that phone call?

A.   Because at that point, I had not received -- it was like over a week later, I had not received the additional documentation that I had previously requested, so I made another call-out to request that information.

Q.   Okay.  So approximately two weeks had gone by, and you had not received the records that you had discussed with it -- with Peter on April -- oh, 12 days; excuse me, 12 days had gone by.  So you hadn't received the records in that interim period?

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

380889 Hallman Janice 05-23-2023                                    Page 44

A.    Correct.

Q.    And who did you speak to?

A.    Linda.

Q.    And what did you discuss?

A.    So I called to let her know I hadn't received it, the additional records.  She confirmed that she had faxed in a few weeks ago; the fax number -- I confirmed the fax number she used, and apparently, it was not for our specific department.  So I provided her with an e-mail to send the documents into, and she agreed.

Q.    Okay.  And in your prior correspondence, that we had marked as Exhibit 2, you provided your contact and fax number to the Tragos firm, correct?

A.    Yes.

Q.    So when they sent in the records, did they simply sent it to the wrong fax -- the wrong fax number?

A.    Yes, apparently.

Q.    Yes.  Beneath that entry, on May 1, 2020, at 9:17 a.m., there's an entry by Tricia Corbin; do you know who Ms. Corbin was or is?

A.    No.  Not -- not specifically, no.

Q.    Okay.  And directly beneath that, Mr. Miller has an entry, also, on May 1, 2020, at 10:08 a.m., correct?

A.    Yes.



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q.   And what does Mr. Miller indicate in this entry?

A.   He mentions that the attorney medical -- the medical -- additional medicals that the attorney sent in have been received in our electronic database, dated April 28, 2020, for both client -- plaintiffs.  Sorry. There was no specific demand made or timeline cited to respond, so he sent me a diary to review and respond.

Q.   Okay.  And why was Mr. Miller sending you a diary to review and respond?

A.   Because the prior person that put a note in there acknowledging receipt of the documents sent both myself and him as well, a diary to let us know the documents were received.

Q.   Okay.  And what is a diary?

A.   A diary is like a task for a -- a person in the claim to do; a notification.

Q.   Okay.  So you have an entry on May 6, 2020, at 12:31 p.ma., correct?

A.   Yes.

Q.   And what did you indicate in this particular entry?

A.   I noted that the additional records were received and they were in our electronic database, dated May 1, 2020, and that I would review and evaluate that.



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

380889 Hallman Janice 05-23-2023                                    Page 46

Q.   If we could go to tab 4 of the binder?

MR. ANGLEY:   We'll mark this as Exhibit 4, Bates stamp PRG 1413 through 1463.

(Exhibit 4 was marked for identification.)

BY MR. ANGLEY:

Q.   Is this a copy of the records Progressive received that was documented in the claim notes on May 1, 2020?

A.   Yes.

Q.   And would you have reviewed these records in connection with your claims handling?

A.   Yes.

Q.   Was there any -- was there a demand for the policy limits included in this correspondence or the enclosed records?

A.   No.

Q.   Were treatment and billing records enclosed for Mr. Wilkins?

A.   Yes, according -- according to her e-mail.

Q.   And you would've reviewed these records -- strike that.

If you can go to -- at the bottom of the page, there's what's called Bates stamp; it's little page markers.  So if you can go to PRG 1418 for me?

A.   What section we're looking in?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380889 Hallman Janice 05-23-2023 Page 47

Q. Oh, stay on tab 4 --

A. Oh, okay.

Q. -- and then, PRG 1418.

A. Okay.

Q. About seven pages in.

A. Okay.

Q. This is a date of service -- it's a record reflecting a date of service of January 20, 2020, at Trinity Spine Center, correct?

A. Yes.

Q. And if you could go to Page 3 of the record, it's PRG 1420?

A. Okay.

Q. Did Mr. Wilkins undergo any injections on this date of service?

A. Does not appear to have, no.

Q. Under the -- on PRG 1420, there's a section titled, "Current Plans."

A. Yes.

Q. And this is a record signed by -- it's hard to make out the name; Lawrence -- something with a W; was there any documentation in this record of a medical doctor providing Mr. Wilkins with an opinion that he suffered a permanent injury within a reasonable degree of medical probability stemming from the July 26, 2019

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

accident?

A.   No.

Q.   And based on this record, was Mr. Wilkins scheduled for surgery at this time?

A.   No.

Q.   And if you turn to the next page, it reflects a date of service record January 30, 2020, from Trinity Spine Center.  And if you turn to PRG 1424, do you see on -- at the bottom, it says, "Current Plans"?

A.   Yes.

Q.   And did Mr. Wilkins undergo cervical injections at C7 through T1 on January 30th of 2020?

A.   What date?

Q.   January 30, 2020 --

A.   Yes.

Q.   -- he underwent cervical injections?

A.   Correct, yes.

Q.   And underneath, it said, "Follow-up"?

A.   Yes.

Q.   What did it indicate there?

A.   To consider a lumbar RFA.

Q.   And based on this record, was that procedure scheduled?

A.   No.

Q.   Was there any recommendation for surgery?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

A.   No.

Q.   Was there any permanency opinion given in this January 30, 2020 date of service record?

A.   No.

Q.   Okay.  And can you go to PRG 1428 for me? This reflects a date of service at February 12, 2020, at Trinity Spine Center, correct?

A.   Yes.

Q.   And if you turn -- PRG 1431, under "Current Plans," what was indicated under -- was any additional treatments scheduled or planned at this point?

A.   No, it was just the follow-up in two to three months.

Q.   Okay.  Was Mr. Wilkins recommended for surgery at this point?

A.   No.

Q.   Was he scheduled for surgery?

A.   No.

Q.   Did Dr. Saldeen (phonetic), who signed this particular record, provide any permanency opinion?

A.   No.

Q.   And if you go to PRG 1438 for me, there is also some billing record from Spine & Orthopedic Specialists for dates of service from 9-11-19 through 4-20-20, correct?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A.    Yes.

Q.    And if you -- two pages forward, there's also records from Trinity Healthcare Center reflecting Mr. Wilkins' chiropractic treatment, correct?

A.    Yes.

Q.    If you could -- and would you have reviewed and taken into consideration all of the billing and treatment records that were -- that Progressive received on May 1st of 2020?

A.    Yes.

Q.    If you can go back to Exhibit 1 of the claim notes, on Page 71 of the claim notes, there's an entry on -- at the bottom of the page, May 6, 2020, at 12:38 p.m.  It states, "Initial DPC with D/C"; can you interpret that for me?

A.    Yeah, it's initial call with my defense attorney.

Q.    Okay.  And Ms. Hailman, I don't want you to ever disclose any conversations you had with defense counsel at Wicker Smith firm, so please don't reveal the substance of any attorney-client communication.  But you had a conversation with Ms. -- was it -- was it with Ms. Diaz, or was it with the other attorney?  Do you know?

A.    Based on this claim note, I -- it does not specify.



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

380869 Hartman Janice 05-23-2023                                  Page 51

Q.   So generally speaking, based on -- what is a defense planning conference?

A.   It's a call scheduled with our defense counsel to go over the case -- what we have on the case to date.

Q.   And is that what is reflected in this claim note?

A.   Yes.

Q.   And at this point in time, was litigation proceeding?

A.   Yes.

Q.   And the discovery process was underway?

A.   Yes.

Q.   And did you send the updated medical records that you received from the Tragos firm to defense counsel?

A.   At this time, I advised defense attorney that I had received additional records that I was going to send to her.

Q.   And had any depositions been scheduled at this point?

A.   No.

Q.   And what about mediation?

A.   No.

Q.   If you could jump to Page 76 of the claim notes, there's an entry you have on June 13, 2020, at



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          Toll Free 855-MYDEPOS

9:58 a.m.; did you make this entry?

A.   Yes.

Q.   And did you -- does this entry reflect your evaluation of the treatment records you had -- Progressive had received in May of 2020?

A.   It would be for all the records received to date.

Q.   And did you take into -- in conducting this evaluation, did you take into consideration all the records Progressive had received to date related to Mr. Wilkins' treatment?

A.   Yes.

Q.   And did you take into consideration the information Progressive had obtained to date related to any billing records?

A.   Yes.

Q.   And would you have taken into consideration the diagnostic studies that revealed evidence of degeneration?

A.   Yes.

Q.   And at this point in time, did you have any information that Mr. Wilkins' treating physicians had provided him with a permanency opinion?

A.   No.

Q.   And at this point, it's your understanding,

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

had Mr. Wilkins breached the tort threshold?

A.   No.

MR. GUNN:  Form.

Go ahead.

BY MR. ANGLEY:

Q.   And did you summarize in this entry, Mr. Wilkins' course of treatment?

A.   I'm sorry --

Q.   Oh --

A.   -- could you repeat that?

Q.   -- yeah.  In the entry, did you kind of summarize the treatment Mr. Wilkins had undergone to date?

A.   Yes.

Q.   And you summarized the diagnostic studies?

A.   Yes.

Q.   And the liability determination?

A.   Yes.

Q.   And the venue?

A.   Yes.

Q.   And his prior injuries?

A.   Yes.

Q.   And did you take all those things into consideration in determining an evaluation range for Mr. Wilkins' UM claim?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          **Toll Free 855-MYDEPOS**

A.   Yes.

Q.   Okay.  So on Page 77 -- oh, and at this point, did you have any information that Mr. Wilkins was scheduled for any further injections?

A.   No.

Q.   And at this point, did you have any information that Mr. Wilkins was scheduled for a surgery?

A.   No.

Q.   Under the section -- on Page 77, in the middle, there's a section that starts with the word, "Considered"?

A.   Yes.

Q.   What did you mean by, "Considered"?

A.   So these are based on the claimed injuries and the treatments, injuries that -- considering to -- for evaluation of the claim.

Q.   And what injuries did you consider and -- as part of your evaluation of the claim?

A.   Abrasions and a cervical aggravation with injections.

Q.   And did you provide a -- and the numbers that followed, you gave 500 to 1500 for the abrasion?

A.   Yes.

Q.   What are the -- what does the 500 to 1500

 MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

indicate?

A.   It's a -- a value, a range value for that particular injury.

Q.   Okay.  And that 500 to $1,500 range, was that -- what was that based on?

A.   Based on just experience, knowledge, and training, and the totality of the claim.

Q.   Okay.  And was it also based on your review of the particular records associated with Mr. Wilkins' claim?

A.   Yes.

MR. GUNN:  Form.

BY MR. ANGLEY:

Q.   And then underneath that, for -- you had, "CERV"?  That's cervical?

A.   Yes.

Q.   And "AGG"?  What does that stand for?

A.   Aggravation.

Q.   And then "W"?

A.   With.

Q.   And then the "ESI, MBB", does that reflect the injections Mr. Wilkins had undergone in his neck?

A.   Correct.

Q.   And what value range did you give for that?

A.   20,000 to 40,000.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

380889 Hallman Janice 05-23-2025        Page 56

Q.   And what was that based on?

A.   That's based on the totality of the claim, the -- all the information received to date, including records, experience, knowledge, training.

Q.   Okay.  And then underneath that, you had a section titled, "Bills"?

A.   Yes.

Q.   And what does this section of your evaluation reflect?

A.   This is a breakdown of the billing that we received to date, indicating the billed -- charged amounts on the bills and the balances, and what's considered.

Q.   Okay.  So you have -- the "Provider" column would be the billing entity?

A.   Yes.

Q.   The "Billed" column would be the total amount billed?

A.   Yes.

Q.   The "Balance" column would reflect what?

A.   The balance noted on that particular bill that we have.

Q.   And then the "Considered" column would indicate indicate --

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

A.   The considered amount that we considered for the -- the bill.

Q.   Okay.  So for the Trinity ER, can you kind of walk me through how you evaluated that particular record?

A.   So the Trinity ER, it was -- I considered 70 -- 75 percent of the bill charges.

Q.   And can you explain what you meant by that?

A.   So I considered 75 percent as reasonable and customary for those charges that were services billed.

Q.   And that 75 percent allocation, what is that based on?

A.   Based on prior trainings.

Q.   Okay.  So that -- so you considered $1,922 for the Trinity ER bill?

A.   Yes.

Q.   And the ER physician bill, can you explain how you evaluated that particular bill?

A.   Yes.  So that bill is PIP coverage, consider that bill in its entirety.  Well, consider that bill, so I did not consider any additional for that particular bill.

Q.   And beneath that there's a bill for Trinity Health, correct?

A.   Yes.



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380885 Hartman Janice 05-23-2023   Page 58

Q.   And can you explain how you evaluated that particular record?

A.   So the same -- so Trinity -- so PIP considered some of the bills for Trinity Health.  There were a -- a couple dates of service of October 18, 2019; December 6, 2019; March 27, 2020, through April 20, 2020, that were not considered under billeds, so I considered the reasonable customary for those charges.

Q.   And what was that -- the reasonable and customary, what was that based on?

A.   That was based on a review of a fee schedule through MTP which is Mitchell, a program, a tool that we use to assist with considering what's reasonable and customary for a charge -- specific charges.

Q.   And underneath that there was a bill for Doctors Urgent, correct?

A.   Yes.

Q.   And how did you evaluate that record?

A.   Considered zero, as PIP considered that bill.

Q.   And the Gulf -- the Gulf Coast MRI bill, how did you evaluate that particular record?

A.   I didn't consider any additional money on that one as PIP considered it.

Q.   And then the last bill was Spine & Ortho, correct?

 MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

380803 Hallman Janice 05-23-2023    Page 59

A.   Yes.

Q.   And how did you evaluate that particular record?

A.   So there was -- let's see.  So there was multiple dates of service that PIP considered already.  So there was one date of February 12, 2020, that was not considered under PIP, so I considered what's considered reasonable and customary.

Q.   And underneath that you have a section titled, "Specialists"?

A.   Yes.

Q.   And some of that information we've already discussed.  What is OOP?

A.   And that's out of pocket.

Q.   And what was the -- did you determine what the out-of-pockets were for this particular claim?

A.   Yes.

Q.   And what was that determination?

A.   So PIP covers -- pays 80 -- considers 80 percent of the bills, so the party would be responsible for 20 percent.  So I considered 20 percent, and then -- which is $2,500, and then I added -- the party has -- is responsible for $1,000 deductible through his PIP coverage, so I added that.  And then he also has Med Pay of $500, so I deducted the $500 that would've been



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

380889 Hartman Janice 05-23-2023   Page 60

applied towards the bills. So that's $3,000. And I all -- added in what was considered above for outstanding, and then I came up with $6,178.

Q. And then underneath that, you indicated generals and that pertained to the section titled, "Considered"?

A. Yes.

Q. And that was 20,500 to 41,500?

A. Yes.

Q. And can you kind of walk underneath this section, Generals/OOP total, can you kind of walk me through what you are indicating in this portion of your evaluation?

A. Sure. So I take what's considered under -- what I've ranged for the generals. I add what the party's out of pockets expense would be -- his out-of-pocket expenses. So that totaled $26,678 through $47,678. And then I deducted the $10,000 through -- of coverage that he had available through his tortfeasor, which already paid, which left me a range of $16,678 to $37,678.

Q. And can you tell me what a -- what is an evaluation range?

A. An evaluation range is an amount that we consider for the injuries.



MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**   **www.MILESTONEREPORTING.com**   **Toll Free 855-MYDEPOS**

Q.   And the evaluation range you determined from Mr. Wilkins was 16,678 to 37,678?

A.   Yes.

Q.   You can turn to the next page of your claim notes.  On June 13, 2020 --

MR. GUNN:  Hey, David, we've been going about an hour and 15.  Is this a good break point for you since we're going to a new page?

MR. ANGLEY:  Yeah.  Sure.

MR. GUNN:  All right.  Just ten minutes sound good, Ms. Hailman?

THE WITNESS:  Yes.

THE VIDEOGRAPHER:  All right.

MR. GUNN:  All right.  I've got 11:25 return, then.  Thanks everybody.

THE VIDEOGRAPHER:  I'll get us off the record.  One moment please.  The time is 11:15 a.m., and we're off the video record.

(A recess was taken.)

BY MR. ANGLEY:

Q.   All right, Ms. Hailman, we're back from a brief convenience break, and before the break we were discussing your claim note on June 13, 2020, on Page 76 of the claim notes.  If you could go to Page 78 of the claim notes for me.  There's an entry on June 13, 2020,

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

at 10:09 a.m.  Did you make this entry?

A.   Yes.

Q.   And based on your evaluation, what did you do next as it pertains to Mr. Wilkins' claim?

A.   In response to the additional records received, I made an offer of $17,000, and I mailed and faxed an offer letter to Plaintiff's counsel and forwarded a copy to my defense counsel.

MR. ANGLEY:  Okay.  If you could turn to tab 5 of the Exhibit notebook.  We'll mark this as Exhibit 5. It's PRG 1081.

(Exhibit 5 was marked for identification.)

BY MR. ANGLEY:

Q.   Is this a copy of that letter that you sent on June 13th of 2020?

A.   Yes.

Q.   And in the letter you offered $17,000 to settle Mr. Wilkins' uninsured motorist claim?

A.   Yes.

Q.   And despite the fact that Mr. Wilkins' attorney had communicated an unwillingness to settle for limits, were you still attempting to negotiate and resolve his UM claim?

A.   Yes.

Q.   And at the bottom of Page 78 there's an entry

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

on June 16, 2020, at 1:42 p.m.  Do you see it?

A.   Yes.

Q.   And that was by Mr. Miller, correct?

A.   Yes.

Q.   And the entry goes on to the next page.  Did he provide you any direction or instruction in this entry?

A.   No.

Q.   What did -- what was Mr. Miller indicating in this entry?

A.   He acknowledged that updated offers were extended to Plaintiff's counsel, that I continue to push for resolution.  We had not received any response or counter demands received from the plaintiff's counsel, and then I was on diary for receipt to review discovery.

Q.   So the litigation process with Mr. Wilkins was ongoing at this point in time?

A.   Yes.

Q.   Did you receive a response to the offer of $17,000?

A.   As of that date, no.

Q.   So on Page 79 of the notes, on July 9, 2020, at 12:32 p.m., Mr. Miller has an entry that date, correct?

A.   Yes.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380869 Hallman Janice 05-23-2023

Q.   And what does he indicate in that entry?

A.   The attorney sent in medical -- additional medicals via e-mail and documents for Plaintiff Mondamin Wilkins dated July 9, 2020.  There was no specific demand made or timeline cited for a response.  He sent me a diary to review and respond.

Q.   And then beneath that you had an entry on the same day, right?  July 9, 2020?

A.   Yes.

Q.   At 3:07 p.m.?

A.   Yes.

Q.   And does this entry reflect your review and evaluation of the additional records received from Mr. Wilkins?

A.   Yes.

Q.   You can go to -- and did you review the medical records from Mr. Wilkins that Progressive had received?

A.   Yes.

MR. ANGLEY:  If you go to tab 6 of your binder, we'll mark this as Exhibit 6.  It's PRG 1397 through 1406.

(Exhibit 6 was marked for identification.)

BY MR. ANGLEY:

Q.   Is this a copy of the records you would've

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

380889 Hallman Janice 05-23-2025   Page 65

reviewed?

A.   Yes.

Q.   And if you go to PRG 1400, there's an enclosed record with a date of service of June 18, 2020, from Trinity Spine Center; is that correct?

A.   Yes.

Q.   And you mentioned before there was no demand for the policy limits included with these -- with these records, correct?

A.   That is correct.

Q.   And based on this June -- if you turn to PRG 1403, did Mr. Wilkins undergo a cervical radiofrequency ablation?

A.   Yes.

Q.   And were -- based on this record, were any additional procedures planned or scheduled?

A.   No.  It's just noted to follow up in six weeks.

Q.   And if you turn back to your claim note entry on Page 79 of the claim notes.  Oh, pardon me.  Before we do that, based on this June 18, 2020, date of service record, was there any opinion by Dr. Saldeen, who signed the record, that Mr. Wilkins had suffered a permanent injury caused by the June -- July 26, 2019, auto accident?

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

A.   No.

Q.   So at this time, to your understanding, had Mr. Wilkins breached the tort threshold?

A.   No.

Q.   And at -- back to your claim note on Page 79, did you evaluate the information that was provided?

A.   Yes.

Q.   And is that what this entry reflects?

A.   Yes.

Q.   And you -- and this is a -- and you take into consideration the radiofrequency abolition that Mr. Wilkins underwent?

A.   Yes.

Q.   And then you have an analysis of the evaluation of the current billing information, correct?

A.   Yes.

Q.   And then at the bottom, it starts with, "Plaintiff has now received," what is -- what were you indicating in that section of your claim note?

A.   So according to the additional documentation received, Plaintiff had now undergone an RFA, and appears to still be treating.  The total bills are approximately 55,000 with a balance of about 26,000.  We know that tort tendered their 10,000, and I agreed to range up to the limits and continue negotiations and



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

380885 Hartman Janice 05-23-2023   Page 67

attempt to resolve.

Q.   And at that point, beneath that, did you request authorization for that -- you sent an authorization request, correct?

A.   Oh, yes.

Q.   And what's an authorization request?

A.   To -- an authorization request, because I required authorization to range it up to the limits at that time.

Q.   And did you determine an updated evaluation range?

A.   Yes.

Q.   And what was that evaluation range?

A.   20,500 to 50,000.

Q.   Okay.  And why did you -- to your understanding, why did you agree to range it up to the limits or have -- increase the evaluation range from a low of 20,500 to a high of 50,000?

A.   Well, he received additional treatment, the RFA, and it appeared that he was still treating.  We had an increase in bills now.  So based on that additional information, I would've determined to range it up to the limits.

Q.   And was your goal to attempt to try and continue negotiations to reach a resolution of Mr.



**MILESTONE │ REPORTING  COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          **Toll Free 855-MYDEPOS**

380809 Hallman Janice 05-23-2023                                    Page 68

Wilkins' claim?

A.   Yes.

Q.   Do your understanding, though, was Mr. Wilkins willing to resolve his claim in exchange for the policy limits for amounts below the policy limits?

MR. GUNN:  Form.

THE WITNESS:  As of that date, no.  He was not willing to.

BY MR. ANGLEY:

Q.   And if you go to Page 80, the note begins on the bottom of Page 79, Mr. Miller has an entry on July 9, 2020, at 3:21 p.m.  What did he indicate in that entry?

A.   I'm sorry, could you repeat that date?

Q.   July 9, 2020, at 3:21.

A.   Oh, okay.

Q.   There was an entry by Mr. Miller.

A.   Yes.

Q.   Did he approve the authority request?

A.   Yes.

Q.   And then the next day, July 10, 2020, at 12:18 p.m., did you place a phone call to Mr. Wilkins' attorney's office?

A.   Yes.

Q.   And did you make contact with anyone?



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

A.   Yes.  I spoke to Attorney Peter.

Q.   And what did you discuss?

A.   Confirmed with him that I received the additional records.  I made an updated new offer of 25,000 in attempt to resolve.  Counsel advised at that time -- he advised the client is no longer accepting limits.  He feels that it's worth more now.  I asked if there was any way he'd be willing to negotiate in attempt to resolve, and he declined.

He said he was going to relay the offer to the client.  And then I advised if willing to -- if he's willing to discuss an attempt to resolve, to send me a response.

Q.   And based on this entry, was Mr. Wilkins willing to settle his claim for the policy limits?

MR. GUNN:  Form.

THE WITNESS:  In my opinion of our conversation, no.

BY MR. ANGLEY:

Q.   Did you send a -- so you extended a verbal offer of $25,000 at that point?

A.   Yes.

Q.   Did you also relay that offer in writing?

A.   Yes.  I mailed a confirmation.

MR. ANGLEY:  And if you turn to tab 7 of the

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**      www.**MILESTONEREPORTING**.com      **Toll Free 855-MYDEPOS**

Exhibit notebook, we'll mark it as Exhibit 7, Bates stamp PRG 1075.

(Exhibit 7 was marked for identification.)

BY MR. ANGLEY:

Q. Is this a copy of the correspondence you sent to Mr. Wilkins' attorneys at the Tragos firm?

A. Yes.

Q. And is -- in this correspondence, you offered $25,000 for settlement -- in settlement -- to settle Mr. Wilkins' UM claim?

A. Yes.

Q. Did you receive a response to the $25,000 offer from the Tragos firm?

A. As of that date, no.

Q. Did -- after that date, did you receive a formal response to the $25,000 offer?

A. I don't believe so, no.

Q. And after this point, did the defense of the case continue?

A. Yes.

Q. And if you turn to Page 82 of the claim notes, you have an entry on November 3, 2020, at 8:14 a.m. Do you see it?

A. Yes.

Q. What did you indicate in this entry?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A.   Oh, okay.  Uploaded discovery for both parties.

Q.   And that would be discovery obtained in connection with the pending lawsuit Mr. Wilkins had brought against Progressive?

A.   Yes.

Q.   If you turn to Page 85 of the note, you have an entry on November 3, 2020, at 9:19 a.m.  Do you see it?

A.   Yes.

Q.   And what does this entry reflect?

A.   This would be a review of any documentation that has received to date, including medicals, billing, discovery.

Q.   And based on this entry, had you received any new treatment or billing information from Mr. Wilkins from the prior evaluation you had completed?

A.   So it looks like there was a notification that on May 13, 2014, he had -- Plaintiff had a cervical lumbar MRI, but there was no records received.  So most likely it would've been mentioned possibly in a claim note.

Q.   Okay.  So if you --

A.   Or sorry, not a claim note but medical record.

Q.   Right.  As it pertains -- so had you received



**MILESTONE | REPORTING  COMPANY**
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

those prior cervical or lumbar MRIs?

A. Could you repeat that?

Q. Sure. It indicates -- so the note you're referring to is 5-13-14 C/L MRI?

A. Yes.

Q. Had you received the actual records?

A. No.

Q. Okay. And then underneath that, you're -- you have a summary of the -- Mr. Wilkins' known treatment to date?

A. Yes.

Q. Based on -- and the last treatment record I see for Spine & Ortho was 6-18-2020; is that correct?

A. Yes.

Q. And that's something you had taken into consideration in your prior entry on July 9, 2020, correct?

A. Yes.

Q. But at this point, did you update your evaluation rank?

A. No.

Q. And if you go to Page 87 of the claim notes, there's an entry on November 4, 2020, at 8:43 a.m. What is -- what are you indicating in this entry?

A. So I received additional records for the

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     **www.MILESTONEREPORTING.com**     **Toll Free 855-MYDEPOS**

plaintiff.  It was billing records for Spine & Ortho for treatment dates of September 11, 2019, through July 30th of 2020, totaling $39,771.15, with a balance of $5,047.86, and a billing for Trinity Healthcare, date of service 8-1-19 through October 5, 2020, total bill, $10,802.02, with a balance of $5,190.80.

Q.   At that point, had you received the -- this is billing information.  Had you received the actual treatment records at this point?

A.   No.

Q.   Can you go to Page 88 of the claim notes for me?  There's an entry on November 6, 2020, at 10:21 a.m. Do you see that entry?

A.   Yes.

Q.   And did you have a conversation with Defense Counsel Ash on this date?

A.   Yes.

Q.   And based on that discussion, what was the plan?

A.   So based on this discussion, the plan was that Defense Counsel was going to reach out to the Plaintiff's Counsel in an attempt to spark negotiations and obtain an updated demand and attempt to resolve.

Q.   So were you continuing efforts to attempt to resolve Mr. Wilkins' UM claim?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A.   Yes.

Q.   And on November 23, 2020, on the same page, there's an entry at 10:08 a.m.  It's second from the bottom.  Do you see it?

A.   Yes.

Q.   Did you call Mr. Wilkins' attorney?

A.   Yes.

Q.   And who did you speak with?

A.   Pete.

Q.   And what did you discuss?

A.   He confirmed that there was this -- he had a call schedule with my -- my defense attorney early December.  He indicated that Mondamin is scheduled for a second RFA for after the holidays, and that -- that they would be looking for $200,000 now.

I explained that this is UM coverage and there's a $50,000 limit.  They fell away from the policy limits, and then I -- there was no resolution on that call, so I told him I was going to discuss it with my counsel.

Q.   So at this time, Mr. Wilkins' defense counsel was making a demand for amounts above the applicable UM policy limits?

A.   Yes.

Q.   And based on that, did that provide -- what



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          **Toll Free 855-MYDEPOS**

Hartman Janice 05-23-2023

did that indicate to you?

A.    That they're -- in my opinion, he was not going to resolve it for the $50,000.

Q.    On Page 89 of the claim notes there's an entry on December 9, 2020 at 2:42 p.m.  Do you see it?

A.    Yes.

Q.    And does this entry reflect a discussion you had with defense counsel that day?

A.    Yes.

Q.    And you -- what did you note as it pertained to the known medical billing information for Mr. Wilkins?

A.    That his bills were around 80,000.

Q.    And what did -- what was noted as it pertained to whether or not Mr. Wilkins would resolve his claim for the policy limits?

A.    Plaintiff's Counsel advised my defense counsel that his client would now not take policy limits.

Q.    And beneath that you have an entry at 3:39 p.m. Can you tell me what you were reflecting in this particular entry?

A.    I documented the verbal demand of $200,000.

Q.    And above that, was Defense Counsel going to send an e-mail to Mr. Wilkins' attorney to try to facilitate further resolution discussions.



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        www.**MILESTONEREPORTING**.com        **Toll Free 855-MYDEPOS**

380809 Hailman Janice 05-23-2023                                    Page 76

A.    Sorry, could you repeat that?

Q.    Sure.  In the 2:42 p.m. entry --

A.    Uh-huh.

Q.    -- was the plan for Defense Counsel to send an e-mail to Mr. Wilkins' attorney?

A.    Yeah.  In this case, Defense Counsel would follow up with e-mail, yes.

Q.    And at this point, was it clear to you that Mr. Wilkins would not resolve his UM claim for the policy limits?

A.    Correct.

Q.    Was there any deadline for the verbal demand of $200,000?

A.    No.

MR. ANGLEY:  If you turn to tab 8, we'll mark it as Exhibit 8.  It's PRG 4893 to 94.

(Exhibit 8 was marked for identification.)

BY MR. ANGLEY:

Q.    Ms. Hailman, is this -- does this document, exhibit reflect an e-mail from Attorney Diaz to you on December 9th of 2020, at 10:00 a.m.

A.    Yes.

Q.    And is this information reflected in the claim note we were just looking at on Page 89 of the notes at 2:42 p.m.?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          **Toll Free 855-MYDEPOS**

A. Yes.

Q. If you could go back to Exhibit 1 for me, on Page 96 of the claim notes, there's an entry that you have on December 24, 2020, at 9:16 a.m.; do you see that?

A. Yes.

Q. And in this entry, you requested authorization for Mrs. Wilkins' claim for the 50,000?

A. Yes.

Q. But you had previously had authorization from Mr. Miller as to Mr. Wilkins, correct?

A. Yes.

Q. And then beneath that, there's an entry by Nicholas -- there's two entries by Nicholas DePasquale (phonetic); do you see that?

A. Yes.

Q. Who is Mr. DePasquale?

A. That would've been my manager at the time, so --

Q. Do you have any recollection of why you were discussing the claim with Mr. DePasquale and not Mr. Miller?

A. I don't recall. I'm just assuming that Mr. Miller was just not available in the office.

Q. And this was Christmas Eve?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

A.   Correct?  Yeah, it was around the holidays.

Q.   And Mr. DePasquale, did he authorize the tender of the policy limits as to Mrs. Wilkins?

A.   Yes.

Q.   And did you also discuss Mr. Wilkins' claim with Mr. DePasquale, or was it focused solely on Mrs. Wilkins' claim?

A.   We discussed both.

Q.   Do you recall the -- what you discussed in particular?

A.   I do not.

Q.   And following that discussion with Mr. DePasquale, did you tender the policy limits as to Mr. Wilkins' UM claim?  And there's an entry at 10:18 p.m. -- or a.m., on the 24th.

A.   Yes, that's correct.

Q.   And if you turn to tab 9 of the exhibit notebook, we'll mark this as Exhibit 9.  It's PRG 1565 and PRG 3541.  And is this a copy of the correspondence you sent to the Tragos firm on December 24, 2020, tendering the applicable UM policy limits to Mr. Wilkins?

(Exhibit 9 was marked for identification.)

A.   Yes.

BY MR. ANGLEY:

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

380889 Hallman Janice 05-23-2023                                    Page 79

Q.   Did you send a proposed release?

A.   Yes.

Q.   And did you indicate that tender was not conditioned upon execution of any particular form of release?

A.   Correct.

Q.   And did you indicate a willingness to discuss the particular terms in -- the terms of the release with counsel for Mr. Wilkins?

A.   Yes.

Q.   And did you include a check for the $10,000 policy limits?

A.   $50,000.

Q.   -- or 50 -- excuse me.  Thank you.

A.   Yes.

Q.   Turning back to the claim notes, if you can go to Page 99.  You have an entry on January 4, 2021, at 8:13 a.m., at the bottom of the page?

A.   Yes.

Q.   And what are you reflecting in that entry?

A.   It was confirmation that the tenders were delivered via FedEx to Plaintiff's Counsel's office.

MR. ANGLEY:  If you could turn to tab 10 of the

binder for me.  Bates stamp PRG 4891 to 92, and

4896.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380889 Hailman Janice 05-23-2025                    Page 80

(Exhibit 10 was marked for identification.)

BY MR. ANGLEY:

Q.   Ms. Hailman, on January 4, 2021, did Ms. Diaz send you an e-mail?

A.   Yes.

Q.   And did this enclose a December 31, 2020, letter from Attorney Peter Sartes?

A.   Yes.

Q.   And what was your understanding of this December 31, 2020, correspondence?

A.   Can you give me a moment, so I can read it?

Q.   Sure.  Take your time to read it.

A.   So it's my understanding that they are not accepting the tenders, $50,000.

Q.   Okay.  And turn back to the beginning of the exhibit.  Did you forward this correspondence to your supervisor, Mr. Miller?

A.   Yes.

Q.   Okay.  And did he provide you with any instructions or guidance?

A.   He indicated to get with my defense counsel on her thoughts on this, and we can review it with legal, our legal department.

Q.   And then back to the January -- back to the claim notes on Page 100, Mr. Miller has an entry at 3:01

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380809 Hallman Janice 05-23-2023

p.m. Do you see it? On January 15th of '21?

A. Yes.

Q. Did he provide you any guidance as it pertained to the response to the December 31, 2020, letter from Attorney Sartes?

A. Any direction to my -- to me directly?

Q. Or any guidance in general?

A. In general? Let's see. He just indicated that we would reach out to our defense counsel to request clarification on intent with release, to respond outlining bad faith allegations as not in complaint; however, recognize allegations in the CRN however we responded. Advise if they have issues to release -- with the release, we will review any changes, and then if they don't intend to resolve the claim, to return the money.

Q. And on the -- Page 101 of the claim notes on January 15, 2021 at 3:22 p.m., did you discuss the response with Defense Counsel?

A. Yes.

Q. And beneath that, February 3, 2021, at 11:37 a.m., is this a copy of the e-mail Attorney Diaz sent to Attorney Sartes in response to the December 31st, 20 -- 2020 e-mail?

A. Yes.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**       **www.MILESTONEREPORTING.com**       **Toll Free 855-MYDEPOS**

Q. And was this e-mail forwarded to you?

A. One second.

Q. If you turn to tab 11 --

MR. ANGLEY: We'll mark as Exhibit 11.

(Exhibit 11 was marked for identification.)

BY MR. ANGLEY:

Q. It's PRG4915 to 4916.

A. Okay. Yes, it was forwarded to me.

Q. Back to the claim notes on Page 101, you have an entry on February 3, 2021 at 5:38 p.m.; do you see that entry?

A. Yes.

Q. Did Mr. Wilkins reject Progressive's tender of the policy limits?

A. Sorry. I'm -- I apologize. Could you tell me the date of --

Q. Sure.

A. -- and time of the note again?

Q. So Page 101 of the claim notes.

A. Yep.

Q. February 3, 2021.

A. Yep.

Q. 5:38 p.m.

A. 5:38. Okay.

Q. Did Mr. Wilkins reject the policy limits?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900  www.MILESTONEREPORTING.com  Toll Free 855-MYDEPOS

A.   Yes.

Q.   And if you turn to tab 12 of your binder --

MR. ANGLEY:  We'll mark it as Exhibit 12.

(Exhibit 12 was marked for identification.)

BY MR. ANGLEY:

Q.   This is PRG 1548 to 1552.  Is this a copy of the rejection letter?

A.   Yes, it is.

Q.   And was there any reason given in the rejection letter for the reason that policy limits were rejected?

A.   No.

Q.   If you turn back to Page 101 of the claim notes, Mr. Miller has an entry at the bottom of this page, dated February 4, 2021 at 8:29 a.m.

What did he indicate in this entry?

A.   He acknowledged receipt of the letter, that Plaintiff Counsel was rejecting the tender for Mondamin. Appears only Mondamin was rejected.  Noted he -- he noted that the draft for Lisa had cleared.  So it was cashed by Plaintiff's Counsel.  And then we reassigned the claim to a Level 42 -- additional -- an -- a new a new adjuster for handling.

Q.   Okay.  So it's that point in time the claim was reassigned?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**       **www.MILESTONEREPORTING.com**       **Toll Free 855-MYDEPOS**

380885 Hartman Janice 05-23-2025   Page 84

A.   Yes.

Q.   And once the file was transferred, did you have any further involvement in the adjustment of Mr. -- the adjustment or handling of Mr. Wilkins claim?

A.   No.

Q.   Any personal knowledge of what occurred in the claim following your -- following the transfer?

A.   No.

Q.   During the time of your involvement in this claim, did Mr. Wilkins breach the tort thresholds?

A.   No.

MR. GUNN:   Form.

BY MR. ANGLEY:

Q.   During your claim settling, did you ever receive a demand for the policy limits?

A.   My claim handling?  No.

Q.   During your claims handling, did Mr. Wilkins' attorney advise you that Mr. Wilkins was not willing to settle for the policy limits?

A.   Yes.

Q.   Were you, at all times, attempting to come to a fair and reasonable evaluation of the claim?

A.   Yes.

Q.   Did you give fair consideration to the information you were provided?

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

A.   Yes.

MR. ANGLEY:  Ms. Hailman, I don't have any further questions for you at this time.  Appreciate your time.  Attorney Gunn may have a few for you.

MR. GUNN:  You good to go, ma'am?

MR. ANGLEY:  Or -- do you want to take a break or you want to proceed forward?

THE WITNESS:  No, we can proceed.

CROSS-EXAMINATION

BY MR. GUNN:

Q.   Tell me what, if any, training at Progressive you received regarding how you should differently handle a UM claim as opposed to a bodily injury auto liability claim?

A.   I mean, I've had a lot of training over the years.  So specific training, I mean, we should handle each claim fairly, accurately.

Q.   Well, are there differences between your ability to adjust a UM claim as opposed to a bodily injury liability auto claim?

A.   I mean, each -- each claim is handled based on the merits of -- of, you know, of the claim.  I mean, I handle each claim, you know, as they come in, according to what's available.  Yeah.

Q.   Well, I respect that.  I just want to know;



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

what are your understandings of the differences in your ability to obtain information when you adjust a UM claim as opposed to a bodily injury claim?

MR. ANGLEY:  Object to the form.

THE WITNESS:  I mean, it's -- one difference is the availability of a tortfeasor.

BY MR. GUNN:

Q.   There's always a tortfeasor, right?  Somebody is at fault for a car crash, and now a claim arises.  So I want to talk to you about your understanding, when you're handling this UM claim, of the difference between how you were to handle a claim as opposed to a BI liability claim.

List each and every difference you were trained exists so that you can properly handle, fairly, on its own facts, a UM claim.

MR. ANGLEY:  Form.

THE WITNESS:  I'm not sure how -- what you're really quite asking, regarding --

BY MR. GUNN:

Q.   Is it fair to say that if I ask you to list each and every difference the way you handled this UM claim as opposed to if this had been a BI claim, you can't list any?

Is that the truthful answer today?

III  MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380805 Hallman Janice 05-23-2025

MR. ANGLEY:  Object to the form.

THE WITNESS:  I feel the -- the difference, like I said, would be, you know, additional contact with a tortfeasor.

BY MR. GUNN:

Q.  Okay.  What does that mean; additional contact with the tortfeasor?

A.  Well, would -- so there's a tortfeasor that we can reach out to, which their coverage would be -- comes into play prior to our uninsured motorist coverage.

Q.  Okay.  So there is underlying BI that would be a set-off for the UM benefit otherwise available. That's one.

A.  Yeah.

Q.  What else?

A.  I'm unsure.

Q.  So did Progressive, as part of the training, require that you read its form of auto liability policies that included uninsured or underinsured motorist coverage?

A.  Yes.  We have policy contracts that are available, yes.

Q.  Were you trained on what they say and how they operate?

A.  Yes.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          **Toll Free 855-MYDEPOS**

Q.   Were you trained about policy conditions?

A.   Yes.

Q.   Were you trained on the difference between when an adverse party, a stranger to the company, somebody not your own customer is claiming against a customer that there is liability for entry?

Were you trained on that?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Would you repeat that?

BY MR. GUNN:

Q.   Were you trained on how your policy functions when a stranger, meaning somebody that's not your own customer, wants money to release your own customer from liability?

Were you trained on how the contract works?

A.   Yes.

Q.   And were you trained that when it's your own customer, your own insured, who is due to have coverage benefits as payable by contract for uninsured motorists, how you're supposed to adjust those losses?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Yes.  We're trained on how to handle the losses, yes.

BY MR. GUNN:

Q.   And so, you know, when you adjust Mr. Wilkins'

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

loss, that your customer is required to work with you if you need to investigate a claim and need facts to better understand your fair, prompt promise of payment as due, right?

MR. ANGLEY:  Form.

THE WITNESS:  Yeah.

BY MR. GUNN:

Q.  And you know that if you want to ask him for a medical authorization so you can get records and read them for yourself, and provide that fair claim service, all you have to do is set a med authorization.  And under the contract of insurance, Mr. Wilkins must sign and provide a med auth for reasonable access to his medical records directly from providers; you know that, right?

MR. ANGLEY:  Object to the form of the question.

THE WITNESS:  We do -- we have -- yes.  We can request a medical authorization, yes.

BY MR. GUNN:

Q.  And if that isn't provided to you reasonably, and it impairs your ability to objectively, proactively, diligently, and fairly evaluate coverage benefits as due, you can tell the insured, we must reserve our rights to deny coverage for your lack of compliance with

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.**MILESTONEREPORTING**.com          Toll Free 855-MYDEPOS

our contract.

You know, you can say that to a customer, right?

MR. ANGLEY:  Form.

THE WITNESS:  Unknown, specifically.

BY MR. GUNN:

Q.  I didn't hear your answer, ma'am.  Can you speak up just slightly?

A.  Unknown.

Q.  I didn't hear you again.  Speak up please.

A.  I said unknown.

Q.  Unknown; is that your answer?

A.  Yes.

Q.  You didn't know that?

A.  What you're saying could deny coverage specifically?

Q.  That you could say, you were -- your noncompliance with our contract may jeopardize your ability to retain coverage.  You can deny coverage.  You can threaten to reserve the right to deny coverage.

You knew all that, or did you?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Yes.

BY MR. GUNN:

Q.  Yes, you knew that?

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380885 Hailman Janice 05-23-2025

A.   Yes.  But I've never encountered that occurring.

Q.   Okay.  Did you know that you can ask to have a medical doctor of your company's choosing evaluate Mr. Wilkins' injuries to better assess the fair claim benefits due under you coverage?

A.   Yes.

Q.   And you can do that without being in litigation.  And you can do that if you question whether the injuries are caused by a crash or whether the injuries so caused are permanent.

You have the tool in the UM toolbox to request that a doctor answer those questions for the company, right?

A.   Yes.

MR. ANGLEY:  Form.

Ms.  Hailman, if you could just pause before answering so I can --

THE WITNESS:  Sure.

MR. ANGLEY:  -- insert any objection to form and we can have a clear --

THE WITNESS:  Sure.

MR. ANGLEY:  -- record.  I appreciate it.

BY MR. GUNN:

Q.   Did Progressive train you on when you should

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

send a medical authorization out, so that you can timely gather medical records to assist in evaluating a claim fairly and promptly?

A.   I don't recall the specific training on timely -- on timeframes, pertaining to that.

Q.   Did Progressive have a claims manual you could access?

A.   There's -- I'm sure, yes.  There's manuals.

Q.   Did you ever refer to it, to the best of your recollection, as part of your UM adjustment process? Generally.  Just -- not for Mr. Wilkins.  Just generally.

Did you pull it up on a computer; go to a library?

Did you look at it and say, here, I need some help because I want to make sure my customer is getting prompt, fair, claims service?

MR. ANGLEY:  Object to the form.

THE WITNESS:  On this particular claim, no.

BY MR. GUNN:

Q.   Generally was my question.  So please, do you recall, generally, ever, to assist you with the claim adjustment process, referencing the claims manuals available to you?

MR. ANGLEY:  Object to the form of the

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900         www.MILESTONEREPORTING.com         Toll Free 855-MYDEPOS

question.

THE WITNESS:  Yes.  Generally, at times, I would refer to our guidelines.

BY MR. GUNN:

Q.  If you wanted to have the radiographic films looked at by a radiologist, did the company have access to vendors, radiologists, who could look at the films and guide you on what the changes show?

A.  Yes.

Q.  Did you, at your desk, have the discretion to send a medical authorization if you thought it would help you understand the facts of a loss?

A.  Yes.

Q.  Did -- could you send somebody to a -- what we'll call a compulsory medical examination -- but one of those doctors of the company's choosing; could you do that without consulting with a supervisor?

A.  Usually consultation would be discussed if that's something we'd wish to do at that time.

Q.  With a manager?

A.  Yes, with my supervisor.

Q.  Okay.  And what about sending imaging out to have it looked at by an independent, company-chosen radiologist?

If you disputed or had questions about what

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

showed up on the films, according to the reading report, could you send the imaging to a radiologist without going to your supervisor first?

A. Well, usually it would be reviewed. I'd round table it with my supervisor for an action plan --

Q. All right.

A. -- and if that's what we -- would be best.

Q. All right. So when you picked up this file, just so we get the time set, the civil remedy notice had already gone out and been responded to, rejected; the answer being, we dispute the value. We're not tendering our policy limit, in response to the CRN, right?

A. Yes.

Q. Okay. So you knew, from the minute you were handling this claim, there were really two potential claims, right?

MR. ANGLEY: Object to the form.

THE WITNESS: You were saying two potential claims, meaning Mr. And Mrs. Wilkins?

BY MR. GUNN:

Q. You're right. I'm going to only talk about Mr. Wilkins, and I think Mr. Angley told you we're just talking about Mr. Wilkins today, okay? You knew Mr. Wilkins had two claims. And to be specific, he had the claim he presented for his UM benefits to be paid in the

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900   www.MILESTONEREPORTING.com   Toll Free 855-MYDEPOS

380889 Hallman Janice 05-23-2025                                Page 95

amount of $50,000; Claim 1.  He had a second claim.

Because you know, as you're trained at Progressive, that

once a civil remedy notice goes 60 days without being

cured here, the payment wasn't made.  There's now a

second right.

          And that second, right is a claim of bad

faith, right?

          MR. ANGLEY:  Object to the form.

          THE WITNESS:  Yes.

          BY MR. GUNN:

     Q.   Okay.  And you've been deposed in a prior bad

faith case, right?

     A.   Yes.

     Q.   Much like we're talking about here, the issue

is whether the company did its job in adjusting a claim.

          And that's sometimes referred to as a bad

faith case, right?

          MR. ANGLEY:  Object to the form.

          THE WITNESS:  Yes.

          BY MR. GUNN:

     Q.   All right.  Now, was that bad faith case

before you adjusted Mr. Wilkins?

     A.   I don't recall the exact dates of the prior

loss, for the -- the prior --

     Q.   I'm sorry.  I didn't mean to cut you off.  You

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

-- please finish your answer.

A.   I don't recall if -- the deposition for it; I honestly don't recall the time frame between the two.

Q.   Okay.  I just want to be clear that regardless of whether that occurred before or after, based on your training, background, experience at Progressive, you knew the significance of a CRN and giving rise to a new legal right to pursue a potential for bad faith, fair?

MR. ANGLEY:  Form.

THE WITNESS:  Yes.

BY MR. GUNN:

Q.   All right.  Did you ever write a letter to any provider to -- that says, dear provider, in review of the file that included a civil remedy notice, there is an issue of whether my insured has sustained a permanent injury as a result of the July 26, 2019 motor vehicle accident.  In order to fairly adjust his loss, I would like your opinion of whether Mr. Wilkins did sustain a permanent injury, to meet the tort threshold.

Did you write a letter like that?

A.   No.

Q.   Did you ever do that in your career at Progressive; write a letter like that, where it didn't appear on the face, in those magic words, to a reasonable degree of medical probability, I believe that



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

the patient has sustained a permanent injury as a result of the motor vehicle accident at issue.

Did you ever -- did you ever write a letter that asked for an answer from a treating doctor?

MR. ANGLEY:  Form.

THE WITNESS:  No, I have not.

BY MR. GUNN:

Q.   Were you trained that that was a tool you could use to better understand the facts of a loss?

A.   I do not recall that, no.

Q.   Do you know whether disability insurers do that all the time, because they need an opinion of a physician to certify or verify that someone meets their definition of disability under a policy?

Do you know?

MR. ANGLEY:  Object to the form of the question.

THE WITNESS:  I can't speak for a disability carriers.

BY MR. GUNN:

Q.   I -- no, I understand.  You have no knowledge of whether or not disability insurers frequently write for an -- a physician opinion of disability.  You just don't know one way or the other.

Didn't come up in your career yet?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900       www.MILESTONEREPORTING.com       Toll Free 855-MYDEPOS

A.   Correct.

Q.   Okay.  And Progressive never said, hey, let's at least ask a treating doctor.  If we wonder if someone's got a permanent injury, let's just write a letter.  Say, does the patient have an -- maybe it is as simple as check a box, yes or no, and sign and date it, physician.

That was not part of the training or anything that you used at Progressive to gather facts to help you evaluate the claim to benefit?

MR. ANGLEY:  Object to the form.

THE WITNESS:  I do not recall that, no.

BY MR. GUNN:

Q.   Do you think sometimes it's the treating doctor's job to see a patient and try to get them treatment to get them better as opposed to use language that might meet some tort threshold that you would want to know about for purposes of a UM adjustment?

MR. ANGLEY:  Objection.  Speculation.

THE WITNESS:  I can't speak on what a doctor should or shouldn't be doing.  I'm not a medical doctor.

BY MR. GUNN:

Q.   Oh, I'm -- I -- you bring up a very, very good point.  You are not a medical doctor, are you?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

A.   No.

Q.   You would have to rely on what the medical findings are in medical records, and if you had questions about them, get advice from your own medical team, right?

        MR. ANGLEY:  Object to the form.

        THE WITNESS:  Correct.

        BY MR. GUNN:

Q.   Did you form an impression, in your capacity as an adjuster, of whether sometimes treating doctors might not know to put opinions about the tort threshold when they're creating medical records for treatment of a patient?

        MR. ANGLEY:  Object to this form.

        THE WITNESS:  I cannot speak as to what a medical doctor should or shouldn't be documenting or referencing in their medical records.

        BY MR. GUNN:

Q.   100 percent.  And I didn't ask that fairly of you.  I am asking; did you form an impression, as an adjuster, of whether sometimes doctors are not going to think to put a tort threshold statement in a medical record?

        MR. ANGLEY:  Object to the form.

        THE WITNESS:  I don't know, or I don't expect



**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

them to put anything in a medical record.  That's up to them, as to what they should or shouldn't be putting in a medical record.  But there was nothing in the medical records pertaining to of any permanency.  So I can only go --

BY MR. GUNN:

Q.   But Mr. Angley asked you about that because I assume we're going to get to the fact that's important to how you evaluate a UM claim.

So my point is, can you, as an adjuster, assume that since the examiner, the physician, doesn't put anything about permanency in a record, that the examiner doesn't think there's a permanent injury?

MR. ANGLEY:  Object to the form.

THE WITNESS:  I would assume if I don't see something specifically noted in a record, due to permanency, that there isn't any permanency.

BY MR. GUNN:

Q.   And what is the basis that you're being fair to make that assumption?

A.   I can only go by what's in the medical records.

Q.   There's no statement one way or the other about permanency in these medical records.  It doesn't say, this is a temporary injury.  This is going to



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     **www.MILESTONEREPORTING.com**     Toll Free 855-MYDEPOS

resolve. This is permanent. This is never going to resolve, right?

It's just silent in the medical records you reviewed as to whether Mr. Wilkins has a permanent injury; do you agree?

A. Correct. It's silent.

Q. And so why would you, wanting to give the benefit of the doubt to your customer, your insured, assume that unless there is an express statement that there is permanent injury, there isn't one?

Why do you do it that way?

MR. ANGLEY: Object to the form.

THE WITNESS: Well, I can't assume it is -- it is or isn't. So I -- like I said, I have to go by based on the medical records.

BY MR. GUNN:

Q. So the answer is, when a medical record doesn't say one way or the other, I don't know, from the medical record, whether there is or is not a permanent injury in my claimant, agreed?

MR. ANGLEY: Object to the form. Counsel testifying, misstating her testimony.

THE WITNESS: I can only go by what is in the medical records if permanency is determined.

BY MR. GUNN:

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    **www.MILESTONEREPORTING.com**    **Toll Free 855-MYDEPOS**

Q.   So you don't know, if there is no statement, whether Mr. Wilkins did or did not, in the medical opinion of his treaters, have a permanent injury from day one of your involvement.

Is that a fair statement?

A.   Based --

MR. ANGLEY:  Objection.  No.  Objection.  Form. Asked and answered.  Counsel -- objection to Counsel testifying.

You can answer.

THE WITNESS:  Based on the medical records, there was no determination of permanency, as to what I had available.

BY MR. GUNN:

Q.   There was no determination of non-permanency, was there?

A.   There was no determination to permanency.

Q.   Was there a determination that he didn't have a person -- a permanent injury?

MR. ANGLEY:  Form.  Asked and answered.

THE WITNESS:  The medical records did not specify either way.

BY MR. GUNN:

Q.   And when you reviewed the Progressive work before you got involved, nobody asked a doctor whether

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

any of these findings were, to a reasonable degree of medical probability, going to be permanent injuries in Mr. Wilkins, fair?

A.   Correct.

Q.   All right.  As part of your background, training, and experience -- and you've relied on that many of your answers about the evaluative process of whether UM was due -- did you get trained up on orthopedic injury?

A.   Yes.

Q.   I mean, you and -- how -- before Mr. Wilkins, how many years have you been handling auto injury claims of any kind, whether they're PIP, or BI, or UM?

A.   So this is an estimated guess; approximately 15 years.

Q.   Okay.  You'd seen a lot of reports of somebody who's had disc disruption from trauma then, fair?

A.   I've seen a lot of medical records with disc -- claimed disc injuries, yes.

Q.   Right.  I mean, you understood that a herniated disc -- well, let me just put it off on you. Don't let me -- don't let me lead you here.

You tell me your understanding of what a herniated disc is, when you're adjusting Mr. Wilkins.

MR. ANGLEY:  Object to the form.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

THE WITNESS: Well, I can only go by what the medical records indicate. So, you know, if the medical record is indicating that they see that the radiological report shows the herniation, then that's what I would have to go by.

BY MR. GUNN:

Q. And so I'm asking you, when you go by that, what did you understand was being described? What change in anatomy occurs when you have a herniated disc in your neck?

MR. ANGLEY: Object to the form of the question.

THE WITNESS: Well, I don't think I can specify -- specifically answer that -- I'm not a medical doctor -- as to the exact definition of it.

BY MR. GUNN:

Q. You're putting a value on Mr. Wilkins' injuries, for purposes of what a jury may award if the case went to trial on those damages; aren't you?

A. I'm evaluating based on the totality and the -- and the merits of that particular claim.

Q. And the merits and totality of the claim to UM is to determine that amount for which the at-fault driver would owe for the injuries caused by an at-fault crash if the case went to a verdict, right?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

MR. ANGLEY:  Object to the form.

THE WITNESS:  I can't speak on based on what a jury would determine.

BY MR. GUNN:

Q.   Well, your job is to determine a benefit due that's based on the legal liability of the underinsured motorist, right?

A.   Yes.  But I'm in -- I'm reviewing it and evaluating based on the information that I have available at the time.  I can't speak on and evaluate based on what a jury could or couldn't possibly determine, because there's no way to determine that.

Q.   Well, you wrote a -- well, let me withdraw. Progressive wrote a contract, a policy of insurance, that says, we will pay those sums for which an underinsured motorist is legally liable for causing, of loss, injury, or damage for which there is not enough liability insurance.

Or words to that effect, fair?

A.   Yes.

Q.   And so legal liability means what to you, as an adjuster?

MR. ANGLEY:  Form.

THE WITNESS:  Well, legal liability is what we determine or like what's -- we determine as a fair

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          Toll Free 855-MYDEPOS

and accurate range in exchange for the accident that this -- the injuries that sustained in that accident.

BY MR. GUNN:

Q.   Well, who is we?

A.   Well, Progressive as a whole.

Q.   Well, Progressive isn't the final arbiter, is it?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Well, I mean --

BY MR. GUNN:

Q.   Isn't it what a reasonably predicted legal liability outcome would be if suit proceeded against the at-fault driver?

A.   Yeah.  But we can't determine what would happen at trial.  Trial has not been conducted.

Q.   So you need to use reasoned claim judgment to act diligently, fairly, and objectively to predict what the legal liability of the at-fault driver is.

Because you can't just make everybody sue all the way to judgment, can you?

MR. ANGLEY:  Object to the form of the question.

THE WITNESS:  No.

BY MR. GUNN:

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900     www.**MILESTONEREPORTING**.com     Toll Free 855-MYDEPOS

Q. So you're trying, at Progressive, as you were trained, to use reasoned claim judgment to gather and investigate the facts of a loss, use the tools in our UM toolbox, and reasoned claim judgment based on what a reasonably ranged jury verdict value would be for the injuries presented by the claimant.

Do you agree with that process?

MR. ANGLEY: Object to the form.

THE WITNESS: I don't recall it saying specifically to a jury verdict.

BY MR. GUNN:

Q. Well, whether it's a jury verdict or a judge bench trial, or whatever, the law establishes the legal liability that Progressive has agreed, by contract, to evaluate in paying UM benefits, agreed?

MR. ANGLEY: Form.

THE WITNESS: Yes.

BY MR. GUNN:

Q. And there are -- as you've identified in some of your evaluation, there are elements of loss, injury, or damage for which an at-fault driver is legally liable in an auto injury claim, right?

A. Yes.

Q. And Progressive stands in the shoes of the at-fault driver when it analyzes that legal liability

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     www.**MILESTONEREPORTING**.com     **Toll Free 855-MYDEPOS**

process, right?

A.   Yes.

Q.   So you'd want to know, as promptly and diligently as you can, what Mr. Wilkins' whole loss is for bodily injuries sustained in this car crash; wouldn't you?

MR. ANGLEY:  Form.

THE WITNESS:  Yes.  And that's gathered over -- yes.  And that's gathered over time.

MR. GUNN:  Okay.

So we're at a good stopping point, and I'm going to -- and I agree that -- let's go off record real quick.

THE VIDEOGRAPHER:  One moment.

MR. GUNN:  Because it's 12:25.  So why don't you guys go to lunch?  We'll go off record first.

MR. ANGLEY:  One second.  Give me one second.

THE VIDEOGRAPHER:  The time is 11:20 -- or 12:26 a -- p.m. and we are now off the record.

(A recess was taken.)

THE VIDEOGRAPHER:  1:03 p.m. and we are back on the video record.

BY MR. GUNN:

Q.   All right.  So ma'am, we were talking a little bit about your knowledge from the standpoint of an

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

adjuster of what happens when a disc herniates.  And I understand that you're not giving me a medical opinion, but is it fair to say that you considered the reports of herniated disc when you evaluated the UM benefit due to Mr. Wilkins?

A.   Yes.

Q.   Okay.  So what did you understand it meant to have a herniated disc in the neck with impingement?

MR. ANGLEY:  Form.  Objection.

THE WITNESS:  Oh, could you repeat that? Sorry.

BY MR. GUNN:

Q.   What did you think it meant when the medical records indicated a herniated disc with protrusion into the spinal cord?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Well, based on the records, it was indicated that the -- the MRI listed a herniation. So yeah, based on the report.

BY MR. GUNN:

Q.   What does that mean, though, for you as an adjuster?  How do you put numbers to that reported medical claim?

MR. ANGLEY:  Form.

THE WITNESS:  Well, we evaluate it based on the merits of that claim in totality.  You know, based

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.**MILESTONEREPORTING**.com          Toll Free 855-MYDEPOS

3808B3 Harlman Carrice 05-23-2025

on the experience and knowledge, we come up with a range for a specific injury in order to negotiate to -- to resolve it.

BY MR. GUNN:

Q. Okay. Well, we being Progressive, right? We come up with -- you're saying Progressive comes up with, right?

A. Yes.

Q. Okay. What did you do when you decided what value to put on the existence of a reported herniated disc in Mr. Wilkins? How did you translate that medical finding into UM coverage money?

MR. ANGLEY: Object to the form.

THE WITNESS: Well, I considered the -- like I said, I considered -- Progressive and/or myself -- I'm the adjuster -- considered the totality of the claim based on a lot of different factors. The individual factors, the impact factors, the findings, the treatment, all those are determined into the range.

BY MR. GUNN:

Q. Okay. Why isn't the range when you do all that factors 100,000 to 150,000?

A. Well, just based on all the factors, and experience, and -- and knowledge, it's considered a

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

3808853 Hartman Uanice 05-23-2025

reasonable range to -- for that particular injury in order to -- to try to get it negotiated and resolved.

Q. Well, you want to pay what's due. You don't want to negotiate and resolve. You want to pay the amount of money the contract says you should pay, right?

MR. ANGLEY: Object to the form.

THE WITNESS: But that -- the policy doesn't specify, you know, a specific amount that we --

BY MR. GUNN:

Q. It doesn't quantify a specific amount. It says you're going to pay the sum that -- for which the underinsured motorist is legally liable, for which there is not enough underlying bodily injury liability coverage. I'm not asking about that. I'm asking how do you put dollars and cents to the herniated disc in Mr. Wilkins' reported findings?

A. Well, like I said, based on the information at hand, we come up with what's considered a reasonable range for the amount of money for that particular injury. There's no set amount specified for each specific possible injury that any person could ever sustain in an accident.

So based on my, you know -- like I said, based on the information available, my experience, training and such, that's the range that's determined.

**MILESTONE | REPORTING COMPANY**
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

Q.   What in your training did you utilize to come up with the evaluative ranges Mr. Angley walked you through?

A.   Well, this -- I don't believe there was a specific training material that I referenced in order -- in this.  I'm just saying in just general training -- just in general training of claims handling.

Q.   Well, where do you get the numbers that -- ma'am, I don't mean to be redundant.  I'm just trying to understand what about your background training and experience, you know, at Progressive you're using to say this is a blank dollar value as opposed to a Y dollar value claim.  I mean, do you -- are there -- are there guidelines?  Are there jury verdicts that you've -- that you look to?

I mean, is there something that -- a database that Progressive has provided to you that says the legal liability of folks who cause this kind of injury is typically in the range of X to Y?  What do you use other than -- and I don't mean this pejoratively.  Other than thin air, what are you using?

MR. ANGLEY:  Object to the form of the question.  Asked and answered.  Argumentative.  You can answer as you can, ma'am.

THE WITNESS:  Like I explained earlier, there's

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        www.**MILESTONEREPORTING**.com        Toll Free 855-MYDEPOS

no set guideline for each specific injury that a party has sustained.  So there's no set dollar amount per injury that we should be considering.  So we based on what's -- what we feel is considered reasonable for the totality and the merits of that individual claim, the individual injury.

BY MR. GUNN:

Q.   And you can't provide me with any set of data or guidelines that are referred to in order to identify an objective basis for a range of value for a given injury; is that true?

MR. ANGLEY:  Object to the form of the question.  Misstates her testimony.

THE WITNESS:  There's no specific set guideline to determine a specific amount for -- for injury.

BY MR. GUNN:

Q.   Do you agree that if the legal liability of the underinsured motorist is for causally-related past and future medical, causally-related past and future wages where appropriate, and where a threshold is met, past and future pain and suffering, inconvenience, mental anguish, loss of capacity for the enjoyment of life, pain and suffering, that those non-economic losses all should factor into your evaluation?

MR. ANGLEY:  Object to the form.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

THE WITNESS:  It depends.  Each claim is different.  So it depends on the specifics of that particular claim.  So if it hasn't met the threshold, then there are items that aren't necessarily need to be considered.

BY MR. GUNN:

Q.   Okay.  Let me see if these facts were known to you.  Mr. Wilkins was in a serious impact car crash, agree?

A.   He was in a car crash.

Q.   Did you consider it a serious impact?

A.   I mean, everybody has an opinion on the word serious.  I can say it is a -- a high damage impact.

Q.   It totaled the vehicle he was a passenger in, right?

A.   Correct.  But there's a lot of different reasons why a vehicle could be totaled.

Q.   And ma'am, are you looking for a way not to pay this claim?

A.   No, not at all.

MR. ANGLEY:  Object to the form of the question.

BY MR. GUNN:

Q.   Good.  Good.  So you agree you're supposed to look for ways to pay a claim as due, right?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900         www.MILESTONEREPORTING.com         Toll Free 855-MYDEPOS

A.    Absolutely.

Q.    All right.  So yeah, there's a lot of reasons that a car could be totaled, but one of them can be that the passenger took a big forceful impact as well, right?

A.    I can't speak on the specific force of the impact.  I can specify that according to the damages, it was a heavy damage impact.

Q.    Okay.  Is that consistent with somebody getting hurt, that there's a heavy impact?

A.    I'm sorry, could you repeat that?

Q.    Is it consistent with someone being hurt that they're in a car crash with heavy impact?

MR. ANGLEY:  Form.

THE WITNESS:  I can't speak to that on a general level because everybody's different.  So everybody's injuries that they sustain based on it being a minor or serious impact can be different.

BY MR. GUNN:

Q.    Okay.  And I didn't say, does everybody who gets in a serious impact car crash have a permanent injury to their spine?  I simply asked as an adjuster, do you agree that your background, training, and experience has taught you that getting in a forceful car crash with heavy property damage is consistent with a claim of bodily injury?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

MR. ANGLEY:  Form.

THE WITNESS:  In my experience, I've had -- I have had parties that were involved in an accident sustain injuries.  I've also had parties that did not sustain injuries.

BY MR. GUNN:

Q.  There's nothing about the report of this crash that should reasonably cause you to question somebody could get hurt by it, fair?

MR. ANGLEY:  Form.

THE WITNESS:  The possibility that somebody could have gotten hurt?  Yes.

BY MR. GUNN:

Q.  Mr. Wilkins was already in a wheelchair from unrelated medical problems, right?

A.  Yes.

Q.  So would you agree one of the aggravating factors of this individual claim that you are individually fairly and honestly evaluating would be the impact of further injury here to his neck and how that would affect his life already being wheelchair-bound, agreed?

A.  There's a possibility.

Q.  I don't -- anything is possible, ma'am.  I want to know that, yes or no, Mr. Gunn, as a reasonable

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

claim adjuster using reasonable claim judgment, I agree

that I should consider the circumstances of Mr. Wilkins

to include he's already paraplegic, wheelchair-bound.

Yes or no?

        MR. ANGLEY:  Object to the form of the question

    and Counsel instructing the witness of how to answer

    his questions.  Ma'am, you can answer the question

    to the best of your ability.

        THE WITNESS:  I can go based on the medical

    records as to how it's affected him, his prior

    injuries affected him, how the accident affected his

    prior injuries.

        BY MR. GUNN:

    Q.   I'm asking you how new injuries to the neck

affected this man's life when he is already in a

wheelchair.  Do you agree those facts should be

considered by a reasonable claim adjuster in evaluating

this loss?

        MR. ANGLEY:  Object to the form.

        THE WITNESS:  One of the factors when

    evaluating a claim, we do look at prior medical

    history, prior surgical history, prior conditions.

    We look into that.  We consider that.

        BY MR. GUNN:

    Q.   And so, you know that the loss of capacity for

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

3800803 Harlman Clarice 05-23-2025   Page 118

enjoyment of life, mental anguish, pain and suffering to someone who is already wheelchair-bound, if now they've got pain in their neck, it's going to have a profound impact on their lifestyle, isn't it?

MR. ANGLEY:  Object to the form.

THE WITNESS:  There's a possibility.

BY MR. GUNN:

Q.   Is it a probability, a possibility it might happen, or I'm sure it did, Mr. Gunn?

A.   It's a possibility.  Oh --

MR. ANGLEY:  Object to the form.  Question asked and answered.  Badgering the witness.

BY MR. GUNN:

Q.   Did you -- oh -- did you consider in your evaluation of the impact of these injuries on Mr. Wilkins that the lifestyle changes superimposed on being a paraplegic would enhance the legal liability of the tortfeasor if the case went all the way to trial?

MR. ANGLEY:  Form.

THE WITNESS:  I understand that it could affect it.  I didn't have any documentation of how it affected him.

BY MR. GUNN:

Q.   Okay.  Is one of the ways that you could have gotten that information before a lawsuit got filed would

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**   **www.MILESTONEREPORTING.com**   **Toll Free 855-MYDEPOS**

be to request an examination under oath?

A. That's a possibility. However, we were going

going ---

Q. If anybody -- I'm sorry. I didn't mean to cut you off, ma'am. It's a possibility. You're going to go with anything's possible again. Let's go.

A. It's a possibility.

Q. Please finish your answer.

A. We were still just going through discovery phase.

Q. No. I -- I'm talking about you reviewed this file when it first presented, and do you agree that somebody at Progressive responsible for the claim, if they wanted to know how the accident affected the lifestyle of your claimant, could ask for an examination under oath, right?

MR. ANGLEY: Object to the form.

THE WITNESS: Yes. It could have been done.

BY MR. GUNN:

Q. And one of the things that can be done in an examination under oath is to ask the claimant questions about how your life is different today than it was before the crash that is claimed to cause you injury and problems, fair?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900** www.**MILESTONEREPORTING**.com Toll Free **855-MYDEPOS**

A.    That -- that could have occurred.  Yes.

Q.    All right.

A.    But we also -- in discovery, we also utilize the deposition process for that as well.

Q.    And that -- that's the process that means that the UM claimant has already filed a lawsuit.

A.    Right.  And once I receive the -- the file, as of that time, when the claim was assigned to myself, it was in litigation.

Q.    And you have no information firsthand about why your predecessor adjuster didn't sit Mr. -- well, he is already seated.  I don't mean that to be a poor choice of phrase and I apologize -- but why your prior adjuster did not request that Mr. Wilkins appear for an examination under oath, right?  Because you don't remember anything about this claim?

MR. ANGLEY:  Object to the form.

THE WITNESS:  I cannot speak as to what the prior adjuster's thoughts process was.

BY MR. GUNN:

Q.    Okay.  All right.  You were asked a number of questions and you bring up a good point about when you were involved, it was already in suit, about did you have these medical records?  Did you have this information?  During your time on the claim, is it fair

 MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

to say that the formal discovery process of litigation was ongoing?

A.   Yes.

Q.   And so if you wanted to get discovery of -- from the claimant, facts necessary for your loss adjustment, you would go through Defense Counsel's efforts, right?

A.   Correct.

Q.   And so that's propounding interrogatories, sending requests for productions, perhaps requesting a medical authorization, taking deposition, sitting the claimant down for an examination by a compulsory medical doctor that the defense lawyer and you would select. All those tools are used only once you're in litigation, right?

MR. ANGLEY:   Form.

THE WITNESS:   Those are tools that -- yes, we utilize the defense counsel to proceed.

BY MR. GUNN:

Q.   Right.

A.   Yes.

Q.   So there -- there's nothing that Mr. Wilkins was being obstructive about during your time in providing information to Progressive for evaluation because at that point, it was all being handled through

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900       www.MILESTONEREPORTING.com       Toll Free 855-MYDEPOS

the formal discovery, right?

MR. ANGLEY:  Form.

THE WITNESS:  Yes.

BY MR. GUNN:

Q.  Did you see any evidence in the beginning of this file that anybody at Progressive asked for a medical authorization, an EUO, or a compulsory medical evaluation of the claimant?

MR. ANGLEY:  Form.

THE WITNESS:  I don't recall about the medical authorization.  I do not believe that the EUO or anything like that was requested.

BY MR. GUNN:

Q.  Did Progressive have a policy in its claims at the time of sending out an EUO to a UM claimant?  Sometimes I've seen where there's an acknowledgement of claim and it has enclosed, "Please find a medical authorization."  Did Progressive have such a policy?

MR. ANGLEY:  Object to the form.  You answer to the extent you can, ma'am.

THE WITNESS:  Okay.  Could you repeat that?

BY MR. GUNN:

Q.  Sure.  To your knowledge, did Progressive have a claims practice in UM claims of sending a medical authorization early in its effort to investigate the

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

loss?

MR. ANGLEY:  Form.

THE WITNESS:  I believe we do.

BY MR. GUNN:

Q.   All right.  If I ask you to assume that there's no indication in the claim file of sending a medical authorization, are you able to provide any information as to why no medical authorization was sent early in the claim?

A.   No.

MR. ANGLEY:  Object to the form.

BY MR. GUNN:

Q.   Yeah, I didn't expect you could, but I just wanted to make sure.  All right.  You mentioned Medicare eligibility on -- in response to one of the questions.  Do you understand Medicare has a lien and that Medicare payments are more or less advanced because Medicare is the payer of last resort?

A.   Yes.

Q.   And do you understand, therefore, that even if Medicare is available to pay health bills, that they can't be a "set-off," meaning the UM claim is still considering those Medicare bills to be part of the loss?

A.   But I didn't -- I had -- did not receive any Medicare lien.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          **Toll Free 855-MYDEPOS**

Q.   No, I know, but did you set off any of the evaluation that you did for the existence of Medicare?

A.   That I set off?  There was no --

Q.   Do you know what set off means?

A.   Right.  There was no offsets taken based on Medicare.

Q.   Okay.  At Page 77 --

MR. GUNN:  -- and David, can she see -- I'm sorry.  Counsel, can she see that?  Page 77?

BY MR. GUNN:

Q.   That's in that book there, Ms. Hailman?

MR. ANGLEY:  You're talking about the claim notes, Mr. Gunn?

MR. GUNN:  Yes, sir.

MR. ANGLEY:  Yeah.  She has the claim notes in front of her.  If you could direct her to a a specific entry --

BY MR. GUNN:

Q.   -- 77 as directed.  Let me know when you're there.

A.   I'm there.

Q.   Okay.  I want to understand a little bit about what you understand Progressive's policy was about the evaluation.  So in general, I want you to understand that my questions all relate to were you following what

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

3800803 Hartman Janice 05-23-2025

you were trained by Progressive to do in evaluating a UM claim for purposes of determining payment obligation?

A.   Yes.

Q.   Okay.  And as we go through these questions, if you're doing something that wasn't how you were trained to do it by Progressive, will you agree to tell me that?

A.   Yes.

Q.   Let's start with liability.  At all times, this was 100 percent the at-fault underinsured motorist accident, right?

A.   Could you repeat that?

Q.   Okay.  In determining a UM claim, do you first, or at some point early, assess who's to blame for the crash?

A.   Yes.

Q.   Okay.  And in this case, the UM -- at-fault underinsured motorist was at all times deemed to be the only party at fault, right?

A.   Yep.  The claimant the -- the tortfeasor was considered to be the at-fault party throughout the --

Q.   So Mr. Wilkins is entitled to 100 percent of any legal liability, legally caused damages in the crash, right?

A.   Yes.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q.   All right.  So then we go to the damages and how you came to determine his damages.  And again, we're at Page 77.  I think he may have been 55.  Do you -- do you see where you have him at 51, and I've seen it other parts at 55, 56.  Do you -- can you look at your notes and tell us at the time whether you were assessing him to be 55 or 51 when you did this analysis?

A.   I have it -- him listed as 51.

Q.   Okay.  So what is the mortality that you used for Mr. Wilkins as a 51-year-old?

A.   Do -- what do you mean?  Could you explain -- further explain?

Q.   I will.  What is the life expectancy of Mr. Wilkins that you were using when you did this claim evaluation note at Page 77?

        MR. ANGLEY:  Form.

        THE WITNESS:  There was none used at this time.

        BY MR. GUNN:

Q.   Well, Mr. Wilkins is entitled to future medical care and treatment caused by the crash for the rest of his life, right?

        MR. ANGLEY:  Object to the form.

        THE WITNESS:  If he meets the threshold.

        BY MR. GUNN:

Q.   What if he doesn't meet the threshold?  Does

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

he get future medical care and treatment?

A. That -- no.

Q. Why not?

MR. ANGLEY: Form.

THE WITNESS: You have to meet -- prove that there was -- he met the threshold in order to obtain those items.

BY MR. GUNN:

Q. In order to obtain what?

A. In order to obtain that.

Q. That being future medical care and treatment?

A. Right.

Q. Okay. What did you include in this evaluation for future medical care and treatment?

A. I didn't consider anything, also due to the fact because of the medical records did not indicate any specific -- what specific future care was going to be needed.

Q. Well, had the man largely continuously treated from the date of loss until the time of this evaluation that you performed? Let's get the date of record. Looks like it's the 6-13-2020 at Page 76, ma'am, is where I'm pulling that up. Can we agree this evaluation you're doing is June 13, 2020, at 9:58 a.m.?

A. Yes.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**      **www.MILESTONEREPORTING.com**      **Toll Free 855-MYDEPOS**

Q.   Okay.  And so at that point, can we agree that Progressive had seen a man who had had fairly consistent treatment -- reasonably consistent -- I won't say fairly, but reasonably consistent treatment since the crash?

MR. ANGLEY:  Form.

THE WITNESS:  I could confirm that he's had treatment since the crash.

BY MR. GUNN:

Q.   Did you have -- did you have any record from any doctor that indicated Mr. Wilkins is at MMI and no future care and treatment is required?

A.   No.

Q.   You had current plans that included future treatment, right?

MR. ANGLEY:  Form.

THE WITNESS:  I'd have to look through my note -- the -- the notes here.  Could you refer to a specific medical record?

BY MR. GUNN:

Q.   What I'll refer to is if the current plan included such things as ESI and ongoing therapy, would you -- would you agree that that indicates a gentleman in active care and treatment for the described injuries?

A.   I could confirm based on what I had to date,

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**      **www.MILESTONEREPORTING.com**      **Toll Free 855-MYDEPOS**

he -- he was under active care, yes.  That doesn't confirm to me that he's going to continue unless I receive medical documentation that he has received additional medical treatment.

Q.   Oh.  So just so we understand the methodology, you did not include any amount for Mr. Wilkins' future care and treatment in your evaluation that appears at Page 77?

A.   Correct.

Q.   All right.  Now, let's talk about the considered section because I had questions about that. It's 77 and -- do you have it?  Can -- I -- I'll show it to you if it helps you, but I think it's right in front of you.

A.   I have it.

Q.   Thank you.  Where did you get $500 and $1,500 (phonetic) for abrasion?

A.   Like I explained before, when you evaluate income -- to come up with ranges, it's based on the -- the merits and totality of the claim and to come up with a range because there's no specific amount specified per possible injury.  So we come up with a range, a lower range, a higher range, in attempt to resolve the claim.

Q.   Okay.  I want to be clear.  Is your goal to fairly pay a claim or to settle and resolve a claim?

 MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

MR. ANGLEY:  Form.

THE WITNESS:  Our goal is to resolve the claim.

BY MR. GUNN:

Q.   What do you mean by resolve?

A.   It is -- our goal is to settle the claim, resolve it in exchange for release of -- a release to protect our insured.

Q.   Why are you protecting your insured?  Well, what are you protecting your insured from?

A.   Well, the -- I apologize.  The insured is the claimant in this case.

Q.   So what -- why are you seeking to get a release in this case?

A.   Our goal is to resolve the claim in a fair and accurate manner.  And then when we -- our -- and when we resolve a claim and -- and come up with an agreement on a settlement, then the last resort then is do an exchange, a -- a -- a release.

Q.   Well, who's getting released?

A.   Well, in this case, Progressive would be getting released.

Q.   Why is Progressive getting released if you're paying the fully and unfairly?

MR. ANGLEY:  Form.

THE WITNESS:  That's just our -- our standard

 MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**      **www.MILESTONEREPORTING.com**      **Toll Free 855-MYDEPOS**

process and release to -- to get -- to release from
any additional further liability.

BY MR. GUNN:

Q.   Is there any language Progressive has trained
you to rely upon in the UM coverage part that
demonstrates a condition to paying UM benefit is the
claimant must release the company?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Unknown.  I don't -- I don't
recall their specific --

BY MR. GUNN:

Q.   Not that you recall, ma'am?

A.   I don't recall.

Q.   All right.  And then we're going to leap
forward a little bit.  Mr. Angley asked you about
settlement demands and settlement offers, and you
negotiated a tender.  Is it fair to say that you
tendered on the condition of a release when you sent the
$50,000 check to Mr. Sartes' office?

A.   No.

Q.   I see.  So what -- if we look later in your
deposition at the tender letter, it's not going to have
a release, and the release isn't going to be referenced
as, if you don't like the language of the release, let
us know and we'll change it?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900     www.**MILESTONEREPORTING**.com     Toll Free 855-MYDEPOS

A.   Well, we -- we send the release, but it's not -- I don't believe it's conditioned based on that release specifically.

Q.   Do you remember Mr. Sartes asking you, hey, I got your $50,000; are you providing this with the ability to remain open total damages in our bad faith claim?  Do you remember that?  I can show you that later, but while we're on the topic, I thought I'd bring it up.

A.   Okay.  I'm sorry.  Could you repeat that?

Q.   Okay.  All right.  Progressive, before the trial, sent the $50,000 check to Mr. Sartes' firm along with the release, didn't it?

A.   Yes.

Q.   Okay.  And my question to you is, without me -- and I'll get my son, Delton Gunn, to pull it up, but without showing you the reference, if I represent to you, Mr. Sartes asked your company, you, through Ms. Diaz, hey, can I just keep the $50,000 and we'll leave open the total damages verdict and we'll leave open the bad faith.  Does that ring any bell with you without looking at the claim file note?

A.   It does not ring a bell.  I'd have to --

Q.   We'll get to it in due course.  Okay.  While I've got you, though, let's go -- let's look at what I'm

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

going to hopefully be able to share with you.  This was previously marked as 12, and are you able to see it?

A.   I'll look.  Give me one moment.

Q.   Yeah.

A.   Okay.  I am in Exhibit 12.  Is there a particular page you want me to look at?

Q.   I'm displaying it.  Can you see it?

MR. ANGLEY:  Ms. Hailman, for reference, your tender letter was Exhibit 9.

BY MR. GUNN:

Q.   So what you're -- what you're looking at now has been previously, I believe, identified and marked as 12, and it's a January 29, 2021, letter from Mr. Sartes to you.

A.   Okay.  It's Exhibit 12.  Okay.  I see this letter.  Yes.

Q.   All right.  So he's sending back the check, right, for the $50,000 UM limit?

A.   Yes.

Q.   Okay.  And do you recognize this as the standard form uninsured/underinsured motorist release that Progressive was using at the time of this claim?

A.   Yes.

Q.   Okay.  And do you agree that if signed, the release reads in part, "do hereby for myself/ourselves

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

release and forever discharge Progressive Select Insurance Company, hereafter referred to as Company, from any and all claims, actions, causes of actions, demands, rights, damages, costs, loss of wages, loss of earning capacity, expenses, attorney fees and interest, direct or derivative, known or unknown on account of or in any way arising out of the ownership or operation of an underinsured -- uninsured -- underinsured automobile by, and that includes the tortfeasors and owners, Arthur Allen Ireland and Gail Ireland, which occurred on or about July 26, 2019."

      Do you see that language?

A.   Yes.

     MR. ANGLEY:  Form.

     BY MR. GUNN:

Q.   So do you understand, as the Progressive adjuster tendering the $50,000, that this tender meant that Mr. Wilkins was releasing Progressive from any bad faith liability?

     MR. ANGLEY:  Object to the form.

     THE WITNESS:  Well, it says all claims, actions, and cause of actions.

     BY MR. GUNN:

Q.   Right.  So you -- I think your answer, therefore, is yes, Mr. Gunn, if this is signed, then we

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

don't get sued for bad faith, right?

MR. ANGLEY:  Object to the form, to Counsel testifying.  You can answer him.

THE WITNESS:  It's stating that the -- the plaintiff discharges or -- Progressive for any and all claims, actions, causes of actions and so on.

BY MR. GUNN:

Q.   And bad faith is a cause of action being discharged and released.  Meaning if you try to sue them, Progressive's going to assert a release defense.  You knew that from the standpoint of adjuster, right?

MR. ANGLEY:  Form.

THE WITNESS:  I mean, I can go by the release.  I'm -- I'm not a legal counsel.

BY MR. GUNN:

Q.   I'm not asking for legal opinion.  I'm asking as a claims professional tendering $50,000, you knew that tender came at the expense of a release of all claims, and certainly a bad faith claim is part of the all claims released, agreed?

MR. ANGLEY:  Form.

THE WITNESS:  Yes.  In exchange for, yes, a release of all claims.

BY MR. GUNN:

Q.   All right.  Did Progressive, on your watch,

 MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    **www.MILESTONEREPORTING.com**    **Toll Free 855-MYDEPOS**

ever make a confession to judgment, meaning that it simply told the Court we now agree that we owe $50,000 in UM coverage; thus, the UM count has ended by our confession to a judgment of that amount?

A.   Unknown.

Q.   Do you know what a confession of judgment is?

A.   No.

Q.   Have you ever handled a claim where rather than continuing to litigate over whether the 50,000 or whatever the limit applicable was, you simply said, look, now that we know more about this claim, we're just going to admit we owe the coverage, and then you have every right, if any, to pursue other remedies such as bad faith?  Have you ever been involved in a process like that before Mr. Wilkins' case?

A.   No.

Q.   All right.  Is it your understanding that Progressive doesn't pay UM except when the plaintiff makes a demand?

MR. ANGLEY:  Form.

THE WITNESS:  Could you repeat that?

BY MR. GUNN:

Q.   Sure.  I'm going to ask a different question, okay?  Do you agree that Progressive, when it opens a UM claim, is due to pay fully, fairly, and promptly those

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

amounts that a reasoned claim analysis reveal are due under the coverage?

MR. ANGLEY:  Form.

THE WITNESS:  When you say pay, are you talking about the policy limits or just pay in general?

BY MR. GUNN:

Q.   Pay that amount which a reasonable -- I mean, if there's 100 million in UM coverage on some big commercial fleet policy and you evaluate the claim as $50,000, do you agree that that's the amount that gets paid by Progressive if it's acting reasonably and fairly with regard to the adjustment process?

MR. ANGLEY:  Form.

THE WITNESS:  No.

BY MR. GUNN:

Q.   Why not?

A.   Well, each case is different, so I mean, I -- I can't speak on all aspects of every single claim in every situation.

Q.   Okay.  I don't think I was asking you to, so I'll repeat, okay?  If there's $100 million in UM and the reasonable claim adjustment reveals $50,000 in UM benefit due, do we agree Progressive should make the $50,000 payment?

MR. ANGLEY:  Object to the form and the

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          **Toll Free 855-MYDEPOS**

hypothetical.

THE WITNESS:  No.

BY MR. GUNN:

Q.    Why not?

A.    Because there's -- like I said, there's a lot of different factors into a claim, so there can be like competing claims out there.  So I can't say yes, we should or shouldn't just pay that amount.  I'd have -- each claim -- it's -- it's in -- it has its own merits.

Q.    Assume there's no competing claims, there's certainly not enough competing claims to exhaust $100 million in UM, ma'am, okay?  Do you then agree if there's but one UM claimant who's entitled to up to $100 million but Progressive's own claim analysis is we think the benefit due is $50,000, it should just pay the $50,000?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Like I said, I can't answer that with a yes or no.  I mean, each claim is -- is -- that's a general question.  And so I can only answer based on specifics of this particular claim.

BY MR. GUNN:

Q.    Okay.  In this specific particular claim, when Progressive realized that it ought to pay $50,000 as the policy limit, why didn't you just send a check with no

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        www.**MILESTONEREPORTING**.com        **Toll Free 855-MYDEPOS**

strings attached?

MR. ANGLEY:  Form.

THE WITNESS:  I believe at that point we did.

BY MR. GUNN:

Q.  What check is that, ma'am?

A.  The $50,000 check.

Q.  The one we just looked at?

A.  Yes.

Q.  Okay.  Doesn't that say that it's been full and final payment of all claims and actions, and didn't it get accompanied by the string of a release?

MR. ANGLEY:  Form.

THE WITNESS:  Yes, it did.

BY MR. GUNN:

Q.  Right.  So I -- why didn't Progressive, you, just send to Mr. Sartes, "Dear Mr. Sartes, our most recent claim analysis has determined that Mr. Wilkins' claim value is $50,000, and therefore, we're paying his UM coverage"?

MR. ANGLEY:  Form.

THE WITNESS:  At what point are you asking me that question?  What point in the claim is it that you're asking me a question?

BY MR. GUNN:

Q.  When you -- well, you determined -- let me --

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     **www.MILESTONEREPORTING.com**     **Toll Free 855-MYDEPOS**

let me -- maybe I'm confused here.  I thought you all, before you sent the $50,000 check, decided the claim was worth $50,000.  Am I wrong?

MR. ANGLEY:  Form.

THE WITNESS:  At the point in time we considered the $50,000, that's when we issued the check.

BY MR. GUNN:

Q.    What do you mean considered the $50,000?  What does that mean?

A.    At the point in time when we felt that we can -- that we evaluated it and considered it to -- to issue the -- the $50,000, that's when we issued it.

Q.    You thought Mr. Wilkins' UM claim warranted receipt of the $50,000 benefit limit at that time, correct?

A.    Correct.  As we were receiving additional information at that time, yes.

Q.    Why, once that happened, didn't you just send him a check through his attorneys without any condition of any form of release?

MR. ANGLEY:  Form.

THE WITNESS:  I mean, that's our -- I can't answer that.  I mean, that's probably most likely a legal question.  You know, that's our standard.  We

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

send the check with the proposed release. It's proposed release. So like I -- the -- the letter says, you know, you can look at it. If you have any issues or objections to contact me and we can discuss it.

BY MR. GUNN:

Q. Right. But you want a release of some form, right?

A. We attempt to receive one.

Q. Well, is there a situation where Mr. Sartes could say to you, listen, please confirm that your check can be cashed, and I've reserved my total damages claim and I've reserved my bad faith claim, that you're going to say, okay, cash the check? It's fine. We don't need any release of our bad faith to it.

MR. ANGLEY: Form.

THE WITNESS: I would need to -- if that were to occur -- occur, I would need to review that with our legal department. So I couldn't answer that.

MR. GUNN: All right. And Delton Gunn, if you'll get ready with that document. If you don't have it handy, I'll give you a heads up and I'll ask something else. All right. Why don't you display it? We'll mark as -- we'll just do if it's okay, David, I think you ended at 12. Can we just do



**MILESTONE | REPORTING COMPANY**
TOMORROW'S TECHNOLOGY TODAY

Exhibit 13?

MR. ANGLEY:  Sure.

BY MR. GUNN:

Q.  All right.  I want to give you some -- a moment to read this.  And for the record, we're looking now -- do we have a Bates on this one?  Okay.  So we'll mark it and I'll make sure we get it to the court reporter.

THE REPORTER:  You guys, please --

MR. ANGLEY:  Hey, Lee, we're getting some feedback.  I think it's coming from your end of things.

THE VIDEOGRAPHER:  Time is 1:43.  We're off the record.

(A recess was taken.)

BY MR. GUNN:

Q.  So ma'am, Counsel tells us that Exhibit 10 is what I previously displayed.  Do you have that in your notebook?

A.  Yes.

Q.  All right.  So for record purposes, it's December 31, 2020, and we believe that it is PRO 4893. But because the letter has a black band, the problem is it's not displaying the Bates number.  But in any event, it has been marked as Exhibit 10 for record purposes. So

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     **www.MILESTONEREPORTING.com**     **Toll Free 855-MYDEPOS**

did you read that?  Have you had a chance to reread it?

A.   No, I can read it now.

Q.   Okay.  All right, does this refresh your recollection about Mr. Sartes' inquiry, his request that his client keep the $50,000 and then let the bad faith claim proceed?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Yes.  I understand.  I read the letter, yes.

BY MR. GUNN:

Q.   Okay.  And again the question being, does this refresh your recollection that Mr. Sartes wanted to know if Mr. Wilkins could keep the $50,000 benefits and then proceed to the bad faith issues?

A.   Yes.  That's what you were trying to -- well, not you, but Counsel was trying to clarify.  Yes.

Q.   Okay.  And then did do you remember if Ms. Diaz reported back that a release was required and if he wasn't willing to give one to please send the $50,000 back?

A.   I'd have to review the response.

Q.   Okay.  I -- it -- it's fine, ma'am.

MR. ANGLEY:  (Audio cuts out.)

BY MR. GUNN:

Q.   Yes, the record's the records.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**   **www.MILESTONEREPORTING.com**   **Toll Free 855-MYDEPOS**

A.   Okay.

MR. GUNN:  If you want to look, you can look. I'm not going to require that she do so, David.

THE WITNESS:  Okay.

BY MR. GUNN:

Q.   All right.  Let's circle back.  We kind of got sidetracked and I apologize.  But you talked about, I think release or something that got me off the trail of your evaluation.  So are you able to go back, please, to the evaluation process?  And I have just a few more questions about that.  Hopefully, we'll get you out of here, okay?

MR. ANGLEY:  Mr. Gunn, what claim note are you want wanting her to look at being --

BY MR. GUNN:

Q.   I'll direct her.  So let's go back to where you were at Page 77.

A.   Okay.

Q.   Okay.  I want to ask you, why did you know Plaintiff will be a sympathetic witness as he is in a wheelchair?

A.   Because the medical records indicated that he was in a wheelchair and paralyzed from the waist down.

Q.   So how does the fact that makes him a sympathetic witness impact your claim adjustment

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

process?

A.   Well, if it went to -- feel like if it went to trial, then there would be some sympathy there against the -- the plaintiff because of his medical condition.

Q.   And a sympathetic Plaintiff might increase the legal liability of the tortfeasor, right?

A.   There's a --

MR. ANGLEY:  Form.

Go ahead.

THE WITNESS:  -- there's a possibility.  I can't speak of what the jury could -- will or won't do.

BY MR. GUNN:

Q.   Well, you thought this fact was important enough in your evaluation of the claim to write it out in your claim evaluation report, correct?

MR. ANGLEY:  Form.

THE WITNESS:  Yeah.

BY MR. GUNN:

Q.   Now, let me -- I want to get a sense as you're evaluating this claim.  Do you view Mr. Wilkins as an adverse party to you?

A.   Adverse party to you?

Q.   Do you -- let me -- let me withdraw because you -- you're repeating my question as if you don't

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          **Toll Free 855-MYDEPOS**

follow. So let me see if I can be clear. You're -- you are a licensed adjuster in the state of Florida, right?

A. Yes.

Q. Do you have a 620 license, all lines?

A. This -- I think it was a 220.

Q. 220? Okay.

A. I think it was 220.

Q. As a licensed adjuster, do you understand that you are to comply with the Adjuster Code of Ethics?

MR. ANGLEY: Form.

THE WITNESS: Yes.

BY MR. GUNN:

Q. And do you understand that you are to adjust all claims with an open mind?

A. Yes.

Q. You're not supposed to pre-judge or look for ways not to pay a claim, right?

MR. ANGLEY: Form.

THE WITNESS: Correct.

BY MR. GUNN:

Q. What you are supposed to do is be fair, honest, diligent, and reasonable in your evaluation of a UM claim, agreed?

A. In any claim, yes.

Q. And I just want to go through now the

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

considered.  You considered cervical aggravation with ESIMDB $20 to $40,000.  So again, what was your basis for that range of value?

MR. ANGLEY:  Form.  Asked and answered.

THE WITNESS:  Based on the totality and merits of the claim.  And I mean, per review of the documentation that we had received to date, so a general range was provided for that particular injury.

BY MR. GUNN:

Q.   Was this computer-aided in any way?

A.   No.

Q.   Was this the result of reviewing any written guidelines?

A.   It's just based on the general experience, knowledge, and general training.

Q.   Where did this general knowledge that you -- you're using come from?

A.   Well, the general knowledge and experience could go hand-in-hand.  So the general -- the knowledge is based on the documentation, all the medical documentation that I have.

Q.   Okay.  So what makes Mr. Wilkins a sympathetic witness in a wheelchair with multiple disc injuries ESIMDB worth an evaluative range of $20,000 to $40,000

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

into his particular facts of his particular claim under your background, training, and experience?  What makes it 20 to 40?  Not 40 to 80, not 100 to 200?

MR. ANGLEY:  Form.

THE WITNESS:  Like I explained, it's a general range based on all the -- all the available information. So the claim was still being investigated.  So as -- it's a general range, so as additional information -- it -- which it can -- a range can also -- you know, can change or based if there's additional information received.  So based on the available information at that time, that's what I ranged that particular injury at.

BY MR. GUNN:

Q.    All right.  Where did you get the Trinity Hills ER considered 75 percent of bill charges?  Where does the 75 percent come from?  Is that a written guideline? Is that the Mitchell program?  What makes these charges for an evaluation 75 percent considered?

A.    That's based on prior trainings, what -- considered what was reasonable and customary.

Q.    Well, are you a coder of medical bills?

A.    No.

Q.    Oh, are you -- are you an expert on what providers' reasonable and necessary charges are in the



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

380883 Harlman Janice 05-23-2025

Tampa Bay community?

A.   An expert, no.

Q.   Where do you get your data points then to say that this bill that they charged at the emergency room is 75 percent?

MR. ANGLEY:  Form.

BY MR. GUNN:

Q.   Is that written down somewhere?

A.   It was based on prior training.  We do have tools that we could utilize to obtain what's considered reasonable and customary for certain charges.

Q.   Did you use any tool to get the 75 percent?

A.   On that particular, no, it's based on prior trainings.

Q.   Okay.  And is that training written down somewhere?

A.   Possibly.  I don't recall at this time.

Q.   Okay.

A.   That was five years ago.

Q.   Sure.  Is this training provided by Progressive?

A.   Training's provided by Progressive, yes.

Q.   Okay.  And to be clear, what's the $961.96 per MDP fee schedule, R, V as in Victor, W?

A.   For the Trinity Hills?  Is that what you're



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     **www.MILESTONEREPORTING.com**     **Toll Free 855-MYDEPOS**

3808853 Harlman Jamice 05-23-2025                    Page 150

specifying?

Q.   Yes.  Looking at the document we've been looking at and from which I just read it, what does it mean considered $961.96 per MDP fee schedule RVW?

A.   Okay.  So on that particular charge, there were multiple dates of service, and some of those dates of service were considered under his PIP benefits.  So date of service, October 18, 2019, December 6, 2019, March 27, 2020 through April 20, 2020 were not considered under the PIP.  So I utilize a tool that we have, MDP, to consider what's -- consider what's reasonable and customary.

Q.   Okay.  And is that the Mitchell database you're talking about?

A.   Yes.

Q.   And is that printed out anywhere, your results?

A.   I did not print them out, no.

Q.   Okay.  So you put the -- you put the ICD-9 codes in and it gives you a value?

A.   Correct.

Q.   All right.  And you independently don't have knowledge of whether the values are reasonable and necessary, they're simply what you're trained to use?

MR. ANGLEY:  Form.

 MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

THE WITNESS:  That's the tool that -- one of the tools that we utilize, yes.

BY MR. GUNN:

Q.   And you're trained to use those values as reasonable and necessary when evaluating UM claims, yes?

MR. ANGLEY:  Form.

THE WITNESS:  That's one of the tools utilized.

BY MR. GUNN:

Q.   Did you depart from the Mitchell billing suggestions based on your background, training, and experience?  Do you remember whether you just followed what the computer printouts -- well, not printout, but what the values Mitchell displayed were, or did you apply some extraneous knowledge and modify those values?

A.   I would've utilized that particular tool.

Q.   All right.  And part of your evaluation that we've looked at here at 77 is generals, right?

A.   Yes.

Q.   What are generals?

A.   So that's the amount that was considered for the -- the injuries that was considered above.

Q.   Above what?  For what injuries?

A.   For the abrasion and the cervical aggravation with the injections.

Q.   Okay.  Of the cervical aggravation 20 to 40

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

range, how much of that is pain and suffering?

A.   Pain and suffering, none, because it -- the --
I had no indication that a threshold had been met.  So
there's no amounts that we considered for the injury
sustained.

Q.   Who's we?

A.   Well, I, I.

Q.   And why did you use those values with no pain
and suffering?

A.   Because I did not --

MR. ANGLEY:  Go ahead and answer.

THE WITNESS:  -- I did not have any
documentation of permanency.  So the threshold, I
had no notification that the threshold had been met.

BY MR. GUNN:

Q.   Okay.  So you're telling me the 20 to 40 range
for cervical aggravation with ESIMDB, 20 to 40 isn't
medical bills or it is medical bills only?

A.   No, it's not.  That does not include medicals.

Q.   What does it include?

MR. ANGLEY:  Form.  Asked and answered.

THE WITNESS:  The considered injuries.

BY MR. GUNN:

Q.   What does that mean?

MR. ANGLEY:  Form.  Asked and answered.

 MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

THE WITNESS:  That means the value that was associated given to those particular injuries for abrasion and cervical aggravation with the injuries, that's the total amount for that range for those particular injuries that were considered.

BY MR. GUNN:

Q.   Well, the bills are down below, right?

A.   Correct.

Q.   So the bills -- what was considered of the past bills?

A.   That would be the next line where it says OOP, the out-of-pocket.  That would stand for out-of-pocket. That's the billing.

Q.   Well, that's the amount that the -- Mr. Wilkins paid that wasn't covered by any insurance, right?

A.   So I came up with the out-of-pockets as -- so the PIP coverage considers 80 percent.  I considered he's responsible for the other 20 percent, plus he has a $1,000 PIP deductible, so I considered that.  And then minus, he has $500 of Med Pay coverage, which is afforded towards the bills as well.  So that gets me to 3000 plus the amount that I considered on the billing, the $3,177 around -- and 70 cents.  So with those added together, I have the out-of-pockets of $6,178.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     www.**MILESTONEREPORTING**.com     **Toll Free 855-MYDEPOS**

Q.   All right.  So let me see if I get this.  Of the -- of the billed amount of $41,177.90, your total evaluation toward UM benefit due was $6,178?

A.   Correct.

Q.   And why when the balance is $13,840.32 did you only consider $3,177.70?

MR. ANGLEY:  Objection.  Asked and answered.

THE WITNESS:  Well, there's other sources to consider the billing, which were applied also with the PIP.  There are also -- with billing also, there's also adjustments and write-offs as well.

BY MR. GUNN:

Q.   So if I'm following, you took -- of the 13,800, did you deduct ten for PIP?

A.   No, I did not.  No, I didn't utilize the balances.

Q.   I mean, this is -- the balance is after PIP's applied, right?  Because PIP's been exhausted at this point?

A.   Actually, so PIP has been exhausted, yes.  But however, those balances on the bill, the available bills that we received, doesn't necessarily possibly reflect the exact amount of the true balance.  So as an example, Gulf Coast MRI, you have a bill for $2,550, but there's also a balance of that same amount, but we know that PIP

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

considered it. So how could that balance be the same as the charged amount? So just because there's a balance, that's what's listed on the bill that I've been provided, that doesn't necessarily -- necessarily mean that that is a true balance.

Q. And how do you determine the true balance?

A. Well, I'd have to obtain updated billings.

Q. Do you look at the PIP file?

A. I look at -- that's another -- yes, I can consider a PIP file as well, but if the PIP file's going to -- it's not going to show what a provider might show the balance.

Q. But you'll show the amount PIP authorized and paid, right?

A. Correct.

Q. Okay. So after you did your tort 10,000, is that why we have an adjustment down to 6878, so that the -- see, tort 10K tendered? So are you taking the BI credit there?

A. Yes. At the bottom of the page where it says less tort, that's taking the -- the BI.

Q. Okay.

A. Yes.

Q. And your Counsel's going to object, and maybe it's me, but I still don't understand the component

 MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**       **www.MILESTONEREPORTING.com**       **Toll Free 855-MYDEPOS**

parts of the elements of loss injury damage legally recoverable in a car crash case by the injured party that constitute your $20 to $40,000 range.

We've just discussed that the past medical bills were in a different section. There's no lost wage because he is already disabled by being paraplegic. You've already testified I gave no amount for future medical. So I'm trying to understand the element of loss, injury, or damage that gives you a range of $20 to $40,000?

MR. ANGLEY: Mr. Gunn is correct. Objection. Form. Asked and answered many times. Counsel's inability to understand does not give a basis for continued questions on -- I'll leave it there. Objection to the form. You can answer, ma'am.

THE WITNESS: Like I explained before, it -- it -- every -- the specific injury, the amount that we're considering per specific injury is based on the totality and the merits of that claim. You know, it's a range. So because there's no set amount for any -- any specific injury is kind of a range like a sliding scale. So, you know, we can evaluate that amount that we're allowing considering for that specific injury based on the available information.

So just because at this point in time in the

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

claim is ranged at 20 or 40, there's always a possibility later on as additional information is obtained that could possibly change.

BY MR. GUNN:

Q.   All right.  And you take personal responsibility for the 20 to 40 based on your personal background, training, and experience in claims?

MR. ANGLEY:  Form.

THE WITNESS:  Correct.

BY MR. GUNN:

Q.   These numbers aren't derived by your supervisor, correct?

A.   Correct.

Q.   And there's no written guidelines and no jury verdict analysis performed, correct?

A.   Correct.  Correct.

MR. GUNN:  Okay.  All right, David, I'm at a good stop point.  I don't anticipate much more, if anything.  Do you mind like going to 2:15, a five-minute break, and then, hopefully, we'll get your witness out of here?

MR. ANGLEY:  Yeah.  Sounds good.

MR. GUNN:  All right, buddy.  Thank you.

THE VIDEOGRAPHER:  Please --

MR. GUNN:  Off record?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900   www.MILESTONEREPORTING.com   Toll Free 855-MYDEPOS

MR. ANGLEY:  Not yet.  She's got to say it, Lee.

THE VIDEOGRAPHER:  I'll get us off record.

MR. GUNN:  Oh, I'm saying off record.

THE VIDEOGRAPHER:  The time is 2:10 p.m. and we're off the video record.

(A recess was taken.)

THE VIDEOGRAPHER:  One moment, please.  I'll get us back on the record.  The time is 2:17 p.m. and we're back on the video record.

BY MR. GUNN:

Q.  All right, thanks for that break.  You mentioned, I think, just to be sure, that there's a process for a -- either a tickler, or a diary, or a reminder note to go into the Progressive system; is that right?

A.  There is.

Q.  Okay.  Have you had the practice of sending out requests for information to include a medical authorization to the UM claimant or his lawyer?

MR. ANGLEY:  Form.

THE WITNESS:  Are you asking me if I did on this claim or if I have the bill?

BY MR. GUNN:

Q.  At Progressive outside of this claim, have you

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     **www.MILESTONEREPORTING.com**     **Toll Free 855-MYDEPOS**

had occasion to send requests for information to UM claimant, including a request for a med authorization?

A.   Yes.

Q.   Do you set a diary for follow-up?

A.   Yes.

Q.   And if you don't get what you've asked for from the claimant, what do you do?

MR. ANGLEY:  Form.

THE WITNESS:  I could re request it.

BY MR. GUNN:

Q.   Send the claimant reminder, right?  Hey, we're still looking for XYZ, right?

A.   Correct.

MR. GUNN:  Okay.  Could you display, Delton, the document that -- I think it's Erin Diaz talking about whether this $50,000 required the end of all litigation, including the bad faith claim?  We'll mark that -- has that been marked already, Mr. Angley?

MR. ANGLEY:  I haven't seen it, and it's just on the screen now.

MR. GUNN:  Okay.

MR. ANGLEY:  So yes, it has.

MR. GUNN:  All right.  Is that also part of the prior exhibit?  I think we said it was what, 10?

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

MR. ANGLEY:  It's Exhibit 11.

MR. GUNN:  11.  Thank you.

BY MR. GUNN:

Q.    All right.  So 11 is a two-page document. Within the document is an e-mail from Erin Diaz of January 15, 2021, at 3:28 p.m.; do you see that?

A.    Yes.

Q.    All right.  Have you familiarized yourself with it, reread it?

A.    I can read it now.  Okay.  Yes.

Q.    Does that refresh your recollection that Mr. Sartes was told that if this isn't going to end all litigation, including bad fate, that you should send back the check?

MR. ANGLEY: Objection.  Form.  Misstates the record.

MR. GUNN:  Well, I've got an objection there. I'm going to read it into the record, ma'am, okay? This is the record of that e-mail.  "Good afternoon. Please allow this e-mail to serve as a response to your December 31, 2020, communication pertaining to Progressive's tender in this matter.  Please note that Progressive's tender was in response to receiving new information.  If there are any issues with the proposed releases, please kindly advise, as

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

Progressive is happy to work with you.  Progressive

is not aware of any bad faith allegations and notes

that any prior CRNs were properly responded to

pointing out the existing valid disputes at that

time.  Progressive continues to encourage the

plaintiffs to accept the tenders, but if they intend

to reject the tenders and further litigate this

matter, please kindly return the checks.  Thank

you."  Did I read that correctly?

        THE WITNESS:  Yes.

         BY MR. GUNN:

    Q.   Do you understand that to mean that if Mr.

Sartes and Mr. Wilkins want to prosecute bad faith

claims, they cannot keep the $50,000?

        MR. ANGLEY:  Form.

        THE WITNESS:  I understand it to read that if

   the plaintiffs are not willing to accept the tenders

   and they intend to reject it and further litigate

   the matter than to return the checks.

        BY MR. GUNN:

    Q.   Why do you understand Ms. Diaz is referencing

Progressives?  Not aware of any bad faith allegations

and notes that any prior CRMs were properly responded

to, pointing out the existing valid disputes at that

time?  What is your understanding as to why your lawyer



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

is referencing the CRN in any bad faith claim?

MR. ANGLEY:  Form.

THE WITNESS:  They're reference -- she's referencing the CRN.  We received a -- a prior CRN, and we responded to it.  At that time, it was a dispute in the value of it.

BY MR. GUNN:

Q.   And it's included in there because if Mr. Sartes and Mr. Wilkins want to keep the $50,000, they had to agree not to  "further litigate this matter," including any bad faith claims, right?

MR. ANGLEY:  Form.

THE WITNESS:  Yes.

BY MR. GUNN:

Q.   All right.  This may -- so I don't want to -- , I don't want you to blurt anything out.  This may get into some privilege that I need to argue about.  So listen carefully, give your attorney a chance to think about it before you respond, okay?

A.   Okay.

Q.   My first question is simply a yes or no.  At any time, to your knowledge, did anyone at Progressive ask that the attorneys at Wicker, including Erin Diaz or Ash, provide any evaluation of the likely damages to be determined if the UM count was tried to a total damages

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

verdict?

MR. ANGLEY:  Ms. --

MR. GUNN:  That's just a yes or no.  That's just for the record, yes or no.

MR. ANGLEY:  No.  I'll caution you to the extent you can answer yes or no without invading any attorney-client communication, you may do so, but I don't want you to go beyond a yes or a no.  To the extent you can't do that without invading any privilege or you otherwise don't know.  You can say that as well. So that's my instruction.

THE WITNESS:  Okay.  So -- okay.  Could you repeat the question then?

BY MR. GUNN:

Q.  Let me put it to you simply.  Did you ever ask Erin or anybody at the law firm what they thought the claim was worth?  Yes or no?

MR. ANGLEY:  I'll instruct you not to answer that question, as it's potentially attorney-client privileged.

MR. GUNN:  Yes or no?

MR. ANGLEY:  You are asking what her communications were with -- or with defense counsel.

MR. GUNN:  Okay.  You're instructing her that I cannot even get what would be the necessary listing


MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY
CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**
**407.423.9900**  **www.MILESTONEREPORTING.com**  **Toll Free 855-MYDEPOS**

on a privilege log of subject matter claim

evaluation?

MR. ANGLEY:  You're telling me you're asking a

yes or -- a straight yes or no, you're not as to the

substance of any communication.

MR. GUNN:  That's -- I've tried to be very

careful in asking it that way twice now.

MR. ANGLEY:  Sure.  Ma'am, I'll instruct you --

to the extent you can answer that question simply

yes or no without revealing the substance of any

communication you may do so.  To the extent you

don't know or can't answer that question without

invading the substance of an attorney-client

communication, I'll instruct you not to answer.

BY MR. GUNN:

Q.    Once again.  Did you ever ask the lawyers at

Wicker Smith, including Erin Diaz or Ash how much they

thought the claim was worth?  Yes or no?

MR. ANGLEY:  Same instruction, ma'am.

THE WITNESS:  No.

MR. GUNN:  Did you ever receive any information

from the Wicker Smith firm to which your lawyers,

this may be something they have to answer, have

redacted, but you used to evaluate the claim?  That

may be something David's got to help you with.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Because as you as you saw some of the claim file notes, ma'am, as we received them, they were blacked out.  So I just -- I -- my position, David, as you know, is that if the firm is acting in a dual capacity of claim investigation as well as giving legal advice, then their role as a claim investigator is not within privilege.

That's -- and I'm just making the record for it.  So if you want to answer it, that's fine.  I just want to make sure that there aren't some facts that have been redacted that aren't true legal advice, but rather a lawyer as adjuster.

MR. ANGLEY:  You're asking the witness that or you're asking me that, Lee?

MR. GUNN:  I'm asking both of you.  Whomever you want to answer that.  I would ask the witness who know -- who I -- let me ask this.

BY MR. GUNN:

Q.   Ma'am, when these files are created, they're not blacked out when you looked at them while you're adjusting the loss, right?

A.   Correct.

MR. GUNN:  Okay.  They were blacked out, redacted because of a claim of privilege.  And I just want to make a record of inquiry, David, that



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          **Toll Free 855-MYDEPOS**

3808853 Hailman Janice 05-23-2025    Page 166

to the extent the redactions include informational conveyance, okay?  I took the depo of Mr. Wilkins and here are the facts that he disclosed.  If things like that have been redacted, it's my position that I'm entitled to them. You can disagree, but I just want to see if there's anything even to fight about.

MR. ANGLEY:  Ms. Hailman, I'll instruct you not to answer any questions about any redacted information. Lee, we provided a privilege log.  If you want to confer about specific entries, we can do so outside the context of this deposition.

MR. GUNN:  Perfect.

MR. ANGLEY:  But the privilege log and the basis for the objections stand as written.

MR. GUNN:  Perfect.  I accept that and I thank you for making sure that's on the record.  And obviously, I would get into it with the witness.  If I disagree with it later, I reserve any rights if I have any to talk with her more about something that's unredacted later.  With that, though, that concludes my questioning of your witness with thanks to everybody. Anything else you want to cover?

MR. ANGLEY:  Yeah.  I got some follow-up.

REDIRECT EXAMINATION

BY MR. ANGLEY:



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    www.**MILESTONEREPORTING**.com    **Toll Free 855-MYDEPOS**

Q.   Ms. Hailman, can you force a UM claimant to execute a medical authorization?

A.   No.

Q.   And your experience of 15 years -- of approximately 15 years of handling injury claims many times, do you and claimants not execute a medical authorization?

A.   Yes.

MR. GUNN:  Form.

BY MR. ANGLEY:

Q.   To your understanding -- do you have any understanding one way or another, whether or not prior to your involvement, a Progressive adjuster sent a medical authorization to Mr. Wilkins?

A.   I do not recall.

Q.   Is it the general procedure in handling a UM claim to send one?  That's okay.  Strike that question. When you got the -- Mr. Wilkins' specific claim, it was in suit, correct?

A.   Correct.

Q.   And when you got Mr. Wilkins' claim, was it your understanding that he was not willing to settle for the policy limits?

A.   Yeah.

Q.   And when -- during your particular handling of

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          Toll Free **855-MYDEPOS**

the claim, you had conversations with Mr. Wilkins'

attorney where he specifically stated he was not willing

to accept the policy limits, correct?

A.   Yes.

Q.   During your particular involvement in this

claim, did you believe that a EUO, IME, or records

review was warranted at that particular time?

A.   No, I did not.

Q.   And why is that?

A.   Because the investigation was ongoing, so we

still had time to obtain, through -- through the

discovery process, additional documentation, we can

request prior records, so I didn't feel it was warranted

at that time.

Q.   And through your outreach to Plaintiff's

Counsel and through the discovery process, did you get

additional billing and treatment records for Mr. Wilkins

during your specific claims handling?

A.   Yes.

Q.   And did you evaluate that information?

A.   Yes.

Q.   And did you give that information fair

consideration?

A.   Yes.

Q.   You were asked about -- during cross-



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

examination about so-called magic words as it -- as it

pertains to the issue of permanency.  Do you recall

that?

A.   Yes.

Q.   So having a permanent injury within a

reasonable degree of medical probability in the context

of a uninsured motorist claim, that -- those aren't

simply magic words, right?

A.   Correct.

Q.   In fact, to breach the tort threshold, there

are certain factors or requirements that have to be met?

A.   Yes.

Q.   And are those -- is that -- and that's a

Florida statute, to your understanding?

A.   Yes.

Q.   And is that language also part of the

Progressive policy that Mr. Wilkins had?

A.   Yes.

Q.   Did any of Mr. Wilkins' treating physicians

during your involvement in the claim provide any

permanency opinion to Mr. Wilkins as it pertained to the

July 26, 2019, accident?

A.   No.

MR. GUNN:  Form.

BY MR. ANGLEY:

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

3808835 harlman Janice 05-23-2025    Page 170

Q.   And absent any such opinion or other evidence demonstrating a threshold breach, Mr. Wilkins in this particular claim, during your involvement, did not breach the work threshold, correct?

A.   Correct.

MR. GUNN:  Form.

BY MR. ANGLEY:

Q.   And given that he didn't breach the tort threshold, he would not be entitled to damages for pain and suffering?

A.   Correct.

MR. GUNN:  Form.

BY MR. ANGLEY:

Q.   In your evaluation of Mr. Wilkins claims and the basis of your offers, you gave consideration for his out-of-pocket expenses, correct?

A.   Yes.

Q.   And you gave consideration for the treatment that he underwent?

A.   Yes.

Q.   Do you believe you fairly evaluated Mr. Wilkins' claim given the information that you had at the various times?

A.   Yes.

MR. GUNN:  Form.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

BY MR. ANGLEY:

Q.   And were your offers based on that evaluation?

A.   Yes.

MR. GUNN:  Form.

BY MR. ANGLEY:

Q.   And did -- during your handling of the claim, did Mr. Wilkins or his attorney submit or provide any documentation that showed or supported proof of loss of enjoyment of life?

A.   No.

MR. GUNN:  Form.

BY MR. ANGLEY:

Q.   And Mr. Wilkins, he was being treated in connection with the July 26, 2019, auto accident by his treating providers?

A.   Yes.

Q.   And is it your understanding it's up to his treating providers to render permanency opinions?

A.   Yes.

MR. GUNN:  Form.

BY MR. ANGLEY:

Q.   So in the absence of a permanency opinion, the conclusion would be those treating providers did not have the opinion, correct?

MR. GUNN:  Form.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          **Toll Free 855-MYDEPOS**

THE WITNESS:  Correct.

BY MR. ANGLEY:

Q.   You were asked questions of your -- it's on Page 76 of the claim notes about your June 13, 2020, evaluation as it pertained to future treatment.  And this updated evaluation was triggered by the receipt of the medical records that came to Progressive on May 1, 2020, correct?

A.   Correct.

Q.   And that's at Exhibit 4.  If you could turn there.  If you go to PRG 1428, the last treatment record from Trinity Spine was the date of service of February 12, 2020.  If you go to the current plan section on PRG 1431, do you see the current plan section?

A.   Yes.

Q.   And on follow-up and in this record, was there any additional medical procedure scheduled at this time for Mr. Wilkins?

A.   No.

Q.   So based on your review of these records, was it clear what, if any, medical procedures Mr. Wilkins would need to undergo or would undergo in the future?

A.   No.

Q.   And did that form in part your basis for not apportioning evaluation for future medical treatment at

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          **Toll Free 855-MYDEPOS**

the time you completed your June 13, 2020 evaluation?

A.   Correct.

Q.   You could go to Exhibit 9, tab 9.  This is a copy of your December 24, 2020, correspondence where you tendered the policy limits, correct?

A.   Yes.

Q.   And I'll read it.  "You indicate we have received we have even enc closed a proposed release for your review.  Our tender is not conditioned upon the execution of any particular form of release.  If you have any objections to the language contained in the draft or proposed release, please contact me.  Contact me immediately to discuss your concerns"; is that accurate?

A.   Yes.

Q.   The release was a proposed release, correct?

A.   Yes.

Q.   The tender of the policy assignments wasn't conditioned on the specific language of this release, correct?

A.   Correct.

Q.   Did Attorney -- did the attorney for Mr. Wilkins provide any feedback or comment about the proposed release?

A.   No.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q.   And at this point in time, Mr. Wilkins has already advised Progressive that he was unwilling to settle for the policy limits, correct?

A.   Yes.

Q.   In your claims handling of Mr. -- in your handling of Mr. Wilkins' claim, did you utilize the training, knowledge, and experience that you obtained at Progressive?

A.   Yes.

MR. GUNN:  Form.

BY MR. ANGLEY:

Q.   And during your handling of Mr. Wilkins' particular claim, you had been handling injury claims for approximately 15 years; is that correct?

A.   Yes.

MR. GUNN:  Form.

BY MR. ANGLEY:

Q.   Did you believe that you were at -- you had adequate knowledge, experience, and training to handle Mr. Wilkins' claim?

A.   Yes.

MR. GUNN:  Form.

BY MR. ANGLEY:

Q.   When -- can you go to Exhibit 11?  Which is the e-mail from Attorney Diaz to Attorney Sartes.  Did

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

Attorney Sartes respond to Attorney Diaz and propose any changes or modifications to the release language?

A.   Not that I'm aware of.

Q.   Okay.  You simply sent the January 29, 2021, rejection letter at Exhibit 12, correct?

A.   Correct.

Q.   At all times, were you attempting to come to a fair, prompt, and reasonable evaluation and resolution of Mr. Wilkins' claim?

A.   Yes.

MR. GUNN:  Form.

MR. ANGLEY:  No further questions.

RECROSS-EXAMINATION

BY MR. GUNN:

Q.   I just need to clear out briefly on recross. Ma'am, you were showed again Exhibit 9.  Do you have it?

A.   Yes.

Q.   I want there to be as little confusion of the record as possible.  Progressive did not require a particular form of release in condition to the $50,000 payment, but Progressive required some form of release that would end all litigation against Progressive, correct?

MR. ANGLEY:  Form.

THE WITNESS:  It is our standard practice to

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**      www.**MILESTONEREPORTING**.com      Toll Free 855-MYDEPOS

provide release.

BY MR. GUNN:

Q.   And I think we covered this, but I don't want there to be confusion.  There's a difference between any particular form of release and saying that our tender is not conditioned on any release.  Agreed?

A.   Well, I can't make anybody sign a release.  So we provide an -- a proposed release.

Q.   Progressive could have written our tender's not conditioned upon execution of a release period, keep the money, cash the check, sue us for bad faith if you think you can do so; it could have said that?

MR. ANGLEY:  Form.

THE WITNESS:  Anything could have been said.  That's a something --

BY MR. GUNN:

Q.   What?

A.   -- a legal --

Q.   Go ahead, ma'am.

A.   That would have to be answered by our legal team, but anything could be said in a letter.

Q.   Fair enough.  So what Mr. Sartes and Mr. Wilkins said is, we're not going to give up our claim to bad faith for the $50,000 UM benefit, Mr. Wilkins thought was due to be paid by Progressive, fair?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**   **www.MILESTONEREPORTING.com**   **Toll Free 855-MYDEPOS**

MR. ANGLEY: Form.

THE WITNESS: Could you repeat that?

BY MR. GUNN:

Q. Mr. Wilkins and through his lawyer said, I'm not giving up whatever rights I have to sue Progressive for bad faith, if I have any rights at all for this $50,000 UM benefit check, that's what was said, right?

MR. ANGLEY: Object to the form.

THE WITNESS: Well, he -- he returned the draft, so he was not accepting the limits. So based on what he can and can't do legally, that's a legal question.

MR. GUNN: All right. And we covered this, and I don't want to beat the dead horse, but that's what Ms. Diaz said about if we looked at that e-mail. And that was your understanding as the adjuster, that's what triggered return of the $50,000 check. Ms. Diaz's e- mail saying, if you're not willing to settle or whatever the terminology is -- Delton put it back up just so that I've got it for her in fairness. All right.

BY MR. GUNN:

Q. And this is at Progressive 4915. I mean, Progressive continues to encourage Plaintiffs to accept the tenders, but if they intend to reject the tenders

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     **www.MILESTONEREPORTING.com**     **Toll Free 855-MYDEPOS**

and further litigate this matter, please kindly return the checks.  That's what your lawyer said to Mr. Wilkins lawyer about this concept of settlement, right?

MR. ANGLEY:  Form.

THE WITNESS:  She said return the checks if you do not intend -- if you intend to reject the tenders and further litigate the matter.

BY MR. GUNN:

Q.   All right.  And I just want to be clear that your background, training, experience at Progressive is we don't UM pay benefits unless some form of release is signed by the claimant.  And if they don't want to sign some form of release that ends the litigation against Progressive, then we expect them not to keep the check; is that your understanding?

MR. ANGLEY:  Form.

THE WITNESS:  When we issue the check and we send a proposed release, like I said, we can't make somebody sign a release.  So yeah, anything further would have to go through legal.

BY MR. GUNN:

Q.   Okay.  So would you expect, as was done here, if you're not willing to sign some mutually agreeable form of release between Mr. Wilkins and Progressive, you can't keep the $50,000?

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     www.**MILESTONEREPORTING**.com     Toll Free 855-MYDEPOS

3808853 Harlman Janice 05-23-2025                    Page 179

A.   No.  I mean, I didn't say he couldn't keep the 50,000.  He they rejected the tender.  They rejected it.  They did not keep it.  They did not cash it.  They returned it.

Q.   Why did they return it?  It's because it said it would end the litigation against Progressive, including any bad faith rights.  Isn't that what happened, ma'am?

MR. ANGLEY:  Form.

THE WITNESS:  Well, I can't speak on what their -- the attorney's plan was to do -- or Plaintiff's Counsel's plan was to do at the time.

BY MR. GUNN:

Q.   Why didn't you just send a check -- clean check, here's $50,000?  No particular form.  No release at all is required and all bad faith claims if you have any are preserved.  Why didn't you just do that?

MR. ANGLEY:  Object to the form.  Speculation.  Asked and answered.

THE WITNESS:  Because that ours are standard process to provide, when we issue the draft, we issue the proposed release as well.

BY MR. GUNN:

Q.   Payment is conditioned on some form of release being signed by the claimant.  You can't make them sign

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**      www.**MILESTONEREPORTING**.com      Toll Free 855-MYDEPOS

380883 Hariman Janice 05-23-2025 Page 180

it, but if they don't, they can't keep your money.
That's the process you understood, right?

MR. ANGLEY:  Form.

THE WITNESS:  Well, in this particular case,
they did not even -- they did not keep it.  They
returned it.

BY MR. GUNN:

Q.   Your lawyer told them if they're not going to
sign a release, send the money back, right?

MR. ANGLEY:  Form.

THE WITNESS:  No.  It does not say if they're
not going to sign the release at all in the e-mail.
It says, if they intend to reject the tenders and
further litigate this matter, please kindly return
the checks. It did not say anything about not
signing a release.

BY MR. GUNN:

Q.   And as an adjuster professional with 15 years
experience, it's your testimony: I did not understand
that what our lawyer was saying is you either give up
your bad faith claims or you give back the money?

MR. ANGLEY:  Form.

THE WITNESS:  That's up to -- that's legal.  I
mean, each case is different.  So --

BY MR. GUNN:

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          Toll Free 855-MYDEPOS

Q.   I'm not asking for other cases.  I'm not asking for your legal opinion.  You're not the lawyer.  Erin Diaz is.  I'm asking for you as the assigned claim professional, whether you understood what was going on with your claim that you're handling was a lawyer was telling Mr. Sartes on behalf of Progressive either give up your bad faith claim or give back the $50,000.  Is that what you understood?

MR. ANGLEY:  Object to the form.

THE WITNESS:  I'm understanding that we've told them if you do not intend -- if you intend to reject it and further litigate, then return the drafts.  In this case, once it -- like, at that point, the drafts were returned, then I no longer have any further handling in that claim.  So I can't speak on the aspects of what happens after that.

BY MR. GUNN:

Q.   Yes, ma'am.  All right.  And did you understand at that point the assignment was made because of the new adjuster would be responsible for claims with alleged excess liability that's why you were transferred off the claim?

MR. ANGLEY:  Form.

THE WITNESS:  Right.  It was -- the draft was returned.  The -- the tender was rejected, so that's

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

why the claim was transferred to a new handling adjuster.

BY MR. GUNN:

Q. Okay. So the policy, it had nothing to do with you personally? It had to do with the claim process that Progressive, that when UM tenders are rejected, a different department starts handling the claim, right?

A. Correct.

Q. Okay. Thanks. That's all I have.

MR. ANGLEY: No further questions.

MR. GUNN: You want to read it?

THE VIDEOGRAPHER: Before we get off the record. Mr. Gunn, would you like to order the transcript at this time?

MR. GUNN: Nope. I'll take a copy if David orders. If he noticed the depo, if he wants it, he can order it. I'll take a copy. I don't need the video at this time, but I will be in touch.

THE VIDEOGRAPHER: Perfect. And before we get off record, Mr. Angley, would you like to order the transcript at this time?

MR. ANGLEY: Yes, please.

THE VIDEOGRAPHER: Is electronic, regular --

MR. ANGLEY: That's fine. And the witness will

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

3808835 Hartman Janice 05-23-2025                         Page 183

read.

THE VIDEOGRAPHER:  Perfect.  And would you like it synced to the video?

MR. ANGLEY:  Not at this time.

THE VIDEOGRAPHER:  All right.  One moment, please.  I'll get us off the record.  The time is 2:45 p.m. and we're off the video record.

(Deposition concluded at 2:45 p.m. ET)



**MILESTONE | REPORTING  COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

CERTIFICATE OF OATH

STATE OF FLORIDA

COUNTY OF ORANGE

I, the undersigned, certify that the witness in the foregoing transcript personally appeared before me and was duly sworn.

Identification:  Produced Identification



_____

Lilianna Cavanaugh

Court Reporter, Notary Public

State of Florida

Commission Expires: 08/16/2027

Commission Number:  HH 434226

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**         www.**MILESTONEREPORTING**.com         **Toll Free 855-MYDEPOS**

C E R T I F I C A T E

STATE OF FLORIDA)

COUNTY OF ORANGE)

     I, Lilianna Cavanaugh, Court Reporter and Notary Public for the State of Florida at Large, do hereby certify that I was authorized to and did report the foregoing proceeding, and that said transcript is a true record of the said proceeding.

     I FURTHER CERTIFY that I am not of counsel for, related to, or employed by any of the parties or attorneys involved herein, nor am I financially interested in said action.

Submitted on: June 9, 2025.

_____

Lilianna Cavanaugh

Court Reporter, Notary Public



MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     **www.MILESTONEREPORTING.com**     **Toll Free 855-MYDEPOS**

ERRATA

PAGE      LINE                    CHANGE      REASON

I have read the entire transcript of my deposition taken in the captioned matter or the same has been read to me.I request that the following changes be entered upon the record for the reasons indicated. I have signed my name to the Errata Sheet and authorize you to attach the changes to the original transcript.

_____        _____

Date                                   NAME



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

**MILESTONE I REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

**407.423.9900**
**Fax 407.841.2779**
**Toll Free 855-MYDEPOS**

**June 09, 2025**

**David Angley, Esquire**
Young, Bill, Boles, Palmer, Duke & Thompson, P.A.
401 E. Jackson St., Suite 2950
Tampa, FL 33602

RE:    Deposition of **Janice Hailman** taken on **5/23/2025**
        Mondamin Wilkins v. Progressive Select Insurance Company

Dear Mr. **Angley**,

### IMPORTANT NOTICE FOR DEPOSITION TRANSCRIPT READ AND SIGN

It is suggested that the review of this transcript be completed within 30 days of your receipt of this letter,
as considered reasonable under Federal Rules*.

 x     **Attorney - Copy of Transcript Enclosed:**  Signature of the Deponent is required.  Please have the deponent make any corrections/changes necessary on the Errata Sheet ONLY, sign name on the form where indicated.  Please return ONLY the original signed Errata Sheet to our offices within 30 days from the date of this memorandum.  If you have any questions, please call our offices.

     **Attorney - No Copy Ordered:**  Since you did not request a copy of the transcript, it will be necessary for the Deponent to call our offices to arrange for an appointment to read and sign the transcript of the Deposition within 30 days of this memorandum.

     **Deponent:**  At the time of your deposition, you did not waive your right to read and sign the transcript of your testimony, therefore, attached please find a copy of the transcript and Errata Sheet.  Please read the transcript, make any corrections necessary on the Errata Sheet ONLY, sign the bottom of the Errata Sheet, and return it within 30 days from the date of this memorandum.  Please call our offices if you have any questions.

     **Deponent:**  At the time of your deposition, you did not waive your right to read and sign the transcript of your testimony, therefore, it is necessary for you to come to our offices to read and sign same.  Please call Milestone Reporting Company to arrange for an appointment at your earliest convenience.

     **The errata sheet(s) and Notary Certificates(s) have not been received by our office in the allotted time period. The original transcript has been filed with the appropriate court or counsel.**

Thank you for your attention to this matter.

No. 380883                                    Reporter:

cc:

Waiver:
I, Janice Hailman**,** hereby waive the reading and signing of my deposition transcript.

_____                    _____

Deponent Signature                                                                          Date

*Federal Civil Procedure Rule 30 (e) / Florida Civil Procedure Role 1.310 (e)