**ORIGINAL**

407.423.9900
Fax 407.841.2779
Toll Free 855-MYDEPOS

MILESTONE I REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

CASE NO.: 8:24-CV-01793-TPB-AAS

MONDAMIN WILKINS,

Plaintiff,

v.

PROGRESSIVE SELECT

INSURANCE COMPANY,

Defendant.

DEPONENT:  KRISSI RODRIGUEZ

DATE:      JUNE 24, 2025

REPORTER:  MADALINE KOLO

400 North Ashley Drive, Suite 2600    100 East Pine Street, Suite 308    4651 Salisbury Road, 4th Floor
TAMPA, FL 33602                        ORLANDO, FL 32801                   JACKSONVILLE, FL 32256
                                       CORPORATE

APPEARANCES

ON BEHALF OF THE PLAINTIFF, MONDAMIN WILKINS:
Lee Gun, Esquire
Delton Gunn, Esquire
Gunn Law Group
401 East Jacksonville Street
Suite 3600
Tampa, Florida 33602
Telephone No.: (813) 228-7070
E-mail: lgunn@gunnlawgroup.com
        dgunn@gunnlawgroup.com
(Appeared via videoconference)

ON BEHALF OF THE DEFENDANT, PROGRESSIVE SELECT INSURANCE
COMPANY:
David Angley, Esquire
Blaise Antoniou, Esquire
Young, Bill, Boles, Palmer, Duke & Thompson, P.A.
401 East Jacksonville Street
Suite 2950
Tampa, Florida 33602
Telephone No.: (813) 603-3006
E-mail: dangley@flalawyer.com
        pantoniou@flalawyer.net
(Appeared via videoconference)

Also Present: Sam Acevedo, Videographer

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    www.**MILESTONEREPORTING**.com    **Toll Free 855-MYDEPOS**

393195 Rodriguez Knisel 06-24-2025

INDEX

                                              Page

PROCEEDINGS                                    5

DIRECT EXAMINATION BY MR. ANGLEY               5

CROSS-EXAMINATION BY MR. LEE GUNN             51

REDIRECT EXAMINATION BY MR. ANGLEY           105

RECROSS-EXAMINATION BY MR. LEE GUNN          110


                      EXHIBITS

Exhibit                                       Page

   1 - Claim Notes Related to Subject Claim    14

   2 - Letter From Wilkins Attorney Civil

       Remedy Notice Bate Stamp PRG 300-313    19

   3 - Letter From Tragos, Sartes & Tragos to

       Progressive Insurance Dated December

       5, 2019 Bate Stamp PRG 3015-3021        21

   4 - Letter Dated December 31, 2019 Bate

       Stamp PRG 3390-3395                     29

   5 - Letter From Progressive to Tragos,

       Sartes & Tragos Dated January 13, 2020

       Bate Stamp PRG 1082                     37

   6 - Letter Response of Civil Remedy Notice

       Bate Stamp PRG 680-685                  45


MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

393195 Rodriguez Krissi 06-24-2025    Page 4

                        STIPULATION


The deposition of KRISSI RODRIGUEZ was taken at

MILESTONE REPORTING COMPANY, 315 EAST ROBINSON STREET,

SUITE 510, ORLANDO, FLORIDA 32801, via videoconference

in which all participants attended remotely, on TUESDAY

the 24th day of JUNE 2025 at 9:00 a.m. (ET); said

deposition was taken pursuant to the FLORIDA Rules of

Civil Procedure.


It is agreed that MADALINE KOLO, being a Notary Public

and Court Reporter for the State of FLORIDA, may swear

the witness and that the reading and signing of the

completed transcript by the witness is not waived.



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

393195 Rodriguez Krissi 06-24-2025      Page 5

PROCEEDINGS

THE VIDEOGRAPHER:  Okay.  We are now on the video record.  The time is now 9:01 a.m. on June 24th, 2025.  We are here to take the deposition of Krissi Rodriguez in the matter of Mondamin Wilkins v. Progressive Select Insurance Company.  Case number: 8:24-CA[sic]-01793-TPB-AAS.

Will counsel please introduce themselves to the record, beginning of the plaintiff?

MR. LEE GUNN:  Yeah.  Lee Gunn and Delton Gunn for the plaintiff, Wilkins.

MR. ANGLEY:  David Angley and Blaise Antoniou on behalf of the defendant, Progressive.

THE VIDEOGRAPHER:  Okay.  Will the court reporter please swear in the witness?

THE REPORTER:  Can you raise your right hand for me, ma'am?  Thank you.  Do you solemnly swear or affirm that the testimony you're about to give will be the truth, the whole truth, and nothing but the truth?

THE WITNESS:  Yes, I do.

THE REPORTER:  Okay.  You can put your hand down.  Counsel may -- you may begin.

DIRECT EXAMINATION

BY MR. ANGLEY:



MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          **Toll Free 855-MYDEPOS**

Q.    Good morning, Ms. Rodriguez.

A.    Good morning.

Q.    Could you please state and spell your full name for the record?

A.    Kristen Rodriguez, K-R-I-S-T-E-N.  Last name, R-O-D-R-I-G-U-E-Z.

Q.    And you often go by Krissi?

A.    Yes.

Q.    Okay.  So Ms. Rodriguez, we're going to be taking your deposition here today via Zoom.  It's important for -- we have the court reporter here with us.  So it's important that you allow the questions to be asked before you start to answer.  And on our side of things, we'll do our best to make sure that you're finished answering before any follow up questions are asked.  If you need clarification, if you don't hear the question, if my audio cuts out or there's some video problem, you know, just let us know; we can work through that.  I will be sharing some documents via the share screen function.  So if you need me to zoom in, zoom out, scroll up or down at any point in time, please let me know.  If you need a break at any point, please let me know.

All that sounds fair to you?

A.    Yes.

 MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

Q.   Okay.  And Ms. Rodriguez, have you ever been deposed before?

A.   Yes.

Q.   Oh, I'm having a little trouble hearing you. Could you maybe speak up?

A.   Yes.

Q.   Yes?  Okay.  How many times?

A.   Twice.

Q.   Twice.  And was that in connection with your work at Progressive?

A.   Yes.

Q.   Yes.  And the first time you were deposed, what was that concerning?

A.   It was related to a PIP claim.

Q.   Do you recall when that occurred, that deposition?

A.   No, I don't.

Q.   And what about the second time?

A.   Also related to a PIP claim.

Q.   Okay.  Have you ever been deposed in connection with an insurance bad faith claim outside of today's proceedings?

A.   No.

Q.   Okay.  Do you recall -- the second deposition that was the PIP claim, do you recall when that

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

occurred?

A. No.

Q. And that was no?

A. No.

Q. Okay. And can you tell me your date of birth, please?

A. December 19th, 1983.

Q. And can you provide me a brief -- a recitation of your education background; starting with college?

A. Sure. So I went to University of Central Florida. I have a bachelor's degree in psychology with a minor in women's studies.

Q. Okay. And when did you obtain the bachelor's degree?

A. I graduated with my bachelor's in 2008.

Q. Okay. Any other college education?

A. No.

Q. I'm having trouble hearing you. Ms. Rodriguez, if you could --

A. No.

Q. I apologize.

A. Okay.

Q. It's just important for the court reporter, so she can get everything that's being said here today. And do you have -- where do you currently work?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**   **www.MILESTONEREPORTING.com**   **Toll Free 855-MYDEPOS**

593195 Rodriguez Krissi 06-24-2025

A.   Progressive Insurance.

Q.   And what is your current job title?

A.   Claims manager.

Q.   And what is a claims manager?

A.   I oversee a staff of approximately five supervisors and approximately 30 to 35 adjusters.

Q.   So you -- did supervisors report directly to you; the group of supervisors?

A.   Yes.

Q.   And then those supervisors manage a group of adjusters themselves?

A.   Yes.

Q.   Okay.  And are you a claims manager in a particular department or role?

A.   Yes.

Q.   And what is that?

A.   So my group handles unrepresented injury claims.

Q.   And would those be both bodily injury and uninsured motorist claims?

A.   Yes.

Q.   And when did you start working at Progressive?

A.   June of 2010.

Q.   Okay.  So you've been there approximately 15 years?



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

593795 Rodriguez Krissi 06-24-2025    Page 10

A.   Yes.

Q.   And can you tell me -- can you kind of walk me through the history of your work at Progressive from when you started to today; kind of, the roles you've held and the time frame in which you've held those roles?

A.   So my first role at Progressive Insurance was in the personal injury department as an adjuster.  I held that position for approximately three years.  At that point, I transitioned into leadership with our clerical staff.  I was a supervisor in our clerical department for approximately two to two-and-a-half years before moving back into a -- or before moving into a supervisor role in the personal injury protection department.  I held that position for approximately a year-and-a-half.  I then transitioned over into our liability claims department, handling -- setting up repairs and liability decisions.  I held that role for approximately two years before moving over into the attorney represented injury department as a supervisor.  I held that role for approximately two-and-a-half years.  I was then a manager in our clerical department.  I held that role for approximately nine months before moving into a manager role in the attorney represented injury department.  I did that for approximately three months



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        www.**MILESTONEREPORTING**.com        **Toll Free 855-MYDEPOS**

593795 Rodriguez Krissi 06-24-2025

before obtaining the position in the unrepresented injury department as a manager.  And I have been in this role since April of 2022.

Q.    Thank you.  And was Progressive the first job you held at an insurance company?

A.    Yes.

Q.    And before joining Progressive -- you graduated from UCF in '08, you said, and started at Progressive in 2010.  So did you have any -- what jobs did you hold between '08 and 2010?

A.    Yes.  I worked for Lakeside Behavioral Healthcare, which is the local mental health provider; Baker Act receiving facility.

Q.    And you -- did you hold that role from 2008 to 2010 when you joined Progressive?

A.    Approximately, yes.

Q.    Okay.  And for each one of the positions you've held at Progressive, did you receive training?

A.    Yes.

Q.    And did you feel that you were adequately trained or did you receive adequate training and feel adequately trained to fulfill the job roles that you held at the various stages at Progressive?

A.    Yes.

Q.    And do you continue to receive training?



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

595795 Rodriguez Krissi 06-24-2025

A.    Yes.

Q.    And do you have any insurance related certificates or licenses?

A.    No.

Q.    Are you a Florida license adjuster?

A.    Yes.

Q.    Okay.  What kind -- do you know what kind of license you hold?

A.    It's the All Lines 6-20.

Q.    And do you know when you obtained that license?

A.    I believe it was June of 2010.

Q.    Okay.  And have you ever held the license in any other state?

A.    No.

Q.    Okay.  Any other certifications, licenses, or education other than what we've talked about so far?

A.    No.

Q.    And then kind of going back through your -- the timeline of your work history at Progressive.  In December 2019, what was your specific role at Progressive?

A.    I was a supervisor in the attorney represented bodily injury department.

Q.    Okay.  And as a supervisor in that department,



**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

what -- generally speaking, what were your, like, job duties or responsibilities?

A.   Sure.  So I would have a direct report group of approximately five to six adjusters.  I would ensure that they were handling their own workload, responding to time limit demands, evaluating their claim load, managing their inventory, responding to customer requests.

Q.   And at some point, did you become involved in an uninsured motorist claim that was brought by Mondamin Wilkins against Progressive that arose out of a July 26, 2019, motor vehicle accident?

A.   Yes.

Q.   And in 2019, when you handled -- in 2019, 2020, when you handled the claim at Progressive, did you keep notes of the activities that you would perform on a claim?

A.   Yes.

Q.   And were these called face sheet notes or claim notes?

A.   Yes.

Q.   And were these notes electronic in nature?

A.   Yes.

Q.   And did you use these notes to document the activities that you performed on a particular file, such



MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          Toll Free 855-MYDEPOS

as Mr. Wilkins'?

A.    Yes.

Q.    And if you entered a note, did you enter that note near or at the time that the event occurred?

A.    Yes.

Q.    And when you entered a note, did you have knowledge of the events you were documenting?

A.    Yes.

Q.    And did you make notes or create notes for Mr. Wilkins' uninsured motorist claim?

A.    Yes.

Q.    Okay.  And a common term for uninsured motorist is UM; is that --

A.    Yes.

Q.    Yeah.  So if I use the term UM, you'll understand what I mean by that and we can --

A.    Yeah.

Q.    -- kind of -- I don't have to say uninsured motorist every time I want to refer to UM?

A.    Yes.

Q.    And in the industry, bodily injury is often referred to as BI?

A.    Yes.

Q.    Okay.

I'm going to show you what I'll mark as

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     **www.MILESTONEREPORTING.com**     **Toll Free 855-MYDEPOS**

Exhibit 1.

(Exhibit 1 was marked for identification.)

BY MR. ANGLEY:

Q.   It's Bates Stamped PRG 1 through 255.  And Ms. Rodriguez, as I mentioned before, I'm going to be sharing my screen with you through these proceedings. So sometimes it's too small or blurry or you need me to go up and down.  So let me know if I need to zoom in or out or go up or down at any point.

A.   Okay.

Q.   Does this appear to be a copy of the claim notes from Mister -- related to Mr. Wilkins' uninsured motors claim?

A.   Yes.

Q.   And before we discuss the specific notes and some of the materials, do you have any independent recollection of this claim outside of the documents?

A.   Only what I've reviewed in preparation for today's meeting.

Q.   Okay.  So I want to -- this is on Page PRG 42, Page 42 of the claim notes.  There's an entry on December 4, 2019 at 4:32 p.m. by Camille Crawford.  Do you see this entry?

A.   Yes.

Q.   Can you tell me who Ms. Crawford is and what

**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.**MILESTONEREPORTING**.com          Toll Free 855-MYDEPOS

593795 Rodriguez Krissi 06-24 2025   Page 16

her role was at Progressive in -- as of December 2019?

A.   Camille Crawford was an adjuster on my team at that time.

Q.   Okay.  And it indicates a bulk file review. What's a bulk file review?

A.   That would indicate she received multiple claims from another adjuster.

Q.   Okay.  So based on this, would this indicate that the -- Mr. Wilkins' UM claim was assigned to Ms. Crawford on or about December 4th of 2019?

A.   Yes.

Q.   And did you become -- did your involvement become triggered or become triggered based on the fact that this claim was assigned to Ms. Crawford and you were supervising Ms. Crawford during that time period?

A.   Yes.

Q.   And what is Ms. Crawford generally indicating in her claim note entry on December 4th of 2019?

A.   It is -- it appears to be a general intake note because she didn't have the file from the very beginning.  So it looks like she had reviewed the work that was done prior to her involvement.

Q.   And your role as Ms. Crawford's supervisor, would you have had any involvement in the -- these initial notes or the initial intake process that's



MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

documented here?

A.   No.   That would've been within her skillset.

Q.   Okay.   That's something left to Ms. Crawford to handle as -- in her role as the adjuster assigned to the file?

A.   Yes.

Q.   At the point of the file being transferred over to Ms. Crawford, Mr. Wilkins had an automobile liability insurance policy with Progressive, correct?

A.   Yes.

Q.   And he had -- and that policy provided uninsured motorist benefits?

A.   Yes.

Q.   Do you recall the amount of the UM policy limits?

A.   I believe it was 50,000 per person.

Q.   And then based on this entry, there had been a prior demand and a prior offer by the adjuster that preceded Ms. Crawford, correct?

A.   Yes.

Q.   And then it indicates in this entry, NOG and ID.

Can you tell me what those terms -- what those terms mean?

A.   NOG would indicate named owner guest

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

passenger, and ID would indicate insured driver.

Q.   And was it your understanding that Mr. Wilkins was the guest passenger and his wife, Mrs. Wilkins, was the insured driver?

A.   Yes.

Q.   All right.   There's an entry on December 9th, 2019, at 5:17 p.m.

Did -- is this your first entry?   This is on Page 44 of the claim notes.

Is this your first entry in the file materials?

A.   Yes.

Q.   And what are you indicating in this particular entry?

A.   That there was previously a civil-remedy notice that had been received and logged by a different individual for both Mr. and Mrs. Wilkins and that both myself and Camille were scheduled to review to ensure that a response was entered.

Q.   And why was that something that you made sure to note?

A.   To make sure that it was -- that the response was entered by the due date.

Q.   And what is your understanding of what the due date was for the civil-remedy notice?



MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     **www.MILESTONEREPORTING.com**     **Toll Free 855-MYDEPOS**

A.   That it would be due 60 days from the filing date.

Q.   And I didn't ask earlier, but to your understanding, at this point in time that the file was transferred to Ms. Crawford and you were supervising Ms. Crawford, was mister -- was Mr. Wilkins making an uninsured motorist claim to Progressive?

A.   Yes.

MR. ANGLEY:  All right.  This is Exhibit 2.  It's PRG 300-313.

(Exhibit 2 was marked for identification.)

BY MR. ANGLEY:

Q.   And take a moment to look at it.

Ms. Rodriguez, does this appear to be a correspondence from Mr. Wilkins' attorney in closing the civil-remedy notice?

A.   Yes.

Q.   Okay.  And who is Mr. Wilkins' attorney?

A.   Tragos, Sartes & Tragos.

Q.   At the time that you logged the CRN, would you have reviewed the CRN at that point in time?

A.   Yes.  I would've looked at it.

Q.   And then in connection with your supervision, would it be Ms. Crawford's role to handle the response

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

in connection with your supervision?

A.    Yes.

Q.    And can you tell me generally, what is your understanding of a -- your personal understanding of a civil-remedy notice?

A.    The civil-remedy notice is intended to allow the insured to correct any violations that are outlined.

Q.    And based on that, was it your understanding then that Mr. Wilkins was raising some type of issue as it pertained to mister -- as to Progressive's claims handling?

A.    That was my understanding of the allegation.

Q.    Turning back to the claim notes, there's an entry on December 10th, 2019, at 7:25 a.m.; did you make this entry?

A.    Yes.

Q.    And what did you indicate in this entry on December 10th?

A.    I was indicating that there was a notice within the -- within our system that we received documents for both Mr. and Mrs. Wilkins, and it looks like I essentially refiled the documents to make sure that they were sorted under the correct injured party.

Q.    And then did you -- it indicates DY to A124714 to RVW & respond.



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**            **www.MILESTONEREPORTING.com**            **Toll Free 855-MYDEPOS**

Can you kind of interpret that for me?

A.   Sure.  DY means diary.  So that means I sent a notice, and then the A followed by 124714 would be an employee ID.  So I sent a notice to Camille to review and respond to the documents that were received.

Q.   So would it -- would you -- so in this entry or -- it's basically reflecting that additional information had been received from Mr. Wilkins and you're instructing Ms. Crawford to review that information and respond accordingly?

A.   That's correct.

MR. ANGLEY:  And in connection with the mail review that you documented, would you review --

And I'll mark this as Exhibit 3.  It's been Bates stamped PRG 3015-3021.

(Exhibit 3 was marked for identification.)

BY MR. ANGLEY:

Q.   And this is the document that you indexed.

Would you have reviewed the additional records that were transmitted to Progressive on or around the time that you did the mail review on December 10th?

A.   I would've reviewed them to see essentially, like, what they were and the dates and who they were for, but I would not have reviewed them in -- in great detail at that time.



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        www.**MILESTONEREPORTING**.com        **Toll Free 855-MYDEPOS**

593795 Rodriguez Krissi 06-24-2025

Q.   Okay.  That would be something that would be within Ms. Crawford's general job duties?

A.   Yes.

Q.   And what was enclosed was a December 2nd, 2019, date of service record from Trinity Spine Center, correct?

A.   Yes.

Q.   And based on this record, I'll take you to the bottom, it indicates that Mr. Wilkins had undergone cervical injections on October 28th and December 2nd, correct?

A.   Yes.

Q.   Based on this record, was there any reference to an ACDF or other surgical procedure being planned or scheduled?

MR. LEE GUNN:  Object to the form.  Document speaks for itself.

You may answer, ma'am.

THE WITNESS:  I don't see a -- a reference to an ACDF on this document.

BY MR. ANGLEY:

Q.   Did the record state anything specific as to future medical care, like we are planning to do this on X date or anything of that nature?

MR. LEE GUNN:  Object to the form.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          Toll Free 855-MYDEPOS

593795 Rodriguez Krissi 06-24-2025

THE WITNESS:  Not specifically.

BY MR. ANGLEY:

Q.   Okay.  It said he would consider some additional procedures, but that that procedure was not agreed upon or scheduled at this time, correct?

A.   Correct.

MR. LEE GUNN:  Form.  Document speaks for itself.

BY MR. ANGLEY:

Q.   In this record, is there any statement by Dr. Saldin, who signed it, that Mr. Wilkins had suffered a permanent injury within a reasonable degree of medical probability?

MR. LEE GUNN:  Same.

THE WITNESS:  No.

BY MR. ANGLEY:

Q.   And was the October 28th, 2019, date of service record enclosed with this correspondence?

A.   No.

Q.   And to your understanding, at the point in time you made your claim note on December 10th, 2019, had Progressive received any medical record or other statement by one of Mr. Wilkins' treating providers that he had sustained a permanent injury within a reasonable degree of medical probability?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

593795 Rodriguez Krissi 06-24 2025

MR. LEE GUNN:  Form.

THE WITNESS:  No.

BY MR. ANGLEY:

Q.    And to your understanding, at the point in time you entered your December 10th, 2019, claim note, had Mr. Wilkins otherwise breached what's commonly referred to as the tort threshold?

A.    No.

Q.    And what is your understanding of the tort threshold?

A.    That the doctor would need to outline permanency of the injury.

Q.    And if permanency had not been established, how would that impact the evaluation or claims handling?

A.    That we essentially would consider the out-of-pockets that were incurred to date.

Q.    And --

A.    We wouldn't consider future medicals.

Q.    And what about non-economic damages, such as pain and suffering?

A.    We would not consider those.

Q.    Under -- and is that requirement something also contained within, to your understanding -- to your understanding, is that requirement also something contained within the subject policy?

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        www.**MILESTONEREPORTING**.com        **Toll Free 855-MYDEPOS**

A.   Yes.

MR. LEE GUNN:   Form.

BY MR. ANGLEY:

Q.   And to your understanding, did Mr. Wilkins have a prior medical history?

A.   Yes.

Q.   And what was your understanding of his prior medical history?

A.   My understanding was that he had sustained a prior lumbar injury resulting in paralysis, and he was in a wheelchair.

Q.   Ms. Rodriguez, taking you back to the claim notes, there's an entry by Ms. Crawford.  There's a couple entries on December 16th, 2019, I want to briefly discuss with you.

There's an entry here on December 16, 2019, at 1:26 p.m. on Page 46 of the claim notes by Ms. Crawford; do you see it?

A.   Yes.

Q.   And does this appear to be her note or claim-note entry related to her evaluation of the records that you documented as being received on December 10th, 2019?

A.   Yes.

Q.   And did miss -- based on her review of the -- those medical records, did Ms. Crawford determine an

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**   **www.MILESTONEREPORTING.com**   **Toll Free 855-MYDEPOS**

evaluation range?

A.    Yes.

Q.    And what was that evaluation range?

A.    Her range is noted as $8,144 to $13,144.

Q.    And at the time of this evaluation, to your understanding, did Mr. Wilkins have remaining PIP benefits?

A.    Yes.

Q.    And did he have medical payment coverage through his -- through his policy with Progressive?

A.    Yes.

Q.    And what amount was the medical payment coverage?

A.    I believe it was 500.

Q.    So Ms. Crawford documents her evaluation and determines an evaluation range of $8,144 to 13,144.

Can you tell me generally, what's your understanding of what an evaluation range is?

A.    Well, generally, you would consider the injuries and medical treatment that is documented by the providers that the injured party saw.  You know, that would include the -- any emergency room or any other subsequent treatment that was received.

Q.    And then there's an entry by Lexi Gorman on December 16th, 2019, at 1:44 p.m.; do you see that

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    www.**MILESTONEREPORTING**.com    Toll Free 855-MYDEPOS

595795 Rodriguez Krissi 06-24 2023

entry?

A.   Yes.

Q.   And can you tell me who is Ms. Gorman and what was her role at Progressive as of December 16th of 2019?

A.   Ms. Gorman was one of my peers.  She was a supervisor in my department at that time.

Q.   And it looks like, based on this entry, that Ms. Gorman met with Ms. Crawford to discuss her evaluation?

A.   Yes.

Q.   And did you -- do you know why -- you were Ms. Crawford's supervisor.

Do you know why you weren't -- you weren't handling this process with Ms. Crawford in conjunction with Ms. Crawford?

A.   I was out of the office.

Q.   Christmas holiday?

A.   Yes.

Q.   And did you have any involvement with this process, the -- Ms. Crawford's evaluation or the approval of that evaluation, or is that something that Ms. Gorman handled?

A.   That was something Ms. Gorman handled.

Q.   And based on that process, did Ms. Crawford extend a settlement offer to Mr. Wilkins for resolution

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     **www.MILESTONEREPORTING.com**     **Toll Free 855-MYDEPOS**

393795 Rodriguez Krissi 06-24-2025    Page 28

of his UM claim?

A.    Yes.

Q.    Okay.  And what was that offer amount?

A.    8,200.

Q.    And based on Ms. Crawford's note, was there a response from the attorney for Mr. Crawford [sic]?

A.    It -- based on the note, it looks like she talked to the attorney's office on December 17th of 2019, and requested additional documentation.

Q.    And did the attorney state that he would not accept anything under policy limits?

A.    Yes.

Q.    And then there's an entry on December 19th, 2019, at 4:20 p.m. by Courtney Sutton.  Who was Ms. Sutton and what was her role at Progressive at that time?

A.    Ms. Sutton was also one of my peers and the attorney represented bodily injury department at that time.

Q.    Based on this entry, were you still possibly out of the office at this point in time?

A.    Yes, I was.

Q.    Do you know how long you were out of the office for?

A.    I believe I was out of the office for

 MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    **www.MILESTONEREPORTING.com**    **Toll Free 855-MYDEPOS**

approximately two-and-a-half weeks.

Q.   Nice vacation.  Hope you had a good time.

MR. LEE GUNN:  Move to strike.

BY MR. ANGLEY:

Q.   All right.  Ms. Rodriguez, there -- there's an entry on January 6th, 2020, at 2:29 p.m. on PRG 50.  Do you see it?

A.   Yes.

Q.   All right.  Would this be your next entry in the file possibly after returning from vacation?

A.   Yes.

Q.   All right.  And what are you indicating in this particular entry?

A.   That I received mail. it was an attorney letter that was dated December 31st on behalf of Mr. Wilkins. And then I received a second document for Mrs. Wilkins, potentially via a fax on 12-19.  It included either additional medical records and/or bills.  So I sent a notice to Camille to review the documents and respond accordingly.

MR. ANGLEY:  I marked this as Exhibit 4.  Apologies.  It's been Bates stamps PRG 3390 to 3395.

(Exhibit 4 was marked for identification.)

BY MR. ANGLEY:

Q.   And Ms. Rodriguez, in looking at this, does

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    **www.MILESTONEREPORTING.com**    **Toll Free 855-MYDEPOS**

this appear to be the December 31st, 2019, correspondence that you've documented receiving in the claim notes?

A. Yes.

Q. And would you have reviewed the enclosed records at the time you noted receipt in the claim notes?

A. I would've reviewed them briefly to see what they were, but not in detail.

Q. Okay. And what was enclosed was a date of service of December 18th of 2019, correct?

A. Yes.

Q. And would you have seen that this -- based on this record, that Mr. Wilkins had reported 30 percent relief from the December 2nd, 2019 injection?

A. Yes.

Q. And at this point in time, based on this medical record, was there any injections scheduled for the future?

A. No.

Q. And it indicated Mr. Wilkins was going to think about some additional procedures and would follow up in approximately one month?

A. Yes.

Q. And based on that, was it unclear to the

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

595795 Rodriguez Krissi 06-24-2025

extent -- was it unclear whether or not Mr. Wilkins

would in fact undergo those additional procedures?

A.   Yes.

Q.   And based on this record, did any of Mr.

Wilkins treating physicians provide an opinion that he

had sustained a permanent injury within a reasonable

degree of medical probability?

MR. LEE GUNN:  Form.

THE WITNESS:  No.

BY MR. ANGLEY:

Q.   And based on this record, was there any

statement or indication that Mr. Wilkins was scheduled

or planning to undergo any surgical procedure?

A.   No.

Q.   And in connection with your instructions to

Ms. Crawford, was it your understanding that she would

review this information in its entirety and perform an

evaluation of that information?

A.   Yes.

Q.   Turning back to the claim notes, there's an

entry here -- there's two entries on January 13th, 2020,

I want talk about.  Ms. Crawford has one at 8:46 a.m. Do

you see it?

A.   Yes.

Q.   And then you have one that same day at 9:14

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     www.**MILESTONEREPORTING**.com     Toll Free 855-MYDEPOS

a.m. at the bottom of Page 51.  Do you see that one?

A.   Yes.

Q.   And in your entry on 9:14 p.m. -- 9:14 a.m. did you -- what did you indicate in your entry that morning?

A.   That I was authorizing an amount of $13,144 and that there was updated specials.

Q.   And was this authorization based on Ms. Crawford's entry at 8:46 a.m. that same day, January 13th, 2020?

A.   Based on the notes, her updated evaluation reduced the amount and my authorization, I opted to honor the original evaluation.

Q.   But your authorization was based on Ms. Crawford's note of that morning at 8:00 -- the claim that at 8:46 a.m.?

MR. LEE GUNN:  Form.

THE WITNESS:  Yes.

BY MR. ANGLEY:

Q.   When you were authorizing something, the note you have authorizing as outlined, what was that referencing?

A.   It was authorizing that she was requesting authorization based on the information that she had at the time, but ultimately I did not want to reduce the

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

amount of the range.

Q.   In connection with your authorization, would you have -- did you speak with Ms. Crawford about the evaluation; do you recall?

A.   Don't remember.

Q.   Would you have reviewed this claim note that she entered on January 13, 2020 at 8:46 a.m.?

A.   Yes.

Q.   And Miss -- in Ms. Crawford's claim, the -- she indicates that she's reviewing the 12 -- December 18th, 2019 date of service from Trinity Spine Center, correct?

A.   Yes.

Q.   And she lists out the injuries seen to Mr. Wilkins, the alleged injuries?

A.   Yes.

Q.   And then does Ms. Crawford update her analysis of the specials?

A.   Yes.

Q.   And can you tell me what are specials?

A.   The out-of-pockets essentially, that the customer would owe.

Q.   Okay.  So what she's documenting here under the special section would be her analysis of out-of-pocket medical expenses or the amount that Mr. Wilkins

 MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          **Toll Free 855-MYDEPOS**

would owe for his treatment?

A.  Yes.

Q.  Okay.  And can you -- and would you have reviewed these calculations in connection with your authorization?

A.  Yes.

Q.  And what did Ms. Crawford calculate the total out of pockets to be?  I can --

A.  2000 -- I'm sorry, can you make that a little bigger?  Thank you.  $2,278.

Q.  So those would be the economic damages that were available to Mr. Wilkins in connection with his UM claim?

MR. LEE GUNN:  Form.

THE WITNESS:  Yes.

BY MR. ANGLEY:

Q.  And then Miss -- as you mentioned before, Ms. Crawford updated the evaluation range -- or in fact updated it to $7,278 to $12,278, correct?

A.  Yes.

Q.  And then in your claim note entry, you maintained the 13,144 authorization from Ms. Crawford's prior evaluation of December 16, 2019, correct?

A.  Yes.

Q.  And at the point in time, you documented your

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

595795 Rodriguez Krissi 06-24-2025

authorization on January 13th, 2020.  To your understanding, had any medical doctor opined that Mr. Wilkins had sustained a permanent injury within a reasonable degree of medical probability stemming from the July 26th, 2019 accident?

MR. LEE GUNN:  Form.

THE WITNESS:  Not that was documented in the medical records.

BY MR. ANGLEY:

Q.   And to your understanding, had Mr. Wilkins demonstrated any breach of the tort threshold at that point in time?

MR. LEE GUNN:  Form.

THE WITNESS:  No.

BY MR. ANGLEY:

Q.   And given that -- well, strike that.

Given that situation, would it be your understanding that Mr. Wilkins would not be entitled to consideration for non-economic damages in connection with his Uninsured Motorist claim to Progressive's?

A.   That's correct.

Q.   And do you believe that Progressive gave full and fair consideration to Mr. Wilkins economic damages based on Progressive's evaluation of his claim?

A.   Based on the information we had at the time, I

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

do.

Q.   And following your authorization, what did Ms. Crawford do next on January 13th, 2020 at 10:39 a.m.?

A.   Ms. Crawford contacted the attorney to let them know that she had received the information they sent over, requested to discuss the offer, and the attorney that was handling Mr. Wilkins claim advised that they were not willing to negotiate below the policy limits and that they weren't sure if the client was willing to accept the policy limits at that time.

Q.   And at this point in time, was Progressive attempting to negotiate a resolution of Mr. Wilkins claim?

A.   Yes.

Q.   And based on the entry about it was -- based on this claim, that entry, was it unclear whether or not Mr. Wilkins would accept policy limits if offered?

MR. LEE GUNN:  Form.

Form.

THE WITNESS:  Yes.

BY MR. ANGLEY:

Q.   And did Mr. Wilkins attorney indicate that he would send something in writing that they were not willing to come off the UM policy limits?

A.   Based on Camille's note it -- it would appear



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     www.**MILESTONEREPORTING**.com     **Toll Free 855-MYDEPOS**

393795 Rodriguez Krissi 06-24-2025

that way.

Q.   On January 13th, 2020, at 3:47 p.m. you document here, ACK offers faxed/ mailed X 2.  Can you interpret that for me?

A.   It's acknowledging that Camille both faxed and mailed the offers for Mr. and Mrs. Wilkins to the attorney's office.

MR. ANGLEY:  I'll mark this as Exhibit 5.  It's PRG 1082.

(Exhibit 5 was marked for identification.)

BY MR. ANGLEY:

Q.   Would this be a copy of that correspondence that you documented as being sent out on January 13th of 2020?

A.   Yes.

Q.   And in this correspondence, does Ms. Crawford extend a settlement offer to Mr. Wilkins?

A.   Yes.

Q.   And what was the amount?

A.   8,200.

Q.   And was that offer accepted by Mr. Wilkins?

A.   No.

Q.   Taking you back to the claim notes, Ms. Rodriguez.  We have an entry on PRG 53, it's dated January 20th, 2020 at 4:46 p.m.  Do you see it?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    **www.MILESTONEREPORTING.com**    **Toll Free 855-MYDEPOS**

A.   Yes.

Q.   And this is an entry by Ms. Crawford.  Is Ms. Crawford -- and what is your understanding of Ms. Crawford's entry as it pertained to Mr. Bolton's?

A.   It looks like she is summarizing, you know, the status of the claim, general information about injuries and treatment, her attempts to negotiate the claim and her recommendation of how to respond to the civil remedy notice.

Q.   So in responding to the civil remedy notice, how does that at this time period, how would that process work at Progressive?

A.   Essentially, she would review her evaluation and review the civil remedy notice and then make her recommendation to me.  And then I would review her recommendation and I would then ultimately submit that to my manager for review and authorization.

Q.   So is that what this -=- your understanding of this claim note reflects Ms. Crawford's evaluation and proposed civil remedy notice response?

A.   Yes.

Q.   And at the point in time, Ms. Crawford was documenting this, had -- did Mr. Wilkins have remaining PIP benefits?

A.   Yes.

 MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

593795 Rodriguez Krissi 06-24-2025

Q.   And to your understanding, had the tortfeasor's carrier tendered the applicable bodily injury policy limits?

A.   Yes.

Q.   And what was that amount?

A.   10,000.

Q.   And in connection with an uninsured motors claim, how does the tender of or availability of bodily injury policy limits affect the evaluation, if at all?

A.   So in completing the evaluation, the bodily injury would be considered an offset or when reviewing the total amount of the claim, it would be reduced from the total amount.

Q.   And Ms. Crawford documented her calculation of the out-of-pocket medical expenses?

A.   Yes.

Q.   And she documented her proposed response to the civil remedy notice for Mr. Wilkins?

A.   Yes.

Q.   Based on your supervision of the claimant at this time, had Ms. Crawford been attempting to negotiate and resolve Mr. Wilkins' claim?

A.   Yes.

Q.   Was Mr. Wilkins or his attorney willing to negotiate based on your --

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**      www.**MILESTONEREPORTING**.com      **Toll Free 855-MYDEPOS**

MR. LEE GUNN:  Form.

BY MR. ANGLEY:

Q.  -- (audio cuts out) posture of the claim?

A.  No.

Q.  Has the -- can you force a claimant to negotiate?

MR. LEE GUNN:  Form.

THE WITNESS:  No.

BY MR. ANGLEY:

Q.  You have a entry on the same day, January 20th, 2020, at 4:53 p.m. on PRG54.  Do you see it?

A.  Yes.

Q.  And did you agree with Ms. Crawford's proposed civil remedy response?

A.  Yes.

Q.  And is that what this -- kind of, what are you reflecting in this claim note?  What are you documenting here and what's the purpose of the note?

A.  It's a summary of Camille's evaluation, essentially going through each aspect of it for my own knowledge to determine if I'm in agreement with her recommendation.

Q.  And were you in agreement with her recommendation?

A.  Yes.

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q.   And were you in agreement with her evaluation?

A.   Yes.

MR. LEE GUNN:  I'm sorry.  Counsel, can I get a claim note page for that record you've displayed?

MR. ANGLEY:  Sure.  It's PRG 54.

MR. LEE GUNN:  54.  Thank you, Delton, please make that the note because I want to ask her about that on my turn.

BY MR. ANGLEY:

Q.   And you indicate value dispute.  What did you mean by that?

A.   We could not come to a resolution with, you know, with -- with Mr. Wilkins and his attorney regarding the value of the claim.

Q.   And you also know multiple attempts to reach attorney for -- well, strike that.

The -- this is the section where it says 4NI. This is a section as it pertains to Mr. Wilkins?

A.   Yes.

Q.   And did you -- are these notes that you took from Ms. Crawford's evaluation or are these notes that you typed out personally?  Kind of what -- what's reflected here and how did you obtain this information?

A.   These would be from Ms. Crawford's evaluation.

Q.   And based on that, what were the accepted

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.**MILESTONEREPORTING**.com          Toll Free 855-MYDEPOS

injuries at the point in time of the response to the CRN?

A.   I have noted that CTLSS, though, cervical thoracic lumbar sprain strain, cervical aggravation, degenerative disc disease, lumbar aggravation, degenerative disc disease.  And then I note the dates of the 10-28 injections and the 12-2 injections, the type of injections.

Q.   Okay.  And at this point in time, was Progressive aware of any additional scheduled injections for Mr. Wilkins?

A.   No.

Q.   At this point in time, was Progressive aware of any surgery that was planned or scheduled?

A.   No.

Q.   At this point in time, had Progressive received any documentation from one of Mr. Wilkins treating providers that stated or opined he had sustained a permanent injury within a reasonable degree of medical probability?

A.   No.

Q.   And there are some ranges by some of the injuries.  Do you see a cervical -- you said cervical SS would be sprain strain with aggravation to degenerative disc disease, $3- to $5,000?



MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

595195 Rodriguez Krissi 06-24-2025    Page 43

A.    Yes.

Q.    And then cervical injections, 8,000 to 10,000?

A.    Yes.

Q.    And then the lumbar sprain strain would again, $3- to 5,000?

A.    Yes.

Q.    Are these numbers that you came up with or would these be apportionments that Ms. Crawford determined?

A.    Those would be based on the prior eval, evaluation.

Q.    And what was your -- did you agree with -- and you agreed with the evaluation overall?

MR. LEE GUNN:  Form.

THE WITNESS:  Yes.

BY MR. ANGLEY:

Q.    And what was your -- and how does Progressive -- or how would these numbers be derived or established in this -- in connection with Mr. Wilkins claim?

A.    Based on a claim by claim basis and based the injuries and treatment reported by his medical providers.

Q.    And that would be something that Ms. Crawford would've reviewed and documented in her particular claim notes as well?



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    **www.MILESTONEREPORTING.com**    **Toll Free 855-MYDEPOS**

595795 Rodriguez Krissi 06-24-2025  Page 44

MR. LEE GUNN:  Foundation.

THE WITNESS:  Yes.

MR. LEE GUNN:  Calls for speculation.  You can answer.  Also leading.

BY MR. ANGLEY:

Q.  And Ms. Rodriguez, you indicated no known SX. What does SX stand for?

A.  SX would be my abbreviation for surgery.

Q.  So no known surgery scheduled for Mr. Wilkins?

A.  Correct.

Q.  And what did you indicate at the bottom of your note on January 20th, 2020?

A.  That based on the information we had received up to that point, I agreed with the recommendation to allow the civil remedy notice to expire and continue our attempts to negotiate the claim.

Q.  Directly beneath that there's an entry by Mark O'Brien.  Who is Mr. O'Brien?

A.  That was my manager at the time.

Q.  And did he authorize the civil remedy notice response?

A.  Yes.

Q.  And then beneath that, did Ms. Crawford send the civil remedy notice response to Mr. Bolton's attorney on January 21st, 2020?

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

A.    Yes.

Q.    And do you document that fax on the same day at 1:00 p.m. on PRG55?

A.    Yes.

Q.    Take you back to Exhibit 2.  Bear with me one second.

        MR. ANGLEY:  Let's just mark this as Exhibit --

        THE REPORTER:  6.

        MR. ANGLEY:  6.  Thank you.

        (Exhibit 6 was marked for identification.)

        BY MR. ANGLEY:

Q.    And this is PRG680 through 685.  Does this appear to be a copy of the response to the civil remedy notice, Ms. Rodriguez?

A.    Yes.

Q.    And that's reflective of this response is what was reflected in the claim notes that we looked at just a few moments ago.

A.    Yes.

Q.    And following back to the claim notes on PRG55 on January 27th, 2020, at 4:32 p.m. did Ms. Crawford follow up on the offer of $8,200 in the CRN response?

A.    Yes.

Q.    And what -- would you have -- in connection with your supervision of the claim, would you have seen

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

593795 Rodriguez Krissi 06-24-2025    Page 46

this claim note entry or been aware of it?

A.    Not immediately.

Q.    Based on this entry what did Ms. Crawford learn as it pertained to whether or not Mr. Wilkins was willing to negotiate the claim.

MR. LEE GUNN:  Form.

THE WITNESS:  That he was not according to his attorney at the time.

BY MR. ANGLEY:

Q.    And did the attorney based on Mr. Crawford's note, did the attorney indicate that suit would be filed by Mr. Crawford against Progressive?

A.    Yes.

Q.    On PRG57 on February 11, 2020, did Ms. Crawford again follow up with Mr. Wilkins attorney's office?

A.    Yes.

Q.    And what response did she receive?

A.    That they had filed suit that same day but didn't have a case number yet.

Q.    And you have an entry here on February 18th, 2020 at 9:10 a.m. on PRG58.  What did you indicate in this entry?

A.    I must have seen Camille's note that the attorney indicated that they had filed suit.  So I

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900         www.MILESTONEREPORTING.com         Toll Free 855-MYDEPOS

searched the Pasco County Clerk of Court website and I was able to locate the case number and the date that it was filed. And then I searched an internal database to see if it had been served to Progressive.

Q. And at that point in time, to your understanding, had Progressive been served with the complaint?

A. No.

Q. And based on your claimant entry, when was suit filed?

A. February 11th of 2020.

Q. And following your entry, did Ms. Crawford follow up with Mr. Wilkins' attorney on February 21st of 2020?

A. Yes.

Q. And what did Ms. Crawford learn based on the documented conversation?

A. That they were not willing to accept the policy limits at that time.

Q. Would -- in connection with your supervision of the claim, would you have seen that claim note?

A. Not immediately.

Q. But at so a certain point in time, would you have seen that claim note?

A. Yes.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.**MILESTONEREPORTING**.com          Toll Free 855-MYDEPOS

Q.   Based on what's documented by Ms. Crawford, fair to say, was it your -- was it your understanding that -- what was your understanding of whether or not Mr. Wilkins was willing to settle for policy limits at this point?

MR. LEE GUNN:  Form.

THE WITNESS:  That they were not willing to negotiate or accept policy limits.

BY MR. ANGLEY:

Q.   And there's an entry on March 31st, 2020 at 9:45 a.m. on PRG60 by Nicole Perez.  Do you see it?

A.   Yes.

Q.   Do you know who Ms. Perez was?

A.   I believe she is one of our clerical staff.

Q.   And did she send a diary to you and Ms. Crawford?

A.   Yes.

Q.   And what information was Ms. Perez transmitting?

A.   It looks like that we had received notice that the suit had been served.

Q.   Beneath that, Ms. Crawford has a -- has an entry, LLU/help/LIT/MCC transfer.  Can you tell me what she's documenting in this entry on PRG 60 on March 31st, 2020?

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A.   She's documenting to send the claim to be assigned in a different department.

Q.   And why is that?

A.   Because she does not handle claims in litigation.

Q.   And if the claim was transferred from Ms. Crawford to another adjuster, would that also indicate your supervision of the claim ended at that time?

A.   Yes.

MR. ANGLEY:  I think we're at a good point for a five minute break, if everyone's in agreement.

MR. LEE GUNN:  Sounds great.  Let's make it ten, if that's okay.  I assume you're very close to done, David?

MR. ANGLEY:  Yeah.  I just want to look at some notes and just double --

MR. LEE GUNN:  Of course.

MR. ANGLEY:  -- check a few things and everyone can take a little walk and break.

MR. LEE GUNN:  Sounds perfect.  Can I -- can we have ten minutes?  Then come back at about 10:10?

MR. ANGLEY:  Yeah, sure.

MR. LEE GUNN:  Sounds great.  Thank you for that courtesy.  Off record.

THE VIDEOGRAPHER:  10:01.  We're off video

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

393795 Rodriguez Krissi 06-24-2025

record.

(A recess was taken.)

THE VIDEOGRAPHER:  Time is 10:10 a.m.  We're back on the video record.

BY MR. ANGLEY:

Q.   Ms. Rodriguez, we're back from a brief break. And for context, prior to the break, we were discussing Ms. Crawford's, and I'll share it with you.  Her March 31st, 2020 claim note at 10:55 a.m.  And in this claim note, she was documenting the transfer of the file to a subsequent adjuster, correct?

A.   Yes.

Q.   And once the file was transferred, did you have any further involvement in the adjustment or supervision of Mr. Wilkins' UM claim?

A.   No.

Q.   Any personal knowledge of what occurred in Mr. Wilkins' UM claim following the transfer?

A.   No.

Q.   And during the time of your involvement in this claim, Ms. Rodriguez, did Mr. Wilkins ever provide Progressive with evidence or record -- or records that showed a medical doctor opining that he had sustained a permanent injury within a reasonable degree of medical probability?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

393795 Rodriguez Krissi 06-24-2025   Page 51

MR. LEE GUNN:  Form.

THE WITNESS:  No.

BY MR. ANGLEY:

Q.   During your supervision of the claim, were you at all times attempting to come to a fair and reasonable evaluation and resolution of the claim?

A.   Yes.

Q.   And do you believe you gave fair consideration to the information provided?  As in -- well, that -- the information provided to Progressive?

A.   Yes.

MR. ANGLEY:  Ms. Rodriguez, I don't have any further questions for you at this time.  And I'll turn it over to Mr. Gunn.

MR. LEE GUNN:  Thank you, Counsel.

CROSS-EXAMINATION

BY MR. LEE GUNN:

Q.   Ms. Rodriguez, what is the purpose of uninsured motorist coverage as you've been trained to understand it by Progressive?

A.   To provide compensation to our customers for any amount above and beyond what the bodily injury would provide or in the absence of bodily injury coverage.

Q.   And Mr. Wilkins in this claim instance was an insured of Progressive, correct?

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**   www.**MILESTONEREPORTING**.com   **Toll Free 855-MYDEPOS**

A.   Yes.

Q.   He was your customer, correct?

A.   Yes.

Q.   And you agree with the following statement, the work of adjusting insurance claims engages the public trust, don't you?

MR. ANGLEY:  Form.

THE WITNESS:  Yes.

BY MR. LEE GUNN:

Q.   In fact, as a licensed adjuster, that's the first sentence in the Adjuster Code of Ethics, isn't it?

MR. ANGLEY:  Form.

THE WITNESS:  We don't have the Adjuster Code of ethics memorized.

BY MR. LEE GUNN:

Q.   Okay.  An adjuster shall put the duty for fair and honest treatment of the claimant above the adjuster's own interest in every instance.  Do you recognize that as a part of the Adjuster Code of Ethics?

A.   It -- yes, it sounds reasonable.

Q.   All right.  And as a licensed adjuster, you understand that Florida law imposes upon you the compliance with the adjuster code of ethics, don't you?

MR. ANGLEY:  Form.

THE WITNESS:  Yes.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

393795 Rodriguez Krissi 06-24 2025    Page 53

MR. ANGLEY:  Ms. Rodriguez, before answering Mr. Gunn's questions, if you could just give a little pause, that way I can insert any form objections and we don't end up talking over each other.

THE WITNESS:  Okay.

BY MR. LEE GUNN:

Q.   Now, let me just get some parameters here. This crash happens and the claim process begins in July of -- is it 2019, ma'am?

A.   Yes.

Q.   And you first come on claim in December of 20 -- of 2019?

A.   Yes.

Q.   And shortly after coming on claim, you take a two-and-a-half week vacation?

A.   Yes.

Q.   When you came on claim, there was an open CRN, Civil Remedy Notice, meaning one had been filed and you're within the 60 day window for an -- a response from the company, correct?

A.   Yes.

Q.   Now, let me ask you about this.  Have you been trained by Progressive about the concept of a cure of a Civil Remedy Notice?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    **www.MILESTONEREPORTING.com**    **Toll Free 855-MYDEPOS**

A.   Yes.

Q.   What is your understanding, and all my questions relate to your understanding when you were actively involved in the supervision of the Wilkins UM claim at Progressive, understood?

A.   Yes.

Q.   What is your understanding of the cure that Progressive could have engaged in, in response to the CRN?

MR. ANGLEY:  Form.

THE WITNESS:  That the attorney that filed the CRN would outline the terms of the cure and that Progressive would have the opportunity to meet the terms to -- to cure the CRN.

BY MR. LEE GUNN:

Q.   Is it your understanding that Florida law has interpreted a CRN to require that the complaining party outline the terms of the cure?

MR. ANGLEY:  Object to the form.

THE WITNESS:  My understanding is that -- that we would need to understand what the customer and the attorney are telling us would need to be completed or done to cure the CRN.

BY MR. LEE GUNN:

Q.   Okay.  If Progressive, during this 60 day



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

593795 Rodriguez Krissi 06-24-2025   Page 55

window after the CRN is filed or served, whatever triggers the 60 day clock, but if you're in that 60 day window, under Florida law, was it your understanding that if Progressive tendered the $50,000 policy limit, it could not then be exposed to a first party bad faith claim?

MR. ANGLEY:  Object to the form.

THE WITNESS:  I got -- I think it would depend on -- on what was outlined in the CRN, if that was what was going to cure it.

BY MR. LEE GUNN:

Q.   Okay.  Yeah.  I mean, so if the claim violation is 1B1, which is failure to pay promptly, a delay in payment in a rough paraphrasing of the actual statutory language, was it your understanding that Progressive tendered to Mr. Wilkins attorney, the full UM claim benefit of $50,000, that Progressive was still potentially exposed to legal liability under the Florida Bad Faith Statute?

MR. ANGLEY:  Object to the form.

THE WITNESS:  I -- I -- I believe if we cured the CRN, that that would've resolved that portion of the claim.  But again, like, I -- I -- I don't have the CRN language in -- in front of me.

BY MR. LEE GUNN:

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**
**407.423.9900**   www.MILESTONEREPORTING.com   Toll Free 855-MYDEPOS

595795 Rodriguez Krissi 06-24-2025   Page 56

Q. Okay. Well, you were shown that by your lawyer during your direct, were you not?

A. I -- I don't have it committed to memory.

Q. I understand. It's the CRN that was under Mr. Sartes cover letter, just for the record. So that if we -- there's just the one CRN. So if we're in trial later and I show that to you in front of the jury, there's just the one CRN that we're going to talk about, right?

A. Yes.

Q. Okay. So I'm not asking you about that CRN right now. That's why I'm not going to pull it up or anything, okay? I just want to know, generally speaking, were you trained by Progressive, that the company had the option during an open CRN in a UM claim to pay its policy limit by tender and thereby cure the violations such that there was no exposure to the company for a statutory bad faith claim?

MR. ANGLEY: Object to the form.

THE WITNESS: That's my understanding.

BY MR. LEE GUNN:

Q. Okay. In this case, Progressive, through the process of claim adjustment you've described, chose to let the CRN lapse without tendering the $50,000 UM claim, right?

A. Yes.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900   www.MILESTONEREPORTING.com   Toll Free 855-MYDEPOS

Q.  All right.  Now, when we talked at the beginning of my questioning about the purpose of UM, you said it's a coverage available to the customer.  And I'm not going to get into exact what your answer says, but I do want to ask you if you agree with this.  Progressive stands in the -- in the shoes of the tortfeasor, here the at-fault adverse driver, for purposes of that driver's legal liability to Mr. Wilkins, right?

MR. ANGLEY:  Form.

THE WITNESS:  Yes.

BY MR. LEE GUNN:

Q.  And the legal liability of somebody who runs a stop sign, crashes into a paraplegic, requiring the paraplegic to be extracted by the jaws of life, and the doctors say resulted in multiple levels of cervical disc herniation with radicular complaints, is what Progressive is charged to evaluate as what a jury would likely say that driver who blew the stop sign owes Mr. Wilkins, right?

MR. ANGLEY:  Form.

THE WITNESS:  We -- we would owe based on the injuries that were related to the accident.

BY MR. LEE GUNN:

Q.  Well, legal liability is the predicate for what Progressives policy says it will pay to Mr.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    **www.MILESTONEREPORTING.com**    **Toll Free 855-MYDEPOS**

593795 Rodriguez Krissi 06-24-2025    Page 58

Wilkins, right?  We will pay the legal liability of the at-fault party, the tortfeasor, in excess of available bodily injury or other set offs.  That's effectively how UM coverage works in Progressive's world, right?

A.  Yes.

Q.  So you're charged, as part of the team, to understand and adjust Mr. Wilkins UM claim based on what a jury, or if it or a bench trial, the judge, the finder of fact is going to say this at-fault driver owes Mr. Wilkins, for blowing a stop sign, T-boning him, and causing the described neck injuries and other injuries, including some lumbar, that you've outlined in the claim file notes that we've reviewed, fair?

MR. ANGLEY:  Form.

THE WITNESS:  Yes.

BY MR. LEE GUNN:

Q.  And I want to ask some basics about UM coverage and whether it's different than bodily injury liability coverage in the policy.  Do you agree there are different coverage parts?

A.  Yeah.  Yes.  How you --

Q.  And --

A.  -- obtain the coverage is different.

Q.  And do you agree that the policy language is different for the section for bodily injury liability?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

That's probably coverage A, I don't remember your policy

form, and coverage C is perhaps the UM coverage form.

But in any event there's distinct coverages, right?

A.   Yes.

Q.   And the automobile liability, body injury

liability, that coverage is designed to protect an

insured from any exposure above the policy limits when

you can and should get a release of your own insured

from that legal liability, fair?

MR. ANGLEY:  Form.

THE WITNESS:  Yes.

BY MR. LEE GUNN:

Q.   Unlike the third party claimant coverage of

liability, UM is a first party coverage, correct?

A.   Yes.

Q.   And then a first party coverage, the policy

dollars actually go to the customer, not a third party

claimant, correct?

A.   Yes.

Q.   And unlike the bodily injury liability

coverage, here in UM, Mr. Wilkins was subject to the

terms and conditions post-loss for making a claim for

benefit, right?

A.   Yes.

Q.   He's required, upon request, to go to a doctor

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

595195 Rodriguez Krissi 06-24 2025

of Progressives choosing, upon reasonable notice and other condition, right?

MR. ANGLEY:  Form.

THE WITNESS:  Yes.

BY MR. LEE GUNN:

Q.   He's required upon request to sit for an examination under oath?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Yes.

BY MR. LEE GUNN:

Q.   You agree with that, right?  These are post-loss conditions you're trained to understand and be aware of that are part of the coverage forms you adjust UM under at Progressive, fair?

A.   Yes.

Q.   Okay.  You at Progressive have other tools where if you wanted to you could send medical records to somebody, whether it be a nurse or a doctor, if you wanted more information about what are these injuries; correct?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Yes.  If it was warranted.

BY MR. LEE GUNN:

Q.   Right.  Right.  They're -- these are available tools.  We can debate and we probably will, whether you

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

593795 Rodriguez Krissi 06-24-2025    Page 61

were reasonable at Progressive not to use any of these UM discovery and investigative tools.  But I just wanted to get established as a predicate.  You know, as a supervisor, when adjusting this claim, that those tools, those post-loss conditions in the UM policy exist, fair?

A.   Yes.

Q.   Did Progressive discourage its claims representatives, including yourself, from seeking medical advice about whether certain injuries reflected a permanent injury?

MR. ANGLEY:  Object to the form.

THE WITNESS:  No.  Each claim is handled in case by case basis.

BY MR. LEE GUNN:

Q.   All right.  So if you wanted to know what the medical community thought about whether the described medical records of Mr. Wilkins indicated a permanent injury to a reasonable degree of medical probability caused by this crash, you could have asked a medical advisor for that, right?

MR. ANGLEY:  Form.

THE WITNESS:  I could have.  However, the documentation that was in the medical records from his providers did not make me believe that that was warranted in Mr. Wilkins case.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    www.**MILESTONEREPORTING**.com    Toll Free **855-MYDEPOS**

593795 Rodriguez Krissi 06-24 2025

BY MR. LEE GUNN:

Q. Right. We're going to talk a lot about what you believe, but I just want to establish again, what was available. If you chose to believe otherwise, and you chose to believe it was part of an affirmative good faith prompt and duly diligent claim investigation to ask a doctor, hey, looking at these medical records, sir or madam, does this appear to be a permanent injury when somebody's neck has four herniations, impingement on the spinal cord, and the treatment includes ESI? Do you think, sir or madam, as a medical doctor, this is likely to be a permanent injury under the tort threshold?

You could have asked a doctor for that advice under Progressive protocols, right?

MR. ANGLEY: Object to the form.

THE WITNESS: Yes.

BY MR. LEE GUNN:

Q. All right. Now I want to understand when you took a -- your role over in this December, 2019 time frame and we're roughly what, four months post crash, maybe a little less?

A. Approximately.

Q. Tell everything you saw in the claim file notes that indicated anybody at Progressive sought to contact any medical professional to help it better



**MILESTONE | REPORTING COMPANY**
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

595195 Rodriguez Krissi 06-24-2025    Page 63

understand the nature and extent of Mr. Wilkins

injuries?

MR. ANGLEY:  Object to the form of question.

THE WITNESS:  Saw the adjusters handling the

file, reviewing the medical records that were

provided to us by Mr. Wilkins attorney and his

treating providers.

BY MR. LEE GUNN:

Q.   Other than sitting and reading the demand

package or other medical provider information that Mr.

Sartes, on behalf of your customer, provided to the

company, what did you see the company do to diligently

investigate by asking questions of medical professionals

about whether these types of injuries are likely

permanent?

MR. ANGLEY:  Form.

THE WITNESS:  I didn't see the adjusters seek

any other follow up for those types of -- that type

of counsel.

BY MR. LEE GUNN:

Q.   What is your understanding, as trained by

Progressive, as to why Progressive has policy conditions

that allow the company to have a claimant examined by a

doctor of its choice?  Why is that in your policy,

ma'am?

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

595795 Rodriguez Krissi 06-24-2025    Page 64

MR. ANGLEY:  Form.

THE WITNESS:  My understanding is because each claim is handled based on its own merits.

BY MR. LEE GUNN:

Q.   Well, it's there so if you want to know more from the medical at records that, hey, I -- I'd like to get -- I'd like to get some information from a doctor, a reliable source to better adjust the loss, I can send my UM claimant to that doctor and I can get that doctor's opinions for my consideration.

Is that not fair?

MR. ANGLEY:  Object to the form.

THE WITNESS:  The -- the medical records that we received from Mr. Wilkins treating providers appeared to be a credible source.

BY MR. LEE GUNN:

Q.   And those credible doctor sources were relating multiple disc herniations to a car crash, right?

MR. ANGLEY:  Form.

THE WITNESS:  As far as relatedness, I would say that there -- there were some questions in some of the earlier medical records, it is indicated that there were degenerative changes.

BY MR. LEE GUNN:

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    www.**MILESTONEREPORTING**.com    **Toll Free 855-MYDEPOS**

Q.   Okay.  But the herniations were accepted.  In fact, we looked at Page 54 of the claim file and the herniations, quote, were "accepted injuries," including aggravation of degenerative disc disease at Progressive by the claim notes you said reflected what you endorsed to be Ms. Hawthorne's [sic] analysis.

Do you not recall seeing that, ma'am?

MR. ANGLEY:  Form.

THE WITNESS:  Sorry, I don't understand your question.

BY MR. LEE GUNN:

Q.   Okay.  Relatedness early on.  Let's talk about when you're -- when the Civil Remedy Notice gets served.  By that point in time, would you agree with me that the fault was established at 100 percent adverse to the uninsured motorist, also known as the tortfeasor agree?

THE WITNESS:  Yes.

BY MR. LEE GUNN:

Q.   The evaluation of this claim has nothing to do with fault.  It has only to do with how hurt is Mr. Wilkins, right?

A.   Yes.

Q.   And you would agree that he sought prompt timely treatment from physicians who diagnosed him shortly after the crash as having multiple herniations

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    www.**MILESTONEREPORTING**.com    Toll Free **855-MYDEPOS**

in his neck? Would you not agree with that?

MR. ANGLEY: Form.

THE WITNESS: I would agree that those were the findings that were outlined in his diagnostic testing.

BY MR. LEE GUNN:

Q. Do you have any reason to think these doctors weren't telling you the truth about what they found?

MR. ANGLEY: Object to the form.

THE WITNESS: No.

BY MR. LEE GUNN:

Q. In fact, you told me moments ago that you thought the medical records reflected reliable information for the adjustment of loss. Do you recall testifying to those facts?

MR. ANGLEY: Form.

THE WITNESS: I do recall that.

BY MR. LEE GUNN:

Q. Fair enough. And so as I'm hearing it, and your counsel kept asking you, did the medical doctors use the words, this represents a permanent injury to a reasonable degree of medical probability? You remember all those questions you were asked about, permanency in the tort threshold?

A. Yes.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900      www.**MILESTONEREPORTING**.com      Toll Free 855-MYDEPOS

595195 Rodriguez Krissi 06-24-2025

Q.   If you didn't think multiple disc herniations following a significant crash accident represented a permanent injury, why didn't you ask somebody in the medical community, whether it's a consultant of Progressive or a CME or write a letter to one of the treaters and say, thank you for your records.  We are trying to reach a fair understanding of the injury to this claimant.  Doctor, are these herniations a permanent injury to a reasonable degree of medical probability?  Why didn't you do any of that?

MR. ANGLEY:  Form.

THE WITNESS:  Because ultimately, the records that were provided indicated that Mr. Wilkins was improving with the treatment that he was receiving, and it didn't appear to be warranted.

BY MR. LEE GUNN:

Q.   All right.  The improvements, he had multiple epidural steroid injections that resulted in what you described earlier in your testimony as a 30 percent reduction in pain, right?

MR. ANGLEY:  Form.

THE WITNESS:  I mean, I'm -- I'm not looking at the medical records.  So if you'd like to share it, that -- that would help me, but I -- I recall that's what the medical record indicates.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          **Toll Free 855-MYDEPOS**

BY MR. LEE GUNN:

Q.   And the entire time you're on this claim, can we agree that Mr. Wilkins was under the management of treating physicians seeing him for these neck injuries?

A.   Yes.

Q.   And that he was being -- he was considering just what -- and the extent of future minimally invasive things, like injection treatments, right?

A.   Yes.  He was considering the type of treatment that he wanted to receive moving forward.

Q.   And can we agree that, by the time you were on claim and there was, I believe, a demand that there was at least "a consideration would be given for an ACDF"?

MR. ANGLEY:  Form.

THE WITNESS:  I don't recall the date that the ACDF was mentioned, but by the last medical record we received, it was -- it was not mentioned again and there was no specific follow up treatment plan noted at that time.

BY MR. LEE GUNN:

Q.   So let me, again, step back from your job at Progressive.  Is your job at Progressive to negotiate off a $50,000 UM benefit to get the claim benefit released in exchange for any dollar payment?

MR. ANGLEY:  Form.



MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

593795 Rodriguez Krissi 06-24-2025

THE WITNESS: I'm sorry, I don't understand your question.

BY MR. LEE GUNN:

Q. Okay. Mr. Wilkins has a $50,000 UM benefit. We all agree on that, don't we?

A. Yes.

Q. And there's not one word in your policy that says, as a condition to any claim payment, the UM claimant must release Progressive as a company from any additional claim payments. Do we agree with that?

MR. ANGLEY: Form.

THE WITNESS: That he would release Progressive from additional payments?

BY MR. LEE GUNN:

Q. Well, yeah. And you look confused by this, so let me see if I get -- what do the words, full, and, final payment, mean to you in the industry?

A. That -- that that would be the final UM benefit payment he would receive.

Q. Right. So for $8,200, what you're really offering to pay is only a smidgen, 20 something percent -- or not even 20 percent, about 15 percent of the policy limit, right?

MR. ANGLEY: Form.

THE WITNESS: Approximately.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

BY MR. LEE GUNN:

Q.   Yeah.  So what you're saying -- and we looked at these documents, I'll pull them up if I need them later, but I'm just going to, in general, say to you, and Progressive's puts an offer out that says, for $8,200, this will be full and final payment of all UM benefits, what Progressive's saying is, there'll be no more UM claim payments made, right?

MR. ANGLEY:  Form.

THE WITNESS:  Yes.

BY MR. LEE GUNN:

Q.   And Mr. Sartes, on behalf of Mr. Wilkins, said no to that repeatedly, right?  "I'm not going to negotiate off the $50,000," I think, is what you -- your claim notes reflect, right?

A.   That's my understanding.

Q.   Why in the world would Progressive expect Mr. Wilkins to negotiate off the benefit that he was due as a customer of the company, in order to get any dollars paid?

A.   Because we completed an evaluation of his claim based on the medical records and -- and billing that we received from his treating providers.

Q.   You had no affirmative statement that he did not sustain a permanent injury, right?

 MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     www.**MILESTONEREPORTING**.com     **Toll Free 855-MYDEPOS**

A.   His -- none of his providers indicated he had sustained a permanent injury.

Q.   Well, we can debate whether telling you, as an adjuster, experienced in claims and expected to understand the nature and extent of disc herniation, whether you, as an adjuster, should have known that ain't something that goes away, okay?  But what I'm -- my question is is simply there was no statement affirmatively from any medical doctor that said Mr. Wilkins did not sustain a permanent injury in this crash, right?

MR. ANGLEY:  Form.

THE WITNESS:  No.  The medical record said he was improving with the treatment he was receiving.

BY MR. LEE GUNN:

Q.   People improve from permanent injury, right?

MR. ANGLEY:  Object to the form.

THE WITNESS:  I -- I don't know.  I mean, I can only speak to this specific claim.

BY MR. LEE GUNN:

Q.   So you're saying that a 30 percent response to having the numbing agents injected into his neck indicates to Progressive, fairly and objectively, that Mr. Wilkins does not appear to the company to have sustained a permanent injury.  Is that your testimony?

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

MR. ANGLEY:  Object to the form.  Misstates testimony.  Counsel testifying.  You can answer him.

THE WITNESS:  I can only evaluate the claim based on the information that I had at the time or the adjuster can only, you know, complete that evaluation with what we had at the time.  And at the time that we responded to the CRN, you know, it appeared that Mr. Wilkins did plan to continue his treatment, but that that treatment plan was unclear as to what he planned to continue doing.

BY MR. LEE GUNN:

Q.    Did Progressive train you one way or the other as to whether, more likely than not, disc herniations represent a threshold or permanent injury for purposes of establishing a right to non-economic damage recovery?

MR. ANGLEY:  Form.

THE WITNESS:  Permanency of an injury, I would say, is up to the doctor, the treating provider to -- to determine, not the adjuster.

BY MR. LEE GUNN:

Q.    Okay.  And you never asked one treating doctor, do you think these are permanent injuries, fair?

A.    No, that would be up for the doctor to document that.

Q.    Why is it up to the doctor to document that?



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    **www.MILESTONEREPORTING.com**    **Toll Free 855-MYDEPOS**

593795 Rodriguez Krissi 06-24-2025

It's important for your claim adjustment, but it may not be important for medical treatment, right?

MR. ANGLEY:  Object to the form.

THE WITNESS:  I -- I -- I disagree.  I think it would be important for a doctor to -- to note if his patient had a permanent injury.

BY MR. LEE GUNN:

Q.   Well, in this case, none of the doctors made a comment one way or the other on whether the herniations were a permanent injury, fair?

MR. ANGLEY:  Form.

THE WITNESS:  Correct.

BY MR. LEE GUNN:

Q.   But when a doctor doesn't do what Progressive, here you, speaking for Progressive as an employee, think a doctor should do, why don't you reach out and say, Doctor, I need to understand whether this is a permanent injury, I'm trying to reach a fair claim assessment?

A.   Because it did not appear to be warranted in this particular claim.

MR. LEE GUNN:  Right.  Let's talk about the evaluation then.  Delton, can you pull up that Page 54? And David, if I can get that exhibit number, I won't remark it.

MR. ANGLEY:  You're talking about the claim

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    www.**MILESTONEREPORTING**.com    **Toll Free 855-MYDEPOS**

notes?

MR. LEE GUNN:  Yeah, it's PRG 54.

MR. ANGLEY:  Yeah, it's Exhibit 1.

MR. LEE GUNN:  Thank you.

MR. ANGLEY:  Yep.

BY MR. LEE GUNN:

Q.    Okay.  So Ms. Rodriguez, you went through and I -- you just brought up again, each claim and -- is on its own merit.  So I want to understand, looking at this Page 54, and Mr. Angley went through some of the numbers with you that were assigned.  So let me just see if I understand where these evaluative numbers, these ranges of numbers, come from, okay?  And so, just so we get a record, in case the jury can't see this, because I'm having trouble reading it on the screen.  Why don't you read in the accepted injury?  And -- and -- and -- let me start with, what does accepted injury mean in Progressive's parlance, in its -- in its language of adjusting claims.

A.    So as -- with respect to the accepted injury, it would indicate --

Q.    I'm sorry, ma'am, I threw a curve ball, okay?  First, as Progressive use -- uses this terminology, what does accepted injury mean?

MR. ANGLEY:  Form.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

593795 Rodriguez Krissi 06-24-2025

THE WITNESS:  So it would mean injuries that are being considered for evaluation.

BY MR. LEE GUNN:

Q.  Well, accepted, right?  Accepted.  I've accepted something.  Doesn't that mean that I accept, as an adjuster, that these injuries are related to the crash that I'm here to evaluate for legal liability damage?  Do we agree?

MR. ANGLEY:  Form.  Asked and answered.

THE WITNESS:  Yeah.  It's -- it's the injuries that we're considering for evaluation.

BY MR. LEE GUNN:

Q.  And you're considering for evaluation because you're accepting that these are the injuries that Mr. Wilkins sustained in the crash, fair?

MR. ANGLEY:  Form.  Asked and answered.

THE WITNESS:  Is the injuries being considered in the evaluation.

BY MR. LEE GUNN:

Q.  Why are they being considered in the evaluation?

A.  Because they appear to be related to the accident.

Q.  There we go.  Thank you.  All right.  So let's go through what your company's evaluation note

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

593795 Rodriguez Krissi 06-24-2025

indicates. Accepted injury, please read the accepted injuries.

A. Oh, it says CTLSS.

Q. I'm sorry, I'm going to interrupt you again. I appreciate that the -- that this verbiage is in, but let -- let's go ahead and use like claimant and signs and symptoms or whatever, okay? Because I think it'll help the jury, ma'am, if they -- instead of the abbreviation, they know the full language, okay? So starting with INJ, that means injury, right?

A. Yes.

Q. Okay. So let's read it in full English. Accepted injury, please read the rest.

A. Cervical, thoracic, lumbar, sprain, strain. I believe the -- the two lines I have noted there indicate two and then, cervical aggravation, degenerative disc disease, findings, impact/lumbar aggravation, degenerative disc disease.

Q. Okay. Then -- well then, it goes on, does it not, to talk about the treatment that's been accepted as part of the injuries?

MR. ANGLEY: Form.

THE WITNESS: Yes, it does. Do you want me to read the -- the treatment out?

BY MR. LEE GUNN:

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          Toll Free **855-MYDEPOS**

593195 Rodriguez Krissi 06-24-2025

Q.   Yes, ma'am.  I want to go -- I want the jury to get the full flavor of the accepted injuries.  And so let's pick it up with after you said aggravation and the lumbar of degenerative disc disease with the 10-18-2019 epidural steroid injection.  Please read from that all the way down to those multiple dashes.

A.   10-28-2019, epidural steroid injection at C7 to T1 with bilateral cervical MBB at C4, 5, 6 --

Q.   And I'm sorry to interrupt you again, but we had this understanding, I think, if you know, that you're not going to read MBBS, you're going to read what you understand those shorthand to mean in full English language, please.

        MR. ANGLEY:  Form.

        THE WITNESS:  I apologize.

         BY MR. LEE GUNN:

Q.   No worries.

A.   "Medial branch blocks at C4, 5, 6.  12-2-2019, cervical medial branch block at C4, 5, 6 left side." And then I go on to -- to talk about the -- the type of medication that's used.  So I -- I apologize if I mispronounce this.  Dexamethasone sodium PHOS.  Looks like CPT Code J1100.  Facet joint cervical with image guidance, third and more levels, 64491.  Facet joint cervical with image guidance, second level, 64491. Block

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

593195 Rodriguez Krissi 06-24 2025

of cervical medial nerve branch, 64490.  And then I note, "Based off prior eval, cervical, thoracic, lumbar, sprain, strains, and cervical aggravation to degenerative disc disease accepted.  Accepting cervical sprain, strain with aggravation to degenerative disc disease.  Three to 5,000.  Five cervical injections, eight to 10,000.  Three-level cervical facet block, one-level cervical ESI, looks like times two, three-level cervical medial branch block bilaterally, three-level cervical and medial branch block left, lumbar sprain/strain with two prior laminectomies, three to 5,000."

Q.   Thank you, ma'am.  Now the -- these are dollars, three to five, right?  $3- to $5,000?

A.   Yes.

Q.   Okay.  And that -- your counsel asked you this, but I got to go back a little bit, I -- what is your understanding as to how your adjuster you're supervising, Ms. Hawthorne, came to determine a range of the value of the cervical sprain/strain with aggravation to degenerative disc disease to be three to $5,000 and assigned evaluative value?

A.   That would be based on her training that she receives on the job.

Q.   Okay.  I want to understand -- or is that

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

595795 Rodriguez Krissi 06-24-2025

written anywhere?  Is there a training book?  Is there a training manual?  Is there anything you know that you -- you're aware of that exists at Progressive at this time, that anyone can look to and see how she was trained to evaluate this level of injury at $3- to $5,000?

MR. ANGLEY:  Form.

THE WITNESS:  No.  Claims are addressed on a case by case basis and there's -- there's not a specific place where it would tell her exactly what value to place on -- on Mr. Wilkins' specific claim.  It's a case by case basis.

BY MR. LEE GUNN:

Q.   And are there -- are there -- are there guidelines that are available to help assure that the valuation of one claim by one adjuster is reasonably related and reliably similar under similar facts to what a different adjuster might put in an evaluation?

MR. ANGLEY:  Form.

THE WITNESS:  So I mean, she would've, you know, as -- as previously noted in this claim, it looks like she did review this with a -- with a supervisor that may have helped her with the evaluation at the time.

BY MR. LEE GUNN:

Q.   My question was: Are there any written

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     **www.MILESTONEREPORTING.com**     **Toll Free 855-MYDEPOS**

guidelines that you know of that were available to Ms. Hawthorne to look at to give her some parameters? Understand Progressive's answer to me was, it's claim by claim, but anything that allows to assure that Ms. Hawthorne is evaluating a claim that's substantially similar -- with substantially similar values as Ms. Jones, Mr. Smith, and other adjusters?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Each claim is handled, like I said, on a case by case basis, and the training that we receive is on-the-job training by reviewing a variety of -- of different claims and reviewing those with leadership.

BY MR. LEE GUNN:

Q.   Okay.  And you were part of the mid-level leadership at the time, right?

A.   Yes.

Q.   What guides, if any, were you given in writing, if any, that would aid in an analysis of any particular claim to reach, in this case, an evaluation for that injury of $3- to $5,000?

MR. ANGLEY:  Form.

THE WITNESS:  I -- I wouldn't have used a -- a specific guide.  I would've used my knowledge as a claims adjuster and my -- my knowledge of reviewing

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

other types of claims.

BY MR. LEE GUNN:

Q.   Okay.  Now the -- progressive -- where did -- let me ask you: Where did you work physically in 2019?  This is pre-pandemic.  So I assume you're in an office?

A.   I worked in Maitland, Florida.

Q.   Is that considered a Florida branch office of -- for Progressive Florida claims?

A.   Yes.

Q.   And you indicated each manager had 30 to 35 claim frontline adjusters under their wing?

MR. ANGLEY:  Form.

THE WITNESS:  Each manager did.  I was not a manager at the time of this claim.

BY MR. LEE GUNN:

Q.   Yes, ma'am.  I was specific in saying manager, not you, right?  Each manager had about 30 to 35 frontline adjusters under their wing.  There's a superintendent or supervisor on -- in between.  And so I didn't mean to throw you a curveball.

Are we -- are we on the same page now, ma'am, that Maitland, Florida, there would've been managers and those managers would've had supervisors and those supervisors would have primary claim examiners, but the manager would have about 30 to 35 BILUM adjusters under

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.**MILESTONEREPORTING**.com          Toll Free 855-MYDEPOS

their wing; is that accurate?

MR. ANGLEY:  Form.  Mr. Gunn, are you asking in the time frame of this particular claim that we're looking at today or --

MR. LEE GUNN:  All my questions.  All my questions, David.  I think I said it --

MR. ANGLEY: Well, it's kind of --

MR. LEE GUNN:  -- at the beginning.

MR. ANGLEY:  Well, you're -- I think you said in the beginning about -- okay.  Anyways, we can --

MR. LEE GUNN:  I'll have -- and I think I said in 2019, pre-pandemic too, to better --

MR. ANGLEY:  Sure.

MR. LEE GUNN:  -- identify the time frame, so.

But anyway, let's let the witness answer.  So let's be -- let's rewind and you can have a form objection without restating.  It's continuing.

BY MR. LEE GUNN:

Q.   Do you recall whether -- Maitland, Florida, at the time you were adjusting the Wilkins UM claim, had managers with about 30 to 35 claim representatives, frontline adjusters under their wing?

MR. ANGLEY:  Form.

THE WITNESS:  I don't know how many approximate adjusters my manager had under them at -- at that

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

393795 Rodriguez Krissi 06-24-2025        Page 83

time. So different departments could have different reporting ratios.

BY MR. LEE GUNN:

Q.    Well, what -- give us an idea of how many people you knew of that worked in the BILUM Claims Department in Maitland in the end of 2019?  Just what's your knowledge is?

A.    I don't remember.

Q.    Hundreds?

MR. ANGLEY:  Form.

THE WITNESS:  I don't remember.

BY MR. LEE GUNN:

Q.    Well, give me an idea how big is this office is?  It's multiple floors?  Tell me -- tell me a little bit about it?

MR. ANGLEY:  Form.

THE WITNESS:  I do not remember.  A -- a manager could have -- could have groups out of different locations, so I -- I can't speculate how many.

BY MR. LEE GUNN:

Q.    Okay.  Fair enough.  And then when you supervised Ms. Hawthorne, how many others were you supervising?

MR. ANGLEY:  Form.  You mean Ms. Crawford, Mr.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

593795 Rodriguez Krissi 06-24 2025

Gunn?

MR. LEE GUNN:  I'm sorry.  I'm sorry.  Yes, I misspoke.  Thanks, David.

BY MR. LEE GUNN:

Q.   So during the time of your supervision on this claim, how many other frontline adjusters were you supervising?

A.   I would say approximately four to five.

Q.   And how many features would each of them be handling?

A.   I don't recall.

Q.   And how many UM claims would each one be handling?

A.   I don't recall.

Q.   Well, do you have any range?  They'd had -- they'd have no more than one or they'd have no more than 200?  Can you -- can you help the jury understand a little bit about just how many claims the typical person you're supervising was expected to handle?

MR. ANGLEY:  Form.  Calls for the witness to speculate.

BY MR. LEE GUNN:

Q.   Please don't purely speculate, but my goodness, if you were supervising these people, I hope you had some idea of how much their workload was.  So



MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          **Toll Free 855-MYDEPOS**

593795 Rodriguez Krissi 06-24 2025

please give us your best recollection?

MR. ANGLEY:  Form.  Move to strike.
Argumentative.

MR. LEE GUNN:  I agree.

BY MR. LEE GUNN:

Q.  How many, to your best recollection, features,
were each of your primary claim handlers responsible for
in December of 2019?

MR. ANGLEY:  Form.

THE WITNESS:  I can't speculate how many
features they would've been responsible for at that
time.

MR. ANGLEY:  (Coughs) Excuse me.

BY MR. LEE GUNN:

Q.  Were there any -- were there any known
guidelines that no adjuster should handle more than X
number of features?

MR. ANGLEY:  Form.

THE WITNESS:  I don't recall.

BY MR. LEE GUNN:

Q.  Did you review your adjuster's work to make
sure that they didn't appear to be overloaded and not
keeping up with claims?

A.  Yes, I would refer -- I would review their
workload to ensure that they were keeping up and that

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

they were responding to request timely.

Q.   Right.  And is it fair to say that no adjuster was only handling one UM claim at a given time?

MR. ANGLEY:  Form.

THE WITNESS:  I guess they could have been.  I -- like I said, each adjuster could have their own unique circumstances.

BY MR. LEE GUNN:

Q.   Okay.  So how did Progressive, to your knowledge, make sure that if there are four different adjusters and there's one supervisor for those four, but there are ten other supervisors for a different unit and then there's a manager who's overseeing that unit, but we don't recall how many other managers there were.

Tell me you understand how Progressive made sure that all of the claimants were treated fairly in the evaluative process by some reliability, such that substantially similar claims received substantially similar offers?

MR. ANGLEY:  Object to the form of the question.

THE WITNESS:  So a supervisor would have to review an evaluation if an adjuster didn't have authorization for it.  Potentially a manager would review it if -- if a supervisor didn't have

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900    www.**MILESTONEREPORTING**.com    Toll Free 855-MYDEPOS

authorization for it.  Those amounts could vary.

BY MR. LEE GUNN:

Q.  Well, -- yeah, I -- okay.  What -- what's the -- what's the reason that these various injuries -- let -- let's just pick by example.  Oh, gosh.  Five cervical injections, eight to ten.  What makes those five cervical injections into Mr. Wilkins' neck worth eight to ten and not ten to 15?

A.  I mean, that -- this claim was six years ago, and I don't remember exactly, you know, what made us come to that number at that time.

Q.  Okay.  But why isn't it ten to 15?  How do you make sure that it's -- eight to ten's fair, but ten to 15?  That would be higher than claim value warrants?

MR. ANGLEY:  Form.

THE WITNESS:  As I said, I -- I don't remember what made us came exactly to that number at that time.

BY MR. LEE GUNN:

Q.  All right.  Did Progressive at that time use any computer-aided methodologies for the valuation of claims other than medical billing software?

MR. ANGLEY:  Form.

THE WITNESS:  We can only speak to this claim, and this claim does not appear to have used any type

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

of system to evaluate it.

BY MR. LEE GUNN:

Q.   Okay.  So let's -- you now lead me to my next question: What computer-aided evaluative tools existed at Progressive that were available to claim representatives if they chose to use them at this time frame?

MR. ANGLEY:  Form.

THE WITNESS:  There would not have been a computer-aided system available to adjust this claim.

BY MR. LEE GUNN:

Q.   Why not?

A.   Because that was not the training that we received to adjust these claims.

Q.   What type of claims were using computer-aided evaluations?

MR. ANGLEY:  Object to the form.

THE WITNESS:  I mean, I -- I can't speculate. I can only speak to this specific claim and that Camille completed an evaluation and consultation with another supervisor while I was out of the office.

BY MR. LEE GUNN:

Q.   So if Mr. Wilkins had been presenting these

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900    www.**MILESTONEREPORTING**.com    Toll Free 855-MYDEPOS

593795 Rodriguez Krissi 06-24-2025

injuries as a third-party BI claimant, did Progressive have computer-aided technology to assist the adjuster in the evaluation of the liability offer to be made?

MR. ANGLEY:  Form.

THE WITNESS:  I can't speak to that because he wasn't.  He was our customer.  I can only speak to the claim that we -- that we completed for him.  Under his uninsured motorist coverage.

BY MR. LEE GUNN:

Q.   Were you supervising bodily injury liability claims at this time, 2019?

A.   I was.

Q.   Do the people you supervise have available, in the bodily injury liability context, computer-aided programming to help them evaluate the third-party offers to be made?

MR. ANGLEY:  Form.

THE WITNESS:  Every claim was handled on a case by case basis.  And I, you know, it would depend on -- on the claim at hand.

BY MR. LEE GUNN:

Q.   Listen carefully: Did Progressive have available to its primary adjusters handling third-party liability claims, computer-aided evaluative tools if they wanted to use them?  Yes or no?  And you may

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.**MILESTONEREPORTING**.com          Toll Free 855-MYDEPOS

593795 Rodriguez Krissi 06-24-2025

explain.

MR. ANGLEY:  Form.

THE WITNESS:  There are systems that are available, but every claim is handled on a case by case basis.

BY MR. LEE GUNN:

Q.  In 2019, to your knowledge, what system or systems were available to help evaluate third-party liability claim value?

MR. ANGLEY:  Object to the form.

THE WITNESS:  I don't recall.

BY MR. LEE GUNN:

Q.  Do you -- were you told by anyone at Progressive during your training, why you would not use those types of evaluative tools for UM claims?

A.  I don't recall.

Q.  Was any of this information about using the computer evaluative tools for third party liability claims, but not UM claims, reduced to writing?

A.  I'm sorry, can you repeat that?

Q.  All right.  My understanding from your answer is that UM claims did not utilize computer-aided technology for evaluative process.  That's how you were trained.  Did I understand it correctly, your testimony?

A.  So I wouldn't -- I would not have used any

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

593795 Rodriguez Krissi 06-24-2025

sort of program for this claim and, like -- and I -- I can't even speak much to the evaluation that was completed because it was completed while I was out of the office.

Q. Did Progressive train you that UM claims did not need to utilize the computer-aided evaluative tools that were available and utilized on occasion for third-party claims?

A. No.

Q. Huh?

A. I never specifically used any type of tool to evaluate a UM claim.

Q. And didn't you earlier answer the reason you didn't utilize any type of computer-aided tool was because that's how you were trained by Progressive?

MR. ANGLEY: Form.

THE WITNESS: I never received training to use any type of tool for a UM claim.

BY MR. LEE GUNN:

Q. Did you receive training to use any type of computer-aided evaluative tool for third party liability claims prior to December 2019?

MR. ANGLEY: Object to the form.

THE WITNESS: I've received training on tools to evaluate claims, but I -- it wasn't in any way

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

relevant to this claim.

BY MR. LEE GUNN:

Q.   And it was not relevant to this claim because Progressive training was, we don't use the computer-aided evaluative tools for UM claims, right?

MR. ANGLEY:  Form.

THE WITNESS:  Based on my training at the time, no.

BY MR. LEE GUNN:

Q.   Did Progressive give you any explanation during your training, in your -- and when I say Progressive, people who were part of the training team or your leadership team at Progressive tell you why the company was not utilizing these evaluative tools for UM claims?

A.   I -- I don't recall.

Q.   All right.  Did Progressive train you when you were a supervisor responsible for overseeing claims that included UM, that you should go out and affirmatively investigate the facts of a claim to allow you to better determine the benefit as due?

A.   So sorry.  I did not hear the rest of your question.  You might have frozen.

Q.   Oh.

MR. ANGLEY:  I think you -- yeah.  Mr. Gunn, I

 MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        www.**MILESTONEREPORTING**.com        **Toll Free 855-MYDEPOS**

think you froze or kind of cut out because it -- we heard, like, halfway and then it was -- went silent on us.

BY MR. LEE GUNN:

Q.   Right.  Did -- so I'll start over, Ms. Rodriguez.  Did Progressive train you that UM claims should be affirmatively investigated to better understand the facts necessary to evaluate whether any UM claim was due, and if so, how much?

A.   Yes.

Q.   Do you agree that an adjuster shall not approach investigations, adjustments, and settlements in a matter prejudicial to the insured?

MR. ANGLEY:  Form.

THE WITNESS:  Yes.

BY MR. LEE GUNN:

Q.   Do you agree that an adjuster shall make truthful and unbiased reports of the facts after making a complete investigation?

MR. ANGLEY:  Form.

THE WITNESS:  Yes.

BY MR. LEE GUNN:

Q.   In your mind does unbiased mean that when you meet a -- when you read a medical record, you shouldn't read into it that there's no finding of permanency when

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

593795 Rodriguez Krissi 06-24-2025

the record itself is silent one way or the other of whether any injury is permanent?

MR. ANGLEY:  Form.

THE WITNESS:  I'm sorry, can you repeat that?

BY MR. LEE GUNN:

Q.   Can you agree with me that an unbiased review of medical records should not read into a record that because a doctor doesn't say one way or the other, I'm going to construe there's no permanent injury?

MR. ANGLEY:  Form.

THE WITNESS:  No, I -- I don't agree with that statement.

BY MR. LEE GUNN:

Q.   What does it mean to approach a claim with an open mind?

MR. ANGLEY:  Form.

THE WITNESS:  To review the medical records and -- and the merits of each claim.

BY MR. LEE GUNN:

Q.   Is it your job at Progressive as you understood it to look for ways to deny a claim?

A.   No.

Q.   Is it your job at Progressive to look for ways to pay claims and to assist a claimant in presenting the evidence necessary to allow Progressive to make full

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**      www.**MILESTONEREPORTING**.com      **Toll Free 855-MYDEPOS**

393795 Rodriguez Krissi 06-24-2025   Page 95

claim payment when due?

MR. ANGLEY: Form.

THE WITNESS: Yes. My -- my goal is to pay each claim fairly and -- and what is owed.

BY MR. LEE GUNN:

Q. And if a -- an opinion one way or the other, a permanency was something Progressive wanted to know in order to fully evaluate Mr. Wilkins' claim, it could have asked, for example, Mr. Sartes, hey, can you reach out to the doctors? Maybe you can get them to give us an opinion of permanency one way or the other, something Progressive could have done; agreed?

MR. ANGLEY: Form.

THE WITNESS: It could have. But again, it did not feel warranted in this case, based on the information that his treating providers were -- were documenting.

BY MR. LEE GUNN:

Q. Right. Because the treating doctors weren't documenting, one way or the other, whether all these and all these injections were to treat a permanent injury, right?

MR. ANGLEY: Form. Records speak to themselves.

THE WITNESS: Correct. The -- the doctor did

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

-- didn't say one way or the other, and there was not a clear treatment plan to move forward. So you know, our -- our evaluation at the time considered everything that -- that was being done and what was being documented by Mr. Wilkins' providers.

BY MR. LEE GUNN:

Q. Did you ever instruct your claim rep to inquire of Mr. Sartes whether he could obtain a statement of permanency from any provider, any physician?

A. No.

MR. ANGLEY: Mr. Gunn, we've been going for about an hour. A good time for --

MR. LEE GUNN: Oh.

MR. ANGLEY: -- a brief break.

MR. LEE GUNN: Yeah. I'm sorry, David. I didn't realize that we've gone that long, but yes, may we go till a quarter after, everybody?

MR. ANGLEY: That works for me.

MR. LEE GUNN: All right. Thanks, Mr. Rodriguez. We'll see you in about seven minutes.

THE VIDEOGRAPHER: Yep. Time is 11:08 a.m. We're off the video record.

(A recess was taken.)

THE VIDEOGRAPHER: The time is 11:15 a.m. We're

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          Toll Free 855-MYDEPOS

593795 Rodriguez Krissi 06-24-2025

back on the video record.

BY MR. LEE GUNN:

Q. All right. Ms. Rodriguez, did you, as part of your work at Progressive, ever do jury verdict research? Just generally do -- look at what jury verdicts come in at various injuries?

A. No.

Q. And I've asked in the beginning, and I think we agree that the legal liability of a tortfeasor is established by the elements that are recoverable under Florida Law when you are at fault and causing an accident, right? You agree with that?

A. I do.

Q. Okay. And we, kind of, skipped through this with -- a little bit in your beginning testimony with your lawyer. But, you know, in the context of Mr. Wilkins, it's past and future medical, that's reasonably likely to be -- reasonably certain, I think is the language now, to be in pain in the -- in the future for medical; right?

THE WITNESS: I'm sorry. David, if you're talking, you're muted.

MR. ANGLEY: That would've been -- that would've been helpful. I'm sorry.

Form. Objection.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

595195 Rodriguez Krissi 06-24-2025    Page 98

THE WITNESS:  Sorry.  Mr. Gunn, would you repeat the question, please?

BY MR. LEE GUNN:

Q.   Do you agree that the element of Mr. Wilkins claim will be past medical and then reasonably certain to be incurred future medical, is one element of his recovery?

MR. ANGLEY:  Form.

THE WITNESS:  I would agree that that's one element of -- of the UM coverage.  But in Mr. Wilkins' case, the permanency of the injury was not established.

BY MR. LEE GUNN:

Q.   No.  And therein lies our rub.  All right. The -- if a jury finds that Mr. Wilkins' injuries are meeting the tort threshold that include such things as a permanent injury to a reasonable degree of medical probability caused or occasioned by the crash, then he gets past pain and suffering, loss of convenience, or loss of passing to enjoy life, inconvenience, mental anguish, and other non-economic loss in the past and to be occasioned in the future; right?

MR. ANGLEY:  Form.

THE WITNESS:  I would say if -- if that is established, then -- then yes.  But at the time of

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    www.**MILESTONEREPORTING**.com    **Toll Free 855-MYDEPOS**

my handling of the claim, that -- that was not established by any of his treating doctors.

BY MR. LEE GUNN:

Q.    Understood.  Okay.  And can we agree that -- how old was Mr. Wilkins?

A.    I -- I don't recall.

Q.    Okay.  Any doubt in your mind that if the jury -- based on the injuries you accepted and we went over at Page 54 of the claim notes, I think that's Progressive 1 for your deposition.  Is there any doubt in your mind that those accepted injuries were found to be permanent, that a jury would award Mr. Wilkins many, many times over the $50,000 policy limit in past and future non-economic?

MR. ANGLEY:  Form.

THE WITNESS:  I can't speculate what they would -- what they would award.

BY MR. LEE GUNN:

Q.    Oh, I don't want you to speculate.  As a professional, as a claims' examiner, as an experienced person adjusting liability and UM claims, can we agree that a man in a wheelchair with four level herniation, radicular complaints down his arms into his hands, pain requiring these injections, more likely than not, using reasoned, claimed judgment, would get an award of non-

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

393195 Rodriguez Krissi 09-24-2025                    Page 100

economic damages well in excess of the necessary award

to require payment of the $50,000 benefit?

        MR. ANGLEY:  Object to the form.

        THE WITNESS:  It is possible, but I would be

   speculating what -- what an award would be.

        BY MR. LEE GUNN:

   Q.   So let me fundamentally ask you, as a -- as a

-- as a liability adjuster, which you wear that hat from

sometimes; aren't you required to use reasoned, claimed

judgment claim to understand the likely outcome of a

claim if presented to a jury against your insured?

   A.   I --

        MR. ANGLEY:  Form.

        THE WITNESS:  The risk of -- of that, yes, but

   I -- I don't work in -- in any form of litigation

   claims handling.

        BY MR. LEE GUNN:

   Q.   Well, in pre-suit, you can't wait until the

claim is litigated and the jury awards the damages to

try to negotiate a claim settlement to protect an

insured in a liability policy; can you?

        MR. ANGLEY:  Form.

        THE WITNESS:  No.  Like -- as I said before,

   each -- each claim is handled on a case by case

   basis. And at the time that -- of my involvement in

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**       www.**MILESTONEREPORTING**.com       **Toll Free 855-MYDEPOS**

593195 Rodriguez Krissi 09-24-2025

Mr. Wilkins' claim, our -- our efforts were to negotiate a reasonable settlement based on the information that we had at the time.

BY MR. LEE GUNN:

Q. So as a -- as a -- as a liability pre-litigation adjuster, if something comes in and hits your desk as a claim evaluation, and you've got 100 progressive liability policy and you've got to sit down and look hard at what a jury might award, reasonably foreseeable, loss injury damage, that I need to protect my insured from by trying to get a release from that claimant injured party; true?

A. Are you talking about a bodily injury claim in general, or are you talking about Mr. Wilkins' case?

Q. He doesn't have a bodily injury claim against Progressive, so it's only about generality because I want to understand what your claim experience is, whether you've utilized reasoned, claimed judgment to adjust third party liability claims before a jury tells you and before you have months or years of information available, you have to try to be reasonably predictive using reasoned, claimed judgment to understand what the legal liability risk is to a Progressive third party liability insured; isn't that true?

MR. ANGLEY: Object to the form.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

593195 Rodriguez Krissi 09-24-2025                    Page 102

THE WITNESS:  I would say each claim is addressed based -- based on its own merit, looking at all the -- all the information that -- that went with it.

BY MR. LEE GUNN:

Q.   Right.  And on its own merit, you have to use reasoned, claimed judgment before suit is filed to engage in good faith negotiations in an effort to obtain a release of your liability insured from the injured party; right?

MR. ANGLEY:  Form.

THE WITNESS:  Yes.

BY MR. LEE GUNN:

Q.   Okay.  And you have to have some basis to say before all the verdicts are in, this is what I think this risk of legal liability is to my policy holder who's been found, or I think is going to be found at fault for a crash; true?

MR. ANGLEY:  Form.

THE WITNESS:  Yes.

BY MR. LEE GUNN:

Q.   And so what I'm asking you -- and now, we're switching gears, to be fair, to the Wilkins' claim.  Do you agree, based on the facts that's known to you at Progressive in December of 2019, that if a jury were to

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

593195 Rodriguez Krissil 09-24-2025                    Page 102

determine that Mr. Wilkins was legally entitled to the

recovery of past and future non-economic loss, things

like pain, suffering, mental anguish, inconvenience,

loss of capacity for enjoyment of life in the past to be

occasioned into the future; that that award was likely

to be well in excess of the UM benefit of the 50,000?

        MR. ANGLEY:  Form.  Calls to speculation.

        THE WITNESS:  It -- it's possible.  But again,

   I can only evaluate the claim based on the

   information that I had at the time.  And at the --

   at the time of the -- my involvement in the claim,

   we were evaluating the information that was received

   and -- and believed it to be valued within the

   policy limit.

        BY MR. LEE GUNN:

  Q.    During every occasion of your involvement, was

it your understanding that each and any offer made to

Mr. Wilkins was with condition that it would end the

claim?  It would be full and final, and there'd be no

further claims against Progressive for UM claim benefit

or any claim for bad faith brought?

  A.    The goal of the -- the settlement offer, yes,

was to resolve the claim full and final.

  Q.    And is it true that during your handling of

the claim, there was never any unconditional payment



MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

593195 Rodriguez Krissi 09-24-2025    Page 104

made to Mr. Wilkins such as $8,200 or $1,000 that would merely act as a partial payment of the UM benefit available, but did not require a release of the remaining benefits?

MR. ANGLEY:  Form.

THE WITNESS:  I don't know if there was any partial payment made in the life of the UM claim.

BY MR. LEE GUNN:

Q.    From time that you reviewed the claim till your work ended and it went into litigation, are you aware of any unconditional partial payment of UM benefits made to Mr. Wilkins?

A.    I am not aware of any partial payment.

Q.    Prior to December 2019, are you -- are you aware of whether Progressive ever had a policy of making partial UM payments, "without prejudice" to remaining benefits?

A.    I don't know.

MR. ANGLEY:  Form to the last question.

MR. LEE GUNN:  That's fine.  Thank you.

BY MR. LEE GUNN:

Q.    Oh, one last item, and I touched on this.  Do we agree that Progressive, if it chose to do so, could have made an unconditional tender of its $50,000 policy limit and that would've ended the litigation over the UM

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

593195 Rodriguez Krissel 09-24-2025    Page 105

count?  And maybe you don't know this if you -- and I don't -- I want to be fair to you.  If you're not doing litigated, you may not be familiar with the process of confession to judgment.  But if you are, I want to establish that.  So let me ask the question, okay?

Are you familiar with the concept of a confession to judgment of a UM count?

A.  I'm not familiar.

MR. LEE GUNN:  All right.  Thank you.

David, anything else?

MR. ANGLEY:  Yeah.  I'll just do a couple of follow-ups.

REDIRECT EXAMINATION

BY MR. ANGLEY:

Q.  Ms. Rodriguez, during your involvement in this claim, did any of the records submitted to Progressive for evaluation by Mr. Wilkins in connection with his UM claim, provide an opinion of his treating physician that Mr. Wilkins sustained a permanent injury caused by the July 26th, 2019 motor vehicle accident?

MR. LEE GUNN:  Asked and answered.

BY MR. ANGLEY:

Q.  You can answer.

A.  No.

Q.  You were asked about the herniations reflected

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

in some of the medical records.  I'm going to show you what was marked as Exhibit 3.

It's the December 2nd, 2019 date of service from Trinity Spine.  And on PRG 3019, do you see where it says cervical recommendations and then it reflects some diagnostic studies?

A.   Yes.

Q.   Following this -- in this paragraph anywhere, does it state or provide an opinion that these injuries were caused by the July 26th, 2019 accident?

MR. LEE GUNN:  Form.

THE WITNESS:  It does not specify there.

BY MR. ANGLEY:

Q.   Okay.  And during your involvement of claim, did you -- did Progressive ever receive documentation showing Mr. Wilkins was scheduled for surgery?

A.   No.

Q.   I'm sorry, ma'am.  I couldn't hear you.

A.   No.

Q.   During your involvement in the claim, was there any specific treatment plan that was provided to Progressive that reflected surgery?

MR. LEE GUNN:  Form.

THE WITNESS:  No.

BY MR. ANGLEY:

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

Q.    During the records that were submitted to Progressive during your specific involvement, December 2019 through March 2021; did Progressive ever receive a specific treatment plan from any of the treating providers as to -- that would establish certainty as to future medical care?

MR. LEE GUNN:  Form.

THE WITNESS:  No.

BY MR. ANGLEY:

Q.    And would you agree with me that based on Progressive's evaluation, Progressive did not evaluate the claim at policy limits during your involvement in the claim?

MR. LEE GUNN:  Form.

THE WITNESS:  That's correct.

BY MR. ANGLEY:

Q.    And part of Progressive's evaluation was whether or not Mr. Wilkins would be entitled to non-economic damages, correct?

MR. LEE GUNN:  Form --

THE WITNESS:  That's correct.

MR. LEE GUNN:  Leading.  Asked and answered.

MR. ANGLEY:  Let me ask: As part of Progressive's evaluation, would it evaluate whether or not Mr. Wilkins had triggered entitlement to non-

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

593195 Rodriguez Krissi 09-24-2025  Page 108

economic damages?

MR. LEE GUNN:  Asked and answered.

THE WITNESS:  So sorry.  Can you say that again, David?

BY MR. ANGLEY:

Q.  Sure.  So as part of Progressive's evaluation, would Progressive look at whether Mr. Wilkins had triggered entitlement to non-economic damages based on the terms and conditions of his UM policy?

A.  Yes.

Q.  Okay.  And based on your involvement in the claim, what was the determination as to whether Mr. Wilkins was entitled to non-economic damages?

A.  That he was not.

Q.  Okay.  And you were asked a number of questions about, you know, the medical records not saying one way or another about permanency.  In your experience as a claims professional, if Mr. Wilkins' treating physicians had that opinion; would you have expected them to document it in their treating records?

MR. LEE GUNN:  Form.  Foundation.

You can answer.

THE WITNESS:  Yes.  I would've expected his treating provider to -- to indicate whether or not there was a permanent injury.

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

593195 Rodriguez Krissi 06-24-2025                          Page 109

BY MR. ANGLEY:

Q.    And in your claims experience by the fact that the treating physicians did not document that opinion, did that mean to you that they did not hold that opinion?

A.    Yes.  That's correct.  That, and also in review of -- of the -- the treatment that he was receiving, the documentation that he was improving, and then the lack of a concrete treatment plan moving forward at the time of my involvement in the claim.

Q.    Sure.  And then you were asked questions about what a jury may have determined in Mr. Wilkins's claim.  What the jury may have determined years later was based on information that was not available to you at the time of your claims handling involvement, correct?

MR. LEE GUNN:  Form.

THE WITNESS:  You would say that, yes, that's possible.

BY MR. ANGLEY:

Q.    All right.  You're -- is -- correct to say that Progressive's evaluation was based on full and fair consideration of information that was provided to at that point in time?

MR. LEE GUNN:  Form.

THE WITNESS:  Yes.

 MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

MR. ANGLEY:  Okay.  All right.  No further questions.

MR. LEE GUNN:  We're good.  Thanks, Miss --

RECROSS-EXAMINATION

BY MR. LEE GUNN:

Q.  Oh.  One last -- sorry about this.  One last -- just housekeeping.  Where do you -- I don't need a physical address right -- on the record.  But where are you, in county, what -- where do you reside?

A.  Seminole.

Q.  All right.  Any plans to be out of the area in the next few months?  Long vacations, another two-and-a-half week, or -- for example?

MR. ANGLEY:  Move to strike.

THE WITNESS:  Not right now.

MR. LEE GUNN:  All right.  David, are you going to be accepting a trial subpoena on behalf of the witness?

MR. ANGLEY:  We can talk about that outside of the context of the depo.

BY MR. LEE GUNN:

Q.  Okay.  Ma'am, off record -- off video, but on record, what is your physical street address, please?

A.  It's Barclay Avenue, B-A-R-C-L-A-Y.

Q.  That -- and that's Seminole, Florida?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A.   I'm sorry, you said -- I thought you said county.  It's Seminole County.

MR. ANGLEY:  It's her County, Link [sic].

MR. LEE GUNN:  Oh, okay.  Yeah.  Yeah. That's --

MR. ANGLEY:  I don't see why we --

MR. LEE GUNN:  Just give me -- I'm --

MR. ANGLEY:  I don't see what --

MR. LEE GUN:  -- going to get her full -- I'm going to get her full street --

MR. ANGLEY:  All right.

MR. LEE GUNN:  -- address, okay.  I mean, if you --

MR. ANGLEY:  All right.  I just don't see why we would, but --

MR. LEE GUNN:  -- you can instruct her not to answer.  But if you just --

MR. ANGLEY:  No.

MR. LEE GUNN:  -- say, yeah, of course, I'm going to accept, she's a local --

MR. ANGLEY:  I --

MR. LEE GUN:  -- witness for Progressive, of course, I'm going to accept the trial subpoena for her.

MR. ANGLEY:  Yes.  Yes.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     **www.MILESTONEREPORTING.com**     **Toll Free 855-MYDEPOS**

593195 Rodriguez Krissi 06-24-2025                    Page 192

MR. LEE GUNN:  But I didn't hear that.

MR. ANGLEY:  I don't see why we wouldn't, but, you know.

BY MR. LEE GUNN:

Q.   In abundance of caution with no clear commitment that I don't need to serve you physically with a subpoena, ma'am, for trial, please give me your physical address beginning with the street, and the city, and the -- I assume it's Florida, and the ZIP Code.  Thanks.

A.   You want my home address?

Q.   Where -- yes.  Your home address, where I can send somebody -- and I hope it's not necessary.  But I understand David's trepidation.  He wants to check with everybody first, okay.  So just give me that so I have it, so if I need to serve it in that unlikely event, I have it, okay.

A.    It's 309 Barclay, B-A-R-C-L-A-Y, Avenue, Altamonte Springs, Florida, 32701.

Q.   I appreciate that courtesy.  And that's why it's not on video.  Hopefully we don't need to even include it in any filings.  We'll redact it.  Okay.  But I've got it if I need it.

MR. LEE GUNN:  Anything else that we need to cover than read and sign?

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

MR. ANGLEY: Nope. The witness will read.

MR. LEE GUNN: All right.

THE REPORTER: Okay. Is that through your office, or did you want it individually?

MR. ANGLEY: I'll hand it through -- you can send it to my office.

THE REPORTER: Office. Okay.

MR. ANGLEY: And, Mr. Angley, would you like to order the transcript?

Yes, please. Regular delivery is fine.

THE REPORTER: Electronic is fine with you as well?

MR. ANGLEY: Electronic, yeah.

THE REPORTER: All right.

MR. ANGLEY: Yeah. We don't need the video at this point.

THE REPORTER: All right.

Mr. Gunn, would you like to order a copy?

MR. LEE GUNN: I'll take a copy in due course. Thank you.

THE REPORTER: The same thing, electronic, regular delivery is okay with you?

MR. LEE GUNN: Yeah. Whatever my son tells me. He's the one that deals with it.

MR. DELTON GUNN: What is -- what is your

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

standard delivery time?

THE REPORTER:  Oh.  There you are?  Seven days.

MR. DELTON GUNN:  Okay.

THE REPORTER:  Well, you can have it --

MR. DELTON GUNN:  Can you send me a price sheet for expedited?

THE REPORTER:  I'm sorry?

MR. DELTON GUNN:  Can you send me a price sheet for expedited, please?

THE REPORTER:  Sure.  No problem.  Did you guys want to order the video?

MR. LEE GUNN:  No.

MR. DELTON GUNN:  Not at this time.

THE REPORTER:  All right.

We'll get us off record.

(Deposition concluded at 11:35 a.m. ET)



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

593195 Rodriguez Krissi 06-24-2025   Page 115

CERTIFICATE OF OATH

STATE OF FLORIDA

COUNTY OF ORANGE


    I, the undersigned, certify that the witness in the foregoing transcript personally appeared before me and was duly sworn.


Identification:  Produced Identification



_____

MADALINE KOLO

Court Reporter, Notary Public

State of Florida

Commission Expires: April 11, 2028

Commission Number: HH 515039

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

393195 Rodriguez Krissi 06-24-2025

C E R T I F I C A T E

STATE OF FLORIDA)

COUNTY OF ORANGE)


     I, MADALINE KOLO, Court Reporter and Notary Public for the State of Florida at Large, do hereby certify that I was authorized to and did report the foregoing proceeding, and that said transcript is a true record of the said proceeding.


     I FURTHER CERTIFY that I am not of counsel for, related to, or employed by any of the parties or attorneys involved herein, nor am I financially interested in said action.

Submitted on: June 26, 2025.



                    _____

                    MADALINE KOLO

                    Court Reporter, Notary Public

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

ERRATA

PAGE      LINE                    CHANGE     REASON

I have read the entire transcript of my deposition taken in the captioned matter or the same has been read to me.I request that the following changes be entered upon the record for the reasons indicated. I have signed my name to the Errata Sheet and authorize you to attach the changes to the original transcript.

_____        _____

Date                           NAME



MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.**MILESTONEREPORTING**.com        **Toll Free 855-MYDEPOS**

**MILESTONE** I **REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

**407.423.9900**
**Fax 407.841.2779**
**Toll Free 855-MYDEPOS**

**June 26, 2025**

**David Angley, Esquire**
Young, Bill, Boles, Palmer, Duke & Thompson, P.A.
401 E. Jackson St., Suite 2950
Tampa, FL 33602

RE:    Deposition of **Krissi Rodriguez. (RC)** taken on **6/24/2025**
Mondamin Wilkins v. Progressive Select Insurance Company

Dear Mr. **Angley**,

## IMPORTANT NOTICE FOR DEPOSITION TRANSCRIPT READ AND SIGN

It is suggested that the review of this transcript be completed within 30 days of your receipt of this letter,
as considered reasonable under Federal Rules*.

  X     **Attorney - Copy of Transcript Enclosed:**   Signature of the Deponent is required.  Please have the deponent make any corrections/changes necessary on the Errata Sheet ONLY, sign name on the form where indicated.  Please return ONLY the original signed Errata Sheet to our offices within 30 days from the date of this memorandum.  If you have any questions, please call our offices.

_____      **Attorney - No Copy Ordered:**   Since you did not request a copy of the transcript, it will be necessary for the Deponent to call our offices to arrange for an appointment to read and sign the transcript of the Deposition within 30 days of this memorandum.

_____      **Deponent:**    At the time of your deposition, you did not waive your right to read and sign the transcript of your testimony, therefore, attached please find a copy of the transcript and Errata Sheet.  Please read the transcript, make any corrections necessary on the Errata Sheet ONLY, sign the bottom of the Errata Sheet, and return it within 30 days from the date of this memorandum.  Please call our offices if you have any questions.

_____      **Deponent:**    At the time of your deposition, you did not waive your right to read and sign the transcript of your testimony, therefore, it is necessary for you to come to our offices to read and sign same.  Please call Milestone Reporting Company to arrange for an appointment at your earliest convenience.

_____      **The errata sheet(s) and Notary Certificates(s) have not been received by our office in the allotted time period. The original transcript has been filed with the appropriate court or counsel.**

Thank you for your attention to this matter.

No. 393195                              Reporter:

cc: Lee Gunn, IV, Esquire

Waiver:
I, Krissi Rodriguez. (RC)**,** hereby waive the reading and signing of my deposition transcript.

_____                    _____

Deponent Signature                                           Date

*Federal Civil Procedure Rule 30 (e) / Florida Civil Procedure Role 1.310 (e)

400 North Ashley Drive, Suite 2600          315 East Robinson Street, Suite 510          4651 Salisbury Road, 4th Floor
**TAMPA, FL 33602**                              **ORLANDO, FL 32801**                        **JACKSONVILLE, FL 32256**
                                                **CORPORATE**
                                        **WWW.MILESTONEREPORTINGCOMPANY.COM**