EXHIBIT D

**ORIGINAL**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

CASE NO. 8:24-CV-01793-TPB-AAS

MONDAMIN WILKINS,

Plaintiff

V.

PROGRESSIVE SELECT INSURANCE

COMPANY,

Defendant

DEPONENT:  LEXI GORMAN

DATE:      MAY 5, 2025

REPORTER:  NATALIA GONZALEZ

**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

407.423.9900
Fax 407.841.2779
Toll Free 855-MYDEPOS

401 EAST JACKSON STREET,
SUITE 2370
TAMPA, FL 33602

315 EAST ROBINSON STREET,
SUITE 510
ORLANDO, FLORIDA 32801
CORPORATE

380876 Gorman Text  05-05-2025

APPEARANCES

ON BEHALF OF THE PLAINTIFF, MONDAMIN WILKINS:

Lee D. Gunn, IV, Esquire

Gunn Law Group, P.A.

401 East Jackson Street

Suite 3600

Tampa, Florida 33602

Telephone No.: (813) 228-7070

E-mail: lgunn@gunnlawgroup.com

(Appeared via videoconference)


ON BEHALF OF THE DEFENDANT, PROGRESSIVE SELECT INSURANCE

COMPANY:

David M. Angley, Esquire

Blaise Antoniou, Esquire

Young, Bill, Boles, Palmer, Duke & Thompson, P.A.

401 East Jackson Street

Suite 2950

Tampa, Florida 33602

Telephone No.: (813) 603-3006

E-mail: dangley@flalawyer.net

(Appeared via videoconference)


Also Present: Rachel Krupka, Videographer

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**      www.**MILESTONEREPORTING**.com      **Toll Free 855-MYDEPOS**

                              INDEX

                                                Page

PROCEEDINGS                                      5

DIRECT EXAMINATION BY MR. ANGLEY                 6

CROSS-EXAMINATION BY MR. GUNN                   42

REDIRECT EXAMINATION BY MR. ANGLEY              97

RECROSS-EXAMINATION BY MR. GUNN                103

FURTHER DIRECT EXAMINATION BY MR. ANGLEY       115

FURTHER CROSS-EXAMINATION BY MR. GUNN          118


                            EXHIBITS

Exhibit                                         Page

   1   Claim Notes for 19-2350589               15

   2   Demand Letter to Progressive -

       October 10, 2019                          22

   3   Letter Tragos to Progressive Re:

       Cervical MBB and Billing -

       December 5, 2019                          30



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

STIPULATION

The VIDEO deposition of LEXI GORMAN was taken at MILESTONE REPORTING COMPANY, 315 EAST ROBINSON STREET, SUITE 510, ORLANDO, FLORIDA 32801, via videoconference in which all participants attended remotely, on MONDAY the 5TH day of MAY 2025 at 1:01 p.m. (ET); said deposition was taken pursuant to the FLORIDA Rules of Civil Procedure. It is agreed that NATALIA GONZALEZ, being a Notary Public and Court Reporter for the State of FLORIDA, may swear the witness and that the reading and signing of the completed transcript by the witness is not waived.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     www.**MILESTONEREPORTING**.com     **Toll Free 855-MYDEPOS**

PROCEEDINGS

THE VIDEOGRAPHER:  My name is Rachael Krupka. I'm the online video technician, and Natalia Gonzalez is the court reporter today representing Milestone Reporting Company located at 315 East Robinson Street, Suite 510, Orlando, Florida 32801. Today is the 5th day of May 2025, and the time of day is 1:02 p.m. Eastern. We're convened by video conference to take the deposition of Lexi Gorman in the matter of Mondamin Wilkins v. Progressive Select Insurance Company pending in the United States District Court in the Middle District of Florida Tampa Division, Case number 8:24-CV-01793-TPB-AAS.

Will everyone, but the witness, please state your appearance, how you're attending, and the location you're attending from, starting with the plaintiff's counsel?

MR. GUNN:  Sure.  Lee Gunn here in Tampa, Florida.

MR. ANGLEY:  David Angley and Blaise Antoniou from -- on behalf of Defendant Progressive in Tampa, Florida.

THE VIDEOGRAPHER:  And Ms. Gorman, will you please state your full name for the record and hold up your ID to the camera?



MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**   **www.MILESTONEREPORTING.com**   **Toll Free 855-MYDEPOS**

380876 Gorman Lexi 05-05-2025

THE WITNESS:  Can you see that or --

THE VIDEOGRAPHER:  That's perfect.  Thank you so much.

THE WITNESS:  Lexi Gorman.

THE VIDEOGRAPHER:  Thank you.  And do all parties agree the witness is in fact Ms. Lexi Gorman?

MR. ANGLEY:  Defendant does.

THE VIDEOGRAPHER:  All right.

MR. GUNN:  I have no objection to the representations.  However, I do not know this witness and cannot vouch for their identity.

THE VIDEOGRAPHER:  All right.  Ms. Gorman, will you please raise your right hand to be sworn in by the court reporter?

THE REPORTER:  Do you solemnly swear or affirm that the testimony you are about to give will be the truth, the whole truth, and nothing but the truth?

THE WITNESS:  Yes.

THE REPORTER:  All right.  You may proceed.

DIRECT EXAMINATION

BY MR. ANGLEY:

Q.   Good afternoon, Ms. Gorman.

A.   Good afternoon.

Q.   Will you please state and spell your full name



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

for the record?

A.   Sure.  Lexi Gorman, L-E-X-I, last name, G-O-R-M-A-N.

Q.   Thank you, Ms. Gorman.  And today, we're going to be doing your deposition via Zoom.  So at times, there are some technical difficulties.  If that happens, we'll try to sort of way through them, but if your audio goes out or video, you know, and just put a message in the chat or signal by raising your hand or try to alert us so we can deal with those issues.

A.   Okay.

Q.   We have a court report with us today, and she's going to be taking down everything that's said.  So please let questions be finished before you start to answer.  We're going to be looking at exhibits remotely or through the share function.  So if there's any difficulty in seeing or viewing the exhibit, please let me know and I'll zoom in or zoom out, scroll up and down.  If you need a break at any point, please let me know and I'm happy to provide that to you.

Ms. Gorman, have you ever had your deposition taken before?

A.   I have not.

Q.   Okay.  And can you tell me your date of birth?

A.   XX-XX-XXXX.



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

Q.   And can you please tell me your highest level of education?

A.   Bachelor's of Science.

Q.   And where did you obtain that?

A.   The University of Central Florida.

Q.   And when did you graduate?

A.   2014.

Q.   And did it -- was there a particular field you obtained the bachelor's degree in?

A.   Psychology and interpersonal and organizational communication.

Q.   Okay.  Any other college following the bachelor's degree?

A.   Nope.

Q.   Do you have any certifications or licenses?

A.   I have an all-adjuster's license.

Q.   Is that in Florida or other states?

A.   In Florida.

Q.   And where do you currently work?

A.   Progressive Insurance.

Q.   And what is your current job role?

A.   Claims manager.

Q.   Okay.  And when did you start working at Progressive?

A.   July of 2014.



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          **Toll Free 855-MYDEPOS**

380876 Gorman Text 05-05-2025

Q.   Okay.  So you've been there approximately 11 years almost?

A.   Almost 11 years, yep.

Q.   So during that time frame, can you kind of walk me through the roles you've held at Progressive and the time frame in which you held those particular roles?

A.   Sure.  So I started in training.  I -- I did that for about the first four months while I was working on getting licensed and going through the training period.  I was a claims generalist.  I did that role for about a year, just handling auto property claims.  From there, I was promoted into an injury role handling auto claims with soft tissue injuries that were unrepresented.  I did that for about two years.

And then from there, I took another move into the pre-litigation injury role, the casualty department. I did that role for about a year-and-a-half and I -- that's also the department I started getting into leadership.  So I was in a supervisory role after doing that for about a year-and-a-half.  And then I was a supervisor in the casualty group for all about three years.  I then took a supervisor role over in the medical claims unit handling first party medical claims. And then in December of 2022, I was promoted to a claims manager role and I've been -- I'm still in that role

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          Toll Free **855-MYDEPOS**

380876 Gorman Lexi  05-05-2025  Page 10

currently.

Q. And when you were handling unrepresented injury claims or represented injury claims, were those bodily injury claims and uninsured motorist claims or one or the other?

A. Yes.

Q. Both?

A. Both.

Q. And when you were supervising injury claims, were those both bodily injury claims, uninsured motors claims, or one or the other?

A. They were both.

Q. And when you -- did you have any prior job experience in the insurance industry prior to starting working at Progressive in July of 2014?

A. I did not.

Q. And at Progressive, did you receive training for each one of the job positions that you held?

A. I did.

Q. Okay. And can you tell me generally what kind of training you would have received?

A. Online training that was job-specific courses, job shadowing other people, and then just kind of learning hands-on material, a lot of online training as well.



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

380876 Gorman Text 05-05-2025   Page 11

Q.   For each of the roles that you held at Progressive, did you feel that you were adequately trained for that role?

A.   Yes.

Q.   And do you continue to receive training?

A.   Yes.

Q.   And prior to working at Progressive and when you started in July of 2014, can you kind of walk me through your work history prior to Progressive?

A.   Sure.  I -- I -- when I started -- I was 22 when I started at Progressive.  So the breadth of the experience I had before was in hospitality and hospitality management so at various restaurants, and then I also worked for a bankruptcy attorney in my junior and senior year of college.

Q.   Do you recall the name of that attorney?

A.   A.B. Crouch (phonetic).

Q.   Any other work in related fields other than what we've discussed so far?

A.   No.  I did some -- I wouldn't -- it was not paid work.  It was more of like an internship during college for a doctoral candidate, but it was not -- I would not call it work.  It was research assistant.

Q.   And at the law firm, what was your -- what was your role there?

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A.   Meeting with clients, going over the details of their pending bankruptcy cases, and assisting the lawyer with various needs.

Q.   Was it all bankruptcy type work?

A.   Yes.

Q.   For the attorney?  And you mentioned earlier, you have a Florida adjuster's license.  When did you obtain that?

A.   In July of 2014.

Q.   Have you ever been licensed in any other state?

A.   I have not.

Q.   And during the entire time you've adjusted claims at Progressive, were you a Florida licensed adjuster?

A.   Yes.

Q.   Do you have any other certifications or licenses other than what we've discussed so far?

A.   I do not.

Q.   I want to take to a -- I'm sorry.  I want to take you to December 2019.  What was your position at Progressive at that time?

A.   I was a supervisor in the casualty department.

Q.   And what's the casualty department?

A.   And I -- correction, I was technically a

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

380876 Gorman Text 05-05-2025   Page 13

superintendent, but my role was a supervisor.  My title was superintendent, handling soft tissue type cases that our attorney represented in the pre-litigation phase.

Q.   So at that point, the claims that you were supervising did not involve litigation files?

A.   They did not.

Q.   Okay.  And when you say, "attorney represented," what do you mean?

A.   The injured party had retained counsel for -- to resolve their injury claim.

Q.   And superintendent, that was your title.  Does -- is that the same as a supervisor or what did -- what it was your -- kind of what your -- can you provide a -- explain your role to me.

A.   Yes.  It was the same as a supervisor.

Q.   And at that point, who were you supervising?

A.   I'm sorry; can you repeat that?

Q.   Who were you supervising at that time?

A.   I was supervising a team of six to seven adjusters that handled attorney-represented injury claims.

Q.   And would that be inclusive of both bodily injury claims on -- and uninsured motors claims?

A.   Yes.

Q.   And as of December of 2019, how long had you



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

380876 Gorman Lexi 05-05-2025 Page 14

been either adjusting or supervising injury claims for at Progressive?

A.   I -- I would say December '19, around four-and-a-half to five years.

Q.   And at some point, did you become involved in a uninsured motorist claim that was brought by Mondamin Wilkins against Progressive arising out of a July 26th, 2019, motor vehicle accident?

A.   Yes.

Q.   In 2019, when you handled a claim at Progressive, did you keep notes of the activities that you performed on a claim?

A.   In the file, yes.

Q.   And was there a specific term or a term for what these notes were referred to as or called?

A.   Face sheet notes.

Q.   And where were they kept?  Were they electronic or hard copy?

A.   Electronic.

Q.   So you would input these notes into the computer?

A.   Yes.

Q.   And if I refer to them as claim notes or notes, you'll understand I'm referring to the face sheet note function?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A.    Yes.

Q.    And did you use these notes to document the activities you performed on a file?

A.    Yes.

Q.    And were these notes entered at or near the time that the event occurred?

A.    Yes.

Q.    And when you entered a note, did you have knowledge of the event you were documenting?

A.    Have knowledge of what?  I'm sorry.

Q.    When you would create a note, did you have knowledge of what you were documenting?

A.    Yes.

Q.    And did you create notes from Mr. Wilkins injury claims -- or Mr. Wilkins injury claim?

A.    Yes.

Q.    Mark this as Exhibit 1, it's been Bates stamped PRG 1 through 255.

And I'll share my screen with you, Ms. Gorman. And as I mentioned earlier, if you need me to zoom in, zoom out, go up, or down, just please let me know.

(Exhibit 1 was marked for identification.)

A.    Okay.

BY MR. ANGLEY:

Q.    Does this appear to be a copy of the claim

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

notes or face sheet notes for Mr. Wilkins claim?

A.   Yes.

Q.   And before we discuss the claim notes, do you have any independent recollection of this claim?

A.   Just to my notes in the file.

Q.   And what was your understanding of what kind of claim Mr. Wilkins was making?

A.   An uninsured motorist claim.

Q.   And what is an uninsured motorist claim?

A.   It's a claim for -- to seek damages for -- or when the tortfeasor is under or uninsured.

Q.   And did Mr. Wilkins have an automobile liability policy with Progressive?

A.   Yes, he did.

Q.   And did he have uninsured motorist benefits through that policy?

A.   Yes, he did.

Q.   And what was your understanding of what those policy limits were?

A.   50,000 per person, 100,000 per accident, non-stacked.

Q.   And what does it mean "non-stacked"?

A.   The per person limit is as display on the declarations page as well as the accident.  A minute.

Q.   I want to take -- move to PRG 47 and there's



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

580876 Gorman Text  05-05-2025  Page 17

two entries on December 16th, 2019: one's at 1:44 p.m. and another is at 1:46 p.m.  Do you see the two entries I'm referring to?

A.    I do.

Q.    Are these your only entries in this claim file?

A.    Yes.

Q.    What was your role in Mr. Wilkins -- if I say you and you'll understand referring to or saying uninsured motorist, for sure?

A.    Yes.

Q.    So what was your role in Mr. Wilkins' UM claim?

A.    I authorized the evaluation upon new information that was received by the adjuster.

Q.    And who was the adjuster?

A.    Camille Crawford.

Q.    And were you Ms. Crawford's supervisor?

A.    No.

Q.    So how did you come to be involved in this claim if you weren't Ms. Crawford's supervisor in December of 2019?

A.    Her supervisor was out of the office.

Q.    And who was Ms. Crawford's supervisor at that time?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**      **www.MILESTONEREPORTING.com**      **Toll Free 855-MYDEPOS**

A.   Kristen Rodriguez.

Q.   And were you familiar -- were you familiar with Ms. Rodriguez?

A.   Yes.

Q.   So how would that process work by which you would become involved if -- or why wasn't Ms. Rodriguez available at this time?

A.   She was on paid time off.

Q.   So were you filling in for Ms. Rodriguez?

A.   I was assisting with requests that came up related to time limit demands or urgent requests.

Q.   Okay.  And at that time back in December 2019, were you remote or in a physical location?

A.   We were in a physical location.

Q.   Where was that?

A.   Maitland, Florida.

Q.   And was Ms. Crawford in the same office in Maitland?

A.   Yes.

Q.   And was Ms. Rodriguez?

A.   Yes.

Q.   So this is pre-COVID time, so I get everyone was still housed in a physical location versus what we often have today with remote work or, you know, a hybrid formula?



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

A.  Yep.

Q.  And outside of substituting -- outside of these two claim notes in this particular file, did you have any further role in the handling or supervision of this particular claim?

A.  No.

Q.  And so we look at your first note, which is on PRG 47 on December 16th, 2019, at 1:44 p.m.  Did you meet with Ms. Crawford that day?

A.  Yes.

Q.  And would that have been in your office?  How would that process just kind of worked?

A.  It would've been on the floor.

Q.  What do you mean "the floor"?  Can you explain that?

A.  The -- we all sat in cubicle, so she sat in a cubicle.  I sat at a cubicle.

Q.  And how far away was Ms. Crawford's cubicle from yours at that time?

A.  Probably a couple hundred feet.

Q.  Would it be general -- was it your general practice or procedure back then to discuss time limit demands with the adjusters that came to you for authorization?

A.  Yes.



MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          **Toll Free 855-MYDEPOS**

380876 Gorman Text 05-05-2025   Page 20

Q. And what was the purpose in this case of your meeting with Ms. Crawford?

A. To review the records and evaluation.

Q. And when you say, "review the records and evaluation," what do you -- what do you mean by that?

A. She received additional records, and we reviewed them together to ensure that what she was documenting had occurred was what was in the records.

Q. Would you have also reviewed her or discussed her evaluation of those records?

A. Yes.

Q. If we go up to PRG 46, there's an entry on December 16th, 2019, at 1:26 p.m. You see this entry?

A. Uh-huh.

Q. And it goes into the PRG 47.

A. Yes.

Q. And what is your understanding of this entry?

A. She received additional documentation about treatment that had been rendered for -- for the -- for Mr. Wilkins.

Q. And would this entry reflect Ms. Crawford's view and evaluation of those additional records?

A. Yes.

Q. Did the entry detail the treatment she reviewed and evaluated?



MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

A.   Yes.

Q.   And what specific information was her -- was she reviewing or evaluating at this time?

MR. GUNN:  David, I'll go to form.  I -- you're asking what another person was reviewing as opposed to what the record reflects.

MR. ANGLEY:  Sure.  I can rephrase.

MR. GUNN:  Yeah.  Thanks.

MR. ANGLEY:  Yeah.

BY MR. ANGLEY:

Q.   Based on Ms. Crawford's entry, Ms. Gorman, what was your understanding of this -- the particular information that she was evaluating at that time?

A.   As related to the treatment?

Q.   Yes.

A.   That Mr. Wilkins had received injections, one on October 28th and one on December 2nd.

Q.   Based -- to your understanding at this time, was there a pending time limit of demand?

A.   There was a civil remedy notice.  I don't -- these records did not have a time limit specifically that I recall.

Q.   Okay.  So to your understanding is what triggered Ms. Crawford's evaluation, the receipt of the additional treatment records for Mr. Wilkins?

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A.   No.   The authority amount.

Q.   What do you mean by that?

A.   It was over her authority level.

Q.   Do you recall what her authority level was at this time?

A.   10,000.

Q.   So if Ms. Crawford sought authorization above $10,000, she would need a supervisor to become involved?

A.   Yes.

Q.   And do you see in her entry where she's -- she notes "RCVD," is that -- would that stand for received?

A.   It does.

Q.   Received additional documentation, re-treatment, and then notes Trinity Spine Center, 10-24-19 through 12-2-19.

A.   Yes.

Q.   So based on this, would your understanding be that Ms. Crawford's note here is based on a treatment record from Trinity Spine Center?

A.   Yes.

Q.   And would you have reviewed those records -- would you have personally reviewed those records?

A.   Yes.

Q.   I am going to mark this as Exhibit 2, Bates stamp PRG 3015 through 3021.

 MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

I'll share my screen with you, Ms. Gorman. It's a copy of a December 5th, 2019, fax from the Law Offices of Tragos, Sartes & Tragos to Progressive, and I'll open them down. Does this appear to be a copy of the records Ms. Crawford's evaluation or claim note was based upon?

(Exhibit 2 was marked for identification.)

A.   Yes.

BY MR. ANGLEY:

Q.   Were there any other records that Ms. Crawford's other than this document I marked as Exhibit 2, was Mr. Crawford's claim note based on receipt of any additional treatment records outside of this one?

MR. GUNN:  Object to form.  Foundation.

BY MR. ANGLEY:

Q.   You can answer, Ms. Gorman.

A.   No.

Q.   And at times, Ms. Gorman, there'll be what's called form objections, I didn't mention this earlier, that myself or Mr. Gunn will make.  And if those objections are made, you can just let us do those and then you can still proceed to answer the question.

A.   Okay.

Q.   And enclosed with these record -- enclosed with this correspondence was a Trinity Spine Center

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380876 Gorman Text 05-05-2025 Page 24

record with the date of service. What was the date of service of this particular record?

A. December 2nd, 2019.

Q. And who was indicated as the attending surgeon?

A. Victor Hayes.

Q. And let me know if you need me to zoom in or out, based on this record, had Mr. Wilkins undergone injections?

A. Yes.

Q. And what kind of injections did he undergo?

A. Medial branch blocks and an -- there was a note of a prior epidural steroid injection with a medial branch block.

Q. And when was that? And you're talking about where it says number 3 here in --

A. Yes.

Q. -- on your current plan section? Did Progressive receive a copy of that October 28th, 2019, date of service record?

A. No.

Q. Or let me rephrase. Was that October 28th, 2019, date of service record enclosed with this fax?

A. No.

Q. Was there any reference or note in this

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

enclosed medical record date of service, December 12th, 2019, related to surgery?

A.   No.

Q.   What was noted under "follow-up"?

A.   That a left cervical RFA was an option.

Q.   And what's an RFA?

A.   A radiofrequency ablation.

Q.   And did -- in this record, did it state that the radiofrequency ablation would be -- was scheduled?

A.   No.

Q.   At this time, based on this record, was it clear whether or not Mr. Wilkins would undergo the RFA procedure?

MR. GUNN:  Form.

THE WITNESS:  No.

BY MR. ANGLEY:

Q.   Was there any discussion in this date of service December 12th, 2019, of any plans for a ACDF procedure?

A.   No.

Q.   And when I say ACDF, do you understand what I mean by that?

A.   Yes.

Q.   And that would be a interior cervical discectomy fusion?



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

A.    Yes.

Q.    Yeah.  Forgive the stumbling over the words.
In this particular record dated December 12th, who's the
-- who's -- who signed off on this record?

A.    Kamaldeen Saldin.

Q.    Did Dr. Saldin offer any opinion that Mr.
Wilkins had suffered a permanent injury within a
reasonable degree of medical probability?

A.    No.

Q.    And there was also a billing record submitted
with the correspondence, correct?

A.    Yes.

Q.    I'll zoom in here.  Based on this billing
record, was there also a date of service or office visit
on November 11th, 2019?

A.    Yes.

Q.    Was that November 11th, 2019, office visit
record enclosed with this correspondence?

A.    No.

Q.    To your understanding, had payments or
adjustments been made as to Mr. Wilkins' scope of
treatment with Trinity Spine?

A.    Could you repeat the question?

Q.    Sure.  Based on the billing record had -- to
your understanding, did -- let me rephrase.



MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

Q.    At this point in time, to your understanding, did Mr. Wilkins have PIP benefits?

A.    Yes.

Q.    And had Mr. Wilkins PIP benefits been exhausted?

A.    No.

Q.    Did Mr. Wilkins also have MedPay or -- MedPay benefits through his Progressive policy?

A.    He did.

Q.    If PIP benefits were not exhausted, would that impact -- or how would that impact Progressive's evaluation of the claim?

A.    If they had not exhausted, if -- is that --

Q.    Yeah.  If they -- if there was PIP benefits remaining, how would that impact the evaluation, if at all?

A.    Just based on if there was an updated payout that would reflect a change to the out-of-pockets.

Q.    To your understanding, did Mr. Wilkins have a prior medical history?

A.    Yes.

Q.    And what was your understanding of his prior medical history?

A.    He was paralyzed.

Q.    And would that be something Progressive would

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

take into consideration when evaluating an injury claim such as Mr. Wilkins?

A.   Yes.

Q.   Take you back to the claim note on PRG 46, that Ms. Crawford made on December 16th, 2019.  Based on your involvement in the claim, did you have an understanding of whether any prior demands had been received?

A.   There -- yes.

Q.   What was your understanding of the posture of the claim when you became involved in December of 2019?

A.   What do you mean by "posture"?

Q.   What was the -- to your understanding, or did you have an understanding of what was the status of this particular claim when you were involved in December 2019?

A.   I understood there to be a time -- there had been a limit for -- a demand for policy limits.  There was an original evaluation and then additional treatment as Camille received, that updated that.

Q.   And then you became involved when Ms. Crawford did her reevaluation of the additional treatment records that were received from Mr. Wilkins?

A.   That's correct.

Q.   In connection with your discussion with Ms.



MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Crawford -- well, let me ask you.  There's an entry here on December 16, 2019, at 1:43 p.m.  Do you see it by Ms. Crawford?

A.    Yes.

Q.    And she indicates requested authorization for amount $13,144.  What is this entry indicating or what was the purpose of this entry?

A.    To gain authorization on the range of the evaluation.

Q.    And what was the evaluation range Ms. Crawford documented in the claim notes?

A.    8,144 to 13,144.

Q.    Would you have reviewed the prior demand that was received by Progressive for Mr. Wilkins that the -- that was received prior to Ms. Crawford's involvement?

MR. GUNN:  Form.

BY MR. ANGLEY:

Q.    Let me re-ask that.  In connection with your involvement in this claim, Ms. Gorman, would you have reviewed any other medical records for Mr. Wilkins or that pertain to Mr. Wilkins' treatment?

MR. GUNN:  Form as to "would you."  Foundation. You can answer.

BY MR. ANGLEY:

Q.    Let me re-ask it another way, Ms. Gorman.  In



**MILESTONE** | **REPORTING COMPANY**
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

connection with your discussion and involvement in this claim, would you have reviewed -- other than the December 5th record we looked at or the December 2nd, 2019 date of service, would you have reviewed any other medical records that reflected or described Mr. Wilkins' treatment?

MR. GUNN:  Form.  Foundation.

THE WITNESS:  Yes.

BY MR. ANGLEY:

Q.   What records would you have reviewed?

MR. GUNN:  Continuing.

THE WITNESS:  All records that were available.

BY MR. ANGLEY:

Q.   Okay.  Would you have reviewed the records that -- so you would've reviewed any records that Progressive had at the time as of December 16th, 2019?

A.   Yes.

Q.   We'll mark this as Exhibit 3, which is Bates stamped Tragos 6444 through 6528.  This is a copy of an October 21st, 2019, correspondence demand from Tragos, Sartes & Tragos to Progressive.

Is this a copy of the demand and records you would've reviewed, Ms. Gorman?

(Exhibit 3 was marked for identification.)

A.   Yes.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

BY MR. ANGLEY:

Q.   And would you have discussed these records with Ms. Crawford?

A.   Yes.

Q.   And in general, what was your understanding of the course or scope of treatment that Mr. Wilkins had undergone as reflected in the records enclosed with the October 2019 demand?

A.   The treatment was conservative with chiropractic and physical therapy in nature.

Q.   Was -- in connection with the July 26th, 2019, accident, was Mr. Wilkins taken to the emergency room?

A.   Yes.

Q.   Was he admitted or was he evaluated and released?

A.   I don't recall.

Q.   Can you see here on PRG -- or Tragos 6458 what was the time of the initial greet date time?

A.   Yes, I see that.

Q.   And what time was reflected in the record?

A.   1:39 p.m. on 7-26-19.

Q.   And was he discharged on July 26th, 2019, at approximately 3:26?

A.   Yes.

Q.   Okay.  Based on these records, would that

 MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

indicate that Mr. Wilkins was not admitted but was evaluated and then released?

A.   Yes.

Q.   And you mentioned chiropractic treatment. Would that be at Trinity Healthcare Center?

A.   Yes.

Q.   Let me take you -- and then in total, how many chiropractic treatment visits did Mr. Wilkins complete in -- based on the enclosed records with the October 2019 demand?

A.   There were seven.

Q.   Did Mr. Wilkins also present to Trinity Spine Center?

A.   Yes.

Q.   And what date was that?

A.   September 11th, 2019.

Q.   And get you the -- who did he present to?

A.   Victor Hayes.

Q.   And did Dr. Hayes in this September 11th, 2019, record provide any opinion that Mr. Wilkins had suffered a permanent injury within a reasonable degree of medical probability as it relates to the July 26th, 2019, accident?

MR. GUNN:  Object to form.

THE WITNESS:  No.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          Toll Free **855-MYDEPOS**

BY MR. ANGLEY:

Q.   Do you see where it says, "current plans"?

A.   Yes.

Q.   And what was your understanding of the -- of Mr. Wilkins' treatment plan?

A.   The Dosepak, continued therapy, potentially an injection if pain did not resolve, and that an ACDF wasn't optional if any of those therapies did not work.

Q.   Based on this treatment record, were injections or surgery scheduled?

A.   No.

Q.   Was injections -- were the injections a potential future procedure that may or may not occur?

A.   That's what's outlined.  Yes.

Q.   And was the ACDF the potential procedure that may or may not occur?

A.   That's what the doctor outlined.  Yes.

Q.   And based on the enclosed records, did Mr. Wilkins return to Trinity Spine Center on October 9th, 2019?

A.   Yes.

Q.   And who did he treat with on that date?

A.   Can you scroll up for me?

Q.   Sure.

A.   That's Dr. Saldin.


MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**      **www.MILESTONEREPORTING.com**      **Toll Free 855-MYDEPOS**

380876 Gorman Lexi  05-05-2025  Page 34

Q.   And what was -- what did Dr. Saldin list under "current plans"?

A.   Very similar to the prior visit, it outlines specific levels for the cervical epidural injections.

Q.   And did Dr. Saldin offer any opinion that Mr. Wilkins had suffered a permanent injury within a reasonable degree of medical probability caused by the July 26th, 2019, accident?

A.   No.

Q.   Back to Exhibit 1 in the claim notes, looking at Ms. Crawford's July 16th, 2019, entry at 1:26 p.m. Did Ms. Crawford's claim note detail the treatment she reviewed and evaluated?

A.   Yes.

Q.   And she indicates, "based off prior evaluation, CTL."  Would that be cervical thoracic lumbar?

A.   That's correct.

Q.   And "SS," what does that stand for?

A.   Sprain/strain.

Q.   And "cervical AGG," what would that stand for?

A.   Aggravation.

Q.   And "DDD"?

A.   Degenerative disc disease.

Q.   So what was Ms. Crawford indicating in this

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

580876 Gorman Lexi  05-05-2025  Page 35

particular section of her injury?

A.   She was indicating the injuries she was, like, considering in the evaluation.

Q.   So she would've considered a cervical sprain/strain with aggravation to degenerative disc disease?

A.   Yes, that's correct.

MR. GUNN:  Form.  Incomplete statement.

BY MR. ANGLEY:

Q.   Can you tell me what exact -- in that section of the notes, what was Ms. Crawford accepting as it pertained to Mr. Wilkins' treatment?

A.   The injections that were received.

Q.   Did she also accept a sprain/strain with aggravation to the cervical spine?

A.   Yes.

Q.   Did Ms. Crawford also take into consideration the fact that there was degenerative conditions within the cervical spine?

MR. GUNN:  Form.  Asking her to comment on the state of mind of another.  You may answer.

THE WITNESS:  Yes.

BY MR. ANGLEY:

Q.   What other injuries did Ms. Crawford accept as it pertained to Mr. Wilkins?



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     www.**MILESTONEREPORTING**.com     **Toll Free 855-MYDEPOS**

380876 Gorman Lexi  05-05-2025  Page 36

A.   Can you clarify the question?

Q.   Sure.  Well, let me take it one step at a time. For the -- Mr. Wilkins' neck, did she provide an apportionment of her valuation range?

A.   Yes.

Q.   And what was that apportionment?

A.   3,000 to 5,000.

Q.   And then did she provide an apportionment for five cervical injections?

A.   That's correct.

Q.   And what was that apportionment?

A.   8,000 to 10,000.

Q.   And did she provide an apportionment for the low back, the lumbar spine?

A.   That's correct.

Q.   And what was that apportionment?

A.   3,000 to 5,000.

Q.   What was your understanding as to the basis for those apportionment values that Ms. Crawford detailed in this claim note?

A.   When you say, "apportionment," can you clarify what you mean by that?

Q.   So the 3,000 to 5,000 for the cervical, the 8,000 to 10,000 for the cervical injections, and the 3,000 to 5,000 for the lumbar, do you have an



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     www.**MILESTONEREPORTING**.com     **Toll Free 855-MYDEPOS**

understanding of what the basis for those numbers were?

A.   Yes.  The value to resolve the claim.

Q.   And then did Ms. Crawford also perform an evaluation as to the known billing information?

A.   Yes.

Q.   And what did she detail as to that?

A.   She outlined there was additional specials for the injections, but they were not billed or processed by PIP.  She outlined what she was considering in out-of-pockets as the copay, the MedPay lien and the $1,000 PIP deductible.

Q.   So how would the fact that the bills had not been processed by PIP affect the evaluation of the claim?

A.   The bills that were submitted were -- had not -- had applied reductions.

Q.   So based on the bills that were submitted, would those then be potentially reduced through adjustments or collateral payments?

A.   Yes.

MR. GUNN:  Form.

BY MR. ANGLEY:

Q.   And what was the evaluation range Ms. Crawford established?

A.   $8,144 to $13,144.



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     **www.MILESTONEREPORTING.com**     **Toll Free 855-MYDEPOS**

Q.   Are you familiar with the tort threshold in Florida?

A.   Yes.

Q.   What is your understanding of the tort threshold?

A.   That there can be no claim for damages for pain or suffering unless the threshold has been breached.

Q.   And what would constitute a threshold breach, to your understanding?

A.   Death, disfigurement, loss of bodily function, and a permanent injury.

Q.   In connection with your -- in connection with your involvement in the claim, to your knowledge, had Mr. -- or to your understanding, had Mr. Wilkins breached a tort threshold?

MR. GUNN:  Form.

THE WITNESS:  No.

BY MR. ANGLEY:

Q.   So that would -- to your understanding, absent a threshold breach, would that mean Mr. Wilkins would not be entitled to non-economic damages, such as pain and suffering?

A.   That's correct.

Q.   Is there language in the policy -- I'll strike

 MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**      www.**MILESTONEREPORTING**.com      **Toll Free 855-MYDEPOS**

that.

And earlier you indicated Ms. Crawford's authority level was $10,000, correct, at this time?

A.   Yes.

Q.   And can you tell me when she requests authorization, how does that process work?

A.   She would request authorization in the claim notes, and it would generate what's called a diary.

Q.   And did you -- generate the diary, but did -- you also met in person with Ms. Crawford to discuss the claim?

A.   Yes.

Q.   And is that what this note -- at 1:44 p.m., is that what this note is referring to?

A.   Yes.

Q.   And did you authorize the requested authorization amount of $13,144?

A.   I authorized that.  Yes.

Q.   And did you agree with Ms. Crawford's evaluation?

A.   Yes.

Q.   And what was the basis for your agreement with her evaluation?  Can you kind of describe to me how that process unfolded or would've unfolded?

A.   It's based on my experience and training of

 MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     www.**MILESTONEREPORTING**.com     **Toll Free 855-MYDEPOS**

380876 Gorman Lexi  05-05-2025  Page 40

doing the job and supervising claims for that amount of time.

Q. And you note in here, "Multiple injections, eggshell claimant are driving value." What did you mean by that statement?

A. There was injections received and the claimant was eggshell, meaning predisposed to -- or more susceptible to injuries based on preexisting conditions.

Q. And did Progressive take that into consideration in its evaluation of Mr. Wilkins' claim?

A. Yes.

Q. Did you -- what were the reserves at this point in time, or did you increase the reserves?

A. I increased the reserves when I authorized the --

Q. To what amount?

A. To 15,000.

Q. And what are your understanding -- what is your understanding of what reserves are?

A. It's an accounting feature to hold funds for the reasonable worst case of an evaluation.

Q. Does the fact that the reserves were increased to 15,000 mean that based on the information Progressive had, the claim was valued or evaluated at $15,000?

A. No.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**   www.**MILESTONEREPORTING**.com   **Toll Free 855-MYDEPOS**

Q.   The other -- the next entry on December 16th, 2019, at 1:46 p.m., do you see this entry here?

A.   Yes.

Q.   Did this entry relate to Mr. Wilkins or Ms. Wilkins?

A.   It's relating to Ms. Wilkins.

Q.   Following your two entries on December 16th, 2019, did you have any further involvement in the claim?

A.   I did not.

Q.   Following your December 16th, 2019, entries, do you have any personal knowledge of what occurred on this claim?

A.   I do not.

Q.   Following this -- these December 16th, 2019, entries, did you have any further involvement in any evaluation of Mr. Wilkins' claim?

A.   No.

Q.   Ms. Gorman, based on your involvement in Mr. Wilkins' claim, were you at all times attempting to come to a fair and reasonable evaluation of the claim?

A.   Yes.

Q.   Did you give fair consideration to the information you were provided with?

A.   Yes.

Q.   Do you believe that you acted in good faith in

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

the handling of Mr. Wilkins' claim?

A.   Yes.

MR. ANGLEY:  Counsel, if we can take a five-minute break to look over my notes?

MR. GUNN:  That's fine, David.

THE VIDEOGRAPHER:  All right.  We are off the record.

(A recess was taken.)

THE VIDEOGRAPHER:  We are back on the record for the deposition of Lexi Gorman being conducted by video conference.  My name is Rachel Krupka.  Today is May 5th, 2025, and the time is 1:59 Eastern.  You may continue.

BY MR. ANGLEY:

Q.   Ms. Gorman, we're back from a brief break.  To your understanding, did Ms. Crawford's evaluation range fairly and fully compensate Mr. Wilkins for his current, past medical damages, his economic damages?

A.   Yes.

MR. ANGLEY:  No further questions at this time.  I'll turn it over to Attorney Gunn if he has any questions.

MR. GUNN:  All right.  Thank you.

CROSS-EXAMINATION

BY MR. GUNN:



MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

Q.   Ma'am, tell me the -- and let me lay a predicate here.  I'm going to be talking about Progressive's conduct during the time that the claim was open.  So when Mr. Wilkins' claim was open, not maybe before 2019, not after your time on -- your brief time on the file ends in December of '19 as I recall your answers, okay?  So in that time frame, tell me your understanding of how Progressive adjusted uninsured motorist claims differently from how it adjusted bodily injury liability claims in the injury department.

A.   What do you mean by "differently"?

Q.   I mean different.  Not the same.  How did Progressive act differently in the claim adjustment process when handling an underinsured motorist claim versus a bodily injury liability claim?

MR. ANGLEY:  Object to the form.

THE WITNESS:  The difference in an uninsured motorist claim would be taking any potential tort liability available as an offset on the evaluation.

BY MR. GUNN:

Q.   Okay.  Anything else?

A.   No.

Q.   Does Progressive's UM policy, as you understood it, have certain UM conditions to payment?

A.   Can you -- what -- what do you mean by that?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

Q.   Do you know what a post-loss condition is, ma'am?

A.   A post-loss condition?

Q.   Yes, ma'am.

A.   There -- there's conditions of the policy, the insuring agreement that has to be met.  The only condition I can think of for uninsured motorists is that there has to be, per the policy, a report of a loss within a certain time frame from the accident and a police report filed.

Q.   Okay.  So the claimant has to tell the insurance company I am your insured, and I was in a crash, and I would like to receive all benefits, if any, due under my policy?  Step one?

A.   Sure.  Yes.

Q.   And then the inquiry becomes, well, is there any crash report or other record of the event that I can begin my investigation?  Step two?

MR. ANGLEY:  Form.

THE WITNESS:  Investigate the claim based on all merits that are available.

BY MR. GUNN:

Q.   And the condition you said was there has to be an accident report.  Did I misunderstand that answer?

A.   That is outlined in the policy specifically

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     **www.MILESTONEREPORTING.com**     **Toll Free 855-MYDEPOS**

for hit-and-run accidents.

Q. So if you're claiming a phantom vehicle, the policy would require that there be a crash report, but that's only if there's a "phantom vehicle hit-and-run." We don't know that there was even another car involved. That's what you understood the --

A. That's correct.

Q. -- condition to be? That's correct?

A. That's correct.

Q. You know, Mr. Angley mentioned this, that it's hard on Zoom, ma'am, that we can only talk one at a time. And with technology, sometimes there's a lag. So maybe if you could just pause, take a breath. If there needs to be an objection, that can come in, and then the video will capture separately your answers. I'm terrible at it too, so I understand that sometimes we'll talk over each other despite best effort. Fair enough?

A. Sounds good.

Q. All right. So what other, if any, conditions did Mr. Wilkins have to meet in order to maintain his UM claim? He obviously gave notice of the loss. There's an accident report. It's not a hit-and-run. You knew who the other driver was. You knew there was tenant coverage. What else did Mr. Wilkins need to do in order to comply with the policy for coverage of uninsured

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     www.**MILESTONEREPORTING**.com     **Toll Free 855-MYDEPOS**

motorists?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Provide support for the claim.

BY MR. GUNN:

Q.   What do you mean by that?

A.   I'm not -- I'm not sure -- I don't understand the question.

Q.   Okay.  Let's give you some examples.  Is it Mr. Wilkins and his lawyer's job to go out and investigate the facts and provide to Progressive support to get paid the UM benefit as you understood the UM claim process at Progressive?

A.   Not to investigate the loss.  Progressive would be investigating the loss, determining what coverages are available, if liability is in order, if coverage applies, and if there was any other applicable coverage.

Q.   Okay.  So in this case, Progressive would confirm coverage and then try to come up with a fault analysis, fair?

A.   What was the -- I didn't hear the last thing you said.

Q.   Sure.  Who's to blame for the crash, that's something you're telling me Progressive would seek to determine, right?

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A.   That's correct.

Q.   Sometimes call it liability, right?

A.   Yes.

Q.   And sometimes for -- to who's at fault, right?

A.   Yes.

Q.   Okay.  And then what was the practice of Progressive to go out and figure out what the liability or fault picture looks like in a UM claim?

A.   Investigate the case just like we would any other.  Any statements to take, review a police report, talk to witnesses if they should exist.

Q.   And you were asked about did the adjustment process up to the point you got involved appear fair and honest and in good faith according to your assessment of Progressive, right?  You were asked that by Mr. Angley?

A.   Yes.

MR. ANGLEY:  Object to the form.

BY MR. GUNN:

Q.   Okay.  And so as part of that answer, did you consider how timely Progressive determined the fault to be?

A.   I would -- I don't have knowledge of the time it took to investigate liability prior to my involvement.

Q.   Any doubt that by the time you got involved,



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

liability had been accepted at 100 percent on the underinsured motorist?

A.   No.   That was -- that was clear.

Q.   Okay.  So this is a clear liability.  We just got to figure out what is the legal liability of the at-fault underinsured motorist, right?

MR. ANGLEY:  Object to --

THE WITNESS:  Yes.

BY MR. GUNN:

Q.   Because UM stands in that person's shoes for purposes of determining the legal liability that is the basis for the underinsured motorist claim to be paid, correct?

A.   Yes.

Q.   UM is something that the customer buys or they get the benefit by occupancy of an insured auto of having -- so that if somebody causes an injury in a crash at fault and they don't have enough coverage -- enough bodily injury liability, UM will step in and pay, right?

MR. ANGLEY:  Form.

THE WITNESS:  Yes.

BY MR. GUNN:

Q.   In fact, you would agree that UM is one of the most important coverages that Progressive sells in its

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

auto package, right?

MR. ANGLEY:  Object to the form of the question.

THE WITNESS:  Should I answer that?

MR. ANGLEY:  Yeah, you can answer.

THE WITNESS:  I don't think I can define -- I think importance is relevant.  I would say it's important to have bodily injury coverage as well.

BY MR. GUNN:

Q.   Okay.  So do you know whether under Florida law there has to be a selection rejection form in order to modify stacked UM coverage?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Yes.

BY MR. GUNN:

Q.   Do you know that that is because the UM coverage has been judicially and legislatively recognized as very important for purposes of Florida's public policy?  Do you know?

A.   Yes.

Q.   And it's because in Florida we have so many uninsured/underinsured motorists that what a family can do to protect itself from loss in a car crash is by UM coverage, right?

A.   Yes.

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q.   And then once the UM loss is evaluated, you simultaneously evaluate both the who's at fault with the how much injury was sustained by my customer, right?

A.   Yes.

Q.   Okay.  So tell me the -- how much damage was done, how much injury was caused to my customer, how does that process occur at Progressive at this time?

MR. ANGLEY:  Object to the form.

THE WITNESS:  It's determined based on the medical treatment, injuries, and out-of-pocket special is determined.

BY MR. GUNN:

Q.   Okay.  How does Progressive learn the facts of those elements?

A.   Which elements?

Q.   The ones you just -- the medical specials and the injury, how does it find out what those are?

A.   In reviewing medical records.

Q.   How did the records come to its attention at Progressive?

A.   Received through either the medical claim or in this case provided by the counsel for the injured party.

Q.   So UM, as I understand, Progressive is kept in the same file as the personal injury protection MedPay

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

file, right?

MR. ANGLEY:  Form.

THE WITNESS:  That's correct.

BY MR. GUNN:

Q.   So if you want to look at some of the care and treatment, you can look at the personal injury protection claim file which includes things like diagnostic codes and charges, fair?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Yes.

BY MR. GUNN:

Q.   Now, in this case, when you reviewed it and you commented upon how fair and in good faith the claim adjustment was, did you see a single request by Progressive for medical authorization to be provided by Mr. Wilkins?

A.   From the UM side, no.

Q.   Did the UM adjuster, as of the time of your file review, send out any medical authorizations to get records from any providers?

A.   I don't recall.

Q.   If that happened, it'd be notated in the file, right?

MR. ANGLEY:  Object to the form.

THE WITNESS:  It would be either notated in the

 MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

file or evident in the file.

BY MR. GUNN:

Q.   As you sit here today, having reviewed the file in preparation, you don't remember seeing any medical authorizations that were sent by Progressive to get medical records directly from a provider, fair?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Not by the UM adjuster.

BY MR. GUNN:

Q.   Okay.  What about the PIP adjuster?  The PIP adjuster sent out some requests for records?

A.   It's included in the no-fault application.

Q.   "It" being what?

A.   An assignment of benefits and medical authorization.

Q.   Okay.  And is the UM adjuster authorized to use that PIP medical record authorization release in order to investigate UM damages?

MR. ANGLEY:  Object to the form.

THE WITNESS:  For a first party claim, yes, if it's completed.

BY MR. GUNN:

Q.   Okay.  Was it completed in this file?

MR. ANGLEY:  Form.

THE WITNESS:  Not that I recall seeing.

 MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

BY MR. GUNN:

Q.   Okay.  So did the UM adjuster ever ask for a completion of a medical authorization by Mr. Wilkins?

MR. ANGLEY:  Form.  Asked and answered.

BY MR. GUNN:

Q.   And just so we're clear, Ms. Gorman, I'm now including through the PIP file side, okay?  Did anybody, to your knowledge, at response for UM perhaps go to the personal injury protection adjuster, say, hey, I don't see a med auth sign for Mr. Wilkins.  Can you ask our insured to complete the PIP authorization and assignment form, by way of example?

With that in mind and that clarification due to the object to form, I'll ask this question: Directly by the UM adjuster's conduct or indirectly through request of PIP, for example, did you see any effort to obtain a Wilkins medical authorization and release?

A.   I don't recall.

Q.   Okay.  Is that something that the UM adjuster could do as you understood the authority under the policy to ask for things?

A.   Yes.

Q.   Did you see anything up and through the time of your file review that indicated there was a medical basis to dispute that the MRI findings in the cervical



MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380876 Gorman Text   05-05-2025   Page 54

were unrelated to the crash at issue?

MR. ANGLEY: Form.

THE WITNESS: Can you repeat the question?

BY MR. GUNN:

Q. Sure. You were aware that there were cervical changes notated on the imaging study done after the crash, right?

A. When you say, "changes," what -- can you clarify what you mean by that?

Q. What significant findings were there notated as revealed by the MRI done after the crash on Mr. Wilkins?

MR. ANGLEY: Object to the form.

THE WITNESS: There were cervical findings. Yes.

BY MR. GUNN:

Q. What were they?

A. There was -- I mean, can you pull up the MRI? There was notation of herniations, osteophytes. There was multi-level changes.

Q. Okay. There were multi-level disc herniations and bulges throughout the cervical spine. And there were also changes in the left shoulder, correct?

A. Changes in the left shoulder? When you say, "changes," are you comparing it to something prior?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

Q. Yeah. Being an uninjured human being?

MR. ANGLEY: Object to the form to the extent that was a question.

BY MR. GUNN:

Q. I'm clarifying my question, ma'am. Let me just go to the -- you were shown the demand package. Let's see if you have any reason to dispute or disagree based on medical records saying otherwise. This is the October 21st, 2019.

MR. GUNN: And, David, I think you marked this as number 3; is that right?

MR. ANGLEY: Correct.

MR. GUNN: Thank you.

BY MR. GUNN:

Q. So referring you back to Exhibit 3 that you looked at when your lawyer asked you questions. I want to ask you some follow-up on that. The CT of the cervical spine indicated diagnoses of C4 and C5 positive dermatomes. Let me get to you exactly what it was.

MR. GUNN: I'm sorry. I'm trying to read, David, from the demand package here.

MR. ANGLEY: Sure. Can you pull it up on the share screen function?

MR. GUNN: Yeah. I'm going to do that right now.



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    www.**MILESTONEREPORTING**.com    Toll Free 855-MYDEPOS

MR. ANGLEY:  Thank you.

BY MR. GUNN:

Q.  So we're looking through.  And this is basically what the -- this demand package that I'm showing, Exhibit 3 does, is it kind of summarizes the attached medical records.  Is that a fair description?

A.  Summarized by who wrote the demand.

Q.  I'm sorry.  My question, Ms. Gorman, not to confuse you.  Do you agree that the demand letter from Mr. Sartes of October 21st, 1999, provides his effort at an accurate summary of what the medical records then available demonstrate?

MR. ANGLEY:  Form.

BY MR. GUNN:

Q.  I'm going to stop sharing because it's just a simple question, okay?

A.  (No verbal response.)

Q.  Do you agree that this demand letter that you were shown by your lawyer on direct contains a summary of the medical history of Mr. Wilkins after the crash that is reasonably represented by the plaintiff's lawyer, the claimant's lawyer, to give you an overview of the care to date?  Do you agree with that statement?

MR. ANGLEY:  Object to the form of the question.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

THE WITNESS: I agree that the intent is to summarize the findings. Yes.

BY MR. GUNN:

Q. All right. And you reserve the right --

A. I cannot --

Q. Go ahead. Finish your answer.

A. -- I cannot speak to the accuracy of what's in the letter compared to what's in the medical records.

Q. Yeah. And that's what I was going to -- going to -- going to add is that, certainly the records themselves being attached would allow you to take a look and say, well, you know, he says X, but no, no, no, the records say Y, for example, right?

A. That's correct.

Q. Okay. So I mean, it -- you agree it'd be totally appropriate for the claimant to simply say, dear Progressive, here are some medical records to date. Please let me know if you will now pay my claim. That's totally acceptable, right?

MR. ANGLEY: Form.

THE WITNESS: To provide records and make a demand? Is that the question you're asking?

BY MR. GUNN:

Q. No. It would be totally acceptable under policy terms and conditions for any UM claimant to

 MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

simply say, here's a bunch of my medical records. Please pay my claim fairly and honestly and promptly.

That'd be totally appropriate conduct by a claimant, right?

MR. ANGLEY:  Form.

THE WITNESS:  Yes.

BY MR. GUNN:

Q.    Thank you.  In this case, it actually is appearing that your customer got a lawyer and that lawyer is trying to assist in Progressive's evaluation of the claim by providing a summary of relevant facts and supportive documentation in order to assist Progressive in its prompt, fair evaluation and payment of UM claim.  Do you agree with that?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Can you rephrase the question?

BY MR. GUNN:

Q.    Do you agree that Mr. Sartes here, on behalf of the UM claimant, is providing you with an overview in the hopes that it will assist you to render prompt, fair claim payment?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Yes.

BY MR. GUNN:

Q.    Now, Progressive doesn't need a demand from



MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**      **www.MILESTONEREPORTING.com**      **Toll Free 855-MYDEPOS**

Mr. Wilkins to decide to pay a UM claim, does it?

A.   No.

Q.   There's no requirement under your policy that Mr. Wilkins demand $50,000, right?

A.   No.

Q.   You agree the job of Progressive is to investigate the claim and make prompt, fair claim payment as it, in good faith, determines are due, right?

MR. ANGLEY:  Object to the form to the extent it calls for a legal conclusion.

BY MR. GUNN:

Q.   Ma'am, you're not a lawyer, are you?

A.   No.

Q.   Do you understand every question I ask you about conduct of Progressive is from your understanding of background, training, and experience as a Progressive Florida-licensed adjuster?  Do you understand that?

A.   Yes.

Q.   Great.  With that in mind, do you agree that Progressive can just determine that, based on the information that we've gathered, we owe the money and we're writing a check?

A.   In general, yes.

Q.   Okay.  And so the run is simply, have we engaged in efforts to reasonably, promptly, and fairly



**MILESTONE | REPORTING COMPANY**
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          **Toll Free 855-MYDEPOS**

580876 Gorman Text  05-05-2025  Page 60

investigate the facts, evaluate the claim, and make payment that we at Progressive fairly determine is due; agree with that?

A.   Yes.

Q.   All right.  And in this case, what I understand Progressive's position to be, but you correct me, is that the UM claimant is saying, I believe I'm due my full $50,000 policy limit.  But Progressive, in its investigation and evaluation, has decided not to pay any amount as of December of 2019, right?

MR. ANGLEY:  Form.

THE WITNESS:  There was an offer to settle the uninsured motorist claim.  That offer was not policy limits.

BY MR. GUNN:

Q.   And that offer was full and final settlement, right?

MR. ANGLEY:  Object to the form.

THE WITNESS:  The offer was based on a full and final settlement based on the information at that time. Yes.

BY MR. GUNN:

Q.   And full and final means, if you take the 8,000 and change, the 41,000 and change is gone, you can't have any of it, right?

**MILESTONE | REPORTING COMPANY**
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     **www.MILESTONEREPORTING.com**     **Toll Free 855-MYDEPOS**

A.    That's correct.

Q.    Okay.  So my question stands.  As of December 2019, Progressive had not paid any amount of uninsured motorist benefit unless it got a release of the rest of the policy limit, right?

MR. ANGLEY:  Form.

THE WITNESS:  That's correct.

BY MR. GUNN:

Q.    Now, if Progressive said, hey, look, you've got just this much in past medical over and above.  And we know you're going to have some future, so we're going to pay at $25,000 today.  But we're going to leave your UM claim open.  And if, you know, you want to send us some additional information or you continue to get injections and your medical bills go up, please resubmit, and we'll keep your UM claim open and maybe we will pay you up to the 50.

Could Progressive have handled the claim that way?

MR. ANGLEY:  Object to the form of the question.

THE WITNESS:  So should I answer that, yes?

MR. ANGLEY:  Yes, you can answer to the extent you can.

THE WITNESS:  At that time it -- it -- that --

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

it -- it could have happened.  That is not standard for evaluating claims.

BY MR. GUNN:

Q.   So standard at Progressive is, you take our current offer in exchange for full and final release or Progressive is not going to pay any money under the UM coverage, correct?

MR. ANGLEY:  Object to the form.

THE WITNESS:  The standard is to evaluate the case based on the information available and determine a reasonable settlement value of that claim.

BY MR. GUNN:

Q.   Let's go back to this demand letter in October of 2019.  And there is a section here, "findings," at Page 3 of that document.  Do you see that?

A.   Yes.

Q.   Okay.  Now, you're not a radiologist/neuroradiologist, right?

A.   I'm not.

Q.   Sorry?

A.   I am not.

Q.   Okay.  You don't sit down and look at images and come up with some basis to disagree with the interpretation of the reader, whether it's a



MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          **Toll Free 855-MYDEPOS**

neuroradiologist or radiologist, fair?

MR. ANGLEY:  Object to the form.

THE WITNESS:  That's correct.

BY MR. GUNN:

Q.   And Progressive, if it wants to question, get a second opinion, a second read, there are tools at Progressive to have somebody look at the films for you, right?

A.   Yes.

Q.   And that wasn't done here, right?

A.   Not prior to my involvement.

Q.   In fact, the -- if we looked at that list of bullet points, what -- that Mr. Angley told you, and he said, so what is this accept AGG CDDD.  Remember that?

It was aggravation of cervical degenerative disc disease.  Do you remember that?  It was accepted.

A.   Yes.

Q.   Okay.  So the adjuster who's reporting to you and whose evaluation you're looking over and you're meeting with, and then you're authorizing up to 13 and change and a $15,000 reserve has accepted that Mr. Wilkins, based on the medical information, has cervical disc herniations to be evaluated, right?

A.   Based off herniations to be accepted -- they accepted an aggravation to the cervical region.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

Q.   Okay.  And to be clear, there was -- that -- what did you have by prior care and treatment of the cervical neck on Mr. Wilkins?  What medical record indicated, hey, this man had ongoing care and treatment for his neck before this crash, as of the time you were involved?

A.   We did not have specific records to that effect.

Q.   Okay.  So you had no good-faith basis, did you, to dispute that the care and treatment for the neck was caused or substantially caused, meaning legally caused, by the crash, fair?

MR. ANGLEY:  Object to the form.

THE WITNESS:  We did not have anything specifically stating there was prior cervical reported, is I believe what the claimant stated.

BY MR. GUNN:

Q.   And do you have -- did you have any medical evaluation that indicated that these discs were not the result of the crash?

MR. ANGLEY:  Object to the form.

THE WITNESS:  No.

BY MR. GUNN:

Q.   Do you agree that -- and I think you said you had significant experience with soft tissue claimant

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

injury.  Did I recall that right?

A.   Yes.

Q.   Okay.  I think you were assigned and you said it was pre-lit, but mostly soft tissue casualty; is that -- am I correcting your role -- or correctly stating your role?

A.   Yes.  In December of 2019, yes.

Q.   Okay.  So you would know from that experience that, if asked, it's very likely the doctor is going to say, yes, this is a permanent injury to this gentleman's neck to a reasonable degree of medical probability, if asked, true?

MR. ANGLEY:  Object to the form.

THE WITNESS:  The doctor did not state that in the medical records.

BY MR. GUNN:

Q.   Did Progressive ask?

A.   Ask the doctor?

Q.   Yeah.

A.   No.

Q.   Did Progressive send the records out, have a medical doctor review the records, and ask the medical doctor, do you think this is going to be a permanent injury threshold case?

A.   Not at the time of my involvement.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     **www.MILESTONEREPORTING.com**     **Toll Free 855-MYDEPOS**

Q.    Right.  And Progressive --

A.    Up to or at the time.

Q.    -- Progressive can do that, right?

MR. ANGLEY:  Form.

THE WITNESS:  Yes.

BY MR. GUNN:

Q.    Progressive can request that Mr. Wilkins appear for a compulsory medical evaluation, right?

A.    Yes.

Q.    If you at Progressive wondered, in good faith, hey, there's all these disc injuries listed here on these reports, but maybe they're not related to the crash, you had every right under your policy to tell Mr. Wilkins, we want you to be evaluated by a doctor of our choice so that we can better understand the extent of injury you sustained in the subject crash, right?

A.    That was -- that could have been an option.

Q.    Okay.  And it was Progressive's choice not to go and ask for that evaluation to be performed right?

A.    At that time, yes.

Q.    All right.  And you were asked about the anterior cervical discectomy and fusion that was not recommended for Mr. Wilkins.  Do you recall that?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Recall being asked, yes.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

BY MR. GUNN:

Q.   Mr. Angley took you through and he said, what's this?  And I'm sorry to misstate the word. Didn't mean to.  But that was not a recommendation that he have the surgery, correct?

MR. ANGLEY:  Form objection.

BY MR. GUNN:

Q.   Remember that testimony, ma'am?

A.   Yes.

Q.   And do you remember why the doctor felt that this patient was not a good candidate for that kind of neck surgery?

A.   Yes.

Q.   Why?

A.   Based on prior injuries.

Q.   It was too high risk for him as a paraplegic, right?

A.   I don't know that that's exactly what was outlined, but I do remember them saying there was risks, as there are in any surgery.

Q.   Not -- ACDFs get done all the time to people who aren't in a wheelchair.  But, ma'am, respectfully, do you recall that the reason -- and you just said it, because of his prior injuries.  That the reason the doctor thought it ill-advised to have a cervical fusion

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900   www.MILESTONEREPORTING.com   Toll Free 855-MYDEPOS

380876 Gorman Text  05-05-2025  Page 68

for Mr. Wilkins was because he's already paralyzed from the waist down?

Does that refresh your recollection that that's why there was no surgical rec?

MR. ANGLEY:  Object to the form.

BY MR. GUNN:

Q.   You can answer.

A.   Can you show me the -- the record that you're referring to?  I don't want to misspeak to what I read.

Q.   I'll leave it this way: As you sit here now, having given the testimony to Mr. Angley, can you remember why Mr. Wilkins was not a good candidate for ACDF, yes or no, and you may explain?

MR. ANGLEY:  Object to the form of the question.

THE WITNESS:  There was risk.

BY MR. GUNN:

Q.   All right.

A.   There was --

Q.   Go ahead.

A.   -- there was also outline to that hopefully that would not be -- that level of treatment would not be needed based on what had currently been done and alternative treatments that could be explored.

Q.   So how big is the needle that is used for

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

these alternative treatments of injection therapy?

A.   I don't know specifically.

Q.   You ever seen one?

A.   I have.

Q.   As part of your analysis, do you consider whether somebody undergoing epidural steroid injections into their neck is likely to be experiencing significant pain?

A.   Sure.

Q.   And typically, in your experience, isn't ESI therapy temporary?

MR. ANGLEY:  Object to the form.

THE WITNESS:  I can't speak.  It is totally case-by-case, patient-by-patient.

BY MR. GUNN:

Q.   Okay.  Did you ever ask, write a letter -- as a company write a letter to any treating doctor and say, we're trying to fully, fairly, and proactively evaluate a claim to uninsured motorist benefits.  Doctor, can you outline, to a reasonable degree of medical probability, what you reasonably anticipate the future care needs of your patient, Mr. Wilkins, to be?

A.   No.

Q.   Do you agree that, even if you didn't have an overtly stated opinion of permanent injury in Mr.



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          **Toll Free 855-MYDEPOS**

Wilkins, and in particular all these reported herniations and other disc changes, that he was going to need future care and treatment, based on your experience as an adjuster?

MR. ANGLEY:  Object to the form.

THE WITNESS:  I can't say that with certainty.

BY MR. GUNN:

Q.   Is the standard for you, in order to evaluate a claim, that the claimant must demonstrate future care and treatment to a certainty?

A.   I can't say for certain.  It's case-by-case.

Q.   Well, you don't just treat Mr. Wilkins differently than the other cases in Progressive's claim department, do you?

MR. ANGLEY:  Objection to the form.

THE WITNESS:  No.  All evaluations are done based on the merits of each claim.

BY MR. GUNN:

Q.   Right.  And then Mr. Wilkins' merits of his claim, did you have any reason to believe, when you sat down and evaluated it with your claim representative, that this man wasn't going to have ongoing pain and ongoing future care and treatment as of December of 2019?

MR. ANGLEY:  Object to the form of the

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     www.**MILESTONEREPORTING**.com     **Toll Free 855-MYDEPOS**

question.

THE WITNESS:  I can't say that with certainty.

BY MR. GUNN:

Q.    Well, where in the evaluation is there the future care and treatment element and a quantification for that?

A.    That was not quantified in the evaluation.  It was not considered.

Q.    Why not?  Why not?

A.    There was no permanent injury that was being opined by a medical doctor.

Q.    You don't need a permanent injury for future medical to be recoverable, do you?

MR. ANGLEY:  Form.

THE WITNESS:  According to the threshold statute, there's -- you're entitled to past meds unless you've breached that threshold.

BY MR. GUNN:

Q.    And it's that application of Florida Law that you applied in the adjustment of this loss, correct?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Along with other, yes, training and experience.

BY MR. GUNN:

Q.    Okay.  And Progressive trained you to adjust



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    **www.MILESTONEREPORTING.com**    **Toll Free 855-MYDEPOS**

UM future medical just the way you told me, right?

A.   Yes.

Q.   And you certainly aren't exercising your judgment as a claim professional on Mr. Wilkins inconsistent with how Progressive trained you to use your judgment, fair?

A.   Sure.

Q.   This may be unfair, so if you can't give me this thought, I understand.  But if you had been asked to evaluate past and future pain and suffering for Mr. Wilkins back in December of 2019, can we agree that your assessment would've been that the $50,000 policy limit should be paid?

MR. ANGLEY:  Object to the form of the question.

THE WITNESS:  I would not have agreed to that at that point.

BY MR. GUNN:

Q.   No matter what the evidence of permanent injury was, why would you have not determined this gentleman deserved a full policy UM limit if you included the pain and suffering?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Can you rephrase?

BY MR. GUNN:

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q.   Yeah.  My question was, it -- Mr. Wilkins -- let's say, instead of just all these physical findings in the cervical spine and the recommendations for ESI care and treatment that was ongoing, let's say the doctor put in a report the cervical spine MRI reveals permanent injuries to a reasonable degree of medical probability.

How would that have changed your evaluation of the amount of UM benefit then due in December of 2019?

MR. ANGLEY:  Form.

THE WITNESS:  I can't speak to what I would have done with -- at different times.  I made -- I made a decision based on the information that we had.

BY MR. GUNN:

Q.   Okay.  The -- is there some, like, guideline, formula, evaluative sheet that Progressive has given to you to use in order to determine past and future pain and suffering in any case?

A.   No.

Q.   Is there a computer-aided modeling that's used at Progressive at this time to help you evaluate claims?

MR. ANGLEY:  Object to the form.

THE WITNESS:  No.

BY MR. GUNN:

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q.   Well, where do you get the reasonably objective value of past and future pain and suffering when you need to assess it to evaluate a UM claim value?

A.   Training, experience over the years.

Q.   Well, how many cases have you ever sat through and tried?  And I don't mean as a lawyer.  I'm talking about sat in a courtroom and watched the jury determine the amount of fair compensation to somebody who was in a car crash and had multiple herniated discs and cervical ESI and $20, 30,000 worth of overall care and treatment. How many of those have you observed?

A.   None.

Q.   And how many times have you run a jury verdict search to try to evaluate what the probable outcome is for a person similarly situated to Mr. Wilkins?

A.   None.

Q.   Well, tell me then exactly what your "background, training, experience" is in evaluating the pain and suffering rewards that are reasonably foreseeable under facts similar to Mr. Wilkins' loss?

A.   A specific training -- on-the-job training, course material, job shadows over the -- being in the industry for as long as I've been handling those claims.

Q.   And as of 2019, you'd been in the industry handling those types of claims -- those types, not



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          **Toll Free 855-MYDEPOS**

property damage, not your earlier years.  How long had you been on the job handling this kind of claim?

A.   Close to five years.

Q.   And in that five years of experience, how many other insurance companies had you shadowed, observed, watched in order to get a sense of what fair claim payment would be for a given injury?

A.   Not other insurance companies per se.

Q.   Well, other than Progressive -- watching how Progressive did it in similar claims, tell me all your experience outside of what Progressive showed you to do.

A.   What -- what do you mean by that?

Q.   Well, you said that my experience at -- well, you didn't say at Progressive.  You said, by shadowing, by handling all the claims I've handled, I built a basis that I felt comfortable in providing an evaluation of pain and suffering for given claims.  Did I recall that correctly?

A.   Well, I didn't -- there was not consideration for pain and suffering on this claim.

Q.   Is that an answer to my question of where did you get your training and experience when you were to evaluate pain and suffering?

A.   It was on-the-job training and course material through Progressive.



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q.   Okay.  All Progressive stuff, right?

A.   Yes.

Q.   Okay.  I want to follow up a little bit. Mr. Angley was asking about the lack of inclusion of pending medical bills at the time that you sat down and assisted in the evaluation of Mr. Wilkins' UM claim.  Do you recall that?

A.   Yes.

Q.   Okay.  And you gave a reason.  I want to go through the reason they were not.  One reason was, there might be write-downs.  Can you explain the write-down process at the PIP department that you were referring to?

MR. ANGLEY:  Form.

THE WITNESS:  I'm not a licensed coder, so I can't speak to coding practices as they relate to -- to that specifically.  But there are reductions to medical bills based on fee schedule and the applicable PIP statute.

BY MR. GUNN:

Q.   Can we agree that those coding write-downs rarely result in a zero pay?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Meaning reduced to zero?

BY MR. GUNN:

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**      **www.MILESTONEREPORTING.com**      **Toll Free 855-MYDEPOS**

Q.   Right.

A.   Yes, that's correct.

Q.   Is there any kind of a rule of thumb that you and UM will follow with pending bills?  Like, usually the bills are paid at 30 percent, 50 percent, 90 percent.

A.   It depends on what the type of treatment is.

Q.   Got it.  Let me just follow up briefly and make sure I -- we walked through.  I've covered some of this, so I'll try not to be repetitive with you, but I want to show you demonstrating that.

MR. GUNN:  I'm sorry.  I don't remember what we marked this.  Is this just part of Exhibit 1, which is the injury evaluation that Ms. Crawford did beginning at Page 46 of the claim notes?

MR. ANGLEY:  That would be Exhibit 1.

MR. GUNN:  Thank you, sir.

BY MR. GUNN:

Q.   All right.  Showing Exhibit 1 at Page 46, okay? So when we walk through this injury evaluation, we start with the premise that the accident is 100 percent the fault of the underinsured motorist, true?

A.   Yes.

Q.   There's ten in PIP and med pay set off, right? How much is the med pay, by the way, of this setup?  Was



MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          **Toll Free 855-MYDEPOS**

it two or five; do you remember?

A.   500.

Q.   500 what, dollars?

A.   Yes.

Q.   Okay.  That was the total med pay coverage?

A.   Yes.

Q.   Okay.  So you technically had, what, $20,500 underneath the UM?

A.   Under the UM?  What --

Q.   Okay.

A.   Or do you mean --

Q.   The underinsured motors coverage of Progressive is excess over and shall not duplicate what underlying coverages.

A.   Yes.  PIP, BI.

Q.   And what was the total underlying value that you used to evaluate the Wilkins' claim?

A.   There is -- yes, $20,500 in collateral offsets.

Q.   Okay.  And any other collateral offsets?

A.   Not that -- not to my knowledge.

Q.   All right.  Because you had said, I think, at one point and other collateral -- and I just wanted to make sure we got everything over 20,500 is a dollar of UM coverage.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**   **www.MILESTONEREPORTING.com**   **Toll Free 855-MYDEPOS**

MR. ANGLEY:  Form.

THE WITNESS:  If there was, you know, health insurance, Medicare, or anything like that, that would be applicable as well.

BY MR. GUNN:

Q.   Okay.  Explain what you mean by that.

A.   I -- by what, exactly?

Q.   Well, if the health insurer has a right of subrogation, that's not something that you offset, correct?

A.   In terms of settlement of the -- the claim itself, if health insurance would subrogate us?  They have a -- a right to subrogate us, yes.

Q.   Okay.  So in UM, if the health insurer had -- would've had a right of subrogation against the underinsured motorist, do you understand that Progressive gets the benefit of health insurance?

A.   If we're on notice for a lien of -- at that time.

Q.   Then no?

A.   We have a right to protect the lien.

Q.   I don't even know what that means, and I apologize.  What do you mean, we have a right to protect the health insurance lien as a UM carrier?

A.   If health insurance -- and in this case, you



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.**MILESTONEREPORTING**.com          Toll Free 855-MYDEPOS

380876 Gorman Text 05-05-2025   Page 80

know, typically the attorneys handle the liens, so it would be something that we -- we consider, but I don't remember there being any specific health insurance applicability in this case.

Q.   Right.  And what happens is you write the $50,000, for example, UM claim benefit check, and if the claimant has some obligation to reimburse the health insurer, that's handled by the claimant and the claimant's lawyer to make sure that, for example, Blue Cross gets their share of the UM money, right?

A.   Sure.  Yes.

Q.   But it doesn't change the claim payment analysis, right?

A.   No.

Q.   And by no, you mean correct?

A.   I'm sorry?

Q.   You're not saying that my question is wrong; you were intending to agree with my question?

MR. ANGLEY:  Form.

THE WITNESS:  If there was a health insurance lien specifically, yes, that would be considered in the UM evaluation analysis.

BY MR. GUNN:

Q.   The UM carrier will still pay, even if there's been a health insurer payment, if the health insurer has

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900   www.MILESTONEREPORTING.com   Toll Free 855-MYDEPOS

380876 Gorman Text 05-05-2025   Page 81

a right of subrogation against the claimant; do you agree: Yes or no?

A.   Yes.

Q.   Thank you.  And that's that whole process, we said that the UM check goes to the claimant here represented by a lawyer with the understanding that we'll get a release and hold harmless from any liens, right?

A.   Yes.

Q.   Now, does Progressive require a release even when it makes the full policy limit paid at this point in time?

A.   It -- on UM claims specifically?

Q.   Yes.  I'm sorry, I was unclear.

MR. ANGLEY:  Mr. Gunn, can you --

THE WITNESS:  It's a general --

MR. ANGLEY:  -- reposition or rephrase that?  I didn't quite catch what the question was.

BY MR. GUNN:

Q.   At this time, even when full policy of UM benefit was issued, did Progressive request a release and hold harmless be signed by a UM claimant?

A.   A -- a release is requested -- it -- there does not have specific hold harmless language in it.

Q.   Okay.  All right.  Let's go through the injury

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

evaluation just to make sure I cover everything.  The evaluation range, high and low, we'll look at how that's produced underneath that.  But just to be clear, what components, when you evaluated this, did you understand the range was derived from?  In other words, how did we get those numbers?

A.   The reasonable amount to settle the claim.

Q.   And that there were various elements that were used to determine that reasonable amount in Progressive's view, right?

A.   Yes.

Q.   The injuries here that I've highlighted, and it ends with radiculopathy, those are the cervical injuries that were referenced in the MRI report, correct?

A.   Yes.

Q.   And then at this point in time, the insured received injections.  We're talking about the cervical ESI?

A.   Yes.

Q.   And then there was additional treatment. What's all that about?

A.   Which treatment specifically are you referring to?

Q.   So -- well, you tell me.  "There's additional

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**      www.**MILESTONEREPORTING**.com      **Toll Free 855-MYDEPOS**

treatment:" and then there's words underneath.  What are we referring to there?

A.   Yes, the 10-28 injection and then the 12-2.

Q.   So these are treatments since the last evaluation by Ms. Crawford, right?

MR. ANGLEY:  Form.

BY MR. GUNN:

Q.   I'll withdraw --

A.   I --

Q.   I -- Ms. Gorman, I've withdrawn.  There was a form objection, okay?  What was your understanding of the meaning of, "Additional treatment:" when you read this evaluation back in 2019?

A.   The new information, which was the injections.

Q.   How -- give me a -- give me a sense of you -- how familiar do you feel you were with the procedures that are being described underneath the 12-2 cervical MBBs at C4-5-6 left side?

A.   I would say I was familiar.

Q.   Okay.  Describe for us your understanding of what the doctor is doing to the patient?

MR. ANGLEY:  Form.  You can answer, Ms. Gorman.

THE WITNESS:  Okay.  An injection on the left, C-4, C-5, C-6.  A medial branch block injection.

BY MR. GUNN:

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

380876 Gorman Text  05-05-2025  Page 84

Q.    I missed that.  A what?

A.    A medial branch block.

Q.    Well, that's down the last thing there, right?

A.    What's that?

Q.    All right.  Dexamethasone sodium phosphate, J-1100, what does that mean?

A.    That's a CPT code.

Q.    Well, that's J-1100, that, but what are those words there before the J-1100?  What does that mean?

A.    The material of the injection.

Q.    What does it do?

A.    Provides pain relief.

Q.    Oh.

      MR. ANGLEY:  Object to the form.

      THE WITNESS:  What -- can you -- what's the question?

      BY MR. GUNN:

Q.    How does it provide pain relief?

      MR. ANGLEY:  Form.

      BY MR. GUNN:

Q.    If you don't know, it's fine.  I just -- you said you're familiar, I just want to know how familiar. What's the mechanism by which that drug provides pain relief?

A.    To the nerves.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

Q.   Right.  It -- well, pain comes from nerves. We got that.  But how do these drugs affect the transmission by the nervous system to the brain that we consciously understand as pain?  It's okay --

A.   I don't know the specific science there.

Q.   Okay.  And that's fine.  That's fine.  All right.  Facet joints cervical with image guidance, what is the image guidance for?

A.   To identify the specific space that the needle's going through with the -- with the medicinal aspect to make sure that it's getting to the right place.

Q.   So have you ever read the consent to one of these injections, what the patient consent form says?

A.   Not that I can recall off of the top of my head.

Q.   And do you know why the doctor uses fluoroscopy or other imaging to be able to guide the injection?

A.   I don't know.

Q.   Do you know that if the needle is misplaced, one of the risks of that is substantial and permanent spinal cord damage?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Yes.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     www.**MILESTONEREPORTING**.com     **Toll Free 855-MYDEPOS**

380876 Gorman Lexi 05-05-2025   Page 86

BY MR. GUNN:

Q.   Would you agree, as an adjuster, that if somebody is going to go and have those procedures, probably they're hurting pretty bad?

MR. ANGLEY:   Form.

THE WITNESS:   I would agree that somebody would -- that is an -- that's an option for somebody who's in pain.  Yes.

BY MR. GUNN:

Q.   And then the block of the cervical medial nerve branch, how does that -- and if you don't know, I'm really not trying to quiz you on medicine, but I do want to understand the depth of what you were understanding this patient was going through.  What did you understand the difference be between the block of the cervical medial nerve branch and the facet joint injection process?

A.   Specifically, just the -- the placement, but my answer would be the same as I stated for the first question.

Q.   All right.  Based off prior evaluation and then -- I -- I'm sorry; I want to make sure I get these initials right again.  Just read this line here that starts, "Based off prior," but take out all the -- all the initials, make them words.



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**      www.**MILESTONEREPORTING**.com      **Toll Free 855-MYDEPOS**

A.   You want me to read that line without the acronyms?  You want me to read out loud what the acronyms mean?

"Based off prior evaluation, cervical thoracic lumbar sprain strain and aggravation to cervical degenerative disc disease accepted."

Q.   And what -- again, what does the "accepted, accepting" means?

A.   What does what?

Q.   Okay.  Let -- the word after degenerative disc disease "accepted, accepting," what does that mean to you?

A.   What she's considering into the evaluation.

Q.   Okay.  And then what is your understanding of how the $3 to 5,000 number was come up with?

A.   That's based on experience and training over the years of reasonable settlement amounts for similar cases.

Q.   Well, is that just the medical bills?  Or what are the -- what are -- let me withdraw.

In order to use what you understood to be her background training and experience to come up with a $3 to 5,000 range for this element of her injury evaluation, what did you understand it consisted of? Was that only the medical bills that would be awardable or

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380876 Gorman Text   05-05-2025   Page 88

something more?

A.   Medical bills.  Specifically, the out-of-pockets and other factors of the case.

Q.   And that's what I'm looking for.  What are the other factors of the case you understood she took into account when coming up with $3 to 5,000?

A.   The history of the -- the patient and the impact, things like that nature.

Q.   It was a big impact, right?

A.   I would say it was a heavy impact.  Yes.

Q.   I didn't hear you.  You would say it's a what?

A.   It's a heavy -- it was a heavy impact, yes.

Q.   I mean, Jaws of Life were used, and the vehicle was totaled, and it was like a Santa Fe van or something, right?

A.   I can't speak specifically to the Jaws of Life being used, but I would say the vehicle was -- it was declared a total loss.  Yes.

Q.   Okay.  So this as an experienced gesture, this type of force of impact is not inconsistent with somebody having a permanent injury to their neck, fair?

MR. ANGLEY:  Object to the form of the question.

THE WITNESS:  I -- I can't make that determination.  I'm -- I'm not a medical doctor.



**MILESTONE | REPORTING  COMPANY**
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**       www.**MILESTONEREPORTING**.com       **Toll Free 855-MYDEPOS**

BY MR. GUNN:

Q.   No, you're not, but you've made many decisions about the claim value and the probability of permanency as you adjusted the loss, right?

MR. ANGLEY:  Form.

THE WITNESS:  Decisions were made based on the medical records that were received.

BY MR. GUNN:

Q.   So have you ever heard the term MIST in your industry?

A.   The term, what?

Q.   The acronym, MIST, M-I-S-T?

A.   No

Q.   Minor impact soft tissue is never something you've been exposed to in your career?

MR. ANGLEY:  Object to the form.  Asked and answered.

THE WITNESS:  I'm not familiar with the specific term you're using.

BY MR. GUNN:

Q.   Do you sometimes, as an adjuster, consider the force of impact as demonstrated by vehicle damage, when determining whether it appears that an injury is relatable to a crash event?

A.   From a stance of -- like a mechanism or



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          **Toll Free 855-MYDEPOS**

causation, that's possible, yes.

Q. Okay. And that's why I'm going through it with you now. You would agree that the forces as demonstrated by a total loss of the vehicle were significant enough in this injury case that there's no reason to discount causation due to a "lack of significant impact," true?

MR. ANGLEY: Form.

THE WITNESS: Can you rephrase the question?

BY MR. GUNN:

Q. You would agree --

A. I'm not sure what you're asking.

Q. There's no reason to say, this guy ain't hurt, just because the crash wasn't hard enough. That's as simple as I -- and I don't mean to -- that's as simple as I know how to say it to you. He got hit hard enough that it makes sense he probably got hurt, agreed?

MR. ANGLEY: Form.

THE WITNESS: Yes.

BY MR. GUNN:

Q. All right. Then the next line down here is "five cervical injections, $8 to 10,000." You see that?

A. Yes.

Q. Where'd your adjuster get 8 to 10 as the fair range for that element?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

A.  The same considerations that were discussed above.

Q.  Which is what, subjective experience and handling prior claims?  Is that the answer?

A.  Yes.

Q.  Okay.  Then a three-level cervical, a one level cervical ESI, three level cervical medial branch block bilaterally, three level cervical and medial branch block left, are those the -- are those the injections that are being considered for $8 to 10,000?

A.  Yes.  The -- the inject -- she's outlining the levels and which side they were being completed at, but they are inclusive of the two injections notated above on Page 46.

Q.  Then we have the low back.  She's assigned $3 to 5,000 for that.  What was your understanding as to the injury in the low back?

A.  There was diagnostic testing and mention of lumbar in the records.  There was not specific treatment that was being rendered.

Q.  So again, same basis for the evaluation background training experience subjective assessment led her to believe 3 to 5, and you endorsed it, correct?

A.  Yes.

Q.  Why in this note, at Page 47 of the record



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          **Toll Free 855-MYDEPOS**

we've been discussing, do you understand that this is an injury evaluation notated as "BI negotiation for Wilkins, Mondamin"?

A.   What -- what is the question?

Q.   Well, we're not talking about negotiating bodily injury, are we?

A.   That is a specific system.  It's uninsured motorist bodily injury.

Q.   It doesn't say that, does it?

MR. ANGLEY:  Form.

BY MR. GUNN:

Q.   It says, "BI."  Doesn't that -- notes say, "BI"?

A.   Yes, it does.

Q.   All right.  And that's a system default?

A.   Yes.

Q.   So she didn't type in "BI negotiation."  It just comes up on the screen when she's doing an injury evaluation note?

A.   That's correct.

Q.   And then she adds who the claimant is, and then she adds the type of coverage, and that's where the UM/UIM comes in, right?

A.   The only thing she added was "see eval."  All of the other text is system generated.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

Q.   Thank you.  And by the eval, we mean $13,144, right?

A.   That is system generated.  "See eval" is the only text that she --

Q.   Oh.

A.   -- included that was not part of the system-generated text.

Q.   Thank you for that, Ms. Gorman.  So where does the system pull the 13,144 from?

A.   Her prior note indicating the range.

Q.   And by her prior note, we'll refer to the Page 46 high range of 13,144?

A.   That's correct.

Q.   How many hours did you spend reading the demand package and all the medical records?

A.   I don't recall the specific amount of time.

Q.   Okay.  But your testimony is that, in fact, I sat down and read all of the medical records that accompanied this demand package of October of 2019; is that correct?

A.   Whatever was available at that time, yes.

Q.   So you didn't just rely on the evaluation of your claim professional and go through and ask questions to confirm that you agreed with her thinking?

A.   Can you repeat the question?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q.   Yes.  Mr. Angley asked you, would you have looked at the demand package and its attachments including medical records.  Do you recall that?

A.   Yes.

Q.   As you sit here today, do you have a present recollection of actually sitting down and looking at this demand package that is marked as Exhibit 3?

A.   My practice is to do that in any case that I'm authorizing in an evaluation.  Do I recall the specific memory?  I can't say for sure, but I -- I notated that I reviewed it with her in person.

Q.   And did you go page by page?

A.   That would be my general practice.

Q.   How -- and you don't know how long that took?

A.   I can't speak to the time frame of this being almost six years.

Q.   I understand.  Were you involved at all in the CRN on Mr. Wilkins' case?

A.   Other than the fact that I reviewed it, no.

        MR. ANGLEY:  Form.

        BY MR. GUNN:

Q.   And when did you first review it?

A.   According to the note on 12-16-2019 at 1:46 p.m.

Q.   Okay.  We've established in your direct,

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

though, that that was for Ms. Wilkins, right?  Not Mr. Wilkins?

A.  I didn't evaluate the CRN.  I was not involved with the CRN specifically at any point after this.

Q.  Well, your note only speaks to Lisa Wilkins, right?

A.  Yes.

Q.  And that's your note at Page 47 of Exhibit 1, right?

A.  Yes.

Q.  Okay.  And so as you sit here today, do you have any present recollection of reading the CRN from the standpoint of Mr. Wilkins?

A.  I read the content in the CRN, not --

Q.  Did you take any note -- go ahead, finish.

A.  I'm not sure how to answer the question you're asking.

Q.  You read the CRN.  Did you notate the file with anything you thought of significance in the CRN?

A.  Just what's outlined in my note.

Q.  Did -- do your notes say anything about Mr. Wilkins' claim?

A.  No.

Q.  I'm sorry; was that no?

A.  No, it does not say anything specifically to

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    **www.MILESTONEREPORTING.com**    **Toll Free 855-MYDEPOS**

380876 Gorman Text  05-05-2025  Page 96

him.

Q.   Okay.  And after your -- after you authorized 13,144 and increased reserves to 15,000, did you issue any instructions to the claim representative with regard to your suggestions for future workup?

A.   To future, what?  Can you rephrase?  Sorry.

Q.   After you completed your authorization to increase reserves to $15,000 and to let your claim professional pay up to $13,144 to resolve the UM claim, did you issue any instructions or future work to be performed to complete the UM adjustment process?

A.   No.

Q.   Was it within your role generally when having made the kind of review you made in December of 2019 to give recommendations for future actions to the assigned claim professional?

A.   If it was unknown, what would be needed to continue forward movement of the -- the claim.

Q.   All right.  So as I'm understanding it, as of the time of your completion on the work -- let me just withdraw it.

I think Mr. Angley made it clear, you -- after this time frame we've been looking at of mid-December of 2019, you have absolutely no future involvement or knowledge of how this claim progressed, correct?

 MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

A.   That's correct.

MR. GUNN:  Sorry if that's redundant.  All right, that's all I have for you, and I thank you.

MR. ANGLEY:  We could take, say, ten minutes and just look over some notes, see if I have anything else.

THE REPORTER:  All right.  We are off the record at 3:10 p.m.

(A recess was taken.)

THE REPORTER:  We are back on the record for the deposition of Lexi Gorman being conducted by video conference.  My name is Rachael Krupka.  Today is May 5th, 2025, and the time is 3:23 Eastern.  You may continue.

REDIRECT EXAMINATION

BY MR. ANGLEY:

Q.   Good afternoon, Ms. Gorman.

A.   Good afternoon.

Q.   My colleague just asked you a number of questions about the claim and I kind of wanted to go back and talk about some of that with you.  In your role as an adjuster and then a supervisor at Progressive, you were trained on how to review medical records and evaluate a claim like Mr. Wilkins', correct?

A.   Yes.



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

Q.   And in December of 2019, do you believe that you were adequately trained to do so?

A.   Yes.

MR. GUNN:  Asked and answered.  You can answer.

BY MR. ANGLEY:

Q.   And did you do that -- and did you perform such a evaluation and review in Mr. Wilkins' UM claim?

MR. GUNN:  Asked and answered.

BY MR. ANGLEY:

Q.   You can answer, ma'am.

A.   Yes.

Q.   And is it your understanding that the -- Mr. Wilkins' policy with Progressive includes language from the tort threshold?

A.   Yes.  I -- I am pretty sure it's in the policy. It's in the statute though, as well.

Q.   So as part of the policy, Mr. Wilkins has to -- is it your understanding then as part of the policy, Mr. Wilkins has to establish a tort threshold breach in order to be entitled to non-economic damages?

MR. GUNN:  Form.

THE WITNESS:  Yes.

BY MR. ANGLEY:

Q.   Was there a threshold breach in this -- in Mr. Wilkins' UM claim?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380876 Gorman Text 05-05-2025 Page 99

MR. GUNN:  Form.

BY MR. ANGLEY:

Q.   As of the date of your involvement?

MR. GUNN:  Same.

THE WITNESS:  There was not.

BY MR. ANGLEY:

Q.   Okay.  No medical -- it's correct to say that no medical doctor specifically stated in any record sent to Progressive that Mr. Wilkins had suffered a permanent injury within a reasonable degree of medical probability caused by the July 26th, 2019, motor vehicle accident?

MR. GUNN:  Leading.

THE WITNESS:  That's correct.

BY MR. ANGLEY:

Q.   Mr. Wilkins didn't die in the accident, correct?

A.   He did not.

Q.   There was no loss of bodily function caused by the July 26th, 2019, accident as of the date of your --

MR. GUNN:  (Audio cuts out.)

THE WITNESS:  That's correct.

BY MR. ANGLEY:

Q.   And to your understanding, as of the date of your involvement, which was December 16th, 2019, there had been no significant and permanent scarring or

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380876 Gorman Text 05-05-2025

disfigurement, correct?

A.   That's correct.

Q.   And as -- and through your involvement in Mr. Wilkins' UM claim, did any medical doctor causally relate the July 26th, 2019, accident to Mr. Wilkins' alleged neck injuries?

MR. GUNN:  Form.

BY MR. ANGLEY:

Q.   You can answer.

A.   That's correct.

Q.   Attorney Gunn asked you a number of questions about some of the diagnostic studies that were taken of Mr. Wilkins.  Do you recall that?

A.   Yes.

Q.   And I'm going to pull up Exhibit 3.  Share my screen with you.  At the hospital, Mr. Wilkins underwent a CT of his cervical spine, correct?

A.   Yes.

Q.   And on tragus 6494, Dr. Albert Chang, M.D., stated, "No acute bony injury in cervical spine, multi-level degenerative changes."  Is that accurate?

A.   That is accurate.

Q.   Would that be something Progressive would've take -- would have considered in its -- is that something you and Ms. Crawford would've considered in

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380876 Gorman Text 05-05-2025          Page 101

your evaluation of this claim?

A.   Yes.

Q.   And did that indicate that Mr. Wilkins in fact had a prior history of neck injury?

MR. GUNN:  Form.

THE WITNESS:  Can you -- sorry.  Can you repeat the question?

BY MR. ANGLEY:

Q.   Does the fact of -- does the fact that Mr. Wilkins have had degenerative changes in his cervical spine, what does that indicate to you when you're evaluating his UM claim?

A.   Yes.  That there would be some level of a preexisting condition there.

Q.   Okay.  And Mr. Wilkins also underwent an MRI of his cervical spine on August 5th of 2019, correct?

A.   Yes.

Q.   Did -- and that was read by Dr. Timken.  Did Dr. Timken offer any opinion that the cervical findings that he lists were caused by the July 26th, 2019, accident?

MR. GUNN:  Form.

THE WITNESS:  No.

BY MR. ANGLEY:

Q.   That was a no?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

380876 Gorman Lexi   05-05-2025   Page 102

A.   That was no.

Q.   Does -- based on the MRI report, is there evidence that there are degenerative conditions or changes in the cervical spine?

MR. GUNN:  The document speaks for itself.  You may answer.

THE WITNESS:  Yes.

BY MR. ANGLEY:

Q.   And can you provide me a -- can you tell me an example of what that would -- what that would be?

A.   Similar findings at multiple levels. Specifically, loss of disc hydration would be one of those.

Q.   So the loss of disc hydration, that's present at C5 through C6, and C6 through C7, correct?

A.   Yes.

Q.   Based on the information that Progressive had at the time of your involvement in December of 16th, 2019, do you believe that you and Ms. Crawford gave fair apportionment based on known information?

A.   Yes.

MR. ANGLEY:  All right.  No further questions. Mr. Gunn, you're muted.

MR. GUNN:  Thank you.  My apologies.

RECROSS-EXAMINATION

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

360876 Gorman Text   05-05-2025   Page 109

BY MR. GUNN:

Q. Do you understand, ma'am, that the CT is not the most sensitive imaging study for determining whether soft tissue damage has occurred?

MR. ANGLEY: Object to the form.

THE WITNESS: Can you repeat the question?

BY MR. GUNN:

Q. Sure. As between CT and MRI, which do you understand to be more sensitive for seeing soft tissue injury?

MR. ANGLEY: Object to the form.

THE WITNESS: An MRI.

BY MR. GUNN:

Q. And it's the MRI that found the various herniations and disc changes that we've talked about in your deposition, correct?

A. Yes.

Q. And of course, Progressive would've considered the fact that this gentleman with no prior neck treatment now has demonstrable changes in the form of herniations in his neck when deciding prompt, fair claim payment to be made, right?

MR. ANGLEY: Form. Objection.

THE WITNESS: Along with other factors, yes.

BY MR. GUNN:

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380876 Gorman Text   05-05-2025   Page 104

Q.   Okay.  Do you understand that neuroradiologists and radiologists are not clinicians?

A.   And -- what -- can you rephrase the question?

Q.   Do you understand -- I'll change it, okay?  Do you understand that the folks that read the imaging studies, like neuroradiologists and radiologists do not render clinical opinions?

A.   Yes.

Q.   And rather -- whether someone sustained an injury demonstrable on imaging in a particular crash is left to the clinician, the treating doctor who takes into account the entire picture of the patient of which the imaging report is simply one piece of information, correct?

MR. ANGLEY:  Form.

THE WITNESS:  Yes.

BY MR. GUNN:

Q.   Do you -- and if you don't -- well, let me just ask you because you want to.  Why didn't you ask your claim representative to have Mr. Wilkins submit to a CME so that you could get an independent view of his overall injuries and what was caused by the crash?

MR. ANGLEY:  Object to the form.  Asked and answered.  And outside the scope of redirect.

THE WITNESS:  Is -- is that -- am I answering

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          Toll Free **855-MYDEPOS**

this question or --

MR. ANGLEY:  You can answer.  Just making objections for the record.

THE WITNESS:  At the -- can you repeat the question?  I feel like it was multiple things, so I just want to make sure I heard correctly.

BY MR. GUNN:

Q.   Sure.  Okay.  You were asked on cross some of the things that you did consider.  Remember that testimony?  You considered the CT scan.  You considered the findings in the emergency room.  Remember that testimony?

A.   Yes.

Q.   Okay.  Did you consider getting a CME performed on Mr. Wilkins?

MR. ANGLEY:  Same objection.

THE WITNESS:  Not at that time.

BY MR. GUNN:

Q.   Why not?

MR. ANGLEY:  Same objection.

THE WITNESS:  I can't state specifically.  At that time, it didn't -- it was not a necessary step in terms to move the claim forward.  Based on the information we had.

BY MR. GUNN:

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     **www.MILESTONEREPORTING.com**     **Toll Free 855-MYDEPOS**

380876 Gorman Lexi 05-05-2025

Q.   And why did you feel that way at that time that it wasn't a necessary step at that time?

MR. ANGLEY:  Same objection.

THE WITNESS:  Why did I feel it was not a necessary step?

BY MR. GUNN:

Q.   That's my question, ma'am.

A.   It did -- at that time, based on the information that was available, the -- the value of the claim was within the policy limits.

Q.   Well, do you only get compulsory medical evaluation done when the value of the claim appears to exceed the available benefit limit?

MR. ANGLEY:  Same objection.

THE WITNESS:  I can't speak to specifics around when we do and do not.  At that time, it did not seem as a necessary step at that time, based on the information that we had.

BY MR. GUNN:

Q.   And I'm just not asking for any more than why you as a supervisor at that time did not feel the CME was a necessary step to move the claim forward?

MR. ANGLEY:  Objection.  Asked and answered. Outside the scope of redirect.

THE WITNESS:  I did not feel that it was a

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

360876 Gorman Lexi   05-05-2025

necessary step to move the claim forward at that time.

BY MR. GUNN:

Q.   Why not?

MR. ANGLEY:   Same objection.

THE WITNESS:   Are you asking about the -- the CME in terms of what, specifically?

BY MR. GUNN:

Q.   What injuries did Mr. Wilkins sustained in the automobile crash and what is the likely future care and treatment and cost for the same to be occasioned by Mr. Wilkins would be among the things you might ask a CME doctor; why didn't you do that?

MR. ANGLEY:   Object to the form of the question.

THE WITNESS:   You -- I didn't feel that it was a necessary step at that point.   I -- I can't speak to the exact thought process other than that it did not feel like a necessary step at that time.

BY MR. GUNN:

Q.   Would it have been helpful for you if you had a physician's opinion of whether there was a permanent injury at that time?

MR. ANGLEY:   Objection.   Calls for speculation.

BY MR. GUNN:

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

380876 Gorman Text 05-05-2025    Page 108

Q.   Please answer.

A.   There was not an indication of that in the medical record, so it did not appear that it was a necessary thing to do at that time.

Q.   Well, aren't you at Progressive trying to determine the facts that would allow you to make a proper claim payment?  Isn't that your role?

MR. ANGLEY:  Objection.  Argumentative.

MR. GUNN:  Yes.

MR. ANGLEY:  It poses offers made were not fair and unreasonable.

THE WITNESS:  Can you repeat the question, please?

BY MR. GUNN:

Q.   have it read back, please.

THE REPORTER:  Give me one moment.

(The requested question was read back.)

MR. ANGLEY:  Same objection.

THE WITNESS:  Our -- I would agree that our role is to evaluate the case based on the merits that exist along with the individual injuries, medical determination.  And at that point, it did not appear to be a need for an independent medical exam.

BY MR. GUNN:



MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    **www.MILESTONEREPORTING.com**    **Toll Free 855-MYDEPOS**

380876 Gorman Text 05-05-2025   Page 109

Q.   Wouldn't knowing from a medical examiner whether there was a permanent injury have been an important fact for Progressive to consider in evaluating this UM claim?

MR. ANGLEY:  Objection.  Asked and answered. Argumentative.  Calls for speculation.  Mr. Gunn, if we could move forward.  You asked this question five different ways.

BY MR. GUNN:

Q.   You may answer.

A.   At that time, it did not feel like a necessary step to move -- to move the claim forward.

Q.   And I agree with your Counsel's admonition that it seems like we're going round and round.  But I'm asking the basis for your conclusion that it wasn't a necessary step to move the claim forward at that time. And that's the core question, and it stems from if you want to -- if you want to hang your hat on no permanent injury, ask a doctor, does he have a permanent injury to a reasonable degree of medical probability?  It will really help me understand the claim value if I know that answer.  Why didn't you ask a doctor to give you that answer?

MR. ANGLEY:  Same objection.  Move to strike the question.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

380876 Gorman Text   05-05-2025                    Page 110

You can answer as you can best, Ms. Gorman, to the extent different than anything you've said before.

THE WITNESS:  Yeah.  I can't speak to why not.  There was no indication of a permanent injury at that time.  And an independent medical -- medical exam did not feel like a step necessary to resolve the claim.

BY MR. GUNN:

Q.   Would knowing what the reasonably certain medical bills to be occasioned in the future to a reasonable degree of medical probability have been something Progressive would've considered in evaluating this claim?

MR. ANGLEY:  Objection.  Form.  Argumentative.  Speculation.  Same objections as before.  You can answer as best you can, Ms. Gorman.

THE WITNESS:  I don't understand the question.  Can you rephrase?

BY MR. GUNN:

Q.   Okay.  I don't know that I can.  Let's read this one back.  Listen carefully, if you don't mind.

THE REPORTER:  Give me one second.

(The requested question was read back.)

THE REPORTER:  I'm sorry.  Give me one second.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380876 Gorman Text  05-05-2025  Page 111

It's just I was typing, and the objection was going.
Sorry.

MR. GUNN:  Madam Reporter, I'm going to let you off the hook.  Just let me know when you're ready to start taking down testimony.

THE REPORTER:  I can start.  It's just a long question so I had to pause each little thing.  Okay.  Do you want me to continue?

MR. GUNN:  If you're ready to go, let's read her back.

(The requested question was read back.)

THE REPORTER:  Probably, and then something Progressive.

MR. GUNN:  I'm again, going to let you off the hook.  Please go back.

THE REPORTER:  I'm sorry.

MR. GUNN:  Please.  Please.  It's no worries at all.  I understand

(The requested question was read back.)

MR. GUNN:  Ma'am, I've canceled the read.

THE REPORTER:  Sorry.  You can go ahead and -- you can go ahead and continue with the testimony.

MR. GUNN:  All right.  Very good.  Thank you.

BY MR. GUNN:

Q.   Ms. Gorman, would knowing what the future

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

360876 Gorman Texr  05-05-2025   Page 112

medical bills to be incurred in the future were to a reasonable degree of medical probability within a reasonable certainty of aided Progressive in its evaluation of this claim?

MR. ANGLEY:  Objection.  Form.  Asked and answered.  Calls for speculation.  Argumentative.

THE WITNESS:  I -- I don't -- I'm -- honestly, I don't understand the question.  I'm -- I'm -- I'm trying to, it's just multifaceted.

BY MR. GUNN:

Q.   What are future medical bills?

MR. ANGLEY:  Objection.  Outside the scope of redirect.

MR. GUNN:  David, I'm just going to give you a form to whatever form you want throw out so we don't break the video, okay?  You got a continuing objection so I can try to break this down for your witness, okay?

MR. ANGLEY:  All right.  I'm going to make more objections as I need to.

THE WITNESS:  Future medical --

MR. GUNN:  Well, yeah.  No, feel free.  But if you -- look --

MR. ANGLEY:  I think you're going --

MR. GUNN:  David, do what you got to do.  Do

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**       www.**MILESTONEREPORTING**.com       **Toll Free 855-MYDEPOS**

360876 Gorman Text  05.05.2025   Page 113

what you got to do.

BY MR. GUNN:

Q.   Ms. Gorman, my pending question is withdrawn. Here's the record, okay?  What are future medical specials?

MR. ANGLEY:  Object to the form of the question.

THE WITNESS:  Bills that could be future -- from future treatment.  At a -- at the surface level, I think that's what you're asking.

BY MR. GUNN:

Q.   And is that part of the potential legal liability of an underinsured motorist?

MR. ANGLEY:  Object to the form.

THE WITNESS:  Potentially.

BY MR. GUNN:

Q.   Answer is potentially?  There was an objection. Potentially?  Is that your answer, Ms. Gorman, potentially?

A.   Yes.

Q.   Let me ask it a different way.  What did Progressive do, if anything, to obtain a medical opinion of what the reasonably certain future medical bills were going to be for Mr. Wilkins because of this crash?

MR. ANGLEY:  Object to the form of the

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**      **www.MILESTONEREPORTING.com**      **Toll Free 855-MYDEPOS**

380876 Gorman Text  05-05-2025

question.

THE WITNESS:  At that time, we did not seek any independent medical examination as to that determination.

BY MR. GUNN:

Q.   And to be clear, your answer is, Progressive took no action to investigate the probable future medical bills of Mr. Wilkins, fair?

MR. ANGLEY:  Objection.

THE WITNESS:  At that time.  Yeah.

MR. ANGLEY:  Objection to form.  The Counsel testifying and misstating the witness' testimony.

BY MR. GUNN:

Q.   And the answer is, at that time, no, Ms. Gorman?

MR. ANGLEY:  Form.  Objection.

THE WITNESS:  I can't speak to what was done before or after my involvement on December 16th.

BY MR. GUNN:

Q.   And your answer to my question that you can speak to because you were there doing things is no.  At that time, I did not take any action, nor did I instruct my claim representative to take any actions specific to how much are the future medical bills likely to be for Mr. Wilkins, true?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**       www.**MILESTONEREPORTING**.com       **Toll Free 855-MYDEPOS**

360876 Gorman Text 05-05-2025   Page 115

MR. ANGLEY: Form. Objection.

THE WITNESS: That is true.

MR. GUNN: Okay. That's all I have. Thanks. Mr. Angley, anything else?

MR. ANGLEY: Sure.

FURTHER DIRECT EXAMINATION

BY MR. ANGLEY:

Q. Ms. Gorman, did you evaluate -- during your involvement, did you evaluate all known information to Progressive?

MR. GUNN: Asked and answered.

THE WITNESS: Yes.

BY MR. ANGLEY:

Q. Did you take all that information into consideration or through your involvement in this claim?

MR. GUNN: Same.

THE WITNESS: Yes.

BY MR. ANGLEY:

Q. And Ms. Crawford determined certain apportionment valuations that we've looked at previously, correct?

MR. GUNN: Same. And leading.

THE WITNESS: Yes.

BY MR. ANGLEY:

Q. And at that time, why wasn't any consideration

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

380876 Gorman Text 05-05-2025

or why if no consideration -- why wasn't there any --

well, strike that.

And were those apportionments fair and reasonable based on what Progressive knew at the time?

MR. GUNN:  Asked and answered.

THE WITNESS:  Yes.

BY MR. ANGLEY:

Q.  Was it certain that Mr. Wilkins would need additional treatment?

MR. GUNN:  Form.

THE WITNESS:  No.

BY MR. ANGLEY:

Q.  Was it certain that if -- was it certain -- was it known to Progressive at that time, even if Mr. Wilkins had undergone additional treatment that it was related or caused by the July 26th, 2019, accident?

MR. GUNN:  Form.

THE WITNESS:  No.

BY MR. ANGLEY:

Q.  And was that because no medical doctor had offered any permanency opinion?

MR. GUNN:  Form.

THE WITNESS:  Yes.

BY MR. ANGLEY:

Q.  Okay.  So is that why -- and is that part of

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380876 Gorman Lexi  05-05-2025

Progressive's analysis and evaluation of Mr. Wilkins' claim?

MR. GUNN:  Form.

THE WITNESS:  Yes.  That's correct.

BY MR. ANGLEY:

Q.   And Progressive received additional information.  Would it have taken that in -- if Progressive received additional information, would it take that information into consideration and update its evaluation?

A.   Yes, of course.

Q.   Without -- with no medical doctor opining that the treatment was caused by the accident, how did that impact Progressive's evaluation of the claim?

MR. GUNN:  Form.

THE WITNESS:  There was no -- there was no opinion that it was that.  That it was related or that there was a permanent injury.

BY MR. ANGLEY:

Q.   And how does that impact the evaluation?

MR. GUNN:  Asked and answered.

THE WITNESS:  It -- it's a -- it would impact if there was a -- a doctor stating that?

BY MR. ANGLEY:

Q.   If there wasn't?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**      **www.MILESTONEREPORTING.com**      **Toll Free 855-MYDEPOS**

360876 Gorman Text 05-05-2025                    Page 118

A.   Oh, we would -- we were not considering non-economic damages.

Q.   And was it unclear or unknown at this time to what extent Mr. Wilkins' injuries were actually related to the July 26th, 2019, accident?

MR. GUNN:  Form.

THE WITNESS:  Yes.  I would say it was unknown.

BY MR. ANGLEY:

Q.   And as part of the evaluation, did Progressive consider collateral sources such as PIP and the bodily injury coverage the tortfeasor maintained?

MR. GUNN:  Form.

THE WITNESS:  Yes.

BY MR. ANGLEY:

Q.   And taken together, did all of that form the evaluation Ms. Crawford requested and that you authorized?

A.   Yes.

MR. GUNN:  Asked and answered.

MR. ANGLEY:  All right.  Ms. Gorman, I don't have anything else for you.

FURTHER CROSS-EXAMINATION

BY MR. GUNN:

Q.   Ms. Gorman, when a medical provider submits bills for care and treatment to PIP on a given accident,

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380876 Gorman Text 05-05-2025   Page 119

would it be billing fraud if those medical bills weren't deemed related caused by the crash that's covered by PIP?

MR. ANGLEY:  Form.  Objection.

THE WITNESS:  That's not a determination I can make.  I'm not a licensed coder, and I -- I was not working in the medical claims unit at that time.

BY MR. GUNN:

Q.   So PIP covers medical bills causally related to a covered loss, right?  The crash?

MR. ANGLEY:  Form.  Objection.

THE WITNESS:  That's correct.

BY MR. GUNN:

Q.   So if somebody goes in with a toothache that isn't caused to the crash and the dentist bills PIP, do you know whether that would be fraud?

MR. ANGLEY:  Form.  Objection.

THE WITNESS:  I -- I can't speak to a hypothetical.

BY MR. GUNN:

Q.   That's a fine answer.  What you can speak to is when you looked at the PIP log in this case, the doctors were billing personal injury protection for reimbursement for related care and treatment to the car crash where they couldn't bill PIP.  You know that,

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

360876 Gorman Text 05-05-2025

right?

MR. ANGLEY:  Form.  Objection.

THE WITNESS:  I am aware that PIP paid for treatment that was received after this accident.  Yes.

BY MR. GUNN:

Q.  And PIP covers accident-related medical expenses only, right?

MR. ANGLEY:  Form.  Objection.

THE WITNESS:  Yes.

BY MR. GUNN:

Q.  It does not cover somebody who gets a stomachache because they have the flu, does it?

MR. ANGLEY:  Form.

THE WITNESS:  If it does not arise out of an auto accident, then I would say no.  If --

BY MR. GUNN:

Q.  So at least on the PIP unit side -- do you approve the PIP charges when you're handling a UM claim as a supervisor?

A.  No.

Q.  Thank you.  That's all I have.

MR. ANGLEY:  No further questions.

MR. GUNN:  Thank you.  We'll get you out of here.  Thank you, Ms. Gorman.  Nice meeting you.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380876 Gorman Text 05-05-2025

THE WITNESS:  Nice to meet you as well.

THE REPORTER:  And before we get off the record here, Mr. Angley, will you need a copy of the transcript?

MR. ANGLEY:  It's Angley, and yes, please.

THE REPORTER:  Okay.

MR. ANGLEY:  That was Mr. Gunn, he colluded --

MR. GUNN:  We'll go off video.

MR. ANGLEY:  Yeah.

MR. GUNN:  David, I was so scared that I messed up your name throughout.

MR. ANGLEY:  You probably read it once or twice.

MR. GUNN:  I'm glad I'm -- for a change, it wasn't Neman speaking.  So all right.  I'll order ordinary turnaround.

THE REPORTER:  Ordinary turnaround.

MR. GUNN:  David, do you want the -- do you want a copy of the video?

MR. ANGLEY:  No video.  We'll take a -- we want the transcript and the witness will read.

THE REPORTER:  Will read?

MR. GUNN:  An original errata through Mr. Angley's office will be fine.

THE REPORTER:  Okay.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**       **www.MILESTONEREPORTING.com**       **Toll Free 855-MYDEPOS**

380876 Gorman Text 05-05-2025   Page 122

MR. ANGLEY:  Mr. Gunn --

MR. GUNN:  All right, David.  Thanks everybody for your time.

(Deposition concluded at 3:53 p.m. ET)



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        www.**MILESTONEREPORTING**.com        **Toll Free 855-MYDEPOS**

CERTIFICATE OF OATH

STATE OF FLORIDA

COUNTY OF ORANGE

     I, the undersigned, certify that the witness in the foregoing transcript personally appeared before me and was duly sworn.

Identification:  Produced Identification


_____

Natalia Gonzalez

Court Reporter, Notary Public

Commission Expires: May 13, 2028

Commission No. HH526993

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

380876 Gorman Text  05-05-2025

C E R T I F I C A T E

I, Natalia Gonzalez, Court Reporter and Notary Public, do hereby certify that I was authorized to and did report the foregoing proceeding, and that said transcript is a true record of the said proceeding.

I FURTHER CERTIFY that I am not of counsel for, related to, or employed by any of the parties or attorneys involved herein, nor am I financially interested in said action.

Submitted on: May 15, 2025

_____

Natalia Gonzalez

Court Reporter, Notary Public

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

360876 Gorman Text 05-05-2025   Page 125

ERRATA

PAGE       LINE                        CHANGE       REASON

I have read the entire transcript of my deposition taken in the captioned matter or the same has been read to me.I request that the following changes be entered upon the record for the reasons indicated. I have signed my name to the Errata Sheet and authorize you to attach the changes to the original transcript.

_____        _____
Date                            NAME

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

**407.423.9900**
**Fax 407.841.2779**
**Toll Free 855-MYDEPOS**

**May 15, 2025**

**David Angley, Esquire**
Young, Bill, Boles, Palmer, Duke & Thompson, P.A.
401 E. Jackson St., Suite 2950
Tampa, FL 33602

RE:    Deposition of **Lexi Gorman (RC)** taken on **5/5/2025**
         Mondamin Wilkins v. Progressive Select Insurance Company

Dear Mr. **Angley**,

### IMPORTANT NOTICE FOR DEPOSITION TRANSCRIPT READ AND SIGN

It is suggested that the review of this transcript be completed within 30 days of your receipt of this letter,
as considered reasonable under Federal Rules*.

  X    **Attorney - Copy of Transcript Enclosed:**  Signature of the Deponent is required.  Please have the deponent make any corrections/changes necessary on the Errata Sheet ONLY, sign name on the form where indicated.  Please return ONLY the original signed Errata Sheet to our offices within 30 days from the date of this memorandum.  If you have any questions, please call our offices.

____    **Attorney - No Copy Ordered:**  Since you did not request a copy of the transcript, it will be necessary for the Deponent to call our offices to arrange for an appointment to read and sign the transcript of the Deposition within 30 days of this memorandum.

____    **Deponent:**    At the time of your deposition, you did not waive your right to read and sign the transcript of your testimony, therefore, attached please find a copy of the transcript and Errata Sheet.  Please read the transcript, make any corrections necessary on the Errata Sheet ONLY, sign the bottom of the Errata Sheet, and return it within 30 days from the date of this memorandum.  Please call our offices if you have any questions.

____    **Deponent:**    At the time of your deposition, you did not waive your right to read and sign the transcript of your testimony, therefore, it is necessary for you to come to our offices to read and sign same.  Please call Milestone Reporting Company to arrange for an appointment at your earliest convenience.

____    The attached executed copies of the Errata Sheet(s) are sent to you for your files.  If you have any questions, please call our offices.

Thank you for your attention to this matter.

No. 380876

cc:


Waiver:
I, Lexi Gorman **,** hereby waive the reading and signing of my deposition transcript.

_____          _____
Deponent Signature                                                                          Date

*Federal Civil Procedure Rule 30 (e) / Florida Civil Procedure Role 1.310 (e)

400 North Ashley Drive, Suite 2600            315 East Robinson Street, Suite 510            4651 Salisbury Road, 4th Floor
**TAMPA, FL 33602**                                    **ORLANDO, FL 32801**                            **JACKSONVILLE, FL 32256**
                                                                **CORPORATE**
                                            **WWW.MILESTONEREPORTINGCOMPANY.COM**